## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------- x
                                        :
In re                                   :      Chapter 11
                                        :
PHOENIX SERVICES TOPCO, LLC, et al.,    :      Case No. 22–10906 (      )
                                        :
                 Debtors.[1]            :      (Joint Administration Requested)
                                        :
------------------------------------------------------------- x
```

### MOTION OF DEBTORS PURSUANT TO
### 11 U.S.C. §§ 105(a), 363(b), AND 507(a) AND FED. R. BANKR. P. 6003
### AND 6004 FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING
### DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, EMPLOYEE
### BENEFITS, AND OTHER COMPENSATION, (B) MAINTAIN EMPLOYEE
### BENEFIT PROGRAMS AND PAY RELATED OBLIGATIONS, AND (C) PAY
### PREPETITION EMPLOYEE EXPENSES AND (II) GRANTING RELATED RELIEF

Phoenix Services Topco, LLC (the "**Phoenix Topco**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Background

1.      On the date hereof (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Phoenix Services Topco, LLC (4517); Phoenix Services Parent, LLC (8023); Phoenix Services Holdings Corp. (1330); Phoenix Services International LLC (4693); Metal Services LLC (8793); Terracentric Materials LLC (0673); Cool Springs LLC (8687); Metal Services Investment LLC (2924); and Phoenix Receivables, LLC (not applicable).  The Debtors' mailing address is 4 Radnor Corporate Center, Suite 520, 100 Matsonford Road, Radnor, Pennsylvania 19087.

Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

2.    Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

3.    Information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert Richard in Support of Debtors' Chapter 11 Petitions and First Day Relief*, sworn to on the date hereof (the "**Richard Declaration**"), which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

## Jurisdiction

4.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.    Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

RLF1 27986962v.1

## Relief Requested

6.      By this Motion, pursuant to sections 105(a), 363(b), and 507(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, the Debtors request (a) authority to (i) pay Employee Compensation Obligations and Employee Benefit Obligations (each, as defined below), related expenses, and fees and costs attendant to the foregoing, including amounts owed to third-party service providers, administrators, and taxing authorities, and (ii) maintain, continue to honor, and pay amounts with respect to the Debtors' business practices, programs, and policies for their employees as such were in effect as of the Petition Date and as such may be modified or supplemented from time to time in the ordinary course of business and (b) related relief.

7.      A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**"), and a proposed form of order granting the relief requested herein on a final basis is annexed hereto as **Exhibit B** (the "**Proposed Final Order**," and together with the Proposed Interim Order, the "**Proposed Orders**").

8.      The monetary relief sought in the Proposed Orders is discussed in further detail below and summarized in the following chart:

| Prepetition Obligations | Interim Relief Requested (Due within 30 Days of Petition Date) | Total Relief Requested (inclusive of Interim Relief Requested) |
|---|---|---|
| Employee Compensation Obligations | $4.0 million | $7.0 million |
| Employee Benefit Obligations | $4.4 million | $4.8 million |
| **Total Employee Obligations** | **$8.4 million** | **$11.8 million** |

## Debtors' Workforce

9.      The Debtors are a leading provider of steel mill services in the United States.  As of the Petition Date, the Debtors collectively employ approximately 1,250 active

3

employees, approximately 1,240 of which are full-time employees (the "**Employees**").[2] Approximately 200 Employees are paid on a salaried basis ("**Salaried Employees**") and approximately 1,050 Employees are paid on an hourly basis ("**Hourly Employees**"). Approximately five (5) percent of the Employees are considered "non-exempt" under the Fair Labor Standards Act (the "**FLSA**").[3]  In addition and as discussed further herein, the Debtors also currently utilize the services of temporary employees (collectively, the "**Supplemental Workforce**").  The Employees and Supplemental Workforce are critical to the success of the Debtors' business and are responsible for ensuring, among other things, the Debtors' steel mill servicing operations continue to run safely and reliably, and customer satisfaction is met on a daily basis.

10.     Approximately 275 of the Debtors' Hourly Employees are represented by a union and covered by industrial agreements (the "**Union Agreements**") with the International Union of Operating Engineers Local 150, AFL-CIO (the "**Union Employees**," and such obligations, the "**Union Obligations**").

### **Employee Compensation Obligations**

11.     The Debtors' outstanding prepetition obligations related to compensation of Employees and the Supplemental Workforce (collectively, the "**Employee Compensation Obligations**") are summarized in the following chart and described in further detail below:

---

[2]     An employee is considered a full-time employee if she or he is scheduled to work and/or averages a work schedule of a minimum of 40 hours per week.

[3]     The FLSA is a federal law establishing, among other things, overtime pay eligibility affecting full-time and part-time workers.  An employee may be exempt (not subject to overtime) or nonexempt (required to be paid overtime at time and a half) pursuant to the FLSA.  In order for an employee to be exempt, the employee's specific job duties and salary must meet the requirements of the Department of Labor's regulations.  Section 13(a)(1) of the FLSA provides an exemption from both minimum wage and overtime pay for employees employed as bona fide executive, administrative, professional, computer, and outside sales employees.

| Prepetition Obligations | Interim Relief Requested (Due within 30 Days of Petition Date) | Total Relief Requested (inclusive of Interim Relief Requested) |
|---|---|---|
| Unpaid Compensation[4] | $1,900,000 | $1,900,000 |
| Employee Expenses and Reimbursements | $60,000 | $80,000 |
| Withholding Obligations | $1,850,000 | $2,250,000 |
| Payroll Processing Fees | $10,000 | $10,000 |
| Supplemental Workforce Obligations | $200,000 | $400,000 |
| Employee Bonus Program | $0 | $2,400,000 |
| **Total Employee Compensation Obligations** | **$4,020,000** | **$7,040,000** |

A.    **Unpaid Compensation**

12.    In the ordinary course of business, the Debtors incur and pay salaries, wages, and related obligations to Employees.  Salaried Employees are paid on a semi-monthly basis and Hourly Employees are paid on a weekly basis.  The Debtors' payroll obligations generally include wages, salaries, incentive payments, relocation costs, taxes, and payments on account of unused vacation and other paid time off ("**PTO**").  On average, the Debtors' gross payroll is approximately $8.2 million per month.  The Debtors' payroll is predominately paid by direct deposit through electronic transfers of funds to the Employees' bank accounts or, in some instances, by check.

13.    As of the Petition Date, the Debtors estimate owing approximately $1.9 million of accrued and unpaid prepetition wages and salaries owed to Employees, exclusive of Employee payroll taxes and Deductions related to benefits plans (the "**Unpaid Compensation**"),

---

[4]    Withholdings and Deductions (each as defined below) amounts are not included in Unpaid Compensation amounts (which are exclusive of any applicable taxes) and will be withheld and remitted accordingly upon the grant of the relief requested herein by the Court.

