## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x
:
In re                                        :        **Chapter 11**
:
**PHOENIX SERVICES TOPCO, LLC,** *et al.*,   :        **Case No. 22– 10906 (      )**
:
Debtors.[1]                                  :        **(Joint Administration Requested)**
:
------------------------------------------------------------- x

## MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a), 362(d), AND 363(b) AND FED. R. BANKR. P. 4001, 6003, AND 6004 FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) CONTINUE THEIR INSURANCE PROGRAMS AND SURETY BOND PROGRAM AND (B) PAY ALL OBLIGATIONS WITH RESPECT THERETO, AND (II) GRANTING RELATED RELIEF

Phoenix Services Topco, LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Background

1.      On the date hereof (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Phoenix Services Topco, LLC (4517); Phoenix Services Parent, LLC (8023); Phoenix Services Holdings Corp. (1330); Phoenix Services International LLC (4693); Metal Services LLC (8793); Terracentric Materials LLC (0673); Cool Springs LLC (8687); Metal Services Investment LLC (2924); and Phoenix Receivables, LLC (not applicable).  The Debtors' mailing address is 4 Radnor Corporate Center, Suite 520, 100 Matsonford Road, Radnor, Pennsylvania 19087.

2.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

3.      Information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert Richard in Support of Debtors' Chapter 11 Petitions and First Day Relief*, sworn to on the date hereof (the "**Richard Declaration**"), which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

## Jurisdiction

4.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

6.      By this Motion, pursuant to sections 105(a), 362(d), and 363(b) of the Bankruptcy Code and Bankruptcy Rules 4001, 6003, and 6004, the Debtors request (i) authority to (a) continue all Insurance Programs (as defined below) and the Surety Bond

Program (as defined below) in accordance with the applicable programs and to perform with respect thereto in the ordinary course of business, (b) pay any prepetition and postpetition obligations arising under the Insurance Programs and Surety Bond Program, and (c) modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors' employees to proceed with any claims they may have under the Workers' Compensation Programs (as defined below), and (ii) related relief.

7.     A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**"), and a proposed form of order granting the relief requested herein on a final basis is annexed hereto as **Exhibit B** (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**").

**The Debtors' Insurance Programs**

**A.    Overview**

8.     In the ordinary course of business, the Debtors maintain certain workers' compensation insurance programs and various liability, property, and other insurance programs that provide the Debtors with insurance related to, among other things, general liability, equipment, automobile, directors' and officers' liability, fiduciary liability, property, cyber, crime, and umbrella coverage (collectively, the "**Insurance Programs**") through several insurance carriers (each, an "**Insurance Carrier**").  A list of the Insurance Programs, including information relating to their respective coverage periods, is annexed hereto as **Exhibit C**.[2]  Pursuant to the Insurance Programs, the Debtors pay premiums based upon fixed rates established and billed by each Insurance Carrier, as well as certain other obligations related thereto, including, deductibles,

---

[2]     The relief requested herein is requested for all Insurance Programs, whether or not omitted from the list set forth in **Exhibit C**.

broker or advisor fees, taxes, and other related fees and expenses (collectively, the "**Insurance Obligations**").

9.      As of the Petition Date, the Debtors estimate that they owe approximately $921,000 in prepetition Insurance Obligations on an aggregated basis that will become due and payable within 30 days following the Petition Date (such period, the "**Interim Period**").   The approximate payment amounts, each of which are discussed in further detail below, are summarized on the following chart:

| Type of Insurance Obligations | Estimated Total Amount Accrued as of Petition Date | Amount Due and Payable Within Interim Period |
|---|---|---|
| Workers' Compensation Programs | $960,000 | $318,000 |
| Liability and Property Insurance Programs | $1,990,000 | $571,000 |
| Professional Liability Program | $128,000 | $32,000 |

10.      Accordingly, the Debtors seek authority to continue their Insurance Programs in the ordinary course of business and to pay any such prepetition amounts as they come due.

11.      In addition, as set forth in **Exhibit C** hereto, the majority of the Insurance Programs expire on or around May 30, 2023.  Accordingly, the Debtors are seeking authority, with the consent of the Ad Hoc Group,[3] such consent not to be unreasonably withheld, to extend, renew,

---

[3] "Ad Hoc Group" shall have the meaning ascribed to such term in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protections, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* filed contemporaneously herewith.

RLF1 27986969V.1

revise, and rollover such Insurance Programs and to take all necessary actions in connection therewith in the ordinary course of business.

12. Furthermore, some of the Insurance Programs are subject to audits by the Insurance Carriers (the "**Insurance Carrier Audits**") during or at the end of their current coverage period, which may result in adjustments of the applicable premiums owed on account thereof. As a result, the Debtors may be required to pay additional amounts under certain policies when the applicable coverage period ends. As of the Petition Date, the Debtors estimate approximately $134,000 is owed on account of Insurance Carrier Audits, all of which will be due in the Interim Period. Accordingly, the Debtors seek authority to pay any amounts arising out of any such Insurance Carrier Audits in the ordinary course of business.