approximately $1.9 million of which the Debtors estimate will come due within thirty (30) days of the Petition Date (the "**Interim Period**").  The Debtors do not believe that any Employees are owed Unpaid Compensation in an amount exceeding the $15,150 cap imposed by section 507(a)(4) of the Bankruptcy Code on account of wages (the "**Wage Cap**").[5]  If, however, it is determined that any Employee is owed Unpaid Compensation in excess of the Wage Cap, the Debtors will not exceed such statutory cap.

B.     **Employee Expenses and Reimbursements**

14.     In the ordinary course of business, the Debtors pay or reimburse Employees for reasonable and customary expenses incurred in the scope of their employment, including pursuant to the Auto Benefit Program (each, as defined below, and collectively, the "**Employee Expenses and Reimbursements**").  Employee Expenses and Reimbursements generally include actual costs of travel, meals, lodging, and other expenses directly related to accomplishing business travel objectives.  The majority of Employees seeking reimbursement of business-related expenses are required to submit reimbursement requests through the Debtors' financial management and human capital management software, SAP Concur ("**Concur**").  The Debtors review, audit, and approve all such reimbursable expenses before reimbursing an Employee or paying a vendor directly for any reimbursable expense.

15.     At any given time, the Debtors may have outstanding obligations to certain Employees for Employee Expenses and Reimbursements, the majority of which are incurred related to travel, including for rooms, meals, and incidentals such as gas expenses, and other

---

[5]     The Debtors estimate that certain Employees may exceed the $15,150 cap imposed by section 507(a)(4) of the Bankruptcy Code when payments on account of unused vacation and other paid time off are included in the section 507(a)(4) cap calculation in addition to wages and salary.  However, the Debtors are not seeking authority to pay any such Employee Leave Benefits (as defined below) above such statutory Wage Cap, unless required by applicable law.

6

ordinary business expenses including ongoing education and skill related trainings.  Given the irregular nature of requests for Employee Expenses and Reimbursements, it is difficult for the Debtors to determine the amount of unpaid Employee Expenses and Reimbursements at any given time.  As of the Petition Date, the Debtors estimate that approximately $80,000 in prepetition Employee Expenses and Reimbursements is owed to their Employees.  Pursuant to this Motion, the Debtors seek authority to reimburse all outstanding prepetition Employee Expenses and Reimbursements owed to Employees.

16.    <u>Auto Benefit Program</u>.  The Debtors provide vehicles to Employees for ordinary course business activities and to visit individual customer sites (the "**Auto Benefit Program**").  The Debtors allow Employees to utilize the Auto Benefit Program in two (2) ways. First, each operational facility has a fleet of vehicles that are used by management during the normal course of operations.  Such vehicles do not leave the facility, except for routine business activities, and are provided by the Debtors to ensure that management can adequately operate the facility.  Second, General Managers at the Debtors' individual sites, Employees with regional responsibilities, and the Debtors' sales representatives may operate vehicles within ordinary course business operations, and are also permitted to take such vehicles home to be used outside of ordinary course business operations (the "**Take-Home Program**").  In each instance, Employee Expenses and Reimbursements related to the Auto Benefit Program are paid predominately through the corporate credit card program for certain managers at various operating locations (the "**Corporate Credit Card Program**"), either issued by the Debtors or in the individual Employee's name and, in some instances, through payroll.

17.    As of the Petition Date, there are a total of 102 vehicles in the Auto Benefit Program.  Employees utilizing the Take-Home Program are required to enter their "personal" miles

used directly to the applicable leasing company on a monthly basis, which is used in complying with IRS reporting requirements.  All other expenses are paid through the Corporate Credit Card Program issued to Employees or through the applicable leasing company's maintenance program and, in some instances, through payroll.  Employees are not allowed to use their personal credit cards for any expenses related to the Auto Benefit Program.

18.    As of the Petition Date, the Debtors estimate that no amounts are owed on account of the Auto Benefit Program.  Pursuant to this Motion, the Debtors seek authority to continue the Auto Benefit Program in the ordinary course of business and to pay any outstanding prepetition amounts in connection therewith.

## C.    Withholding Obligations

19.    For each applicable pay period, the Debtors deduct certain amounts from each Employee's gross pay, including 401(k) contributions and other pre- and after-tax deductions payable pursuant to certain of the employee benefit plans discussed herein, and where applicable, court-ordered garnishments, including child support and the like (collectively, the "**Deductions**").[6]  On average, the Debtors make approximately $770,000 per month in payroll Deductions and remit such amounts to the appropriate third-party recipients.  As of the Petition Date, the Debtors estimate they will owe, or be required to remit, approximately $350,000 on account of prepetition Deductions.

20.    In addition to the Deductions, federal and state laws require the Debtors to withhold amounts from an Employee's gross pay related to federal, state, and local income taxes, including Social Security and Medicare taxes, for remittance to the appropriate federal, state, or

---

[6]    Certain of the Deductions, particularly with respect to the Health Benefits Plans and FSAs (each, as defined below), are discussed further below in connection with the Employee Benefit Obligations.

local taxing authority (collectively, the "**Withholdings**").  The Debtors must then match, from their own funds, amounts for Social Security and Medicare taxes and pay additional amounts for federal and state unemployment insurance based on a percentage of gross payroll (collectively, the "**Employer Payroll Taxes**," and together with the Withholdings, the "**Payroll Taxes**," and together with the Withholdings, the "**Withholding Obligations**").   In the aggregate, the Withholding Obligations total approximately $2.1 million per month.[7]  As of the Petition Date, the Debtors estimate they will owe, or be required to remit, approximately $1.9 million on account of prepetition Withholding Obligations.[8]

21.    The Debtors may not have forwarded certain of the Withholding Obligations and Deductions to the appropriate third-party recipients prior to the Petition Date.  To the extent any prepetition Withholding Obligations and Deductions have not been forwarded to the appropriate third-party recipients as of the Petition Date, the Debtors seek authority to forward all such amounts.  The Debtors seek further authority to continue to forward Withholding Obligations and Deductions to the applicable third-party recipients on a postpetition basis, whether or not such amounts relate to the prepetition period, in the ordinary course of business and consistent with past practice.

---

[7]    The Debtors have separately sought authority to pay workers' compensation claims through the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 362(d), and 363(b) and Fed. R. Bankr. P. 4001, 6003, and 6004 for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Their Insurance Programs and Surety Bond Program and (B) Pay all Obligations with Respect Thereto, and (II) Granting Related Relief*, filed contemporaneously herewith.