**B.    Workers' Compensation Programs**

13. In the ordinary course of business and as required by applicable law in many of the jurisdictions in which they operate, the Debtors maintain insurance for claims arising from or related to employment with the Debtors (the "**Workers' Compensation Claims**") and retain a third-party administrator to investigate and administer the Workers' Compensation Claims (collectively, the "**Workers' Compensation Programs**").

14. The Debtors maintain a policy with Zurich American Insurance Company ("**Zurich**") in connection with the Workers' Compensation Programs for all U.S.-based employees except for those located in Ohio (the "**General Workers' Compensation Policy**"). The state of Ohio requires that workers' compensation policies be maintained through an authorized state agency. The premium amount on the workers' compensation policy is determined based on the payroll amount during the preceding policy year. The Debtors' policy year with Ohio runs from July 1, 2022 to July 1, 2023, and the Debtors paid all premium amounts due to Ohio in July 2022.

15.     The General Workers' Compensation Policy covers (i) workers' compensation and (ii) employer liability for accident and disease.  The General Workers' Compensation Policy has an annual deductible of $150,000 for worker's compensation and $150,000 for employer liability for accident and disease.  The coverage period runs from May 30, 2022 to May 30, 2023 and the Debtors' annual premium is approximately $1.78 million.  The Debtors pay an initial installment equal to approximately 25% of the annual premium immediately at the start of the coverage period, followed by 9 equal monthly installments over the coverage period, with the final installment due in February 2023.  During the previous coverage period, the Debtors incurred approximately $497,000 in costs on account of the Workers' Compensation Claims under the General Workers' Compensation Policy.

16.     As of the Petition Date, there are 23 open Workers' Compensation Claims under the General Workers' Compensation Policy, $32,000 of which the Debtors estimate will become due in the Interim Period.  Additionally, as of the Petition Date, approximately $960,000 in premiums remain due under the General Workers' Compensation Policy, approximately $318,000 of which the Debtors estimate will become due in the Interim Period.

17.     Accordingly, by this Motion, the Debtors seek authority to maintain their Workers' Compensation Programs in the ordinary course of business and to pay all prepetition amounts related to the Workers' Compensation Programs, as well as amounts that may become due and owing during these chapter 11 cases.

C.     **Liability and Property Insurance Programs**

18.     Through certain of the Insurance Carriers, as set forth on **Exhibit C**, the Debtors maintain various liability and property insurance policies, which provide the Debtors with insurance coverage for liabilities relating to, among other things, property damage, general liability, commercial crime, contractors equipment, employment practices, automobile or motor

truck liability, umbrella, foreign liability, and various other property-related and legal liabilities, including a variety of excess liability insurance policies (collectively, the "**Liability and Property Insurance Programs**").  The Debtors maintain the Liability and Property Insurance Programs to help manage the various risks associated with their business.  Additionally, some of the Liability and Property Insurance Programs are required by certain regulations, laws, and contracts that govern the Debtors' commercial activities.  Pursuant to the Liability and Property Insurance Programs, the Debtors are required to pay premiums based upon a fixed rate established and billed by each Insurance Carrier, in addition to various deductibles.

19.    In particular, the Debtors maintain two (2) automobile policies (collectively, the "**Automobile Policy**") with Zurich – one for approximately 100 non-trucking units and another for approximately 57 trucking units.  The Automobile Policy provides, among other things, $2,000,000 of coverage for liability per accident, as well as $1,000,000 of coverage relating to uninsured and underinsured motorists driving units that are owned by the Debtors.  The Automobile Policy has a variety of deductibles, including, but not limited to, $25,000 per collision and another $25,000 for towing and labor.  The coverage period runs from May 30, 2022 to May 30, 2023 and the Debtors' annual premium is approximately $477,000.  The Debtors pay 1 initial installment equal to approximately 25% of the annual premium immediately at the start of the coverage period, followed by 9 equal monthly installments over the coverage period, with the final installment due in February 2023.  As of the Petition Date, approximately $250,000 in premium remains due under the Automobile Policy, approximately $84,000 of which the Debtors estimate will become due in the Interim Period.