[8]    The CARES Act (CARES Act Section 2302) allowed all employers to defer payment of employer Social Security taxes that are otherwise owed for wage payments made after March 27, 2020, through the end of the calendar year.  Accordingly, as of the Petition Date, the Debtors estimate they will owe, or be required to remit, approximately $1.1 million on account of the Debtors' share of deferred Social Security tax.

D.      **Payroll Processing Fees**

22.      The Debtors utilize Kelly & Associates Insurance Group, Inc. ("**Kelly Benefits**") to assist with administering payroll and several other Employee-related benefits programs.  Kelly Benefits provides the Debtors' processing system, facilitates payroll and direct deposit, ensures proper tax and benefits withholdings are made, and manages employee benefits.  On average, the Debtors pay Kelly Benefits monthly administration fees (the "**Payroll Processing Fees**") totaling approximately $17,000 per month, including reimbursements for any amounts paid by Kelly Benefits on account of payroll licenses and fees.  As of the Petition Date, the Debtors estimate that they owe Kelly Benefits approximately $10,000 in Payroll Processing Fees, all of which the Debtors estimate will come due within the Interim Period.  The Debtors seek authority to pay all such Payroll Processing Fees as they come due in the ordinary course of business.

E.      **Supplemental Workforce Obligations**

23.      In addition to their Employees, the Debtors rely on services provided by certain vendors, including labor, contractors, consultants, and tax administrators related to the Debtors' operations and administrative staff on a temporary basis.  The Debtors retain the services of the Supplemental Workforce from third-party vendors, and remit compensation for the Supplemental Workforce to the vendors on a regular basis through the Debtors' accounts payable system.  The Debtors pay approximately $330,000 per month on account of the Supplemental Workforce.

24.      As of the Petition Date, the Debtors estimate owing approximately $400,000 in the aggregate for unpaid prepetition services provided by the Supplemental Workforce, approximately $200,000 of which the Debtors estimate will come due within the Interim Period.  If these amounts go unpaid, the Supplemental Workforce may stop providing their services to the Debtors.  Accordingly, the Debtors request authority to continue to retain and pay

10

the Supplemental Workforce as they become due in the ordinary course of business.  For the avoidance of doubt, the Debtors do not seek authority to pay any amounts of the Supplemental Workforce in excess of the statutory cap of $15,150 per person imposed by section 507(a)(4) of the Bankruptcy Code.

F.    **Employee Bonus Program**

25.    As part of the Employee Compensation Obligations, the Debtors also maintain, in the ordinary course, certain incentive and other bonus programs to motivate and reward their Employees (collectively, the "**Employee Bonus Program**").  The Employee Bonus Program is a performance-based incentive program, which Employees are allocated a bonus target percentage based on the Employee's salary and position.  Such bonus target percentage can be modified based upon the Employee's performance weighed against certain factors, including certain earnings targets and safety results of the Employee's location and Phoenix Topco.

26.    As of the Petition Date, the Debtors estimate that approximately $2.4 million has accrued on account of the Employee Bonus Program that may become due and owing in the ordinary course.  The Debtors are not requesting authority to pay any amounts owed on account of the Employee Bonus Program on an interim basis but are seeking authority to do so following approval of this Motion on a final basis, solely to the extent eligible Employees' compensation has not been superseded by the KERP (as defined below).[9]

G.    **Key Employee Retention Plan**

27.    In August 2022, to retain and incentivize key employees during the Debtors' exploration of a restructuring transaction, the Debtors adopted and implemented a key employee

---

[9]    In addition, the Debtors are not seeking to make any payments on account of Employee Bonus Programs to any "insider," as such term is defined in section 101(31) of the Bankruptcy Code (an "**Insider**").  The Debtors reserve all rights with respect to the classification of all persons as "Insiders" and "non-Insiders."

11

retention program (the "**KERP**"), with input from an independent compensation consultant and approval of the Special Committee of the Board of Managers of Phoenix Topco (the "**Board**," and such committee, the "**Special Committee**"), for approximately thirty-four (34) critical non-executive Employees (the "**Key Employees**") and five (5) critical executive Employees. The KERP replaced all existing incentive compensation that the Key Employees were otherwise entitled to receive and all bonuses for 2022.

28.     An aggregate of approximately $580,000 remains payable to 32 non-executive Key Employees following the commencement of these chapter 11 cases. By this Motion, the Debtors do not seek authority to make any payments under the KERP, and will do so by separate motion to the extent necessary.

<div align="center">

**Employee Benefit Obligations**

</div>

29.     In the ordinary course of business, the Debtors make various benefit plans available to their non-union Employees and make contributions to certain benefits funds on behalf of the Union Employees. These benefit plans and contributions fall within the following categories: (i) PTO, including personal time off, sick leave, parental leave, and holidays (collectively, the "**Employee Leave Benefits**"); (ii) medical, dental, vision, prescription drug, life insurance, accidental death and dismemberment ("**AD&D**") insurance, short and long term disability insurance, flexible spending accounts, and certain support services (collectively, the "**Health and Welfare Benefits**"); (iii) retirement savings plans, including a 401(k) plan and a Supplemental Executive Retirement Plan (the "**Retirement Benefits**"); (iv) Non-Insider Severance Program (as defined below); (v) contributions to Union Employees' welfare, medical, and retirement funds; and (vi) certain other benefits (each of (i)–(vi), an "**Employee Benefit**," and collectively, the "**Employee Benefit Obligations**," and together with the Employee Compensation Obligations, the "**Employee Obligations**"). Although the Debtors maintain most Employee

<div align="center">12</div>

Benefit plans themselves, some of the Employee Benefit plans, such as certain of the Health and Welfare Benefits, are maintained by third parties.

30.     The outstanding prepetition Employee Benefit Obligations are summarized in the chart below:

| Prepetition Obligations | Interim Relief Requested (Due within 30 Days of Petition Date) | Total Relief Requested (inclusive of Interim Relief Requested) |
|---|---|---|
| Health and Welfare Benefits | $1,303,000 | $1,703,000 |
| Retirement Benefits | $400,000 | $400,000 |
| Union Obligations | $2,700,000 | $2,700,000 |
| **Total Employee Benefit Obligations[10]** | **$4,403,000** | **$4,803,000** |

## A.     Employee Leave Benefits

31.     The Debtors provide and administer the Employee Leave Benefits, which include personal time off, employee and family sick leave, parental leave, federal holidays, bereavement leave, jury duty, time off to vote, and military service.  Eligible Employees accrue PTO and (a) in the event that available PTO is not used by the end of the calendar year, Employees forfeit the unused time and (b) upon termination, Employees are paid for unused vacation time that has been accrued through the last day of work.  Depending on the site and Union Agreement, Employees may either receive a lump sum of money for accrued PTO, or receive payment when they take time off.  The Debtors request authority to continue providing the Employee Leave Benefits in the ordinary course of business and to pay any prepetition amounts that may be owing with respect to the Employee Leave Benefits.  Out of an abundance of caution, the Debtors request

---

[10]    Total Employee Benefit Obligations excludes any future Employee Leave Benefits accrued and unpaid upon a termination of an Employee's employment.