20.    Additionally, the Debtors maintain a policy with Travelers Property and Casualty to insure equipment and machinery they own, lease, rent, or borrow in relation with

providing services to their customers (the "**Equipment Policy**"). The Equipment Policy provides, among other things, approximately $250,000,000 of aggregate coverage for equipment owned by the Debtors at the commencement of the policy period, $500,000 for equipment leased or rented by the Debtors at the commencement of the policy period as well as $2,000,000 of additional coverage for new equipment acquired by the Debtors during the policy period. The Equipment Policy has a $250,000 aggregate deductible for all covered claims. The coverage period runs from May 30, 2022 to May 30, 2023 and the Debtors' annual premium is approximately $936,000. The Debtors pay an initial installment equal to approximately 10% of the annual premium immediately at the start of the coverage period, followed by 9 equal monthly installments over the coverage period, with the final installment due in February 2023. As of the Petition Date, approximately $615,000 in premium remains due under the Equipment Policy, approximately $205,000 of which the Debtors estimate will become due in the Interim Period.

21.     Although the coverages and deductibles for each Liability and Property Insurance Program vary, the Debtors' aggregate annual premium for the Liability and Property Insurance Programs totals approximately $3.27 million. The applicable coverage periods for the Liability and Property Insurance Programs run from: (i) May 30, 2022 to May 30, 2023 for the majority of the policies, (ii) March 30, 2022 to March 29, 2023 for a paid-in-full policy, and (iii) March 1, 2018 to March 1, 2024 for another paid-in-full policy. Excluding the two (2) policies that have been paid in full, the Automobile Policy, and the Equipment Policy, the Debtors pay 12 equal installments over the course of the coverage period with respect to the Liability and Property Insurance Programs — an initial installment immediately at the start of the coverage period and 11 subsequent installments on a monthly basis, with the final installment due in May 2023.

22.     As of the Petition Date, approximately $1,990,000 in aggregate premiums remain due under the Liability and Property Insurance Programs, approximately $571,000 of which the Debtors estimate will become due in the Interim Period.

23.     Accordingly, by this Motion, the Debtors seek authority to maintain their Liability and Property Insurance Programs in the ordinary course of business and to pay all prepetition amounts related to the Liability and Property Insurance Programs, as well as amounts that may become due and owing during these chapter 11 cases.

**D.     Professional Liability Programs**

24.     The Debtors participate in six (6) insurance programs that provide the Debtors with insurance coverage for, among other things, management liability, fiduciary liability, professional liability, and directors' and officers' liability (collectively, the "**Professional Liability Programs**").  The Debtors incur premiums under the Professional Liability Programs based upon fixed rates established and billed by the applicable Insurance Carriers, in addition to various deductibles.  Although the coverages and deductibles for each Professional Liability Program vary, the coverage periods run from: (i) March 1, 2018 to March 1, 2024 for one (1) paid-in-full policy;  (ii) May 30, 2022  to  May 30, 2024  for  three  (3)  of  the  policies;  and (iii) September 21, 2022 to September 21, 2023 for two (2) paid-in-full policies.

25.     The Debtors' aggregate annual premium for the Professional Liability Programs totals approximately $769,000.  With respect to the three (3) policies expiring on May 30, 2024, which have not yet been paid-in-full, the Debtors pay 12 equal premium installments over the first year of the coverage period (from May 30, 2022 to May 30, 2023) — an initial installment immediately at the start of the coverage period and 11 subsequent installments on a monthly basis, with the final installment due in May 2023.  Premiums relating to the second

year of the coverage period for these policies (from May 30, 2023 to May 30, 2024) has already been paid-in-full.

26.    As of the Petition Date, approximately $128,000 in aggregate premiums remain due under the Professional Liability Programs, approximately $32,000 of which the Debtors estimate will become due in the Interim Period.

27.    Accordingly, by this Motion, the Debtors seek authority to maintain their Professional Liability Programs in the ordinary course of business and to pay all prepetition amounts related to the Professional Liability Programs, as well as amounts that may become due and owing during these chapter 11 cases.

**E.    Insurance Broker**

28.    For the Professional Liability Programs, as well as certain policies encompassed in the Liability and Property Insurance Programs, the Debtors utilize Aon Risk Services South, Inc. (the "**Insurance Broker**") as their broker.  The Insurance Broker assists the Debtors with the procurement and negotiation of the Insurance Programs and, in most circumstances, remittance of the premium payments to Insurance Carriers on behalf of the Debtors.

29.    In exchange for its services, the Insurance Broker earns fees and commissions (collectively, the "**Broker's Fees**").  As of the Petition Date, the Debtors are not aware of any outstanding prepetition amounts owed to the Insurance Broker on account of the Broker's Fees.  However, because of the Insurance Broker's familiarity with the Insurance Programs and out of an abundance of caution, the Debtors request authority to continue utilizing its services and to pay it any subsequent Broker's Fees that may become due and payable in the ordinary course of business during these chapter 11 cases.