authority, but not direction, to pay Employees any accrued and unpaid Employee Leave Benefits upon a termination of employment in accordance with the Debtors' business practices, subject to the Wage Cap, unless otherwise required by applicable law.

**B.      Health and Welfare Benefits**

32.      The Debtors sponsor several Health and Welfare Benefits plans to provide benefits to eligible Employees.  As discussed further below, the Health and Welfare Benefits include (a) medical, dental, vision, and prescription drug insurance; (b) life insurance and AD&D insurance; (c) short and long term disability insurance; (d) flexible spending accounts; and (e) certain support services.

33.      <u>Medical, Vision, Dental, and Prescription Drug Benefits</u>.  The Debtors offer the following health benefits plans (each, a "**Health Benefits Plan**") to their Employees, which are, for the most part, self-insured by the Debtors, but administered through various insurers to Employees and their families:

| **Type of Benefits** | **Benefits Provider** |
|---|---|
| Medical | Independence Administrators |
| Dental | Metlife |
| Vision | VSP |
| Prescription Drug | OptumRx |
| COBRA | Independence Administrators |

34.      Employees' medical, dental, vision, and prescription drug benefits are funded, in part, through Deductions from Employees' gross pay.  The benefit providers listed above (each, a "**Health Benefits Provider**") are preferred provider organizations that offer improved benefits when using a doctor, dentist, or other healthcare provider within a network of preferred providers.  The Debtors self-fund their medical and prescription drug plans and utilize

14

the respective Health Benefits Providers to administer such plans. In the ordinary course of business, the Debtors pay fees to the Health Benefits Providers for the administrative services that the Health Benefits Providers provide to Employees who subscribe to the Health Benefits Plans and for the stop-loss policy discussed below (the "**Health Benefits Fees**"). The Health Benefits Fees for each Health Benefits Provider vary based upon the number of Employees enrolled in the respective plans and as the Health Benefits Provider changes its prices in the ordinary course.

35. Under the Consolidated Omnibus Budget Reconciliation Act ("**COBRA**"), Employees who are terminated, or covered family members who become ineligible for coverage due to divorce or age, have the right to continue health benefits for a limited period of time and under certain circumstances. The Debtors provide COBRA benefits as required by law. As of the Petition Date, six (6) of the Debtors' former employees are receiving claim payments on account of their participation in COBRA. The Debtors' COBRA program is administered by Kelly Benefits. In exchange for administration of the Debtors' COBRA program, Kelly Benefits is entitled to an annual administration fee in the amount of approximately $1.75 per eligible Employee participating in COBRA per month.

36. On average, the Debtors' aggregate portion of premiums and administrative fees owed to the Health Benefits Providers on account of the Health Benefits Plans is approximately $200,000 per month. As of the Petition Date, no amounts in premiums and administrative fees are owed in connection with the Health Benefits Plans. The Debtors request authority to continue paying such premiums and administrative fees as they come due in the ordinary course of business.

37. Under the Health Benefits Plans, excluding dental and vision which are fully funded by the Employees, the Health Benefits Providers pay the covered Employee

healthcare costs directly to the healthcare provider (other than any required deductible or similar payment) and then seek reimbursement from the Debtors (the "**Health Benefits Claims**"). On a weekly basis, the Debtors pay the Health Benefits Claims submitted to them by the Health Benefits Providers, but providers do not always timely submit claims. On average, the amount of Health Benefits Claims is $840,000 per month, with high variability depending on the number, timeliness, and type of Health Benefits Claims submitted. As of the Petition Date, the Debtors estimate that approximately $1.7 million of Health Benefits Claims are outstanding, including unreimbursed amounts the Health Benefits Providers already paid to the healthcare providers, as well as amounts for medical services provided to Employees but not yet paid by the Health Benefits Providers to the healthcare providers. The Debtors seek authority to pay all such Health Benefits Claims as they come due in the ordinary course of business.

38. The Debtors maintain a stop-loss policy through HM Life Insurance Company ("**HM**") to protect themselves against exposure to large Health Benefits Claims. Under the stop-loss policy, if the Debtors pay HM in excess of $275,000 for Health Benefits Claims paid throughout the year, the Debtors can make a claim against the stop-loss policy for the amount of the Health Benefits Claims in excess of $275,000. The Debtors pay approximately $1.4 million annually in premiums to HM for the stop-loss policy. As of the Petition Date, the Debtors estimate that no amounts are owed on account of the stop-loss policy. The Debtors seek authority to pay all such stop-loss premiums as they come due in the ordinary course of business.

39. The chart below outlines the available welfare benefit programs available to Employees, including those the Debtors pay directly (each, a "**Benefit Provided by Debtors**") and voluntary programs the Debtors fund through payroll deductions from eligible, participating Employees (each, a "**Voluntary Benefit**"):

| Type of Benefit[11] | Provided by Debtors/Voluntary |
|---|---|
| Flexible Spending Accounts | Voluntary Benefit |
| Voluntary Benefit Plans | Voluntary Benefit |
| Basic Life Insurance | Benefit Provided by Debtors |
| Voluntary AD&D | Voluntary Benefit |
| Spousal and Dependent AD&D | Voluntary Benefit |
| Short-Term Disability Insurance | Benefit Provided by Debtors (for salaried Employees) / Voluntary Benefit (for hourly Employees) |
| Long-Term Disability Insurance | Benefit Provided by Debtors (for salaried Employees) / Voluntary Benefit (for hourly Employees) |
| Additional Benefits | Varies Depending on Benefit |

40.    Flexible Spending Accounts.  The Debtors provide the opportunity for eligible Employees to enroll in certain flexible spending accounts (each an "**FSA**," and together, the "**FSAs**").    Under the terms of the FSAs, during the annual enrollment period, eligible Employees may choose to designate an amount of their pre-tax wages or salary towards the FSAs, which they can then use for eligible health care expenses incurred.  Discovery Benefits, LLC, a WEX Company ("**Discovery Benefits**"), administers the FSAs.  As of the Petition Date, the Debtors estimate owing approximately $3,000 under the FSA program.