RLF1 27986969V.1

## The Debtors' Surety Bond Program

30.     Pursuant to their surety bond program (the "**Surety Bond Program**"), in the ordinary course of business, the Debtors are required to provide surety bonds to certain third parties to secure the Debtors' payment or performance of certain obligations (the "**Surety Obligations**").  A list of the surety bonds and sureties (collectively, the "**Sureties**"), including information relating to their maturity, is annexed hereto as **Exhibit D**.[4]  The Debtors have Surety Obligations with Tokio Marine HCC (f/k/a HCC Insurance Holdings), RLI Insurance Company, and International Fidelity Insurance Company on account of various bonds.  The Debtors pay the Sureties annual premiums on account of the Surety Obligations based upon a fixed rate (the "**Surety Premiums**") in the aggregate amount of approximately $5,395 per year.

31.     The Debtors believe that no Surety Premium or amounts on other Surety Obligations are outstanding as of the Petition Date.  By this Motion, the Debtors seek authority, but not direction, to pay any such Surety Premiums and any other Surety Obligations that may become due and owing during these chapter 11 cases.

## Relief Requested Should be Granted

**A.     Maintenance of the Insurance Programs and Surety Bonds Program and Payment of Obligations Related Thereto is Warranted under Sections 105(a) and 363 of the Bankruptcy Code**

32.     The Court may grant the relief requested herein pursuant to sections 105(a) and 363 of the Bankruptcy Code.

33.     Section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  The purpose of this section is to provide a debtor in possession with the flexibility to

---

[4]     The relief requested herein is requested for all surety bonds in the Surety Bond Program, whether or not omitted from the list set forth in **Exhibit D**.

engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (internal quotation marks omitted); *In re Vision Metals, Inc.*, 325 B.R. 138, 145 (Bankr. D. Del.) (same), *granting reconsideration*, 327 B.R. 719 (Bankr. D. Del. 2005). Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue "routine transactions." *See, e.g.*, *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007) (noting that courts have shown a reluctance to interfere in a debtor's making of routine, day-to-day business decisions); *Vision Metals*, 325 B.R. at 142 ("[W]hen a chapter 11 debtor in possession continues to operate its business, as permitted by section 1108, no court authorization is necessary for the debtor to enter transactions that fall within the ordinary course of its business."). Here, maintaining the Insurance Programs and Surety Bond Program and honoring the obligations arising thereunder are the type of ordinary-course transactions contemplated by section 363(c)(1) of the Bankruptcy Code. Accordingly, 363(c)(1) authorizes continuation of the Insurance Programs and Surety Bond Program in the ordinary course of business.

34.     Even if continuation of the Insurance Programs and Surety Bond Program and other relief requested herein is outside of the ordinary course, the Court may grant the relief requested pursuant to section 363 of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the

Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987). Moreover, if "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

35.    In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105; *see In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (applying section 105(a) to justify an order authorizing the payment of certain prepetition wages, salaries, medical benefits, and business expense claims to debtor's employees). Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also In re Penick Pharm., Inc.*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee."). Courts consistently have

13

permitted payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See*, *e.g.*, *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus").

36.     The Court may also authorize the payment of prepetition claims in appropriate circumstances under section 105(a) of the Bankruptcy Code and the doctrine of necessity when such payment is essential to the continued operation of a debtor's business. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of Bankruptcy Code provides a statutory basis for payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is standard for enabling a court to authorize payment of prepetition claims prior to confirmation of a reorganization plan).

37.     Additionally, section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C).

38.     Accordingly, the Debtors' use of estate funds to pay prepetition and postpetition Insurance Obligations is justified because such obligations are necessary costs of preserving the Debtors' estates. As noted herein, the Debtors are legally and contractually required to maintain certain Insurance Programs and the Surety Bond Program, including under applicable

14

state laws, as well as the Operating Guidelines for Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee Operating Guidelines**").

39.     The Insurance Programs and the Surety Bond Program are essential to the Debtors' operations, as the Debtors would be exposed to significant liability if the Insurance Programs and the Surety Bond Program were allowed to lapse or terminate.  Such exposure could detrimentally impact the Debtors' ability to reorganize successfully.  It is therefore critical that the Debtors have the authority to supplement, amend, extend, renew, or replace their Insurance Programs and the Surety Bond Program, as needed, in their business judgement in the ordinary course of business.

40.     The Court should also authorize the Debtors to continue paying the Brokers' Fees in the ordinary course of business.  The Insurance Broker is intimately familiar with the Debtors' Insurance Programs and Insurance Obligations.  The Debtors believe that any loss or interruption to the services provided by the Insurance Broker could result in a costly disruption to the Debtors' administration of their estates.

41.     Similarly, pursuant to state law, the Debtors must maintain the Workers' Compensation Policies.  If the Debtors fail to maintain the Workers' Compensation Policies, applicable state law could, among other things, prohibit the Debtors from operating their business.  Granting authority to pay all obligations related to the Workers' Compensation Policies, therefore, is crucial to the continued operation of the Debtors' business.