41.    Voluntary Benefit Plans.  Eligible Employees may also participate in certain voluntary benefit plans, including hospital indemnity, accident insurance, and critical illness insurance provided by Aflac (collectively, the "**Voluntary Benefit Plans**").  The Debtors seek authority to remit all such Voluntary Benefit Plan expenses as they come due in the ordinary course

---

[11]    On average, the Debtors' aggregate portion of premiums and fees owed to the welfare benefit programs provided herein is approximately $100,000 per month.  As of the Petition Date, no amounts in premiums and fees are owed in connection with the welfare benefit programs.  The Debtors request authority to continue paying such premiums and fees as they come due in the ordinary course of business.

of business.  As of the Petition Date, no amounts are owed on account of the Voluntary Benefit Plans.

42.  <u>Life Insurance, AD&D Insurance, and Disability Plans</u>.  The Debtors offer life insurance (the "**Life Insurance Plans**"), AD&D insurance (the "**AD&D Insurance Plans**"), and short-term and long-term disability insurance (the "**Disability Plans**") to Employees through Mutual of Omaha.  As of the Petition Date, no amounts are owed on account of Life Insurance Plans, AD&D Insurance Plans, and Disability Plans.

43.  <u>Additional Benefits</u>.  In addition to the plans described above, the Debtors offer certain additional benefits to their Employees.  Specifically, the Debtors offer all Employees access to health advocacy, work/life, and privacy/ID protection programs (the "**Employee Assistance Program**"), which is designed to assist Employees with education and protection.  As of the Petition Date, no amounts are owed on account of the Employee Assistance Program.

C.  **Retirement Benefits**

44.  The Debtors maintain a defined contribution plan meeting the requirements of section 401(k) of the Internal Revenue Code (the "**401(k) Savings Plan**"), which is managed by The Vanguard Group, Inc. ("**Vanguard**") for the benefit of all eligible Employees.  Upon obtaining employment, each eligible Employee is automatically enrolled in the 401(k) Savings Plan, with the option to opt-out at any time.  As part of the 401(k) Savings Plan, the Debtors match a percentage of an Employee's 401(k) contributions (the "**401(k) Match**").  As of the Petition Date, the Debtors estimate owing approximately $400,000 on account of the 401(k) Match, which includes *de minimis* administration fees associated therewith.  Pursuant to this Motion, the Debtors seek authority to pay such 401(k) Match obligations as they come due in the ordinary course of business.

18

45.    <u>Supplemental Executive Retirement Plan</u>.   In their normal course of operations, the Debtors fund benefits payable under Phoenix Topco's Supplemental Executive Retirement Plan (the "**SERP**"), for certain current and former executive Employees, which amounts are fully vested.  The SERP provides future cash payments for ten (10) years upon an Employee's retirement and the payment amount varies by participant.  As of July 31, 2022, the projected benefit obligation of the SERP was approximately $4.4 million.  As of July 31, 2022, Phoenix Topco holds assets of approximately $8.4 million in the cash surrender value of life insurance contracts in a Rabbi trust to settle the obligation of the SERP.  Phoenix Topco records the projected benefit obligations and investments in the cash surrender value of life insurance contracts separately on its consolidated balance sheets.

46.    As of the Petition Date, the Debtors estimate owing approximately $4.4 million on account of the SERP.  By this Motion, the Debtors do not seek authority to make any payments under the SERP.

**D.     Non-Insider Severance Program**

47.    In their normal course of operations, the Debtors have an informal practice of paying severance to certain eligible Employees (the "**Non-Insider Severance Program**").  By this Motion, the Debtors do not seek authority to make severance payments to Insiders.  Pursuant to the Non-Insider Severance Program, upon employment termination in covered circumstances, including performance-related termination or position elimination, the Debtors have historically provided Employees with a severance payment (a) based on the Employee's length of service with the Debtors or (b) determined pursuant to a pre-negotiated agreement between the Employee and the Debtors.  Payments under the Non-Insider Severance Program are not due and payable until employment termination.  As of the Petition Date, the Debtors estimate that no amounts are owed on account of the Non-Insider Severance Program.  By this Motion, following approval on a final

19

basis, the Debtors seek authority to continue the Non-Insider Severance Program and honor obligations under the Non-Insider Severance Program that arise after the Petition Date for non-Insider Employees.

48.    The Debtors believe that it is important to reassure their Employees that the Debtors intend to honor their obligations to Employees during these chapter 11 cases—both during and after their tenure with the Debtors.  Although payments under the Non-Insider Severance Program are not due and payable until an Employee is terminated, having such severance programs in place will assuage Employees and motivate them to continue working for the Debtors during the course of these chapter 11 cases, which is required to achieve the Debtors' chapter 11 objectives.  If Employees were to leave the Debtors' service during these chapter 11 cases—an outcome that would become increasingly likely if the Employees' benefits both during and after their tenure in the Debtors' service become threatened—the Debtors' business would suffer materially.

**E.    Union Employees**

49.    In the ordinary course of business, Phoenix Topco makes contributions to Union Employees' welfare, medical, and retirement funds on terms and conditions set forth in the Union Agreements.  In addition, Phoenix Topco participates in the Local 150 Apprenticeship and Training Program whereby Phoenix Topco makes contributions for each hour the applicable Union Employee works.

50.    As of the Petition Date, the Debtors estimate owing approximately $2.7 million on account of prepetition Union Obligations, all of which the Debtors estimate will come due within the Interim Period.  By this Motion, the Debtors seek authority to pay all such Union Obligations as they become due in the ordinary course of business.

20

## Relief Requested Should Be Granted

A.    **Payment of Employee Obligations is Warranted Under Section 363(b) and Doctrine of Necessity**

51.    The Court may grant the relief requested herein pursuant to sections 363 and 105(a) of the Bankruptcy Code.

52.    Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]"  11 U.S.C. § 363(b)(1).  To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions."  *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).  Moreover, if "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

53.    In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title." 11 U.S.C. § 105(a); *see In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (applying section 105(a) to justify an order authorizing the payment of certain prepetition wages, salaries, medical benefits, and business expense claims to debtor's employees). Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee."). Courts consistently have permitted payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g., In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus.").

54.     The Court may also authorize the payment of prepetition claims in appropriate circumstances under section 105(a) of the Bankruptcy Code and the doctrine of necessity when such payment is essential to the continued operation of a debtor's business. *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of Bankruptcy Code provides a statutory basis for payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is

necessary for the debtor's survival during chapter 11."); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is standard for enabling a court to authorize payment of prepetition claims prior to confirmation of a reorganization plan).

55.     This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See, e.g.*, *Just for Feet*, 242 B.R. at 824-25 (holding that section 105(a) of Bankruptcy Code provides statutory basis for payment of prepetition claims under the doctrine of necessity particularly when such payment is necessary for the debtor's survival during chapter 11); *Columbia Gas Sys., Inc.*, 171 B.R. at 191–92 (confirming that doctrine of necessity is standard for enabling a court to authorize payment of prepetition claims prior to confirmation of a reorganization plan).