42.     Likewise, maintaining the Surety Bond Program and satisfying the Surety Obligations is a sound exercise of business judgment.  As noted herein, as a condition to its ongoing operations, the Debtors are required, both legally and contractually, to provide a surety bond to secure certain obligations.  A failure to continue the Surety Bond Program and to honor

Surety Obligations may result in violations of applicable law and breaches under the Debtors'

critical contracts, which could be disruptive to the Debtors' operations and impair value for the

Debtors' stakeholders.    Accordingly, the continuation of the Surety Bond Program and the

authority to honor the Surety Obligations is essential to preserving the Debtors' business and the

value of the Debtors' estates for all parties in interest.

**B.      The Automatic Stay Should Be Modified for Workers' Compensation Claims and the Debtors Should be Authorized to Pay Amounts Relating to Workers' Compensation Claims**

43.    Section 362(a)(1) of the Bankruptcy Code operates to stay:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1).  Section 362(d)(1), however, permits a debtor or other party in interest to

request a modification or termination of the automatic stay for "cause."  To the extent the Debtors'

employees hold valid claims under the Workers' Compensation Program, the Debtors request a

modification of the automatic stay to permit the Debtors' employees to proceed with their

Workers' Compensation Claims in the appropriate judicial or administrative forum.

44.    There is cause to modify the automatic stay because, among other things,

staying the Workers' Compensation Claims could cause employee departures or otherwise harm

employee morale, which would severely disrupt the Debtors' businesses and prevent a successful

reorganization.  This risk is exacerbated by the potential negative impact on the financial well-

being of eligible workers' compensation claimants who do not receive timely payments for

prepetition employment related injuries.  Moreover, applicable state law mandates that certain

Debtors maintain workers' compensation coverage for their employees.  The Debtors' failure to

RLF1 27986969V.1

pay their obligations under the Workers' Compensation Program could jeopardize their coverage and expose the Debtors to significant liability in fines by state workers' compensation boards.  The potential liabilities the Debtors could face and employee departures would cause significant disruption to the Debtors' business with a materially adverse impact on the Debtors' operations, the value of their estates, and the interests of all parties in these chapter 11 cases.

45.    For the foregoing reasons, authorizing the Debtors to continue their Insurance Programs and their Surety Bond Program and pay all obligations with respect thereto, and authorizing the Workers' Compensation Claims to proceed in the ordinary course, is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these cases.  Accordingly, the Court should authorize the relief requested herein.

**Applicable Financial Institutions
Should Be Authorized to Receive, Process, Honor, and
Pay Checks Issued and Transfers Requested to Pay Insurance Obligations**

46.    The Debtors further request that this Court authorize applicable financial institutions (the "**Banks**") to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested by or on behalf of the Debtors relating to the Insurance Obligations, Surety Obligations, and Workers' Compensation Claims to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payment.  The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of Insurance Obligations, Surety Obligations, and Workers' Compensation Claims.  Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.  Any such financial institution may rely on the representations of such Debtors as to which checks are issued or wire transfers are made (or, as applicable, requested to be issued or made) and authorized to be paid in accordance with this

Motion without any duty of further inquiry.  The Debtors also seek authority, but not direction, to issue new postpetition checks or effect new postpetition electronic funds transfers in replacement of any checks or funds transfer requests on account of Insurance Obligations, Surety Obligations, and Workers' Compensation Claims dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

### Bankruptcy Rule 6003(b) Has Been Satisfied

47.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" prior to twenty-one (21) days after the Petition Date.  Fed. R. Bankr. P. 6003(b).  As explained above and in the Richard Declaration, the Debtors would suffer immediate and irreparable harm if the relief sought herein is not promptly granted.  Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

### Request for Bankruptcy Rule 4001(a)(3), 6004(a) and (h) Waivers

48.     To implement the foregoing successfully, the Debtors seek waivers of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) and an order authorizing relief from the automatic stay under Bankruptcy Rule 4001(a).  As explained above and in the Richard Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rules 6004(h) and 4001(a)(3) to the extent such notice requirements and such stay apply.

18

## **Reservation of Rights**

49.     Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors or any liens satisfied pursuant to this Motion, (ii) an agreement or obligation to pay any claims, (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (iv) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, (v) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (vi) an approval, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## **Notice**

50.     Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware (Attn: Linda Casey, Esq.); (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) the Internal Revenue Service; (iv) the United States Attorney's Office for the District of Delaware; (v) (a) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166 (Attn: Scott Greenberg, Esq., Steven A. Domanowski, Esq., Matthew Williams, Esq., and Jason Goldstein, Esq.), and (b) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899 (Attn: Laura Davis Jones, Esq.), as co-counsel to the DIP Lenders and the Ad Hoc Group; (vi) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Ira Dizengoff, Esq. and James Savin, Esq.), as counsel to Apollo Global Management, Inc.; (vii) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New

York 10017 (Attn: Brian Resnick, Esq. and Jonah A. Peppiatt, Esq.), as counsel to the First Lien Agent (as defined in the Richard Declaration); (viii) Banks; (ix) the Insurance Carriers; (x) the Insurance Broker; (xi) the Sureties; and (xii) any other party entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**").  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).