56.     The relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is justified under sections 105(a) and 363(b) of the Bankruptcy Code.  Authorizing the Debtors to pay prepetition wages, employee benefits, and similar items will benefit the Debtors' estates, and their creditors by allowing the Debtors' business operations to continue safely and reliably without interruption.   Indeed, without the relief requested herein being granted, the Debtors are at the risk of significant Employee attrition, as the Employees may seek alternative opportunities, perhaps with the Debtors' competitors.  Employee attrition, some of which already occurred prior to the chapter 11 filing, would cause the Debtors to incur additional expenses to find appropriate and experienced replacements, severely disrupting the Debtors' operations at a critical juncture.   Additionally, the loss of valuable Employees, who are the lifeblood of the

23

Debtors' operations, would deplete the Debtors' workforce, thereby hindering the Debtors' ability to meet their customer obligations and likely diminishing the Debtors' ability to carry out their chapter 11 strategy and successfully reorganize.

57.    In addition to Employee attrition, failure to satisfy certain prepetition obligations will likely jeopardize Employee morale and loyalty at a time when Employee support is critical to the Debtors' businesses.  The majority of the Employees rely exclusively on their compensation, benefits and reimbursement of expenses to satisfy their daily living expenses. These Employees will be exposed to significant financial difficulties and other distractions if the Debtors are not permitted to honor their obligations for unpaid compensation, benefits, and reimbursable expenses.  Similarly, if the Court does not authorize the Debtors to honor their various obligations under the Health Benefits Plan, many Employees will lose access to health coverage at a time when the Debtors need their Employees to perform their jobs at peak efficiency. The loss in morale and potential distraction of Employees worrying about paying their bills and their healthcare costs will harm the Debtors' ability to operate and serve customers at their standard high levels, causing an erosion in the Debtors' value.

58.    Similarly, the Supplemental Workforce is an important component of the Debtors' operations, and ensures that key operational initiatives that are critical to the Debtors' reorganizational prospects continue.  The Supplemental Workforce consists of individuals that provide operational support on an *ad hoc* basis.  Failure to timely pay the Supplemental Workforce would endanger the Debtors' prospects of a successful reorganization and could cause widespread negative effects throughout the Debtors' businesses.

59.    The relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors'

estates, and is justified under sections 363(b) and 105(a) of the Bankruptcy Code.  Authorizing the

Debtors to pay or honor the Employee Obligations will benefit the Debtors' estates and their

stakeholders by allowing the Debtors' business operations to continue without interruption.

**B.      Payment of Employee Obligations Would Not Prejudice Parties in Interest**

60.     The Debtors believe that the vast majority of the prepetition Employee

Obligations constitute priority claims under sections 507(a)(4) or (5) of the Bankruptcy Code.  As

priority claims, the Employee Obligations are entitled to payment in full before any general

unsecured claims asserted against the Debtors can be satisfied.  Thus, the relief requested largely

affects only the timing of the payment of the priority prepetition Employee Obligations and should

not prejudice the rights of general unsecured creditors or any other party in interest.

**C.      Payment of Certain Employee Obligations Is Required by Law**

61.     The Debtors also seek authority to remit certain Withholding Obligations to

the appropriate entities.    These amounts principally represent Employee earnings that

governments, Employees, and judicial authorities have designated for deduction from Employees'

paychecks.    Indeed, certain Deductions, including contributions to the Employee Benefit

Obligations and child support and alimony payments, are not property of the Debtors' estates

because they have been withheld from Employees' paychecks on another party's behalf.  *See* 11

U.S.C. § 541(b); *see Begier v. I.R.S.*, 496 U.S. 53, 66–67 (1990) (concluding that withholding

taxes are property held by a debtor in trust for another and are therefore not property of a debtor's

estate).  Further, federal and state laws require the Debtors and their officers to make certain tax

payments that have been withheld from their Employees' paychecks.  *See* 26 U.S.C. §§ 6672 and

7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (finding

that state law requiring a corporate debtor to withhold city income tax from its employees' wages

created a trust relationship between debtor and the city for payment of withheld income taxes);

*DuCharmes & Co. v. State of Mich.* (*In re DuCharmes & Co.*), 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Given that certain Withholding Obligations are not property of the Debtors' estates, the Debtors request that the Court authorize them to transmit the Withholding Obligations to the proper parties in the ordinary course of business.

**D. The Debtors Do Not Seek to Make Severance Payments Outside the Scope of Section 502(b)(7) and Section 503(c) of the Bankruptcy Code, as Applicable**

62. By this Motion, the Debtors seek authority to continue the Non-Insider Severance Program and honor severance obligations that arise after the Petition Date exclusively for non-Insider Employees.

63. Out of an abundance of caution and in an effort to provide comfort to the Employees given the uncertainty attendant to a company operating in chapter 11, the Debtors request authority to continue the Non-Insider Severance Program with respect to non-Insider Employees terminated postpetition in the ordinary course of business. For the avoidance of doubt, the Debtors are not requesting authority to and will not make any payments that fall outside the limitations of section 503(c), to the extent applicable.

64. Moreover, the Non-Insider Severance Program does not implicate section 503(c)(3) because it is within the ordinary course of the Debtors' business. 11 U.S.C. § 503(c)(3) (prohibiting certain payments "outside the ordinary course of business"). If section 503(c) is not implicated, the Court may grant the requested relief if it finds that a non-insider severance program satisfies the requirements of section 363(b) of the Bankruptcy Code. *See In re Mesa Air Grp., Inc.*, No. 10-10018 (MG), 2010 WL 3810899, at *3 (Bankr. S.D.N.Y. Sept. 24, 2010) (noting that compensation plans within the ordinary course of business are governed by section 363 of the Bankruptcy Code, not section 503(c)). For the reasons stated herein, discretion to continue the

Non-Insider Severance Plan—similar to all of the relief sought in this Motion—is critical and necessary to assuage Employee fears and motivate them to achieve the Debtors' chapter 11 objectives. Accordingly, the requested relief should be approved.

65. For the foregoing reasons, payment of the prepetition Employee Compensation Obligations and Employee Benefit Obligations is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these cases. Accordingly, the Court should authorize the relief requested herein.