51.    The Debtors respectfully submit that no further notice is required.  No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

*[Remainder of page intentionally left blank]*

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  September 27, 2022
        Wilmington, Delaware

/s/ Zachary I. Shapiro
RICHARDS, LAYTON & FINGER, P.A.
Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C. (*pro hac vice* pending)
Jeffrey D. Saferstein (*pro hac vice* pending)
Garrett A. Fail (*pro hac vice* pending)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

## Exhibit A

## Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------ x
                                                             :
In re                                                        :      Chapter 11
                                                             :
PHOENIX SERVICES TOPCO, LLC, et al.,                         :      Case No. 22– 10906 (      )
                                                             :
Debtors.[1]                                                  :      (Jointly Administered)
                                                             :
------------------------------------------------------------ x      Re:  Docket No. ____
```

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 362(d), AND 363(b)
AND FED. R. BANKR. P. 4001, 6003, AND 6004 (I) AUTHORIZING
DEBTORS TO (A) CONTINUE THEIR INSURANCE PROGRAMS
AND SURETY BOND PROGRAM AND (B) PAY ALL OBLIGATIONS
WITH RESPECT THERETO, AND (II) GRANTING RELATED RELIEF**

Upon the motion, dated September 27, 2022 (the "**Motion**")[2] of Phoenix Services

Topco, LLC and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and

debtors in possession (collectively, the "**Debtors**"), for entry of interim and final orders pursuant

to sections 105(a), 362(d), and 363(b) of the Bankruptcy Code and Bankruptcy Rules 4001, 6003,

and 6004 (i) authorizing the Debtors to (a) continue all Insurance Programs and the Surety Bond

Program in accordance with the applicable programs and to perform with respect thereto in the

ordinary course of business, (b) pay any prepetition obligations arising under the Insurance

Programs and Surety Bond Program, and (c) modify the automatic stay imposed by section 362 of

the Bankruptcy Code to the extent necessary to permit the Debtors' employees to proceed with

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Phoenix Services Topco, LLC (4517); Phoenix Services Parent, LLC (8023); Phoenix Services Holdings Corp. (1330); Phoenix Services International LLC (4693); Metal Services LLC (8793); Terracentric Materials LLC (0673); Cool Springs LLC (8687); Metal Services Investment LLC (2924); and Phoenix Receivables, LLC (not applicable).  The Debtors' mailing address is 4 Radnor Corporate Center, Suite 520, 100 Matsonford Road, Radnor, Pennsylvania 19087.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

any claims they may have under the Workers' Compensation Programs, and (ii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing to consider the relief requested in the Motion; and upon the Richard Declaration and the record of the hearing; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a), 362(d), and 363(b) of the Bankruptcy Code and Bankruptcy Rules 4001, 6003, and 6004 to continue the Insurance Programs and Surety Bond Program and to perform their obligations with respect thereto, including the payment of any prepetition amounts owed in connection therewith.

3.      The Debtors are further authorized, but not directed, to maintain their Insurance Programs and Surety Bond Program in accordance with practices and procedures that were in effect before the commencement of these chapter 11 cases.

4.      The Debtors are further authorized, but not directed, with the consent of the Ad Hoc Group, such consent not to be unreasonably withheld, to revise, extend, renew, rollover, replace, or obtain new Insurance Programs or Surety Bond Programs, and to take all appropriate actions in connection therewith, in the ordinary course of business.

5.      The Debtors are further authorized, but not directed, to pay any additional amounts arising out of any Insurance Carrier Audits in the ordinary course of business.

6.      Pursuant to section 362(d) of the Bankruptcy Code and Bankruptcy Rule 4001, the automatic stay shall be modified to the extent necessary to permit the Debtors' employees to proceed with any claims they may have under the Workers' Compensation Programs and the Debtors to pay any amounts owed on account of Workers' Compensation Claims.

7.      The Banks are authorized to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds and automated clearing house transfers requested, or to be requested, by the Debtors relating to such obligations, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payments.  The Banks are authorized to accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or electronic funds or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or electronic funds or automated clearing house transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

8. The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds or automated clearing house transfers, and to replace any prepetition checks or electronic fund or automated clearing house transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Interim Order.