### Applicable Financial Institutions
### Should Be Authorized to Receive, Process, Honor, and Pay
### Checks Issued and Transfers Requested to Pay Employee Obligations

66. The Debtors further request that this Court authorize applicable financial institutions (the "**Banks**") to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested by or on behalf of the Debtors relating to the Employee Obligations, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payment. The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of Employee Obligations. Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently. Any such financial institution may rely on the representations of such Debtors as to which checks are issued or wire transfers are made (or, as applicable, requested to be issued or made) and authorized to be paid in accordance with this Motion without any duty of further inquiry. The Debtors also seek authority, but not direction, to issue new postpetition checks or effect new postpetition electronic funds transfers in replacement of any checks or funds transfer requests on account of Employee Obligations dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

## Bankruptcy Rule 6003(b) Has Been Satisfied

67.    Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" prior to 21 days after the Petition Date.  Fed. R. Bankr. P. 6003(b).  As explained above and in the Richard Declaration, the Debtors would suffer immediate and irreparable harm if the relief sought herein is not promptly granted.  Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

## Request for Bankruptcy Rule 6004(a) and (h) Waivers

68.    To implement the foregoing successfully, the Debtors seek waivers of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above and in the Richard Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## Reservation of Rights

69.    Nothing contained herein is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors or any liens satisfied pursuant to this Motion, (b) an agreement or obligation to pay any claims, (c) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (d) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, (e) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (f) an approval,

assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

**<u>Notice</u>**

70.    Notice of this Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware (Attn: Linda Casey, Esq.); (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the District of Delaware; (e) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166 (Attn: Scott Greenberg, Esq., Steven A. Domanowski, Esq., Matthew Williams, Esq., and Jason Goldstein, Esq.), as counsel to the Ad Hoc Group; (f) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899 (Attn: Laura Davis Jones, Esq.), as co-counsel to the Ad Hoc Group; (g) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Ira Dizengoff, Esq. and James Savin, Esq.), as counsel to Apollo Global Management, Inc.; (h) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Brian Resnick, Esq. and Jonah A. Peppiatt, Esq.), as counsel to the First Lien Agent; (i) the Banks; (j) Concur; (k) Kelly Benefits; (l) the Health Benefits Providers: (m) HM; (n) Discovery Benefits; (o) Mutual of Omaha; (p) Vanguard; and (q) any other party entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**").  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).

71.    The Debtors respectfully submit that no further notice is required.  No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  September 27, 2022
        Wilmington, Delaware

                        */s/ Zachary I. Shapiro*
                        RICHARDS, LAYTON & FINGER, P.A.
                        Daniel J. DeFranceschi (No. 2732)
                        Zachary I. Shapiro (No. 5103)
                        Matthew P. Milana (No. 6681)
                        One Rodney Square
                        920 North King Street
                        Wilmington, Delaware 19801
                        Telephone:    (302) 651-7700

                        -and-

                        WEIL, GOTSHAL & MANGES LLP
                        Ray C. Schrock, P.C. (*pro hac vice* pending)
                        Jeffrey D. Saferstein (*pro hac vice* pending)
                        Garrett A. Fail (*pro hac vice* pending)
                        767 Fifth Avenue
                        New York, New York  10153
                        Telephone:  (212) 310-8000
                        Facsimile: (212) 310-8007

                        *Proposed Attorneys for Debtors*
                        *and Debtors in Possession*

**Exhibit A**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- x
                                     :

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **PHOENIX SERVICES TOPCO, LLC,** *et al.*, | : | **Case No. 22–10906 (      )** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------- x    Re:  Docket No. ____

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363(b),
AND 507(a) AND FED. R. BANKR. P. 6003 AND 6004 (I) AUTHORIZING
DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, EMPLOYEE
BENEFITS, AND OTHER COMPENSATION, (B) MAINTAIN EMPLOYEE
BENEFIT PROGRAMS AND PAY RELATED OBLIGATIONS, AND (C) PAY
PREPETITION EMPLOYEE EXPENSES, AND (II) GRANTING RELATED RELIEF**

Upon the motion, dated September 27, 2022 (the "**Motion**")[2] of Phoenix Services

Topco LLC and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and

debtors in possession (collectively, the "**Debtors**"), for entry of interim and final orders, pursuant

to sections 105(a), 363(b), and 507(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and

6004, (a) authorizing the Debtors to (i) pay the Employee Compensation Obligations and the

Employee Benefit Obligations, related expenses, and fees and costs attendant to the foregoing,

including amounts owed to third-party service providers and administrators and (ii) maintain,

continue to honor, and pay amounts with respect to the Debtors' business practices, programs, and

policies for their employees as such were in effect as of the commencement of these chapter 11

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Phoenix Services Topco, LLC (4517); Phoenix Services Parent, LLC (8023); Phoenix Services Holdings Corp. (1330); Phoenix Services International LLC (4693); Metal Services LLC (8793); Terracentric Materials LLC (0673); Cool Springs LLC (8687); Metal Services Investment LLC (2924); and Phoenix Receivables, LLC (not applicable).  The Debtors' mailing address is 4 Radnor Corporate Center, Suite 520, 100 Matsonford Road, Radnor, Pennsylvania 19087.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

cases and as such may be modified or supplemented from time to time in the ordinary course of

business, and (b) granting related relief, all as more fully set forth in the Motion; and this Court

having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C.

§§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and

the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Motion having been provided to the Notice Parties; and such notice having been adequate and

appropriate under the circumstances, and it appearing that no other or further notice need be

provided; and this Court having reviewed the Motion; and this Court having held a hearing to

consider the relief requested in the Motion; and upon the Richard Declaration and the record of

the hearing; and this Court having determined that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and it appearing that the relief requested

in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates

as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates,

creditors, and all parties in interest; and upon all of the proceedings had before this Court and after

due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a),

363(b), and 507(a) of the Bankruptcy Code, to (a) pay Employee Obligations and (b) maintain,

honor, and continue the Employee Benefits in the ordinary course of business and consistent with

the Debtors' prepetition practices, in an aggregate amount not to exceed $8.4 million:

2

| Prepetition Obligations | Interim Relief Requested (Due within 30 Days of Petition Date) |
|---|---|
| Unpaid Compensation | $1,900,000 |
| Employee Expenses and Reimbursements | $60,000 |
| Withholding Obligations | $1,850,000 |
| Payroll Processing Fees | $10,000 |
| Supplemental Workforce Obligations | $200,000 |
| Employee Bonus Program | $0 |
| Health and Welfare Benefits | $1,303,000 |
| Retirement Benefits | $400,000 |
| Union Obligations | $2,700,000 |
| **Total Employee Obligations** | **$8,423,000** |

3.      Notwithstanding any other provision of this Interim Order, nothing in this Interim Order shall authorize the Debtors to (i) cash out Employee Leave Benefits upon termination of an Employee, unless applicable law requires such payment and (ii) make any payments under (a) the KERP or (b) section 503(c) of the Bankruptcy Code, including, for the avoidance of doubt, payment of any bonus or severance obligations to or on behalf of any "insider" (as defined by section 101(31) of the Bankruptcy Code) or violate or permit a violation of section 503(c) of the Bankruptcy Code.