9. Notwithstanding anything in the Motion or this Interim Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to any interim and final order(s) of this Court granting the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protections, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (such order, as applicable, the "**DIP Order**"), including, without limitation, the Approved DIP Budget (as defined in the DIP Order).

10. Nothing contained in the Motion or this Interim Order or any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors or any lien satisfied pursuant to this Motion, (ii) an agreement or obligation to pay any claims, (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (iv) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, (v) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or

4

(vi) an approval, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Any payment made pursuant to this Interim Order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

11.  The requirements of Bankruptcy Rule 6003(b) have been satisfied.

12.  Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

13.  Notwithstanding the provisions of Bankruptcy Rules 4001(a)(3) and 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

14.  The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Interim Order.

15.  This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

16.  The final hearing to consider the relief requested in the Motion shall be held on ____, **2022, at** _____ (Prevailing Eastern Time) and any objections or responses to the Motion shall be filed and served on or prior to _____**2022 at 4:00 p.m.** (Prevailing Eastern Time).

RLF1 27986969V.1

**<u>Exhibit B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------- x
                                                         :
In re                                                    :      **Chapter 11**
                                                         :
**PHOENIX SERVICES TOPCO, LLC,** *et al.*,               :      **Case No. 22– 10906 (     )**
                                                         :
Debtors.[1]                                              :      **(Jointly Administered)**
                                                         :
-------------------------------------------------------- x      Re:  Docket No. ____

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 362(d), AND 363(b)
AND FED. R. BANKR. P. 4001, 6003, AND 6004 (I) AUTHORIZING
DEBTORS TO (A) CONTINUE THEIR INSURANCE PROGRAMS
AND SURETY BOND PROGRAM AND (B) PAY ALL OBLIGATIONS
WITH RESPECT THERETO, AND (II) GRANTING RELATED RELIEF**

Upon the motion, dated September 27, 2022 (the "**Motion**")[2] of Phoenix Services

Topco, LLC and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and

debtors in possession (collectively, the "**Debtors**"), for entry of interim and final orders pursuant

to sections 105(a), 362(d), and 363(b) of the Bankruptcy Code and Bankruptcy Rules 4001, 6003,

and 6004 (i) authorizing the Debtors to (a) continue all Insurance Programs and the Surety Bond

Program in accordance with the applicable programs and to perform with respect thereto in the

ordinary course of business, (b) pay any prepetition obligations arising under the Insurance

Programs and Surety Bond Program, and (c) modify the automatic stay imposed by section 362 of

the Bankruptcy Code to the extent necessary to permit the Debtors' employees to proceed with

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Phoenix Services Topco, LLC (4517); Phoenix Services Parent, LLC (8023); Phoenix Services Holdings Corp. (1330); Phoenix Services International LLC (4693); Metal Services LLC (8793); Terracentric Materials LLC (0673); Cool Springs LLC (8687); Metal Services Investment LLC (2924); and Phoenix Receivables, LLC (not applicable).  The Debtors' mailing address is 4 Radnor Corporate Center, Suite 520, 100 Matsonford Road, Radnor, Pennsylvania 19087.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

any claims they may have under the Workers' Compensation Programs, and (ii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held an interim hearing and, if necessary, a final hearing, to consider the relief requested in the Motion (the "**Hearings**"); and this Court having granted interim relief on the Motion (Docket No. [●]); and upon the Richard Declaration (Docket No. [●]) and the record of the Hearings; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on a final basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a), 362(d), and 363(b) of the Bankruptcy Code and Bankruptcy Rules 4001, 6003, and 6004 to continue the Insurance Programs and Surety Bond Program and to perform their obligations with respect thereto, including the payment of any prepetition amounts owed in connection therewith.

3.      The Debtors are further authorized, but not directed, to maintain their Insurance Programs and Surety Bond Program in accordance with practices and procedures that were in effect before the commencement of these chapter 11 cases.

4.      The Debtors are further authorized, but not directed, with the consent of the Ad Hoc Group, such consent not to be unreasonably withheld, to revise, extend, renew, rollover, replace, or obtain new Insurance Programs or Surety Bond Programs, and to take all appropriate actions in connection therewith, in the ordinary course of business.

5.      The Debtors are further authorized, but not directed, to pay any additional amounts arising out of any Insurance Carrier Audits in the ordinary course of business.