4.      Notwithstanding any other provision of this Interim Order, pending entry of a final order, nothing in this Interim Order shall authorize the Debtors to make any payments under the Employee Bonus Program or the Non-Insider Severance Program.

5.      Notwithstanding any other provision of this Interim Order, pending entry of a final order, nothing in this Interim Order shall authorize the Debtors to make any payment to, or

3

on behalf of, any Employee, including the Supplemental Workforce or any other independent contractor, on account of wages and other compensation obligations in excess of the statutory caps set forth in sections 507(a)(4) and (5) of the Bankruptcy Code, unless such amounts are above the statutory cap as a result of a cash payment for unpaid Employee Leave Benefits that are required under applicable law.

6.       The Banks are authorized to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds and automated clearing house transfers requested, or to be requested, by the Debtors relating to such obligations, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payments.  The Banks are authorized to accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or electronic funds or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or electronic funds or automated clearing house transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

7.       The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds or automated clearing house transfers, and to replace any prepetition checks or electronic fund or automated clearing house transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Interim Order.

8.       Notwithstanding anything in the Motion or this Interim Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted

herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to any interim and final order(s) of this Court granting the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protections, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "**DIP Order**"), including, without limitation, the Approved DIP Budget (as defined in the DIP Order).

9.      Nothing contained in the Motion or this Interim Order or any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors or any lien satisfied pursuant to the Motion, (b) an agreement or obligation to pay any claims, (c) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (d) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, (e) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (f) an approval, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

10.      The requirements of Bankruptcy Rule 6003(b) have been satisfied.

11.      Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

12.      Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

13.      The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Interim Order.

14.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

15.     The final hearing to consider the relief requested in the Motion shall be held on _____, **2022, at** _____ (Prevailing Eastern Time) and any objections or responses to the Motion shall be filed and served on or prior to _____, **2022 at 4:00 p.m.** (Prevailing Eastern Time).

6

**Exhibit B**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

|  |  |  |
|---|---|---|
| In re | : | **Chapter 11** |
|  | : |  |
| **PHOENIX SERVICES TOPCO, LLC**, *et al.*, | : | **Case No. 22–10906 (       )** |
|  | : |  |
| Debtors.[1] | : | **(Jointly Administered)** |
|  | : |  |

---------------------------------------------------------- x    Re:  Docket No. ____

## FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 507(a) AND FED. R. BANKR. P. 6003 AND 6004 (I) AUTHORIZING DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, EMPLOYEE BENEFITS, AND OTHER COMPENSATION, (B) MAINTAIN EMPLOYEE BENEFIT PROGRAMS AND PAY RELATED OBLIGATIONS, AND (C) PAY PREPETITION EMPLOYEE EXPENSES, AND (II) GRANTING RELATED RELIEF

Upon the motion, dated September 27, 2022 (the "**Motion**")[2] of Phoenix Services Topco LLC and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), for entry of interim and final orders, pursuant to sections 105(a), 363(b), and 507(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (a) authorizing the Debtors to (i) pay the Employee Compensation Obligations and the Employee Benefit Obligations, related expenses, and fees and costs attendant to the foregoing, including amounts owed to third-party service providers and administrators and (ii) maintain, continue to honor, and pay amounts with respect to the Debtors' business practices, programs, and policies for their employees as such were in effect as of the commencement of these chapter 11

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Phoenix Services Topco, LLC (4517); Phoenix Services Parent, LLC (8023); Phoenix Services Holdings Corp. (1330); Phoenix Services International LLC (4693); Metal Services LLC (8793); Terracentric Materials LLC (0673); Cool Springs LLC (8687); Metal Services Investment LLC (2924); and Phoenix Receivables, LLC (not applicable).  The Debtors' mailing address is 4 Radnor Corporate Center, Suite 520, 100 Matsonford Road, Radnor, Pennsylvania 19087.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

cases and as such may be modified or supplemented from time to time in the ordinary course of business, and (b) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held an interim hearing and, if necessary, a final hearing to consider the relief requested in the Motion (the "**Hearings**"); and this Court having granted interim relief on the Motion (Docket No. [●]); and upon the Richard Declaration (Docket No. [●]) and the record of the Hearings; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1.      The Motion is granted on a final basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a), 363(b), and 507(a) of the Bankruptcy Code, to (a) pay the Employee Obligations, related expenses, and fees and costs attendant to the foregoing, including amounts owed to third-party service

2

providers, administrators, and taxing authorities, and (b) maintain, continue to honor, and pay on a postpetition basis, in their discretion, amounts with respect to the Debtors' business practices, programs, and policies for their employees as such were in effect as of the Petition Date and as such may be modified or supplemented from time to time in the ordinary course of business and consistent with the Debtors' prepetition practices, in an aggregate amount not to exceed $11.843 million; *provided*, *that*, the Debtors shall not make payments that exceed the Wage Cap to any individual on account of any prepetition Employee Obligations unless such payments are for unpaid Employee Leave Benefits that are required to be paid under applicable law.

3.      Notwithstanding any other provision of this Final Order, nothing in this Final Order shall authorize the Debtors to make any payments (a) under the KERP or (b) that would violate or permit the violation of section 503(c) of the Bankruptcy Code, including, for the avoidance of doubt, payment of any bonus or severance obligations to or on behalf of any "insider" (as defined by section 101(31) of the Bankruptcy Code).

4.      The Banks are authorized to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds and automated clearing house transfers requested, or to be requested, by the Debtors relating to such obligations, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payments.  The Banks are authorized to accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or electronic funds or automated clearing house transfers should be honored or dishonored in accordance with this Final Order, whether such checks, drafts, wires, or electronic funds or automated clearing house transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

5.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds or automated clearing house transfers, and to replace any prepetition checks or electronic fund or automated clearing house transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Final Order.

6.      Notwithstanding anything in the Motion or this Final Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to any interim and final order(s) of this Court granting the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protections, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "**DIP Order**"), including, without limitation, the Approved DIP Budget (as defined in the DIP Order).

7.      Nothing contained in the Motion or this Final Order or any payment made pursuant to the authority granted by this Final Order is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors or any lien satisfied pursuant to the Motion, (b) an agreement or obligation to pay any claims, (c) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (d) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, (e) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (f) an approval, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

4

8.      Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

9.      Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

10.     The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Final Order.

11.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

RLF1 27986962v.1