6.      Pursuant to section 362(d) of the Bankruptcy Code and Bankruptcy Rule 4001, the automatic stay shall be modified to the extent necessary to permit the Debtors' employees to proceed with any claims they may have under the Workers' Compensation Programs and the Debtors to pay any amounts owed on account of Workers' Compensation Claims.

7.      The Banks are authorized to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds and automated clearing house transfers requested, or to be requested, by the Debtors relating to such obligations, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payments.  The Banks are authorized to accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or electronic funds or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or electronic funds or automated clearing house transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

3

8.     The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds or automated clearing house transfers, and to replace any prepetition checks or electronic fund or automated clearing house transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Final Order.

9.     Notwithstanding anything in the Motion or this Final Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to any interim and final order(s) of this Court granting the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protections, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (such order, as applicable, the "**DIP Order**"), including, without limitation, the Approved DIP Budget (as defined in the DIP Order).

10.     Nothing contained in the Motion or this Final Order or any payment made pursuant to the authority granted by this Final Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors or any lien satisfied pursuant to this Motion, (ii) an agreement or obligation to pay any claims, (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (iv) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, (v) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (vi) an approval, assumption, or rejection of any agreement, contract, program, policy, or lease under

section 365 of the Bankruptcy Code.  Any payment made pursuant to this Final Order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

11.    Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

12.    Notwithstanding the provisions of Bankruptcy Rules 4001(a)(3) and 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

13.    The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Final Order.

14.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

**<u>Exhibit C</u>**

**List of Insurance Policies**

| Type of Coverage | Insurer(s) | Policy Number(s) | Policy Term |
|---|---|---|---|
| **Workers' Compensation Program** | | | |
| Workers' Compensation (General Workers' Compensation Policy) | Zurich | WC0195946-06 | 5/30/2022 to 5/30/2023 |
| Workers' Compensation (Ohio) | Ohio Bureau of Workers' Compensation | 1603803 | 7/1/2022 to 7/1/2023 |
| **Liability and Property Insurance Programs** | | | |
| General Liability | AIG Specialty | EG 13572219 | 5/30/2022 to 5/30/2023 |
| Automobile Liability | Zurich | BAP0296107 05; BAP1155379 04 | 5/30/2022 to 5/30/2023 |
| Property | Travelers Property / Casualty | QT-630-4859N079-TIL-21 | 5/30/2022 to 5/30/2023 |
| Contractors Equipment | Travelers Property / Casualty | QT-630-4859N079-TIL-22 | 5/30/2022 to 5/30/2023 |
| Foreign Liability | Zurich | ZE 0149205-04 | 5/30/2022 to 5/30/2023 |
| Aviation – Drones | USAIG | SIHL 1-I270 | 5/30/2022 to 5/30/2023 |
| Motor Truck Cargo | Hartford | 84MSZV0309 | 5/30/2022 to 5/30/2023 |
| Wharfingers/Stevedores Legal Liability | Liberty Mutual | MLIB-1000698-11 | 5/30/2022 to 5/30/2023 |
| Pollution Legal Liability | Beazley/Lloyd's | W22244220501 | 5/30/2022 to 5/30/2023 |
| Lead Excess Liability | AIG Specialty | EGU 13572220 | 5/30/2022 to 5/30/2023 |
| Excess Liability (15x10) | Travelers | EX-4T404164-22-NF | 5/30/2022 to 5/30/2023 |
| Excess Liability (15x25) | Ohio Casualty (Liberty) | ECO (23) 58858032 | 5/30/2022 to 5/30/2023 |
| Marine Excess Liability (4x1) | Liberty Mutual | 3HABTML7004 | 5/30/2022 to 5/30/2023 |
| Marine Excess Liability (5x5) | XL Specialty Ins. | UM00077698MA22A | 5/30/2022 to 5/30/2023 |
| Marine Excess Liability (10x10) | Sompo/Endurance | OMX10014660403 | 5/30/2022 to 5/30/2023 |
| Representation & Warranties | AIG Specialty | #16640445 | 3/1/2018 to 3/1/2024 |
| International SOS Insurance for Travel Abroad | International SOS | IUSIV01302 | 3/30/2022 to 3/29/2023 |

| Type of Coverage | Insurer(s) | Policy Number(s) | Policy Term |
|---|---|---|---|
| **Professional Liability Programs** | | | |
| D&O | National Union Fire Insurance Company of Pittsburgh | #022674338 | 3/1/2018 to 3/1/2024 |
| Management Liability | Federal Insurance | 8260-8501 | 5/30/2022 to 5/30/2024 and 6 year runoff |
| Excess D&O | National Union Fire Ins. | 01-194-26-14 | 5/30/2022 to 5/30/2024 and 6 year runoff |
| Excess D&O | Everest National Ins. | PC5EX00264-221 | 5/30/2022 to 5/30/2024 and 6 year runoff |
| Excess Side A DIC Directors & Officers | Berkley Insurance Company | | 9/21/2022 to 9/21/2023 and 6 year runoff |
| Excess Side A DIC Directors & Officers | Berkshire Hathaway Specialty Insurance | | 9/21/2022 to 9/21/2023 and 6 year runoff |

## Exhibit D

### List of Surety Bonds

| Surety | Bond ID | Maturity |
|---|---|---|
| Tokio Marine HCC (f/k/a HCC Insurance Holdings) | CB1000315 | 2/6/2022 to 2/6/2023 |
| RLI Insurance Company | CMS0346929 | 2/1/2022 to 1/31/2023 |
| International Fidelity Insurance Company | ILIFSU0750742 | 12/3/2021 to 12/3/2022 |