## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
                                         :
In re                                    :     Chapter 11
                                         :
PHOENIX SERVICES TOPCO, LLC, et al.,     :     Case No. 22–10906 (        )
                                         :
          Debtors.¹                      :     (Joint Administration Requested)
                                         :
------------------------------------------------------------ x
```

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105, 345, 363, 503, AND 507
AND FED. R. BANKR. P. 6003 AND 6004 FOR INTERIM AND FINAL ORDERS
(I) AUTHORIZING DEBTORS TO (A) CONTINUE USING EXISTING CASH
MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS, (B) IMPLEMENT
ORDINARY COURSE CHANGES TO CASH MANAGEMENT SYSTEM, AND (C) HONOR
CERTAIN RELATED PREPETITION OBLIGATIONS, (II) AUTHORIZING (A)
CONTINUATION OF INTERCOMPANY TRANSACTIONS AND (B) GRANTING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS FOR POSTPETITION
INTERCOMPANY CLAIMS, (III) EXTENDING TIME TO COMPLY WITH
<u>REQUIREMENTS OF 11 U.S.C. § 345(b), AND (IV) GRANTING RELATED RELIEF</u>**

Phoenix Services Topco, LLC (the "**Phoenix Topco**") and its debtor affiliates in

the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively,

the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### <u>Background</u>

1.      On the date hereof (the "**Petition Date**"), the Debtors each commenced with

this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy**

**Code**").    The Debtors are authorized to continue to operate their business and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

¹       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: Phoenix Services Topco, LLC (4517); Phoenix Services Parent, LLC (8023); Phoenix Services
Holdings Corp. (1330); Phoenix Services International LLC (4693); Metal Services LLC (8793); Terracentric
Materials LLC (0673); Cool Springs LLC (8687); Metal Services Investment LLC (2924); and Phoenix
Receivables, LLC (not applicable).  The Debtors' mailing address is 4 Radnor Corporate Center, Suite 520, 100
Matsonford Road, Radnor, PA 19087.

Case 22-10906-MFW    Doc 11    Filed 09/27/22    Page 2 of 46

No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

2.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

3.      Information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert Richard in Support of Debtors' Chapter 11 Petitions and First Day Relief*, sworn to on the date hereof (the "**Richard Declaration**"), which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

## Jurisdiction

4.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2

## **Relief Requested**

6.     By this Motion, pursuant to sections 105, 345, 363, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2, the Debtors request (i) authority to (a) continue using their existing Cash Management System (as defined below), bank accounts (the "**Bank Accounts**"), and business forms, (b) implement changes to their Cash Management System in the ordinary course of business, including, without limitation, opening new or closing existing Bank Accounts, and (c) honor certain prepetition obligations related to the Cash Management System, (ii) authority to (a) continue to engage in Intercompany Transactions (as defined below) in the ordinary course of business and (b) grant superpriority administrative expense status for Intercompany Claims (as defined below), (iii) a waiver or an extension of time to comply with certain requirements of section 345(b) of the Bankruptcy Code, and (iv) related relief.  The relief requested herein is subject to any consent required or any restrictions under any interim and final order(s) of this Court granting the DIP Motion (such interim or final order, as applicable, the "**DIP Order**"), the DIP Credit Agreement (as defined in the DIP Order), or the Approved DIP Budget (as defined in the DIP Order).

7.     A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**"), and a proposed form of order granting the relief requested herein on a final basis is annexed hereto as **Exhibit B** (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**").

## **Cash Management System and Bank Accounts**

### **A.  Cash Management System**

8.     In the ordinary course of business, the Debtors utilize an integrated, centralized cash management system to collect, transfer, and disburse funds generated by their

3

operations (the "**Cash Management System**").  The Cash Management System is tailored to meet the Debtors' operating needs as a provider of services for the steel industry.  The Cash Management System enables the Debtors to collect and disburse cash generated by their business effectively and efficiently, pay their financial obligations, centrally control and monitor corporate funds and available cash, comply with the requirements of their financing agreements, reduce administrative expenses, and obtain accurate account balances and other financial data.  It is critical that the Cash Management System remain intact during these chapter 11 cases to ensure seamless continuation of transactions and uninterrupted collection of revenues.

9.      The Cash Management System is composed of twelve (12) Bank Accounts. The Debtors maintain nine (9) accounts at PNC Bank ("**PNC**"), two (2) accounts at Santander Bank ("**Santander**"), and one (1) account at Bank of America, N.A. ("**BofA**," collectively with PNC and Santander, the "**Banks**").  A list of the Banks and the Bank Accounts is annexed as **Exhibit 1** to the Proposed Orders.[2]

10.     An average of $5.8-$6.3 million in receipts and disbursements, respectively, flow through the Cash Management System per banking week.  A diagram illustrating the movement of cash through the Cash Management System is annexed hereto as **Exhibit C**.

11.     The Debtors' Chief Financial Officer and personnel in the Debtors' finance department (collectively, the "**Finance Department**") oversee the Cash Management System. The Debtors maintain robust controls relating to the Cash Management System.  The Finance Department personnel monitor the Bank Accounts and manage the proper collection and

---

[2]     As of the Petition Date, the Debtors are considering opening certain accounts in connection with their proposed debtor-in-possession financing facility.  The Debtors request authority to continue opening such accounts pursuant to this Motion and the Proposed Orders.  Any such accounts will be at a bank that is party to a Uniform Depository Agreement ("**UDA**") with the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") or immediately willing to execute a UDA.

disbursement of funds by, among other things, reviewing cash flow statements on the Debtors' cash balances and disbursements, overseeing the reconciliation of all Bank Accounts against the Debtors' books and records on a daily basis, and approving checks, wires, and automatic clearing house ("**ACH**") payment notifications.

12.     The following tables summarize the functions and flow of funds to and from the Bank Accounts in the Cash Management System:

| Bank Accounts[3] | | |
|---|---|---|
| **Account** | **Debtor** | **Description of Account and Flow of Funds To / From** |
| Lockbox Account | Metal Services LLC | The Debtors maintain an account with PNC (Account No. x9542) (the "**Lockbox Account**"), which is used to collect revenue generated from the Debtors' customers (whether by check, credit card, ACH transfer, or wire transfer). The Lockbox Account is a zero balance account ("**ZBA**"), meaning it does not carry a cash balance at the end of each business day, and the funds therein are automatically swept into the Operating Account on a daily basis.  Accordingly, as of the beginning of the Petition Date, the Lockbox Account had no balance. |
| Operating Account | Metal Services LLC | The Debtors maintain an account with PNC (Account No. x9534) (the "**Operating Account**"), which is used to disburse funds to, among others, the Debtors' vendors and suppliers, the Benefits and Payroll Accounts, and to service the Debtors' funded indebtedness. In addition, in the ordinary course of business, the Debtors wire funds from the Operating Account to a Bank Account maintained by BofA in the name of a non-Debtor for distribution to Non-Debtor Affiliates (defined below). In addition, collections from certain customers are deposited directly into the Operating Account. As of the Petition Date, this account holds approximately $3.6 million. |
| Benefits and Payroll Accounts | Metal Services LLC | The Debtors maintain accounts with PNC used for disbursements related to (i) employee benefits (Account No. x0732) and (ii) payroll and 401(k) contributions (Account No. x9526) (collectively, the "**Benefits and Payroll Accounts**"). |

---

[3]     In addition, the Debtors anticipate repurposing an existing Bank Account to be used as an adequate assurance escrow account for utility providers (the "**Adequate Assurance Account**").

| Bank Accounts[3] | | |
|---|---|---|
| | | The Debtors fund the Benefits and Payroll Accounts every week from the Operating Account, in coordination with the Debtors' weekly and semi-monthly payroll cycles.[4]  The Benefits and Payroll Accounts are ZBAs, and their funds are automatically swept into the Operating Account on a daily basis. Accordingly, as of the beginning of the Petition Date, the Benefits and Payroll Accounts had no balance. |
| Foreign Account | Phoenix Services International LLC | The Debtors maintain an account with BofA (Account No. x3265), which is used to pay certain amounts outside of the United States.  As of the Petition Date, this account holds approximately $400. |
| Money Market Account | Metal Services LLC | The Debtors maintain a money market account with PNC (Account No. x9518), which does not hold any funds. |
| Depository Account | Phoenix Services Topco LLC | The Debtors maintain a deposit account with PNC (Account No. x5029), which holds approximately $3.8 million as of the Petition Date. |
| Dormant Account | Phoenix Receivables, LLC | Account with PNC (Account No. x1725). |
| Dormant Account | Phoenix Receivables, LLC | Account with PNC (Account No. x1768). |
| Dormant Account | Phoenix Receivables, LLC | Account with PNC (Account No. x1784). |
| Dormant Account | Terracentric Materials LLC | Deposit account with Santander (Account No. x1667). |
| Dormant Account | Phoenix Services LLC | Deposit account with Santander (Account No. x2296). |

## B.  Bank and Processing Fees

13.    In the ordinary course of business, the Debtors incur periodic service charges and other fees from the Banks in connection with the maintenance of the Cash

---

[4]    The Debtors contract with a third party, Kelly & Associates Insurance Group, Inc. ("**Kelly Benefits**"), to assist with employee payroll.  Two (2) days prior to when payroll is due, Kelly Benefits pulls, via ACH, the necessary amounts from the Benefits and Payroll Accounts, as authorized by the Debtors' human resources personnel.  On the day payroll is due, Kelly Benefits disburses the funds to employees predominately by direct deposit and check. The Debtors pay Kelly Benefits' monthly service fee directly from the Benefits and Payroll Accounts via ACH every week.

Management System (such charges and fees, the "**Bank Fees**").  The Banks deduct Bank Fees automatically on a monthly basis.  In 2022, the Debtors paid an average of approximately $6,700 per month on account of Bank Fees.  Similarly, the Debtors pay certain credit and debit card companies processing fees that range from 2.6% to 3.5% per transaction plus additional disputed charges, service charges, and other *de minimis* charges per transaction (collectively, the "**Processing Fees**" and, together with the Bank Fees, the "**Service Obligations**") in connection with credit and debit card receivables.  Certain credit card companies deduct their Processing Fees before transferring the funds to the Debtors while others charge the Debtors for their Processing Fees on a monthly basis (disputed charges are paid as they occur).  In 2022, the Debtors paid an average of approximately $1,300 per month on account of Processing Fees.  As of the Petition Date, the Debtors estimate that there are approximately $6,700 in outstanding Service Obligations, all of which will come due within thirty (30) days of the Petition Date.

### C. Corporate Credit Card Program

14.    In their normal course of operations, the Debtors maintain a corporate credit card program for certain managers at various operating locations (the "**Corporate Credit Card Program**").  Approximately eighty (80) employees utilize the cards issued by BofA (such corporate credit cards, the "**BofA Cards**").  The Debtors use the BofA Cards to incur reimbursable expenses in the ordinary course of business and to incur, among other things, travel and operational expenses in connection with the Debtors' operations.  The Debtors incur on average approximately $600,000 of aggregate reimbursable expenses through the Corporate Credit Card Program each month.  The Debtors remit the requisite payments for the Corporate Credit Card Program directly to BofA following approval of an employee's submitted expense report.  As of the Petition Date, the Debtors estimate that there are approximately $600,000 in outstanding prepetition amounts accrued and owed on account of the Corporate Credit Card Program.  Pursuant to this Motion, the

7

Debtors seek authority to continue the Corporate Credit Card Program in the ordinary course of business and to pay any outstanding prepetition amounts in connection therewith, not to exceed $600,000.

### D.  Intercompany Transactions and Claims

15.    In the ordinary course of business, the Debtors' cash is aggregated in the Operating Account.  As set forth in the Richard Declaration, certain of the Debtors' non-Debtor foreign subsidiaries provide steel mill services at customer sites outside of the United States. Accordingly, in the ordinary course of business, the Debtors engage in intercompany transactions with their Debtor[5] and non-Debtor foreign affiliates (each, a "**Non-Debtor Affiliate**," and each such transaction, an "**Intercompany Transaction**"), which in turn may give rise to intercompany receivables and payables (each, an "**Intercompany Claim**").  Such Intercompany Transactions are recorded on the Debtors' books and records as loans that accrue interest, and are for, among other things, to assist such Non-Debtor Affiliates in meeting various working capital needs. Historically, if a Non-Debtor Affiliate requests funds, the Company will (a) pay from funds pooled at an account maintained by BofA in the name of a Non-Debtor Affiliate, Phoenix Services Europe Cooperatief. U.A. ("**Coop**"), based in the Netherlands (the "**Coop Account**"), or (b) to the extent there are insufficient funds to meet funding requirements, the Debtors will wire funds to the Coop Account, which in turn, disburses funds received from the Debtors to the various Non-Debtor Affiliates, as needed.  Conversely, funds transferred to the Debtors from Non-Debtor Affiliates are deposited into the Coop Account, which in turn disburses funds to the Operating Account.

---

[5]    The Debtors make certain immaterial ordinary course transfers to Debtor affiliates within the Cash Management System to pay Bank Fees and other funding requirements.

8

16.    The Debtors maintain detailed accounting of intercompany receivables and payables, and the Debtors have the ability to account for historical Intercompany Transactions.

17.    The Debtors expect that the Non-Debtor Affiliates currently have sufficient funds to manage their operations during the pendency of these chapter 11 cases and will not need to engage in Intercompany Transactions with the Debtors.  However, out of an abundance of caution, the Debtors seek authority to continue Intercompany Transactions with Non-Debtor Affiliates in the ordinary course of business and in compliance with the terms of the proposed DIP Financing, solely to the extent that the Debtors determine, in the exercise of their business judgment and consistent with past practices, that doing so is necessary to maximize the value of their estates.  Any such Intercompany Transactions will be subject to the terms of the DIP Order (as defined in the Proposed Orders) including, without limitation, the Approved DIP Budget (as defined in the DIP Order), and under certain circumstances as described in the Proposed Orders, will not be entered into without the consent of the Ad Hoc Group.[6]

**E.  Debtors' Business Forms**

18.    In the ordinary course of business, the Debtors use a variety of business forms, including checks.  To minimize the expense to the Debtors' estates associated with printing or purchasing entirely new business forms and the delay in conducting business prior to obtaining such forms, the Debtors seek authority to continue using their business forms without reference therein to the Debtors' status as "Debtors in Possession."  The Debtors have prepared communication materials to distribute to the various parties with which they conduct business that

---

[6]    "**Ad Hoc Group**" shall have the meaning ascribed to such term in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protections, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "**DIP Motion**") filed contemporaneously herewith.

will, among other things, inform such parties of the commencement of these chapter 11 cases. The Debtors believe that these direct communications will provide adequate notice of the Debtors' status as debtors in possession. Nevertheless, if the Debtors generate new checks during the pendency of these chapter 11 cases, the Debtors will update any electronically produced check to include a legend referring to the Debtors as "Debtors-in-Possession" and the jointly administered bankruptcy case number within ten (10) business days of entry of the Proposed Interim Order. Further, if the Debtors re-order checks during the pendency of these chapter 11 cases, the Debtors will use reasonable efforts to include the designation "Debtor in Possession" and the jointly administered bankruptcy case number on such checks.

## Relief Requested Should be Granted

19.     The Court may grant the relief requested herein pursuant to sections 105, 345, 363, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2.

**A.     Continuation of Cash Management System is in the Best Interests of the Debtors, their Estates, and All Other Parties in Interest**

20.     Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (alteration in original) (citations omitted); *Vision Metals, Inc. v. SMS Demag, Inc. (In re Vision Metals, Inc.)*, 325 B.R. 138, 145

10

(Bankr. D. Del. 2005) (same).  Included within the purview of section 363(c) is a debtor's ability to continue "routine transactions" necessitated by a debtor's cash management system.  *See, e.g.*, *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007) (noting that courts have shown a reluctance to interfere in a debtor's making of routine, day-to-day business decisions) (citations omitted); *In re Vision Metals*, 325 B.R. at 142 ("[W]hen a chapter 11 debtor in possession continues to operate its business, as permitted by section 1108, no court authorization is necessary for the debtor to enter transactions that fall within the ordinary course of its business.").

21.    Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]"  11 U.S.C. § 363(b)(1).  To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions."  *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).  Moreover, if "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

22.    In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such

11

relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a); *see In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (applying section 105(a) to justify an order authorizing the payment of certain prepetition wages, salaries, medical benefits, and business expense claims to debtor's employees).  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").  Courts consistently have permitted payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus.").

23.    The Court may also authorize the payment of prepetition claims in appropriate circumstances under section 105(a) of the Bankruptcy Code and the doctrine of necessity when such payment is essential to the continued operation of a debtor's business.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of

Bankruptcy Code provides a statutory basis for payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is standard for enabling a court to authorize payment of prepetition claims prior to confirmation of a reorganization plan).

24.     Maintaining the existing Cash Management System is in the best interests of the Debtors' estates and all parties in interest and, therefore, should be approved.  The Cash Management System constitutes an ordinary course and essential business practice of the Debtors and provides significant benefits to the Debtors, including the ability to (i) control corporate funds, (ii) ensure the maximum availability of funds when and where necessary, and (iii) reduce costs and administrative expenses by facilitating the movement of funds and the development of timely and accurate account information.  Authorizing the Debtors to continue operating under the existing Cash Management System is necessary to avoid severe disruptions to the Debtors' operations, which ultimately would frustrate the Debtors' ability to effectuate their restructuring strategy and maximize the value of their estates.  Accordingly, the Debtors request authority to maintain their existing Cash Management System to the extent set forth herein.

## B.     Payment of Service Obligations Should Be Approved

25.     Payment of the prepetition Service Obligations is in the best interests of the Debtors and all parties in interest in these chapter 11 cases, as it will prevent unnecessary disruptions to the Cash Management System and ensure that the Debtors' receipt of funds is not delayed.  Payment of prepetition Service Obligations will not prejudice any parties in interest. Indeed, because the Banks likely have setoff rights for the Service Obligations, payment of

13

prepetition Service Obligations should not alter the rights of unsecured creditors in these chapter 11 cases. Accordingly, the Debtors request authority to pay any outstanding prepetition Service Obligations and other similar service charges to maintain the Cash Management System.

### C. Maintenance of the Debtors' Existing Bank Accounts and Business Forms is Warranted

26. The Debtors request, in accordance with Local Rule 2015-2, that the Court waive the requirements of the U.S. Trustee's Operating Guidelines for Chapter 11 Cases (the "**UST Operating Guidelines**"), which would require, among other things, the closure of the Bank Accounts, the opening of new deposit accounts, and the immediate ordering of new check stock with a legend identifying each of the Debtors as "Debtor in Possession." Strict enforcement of the UST Operating Guidelines with respect to the Cash Management System will severely disrupt the Debtors' ordinary course financial operations by reducing efficiencies, increasing administrative burdens, and creating unnecessary expenses. These chapter 11 cases will be more orderly and efficient if the Debtors are permitted to maintain all Bank Accounts with the same account numbers during these cases and to continue to use their business forms, including checks; *provided*, *that*, with respect to checks that the Debtors or their agents print themselves, the Debtors or their agents will begin printing the "Debtor in Possession" legend and include the jointly administered bankruptcy case number on such checks within ten (10) business days after the date of entry of the Proposed Interim Order and, to the extent that the Debtors order check stock, the Debtors will use reasonable efforts to include the "Debtor in Possession" legend and the jointly administered bankruptcy case number on such checks. By preserving business continuity and avoiding the disruption and delay to the Debtors' disbursement obligations, the relief requested herein will benefit all parties in interest, including employees, vendors, and customers. In addition, to the extent necessary, the Debtors request authority to make ordinary course changes to the Cash

14

Management System, such as opening or closing their accounts in accordance with the Debtors'

prepetition practices, including with respect to the Bank Accounts maintained with Santander.

**D. Continued Performance of Intercompany Transactions is Warranted and Granting Superpriority Administrative Expense Status to Postpetition Intercompany Claims Is Appropriate**

27.    Continued performance of Intercompany Transactions on the terms and

conditions set forth herein is warranted by the facts and circumstances of these chapter 11 cases

and should be authorized pursuant to section 363 of the Bankruptcy Code.  The foreign Non-

Debtor Affiliates are an important component of the Debtors' corporate enterprise.  Certain of the

Non-Debtor Affiliates generate significant revenue and dividends that flow up to the Debtors.

Consequently, the Debtors' multi-national corporate enterprise is structured on the basis of

ongoing Intercompany Transactions such that, while different entities perform different day-to-

day functions at customer sites across the world, the business runs smoothly as a collective group.

Without authority to continue engaging in Intercompany Transactions on the terms and conditions

set forth herein in the ordinary course of business, the Debtors' continued operations would be

placed in jeopardy.

28.    Moreover, to ensure that each individual Debtor will not fund, at the

expense of its creditors, the operation of another entity, the Debtors request that, pursuant to

sections 503(b)(1), and 507(a)(2) of the Bankruptcy Code, the Court grant superpriority

administrative expense status to all postpetition Intercompany Claims.  If Intercompany Claims

are accorded superpriority administrative expense status, each entity using funds that flow through

the Cash Management System will continue bearing the ultimate responsibility for its ordinary

course transactions with affiliates.  For the reasons set forth above, postpetition Intercompany

Claims should be granted superpriority administrative expense status as set forth herein.

**E. An Extension of Time to Comply with the Requirements of Section 345(b) of the Bankruptcy Code is Warranted to the Extent they Apply to the Bank Accounts**

29.     Section 345 of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes such deposits as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires that the debtor obtain from the "entity with which such money is deposited or invested a bond in favor of the United States [that is] secured by the undertaking of a[n adequate] corporate surety, . . . unless the court for cause orders otherwise." 11 U.S.C. § 345(b). In the alternative, a debtor may require the entity to deposit governmental securities in accordance with 31 U.S.C. § 9303, which provides that when a person is required by law to give a surety bond, such person may instead provide an eligible obligation, designated by the Secretary of the Treasury, as an acceptable substitute for a surety bond. Additionally, the UST Operating Guidelines generally require chapter 11 debtors, among other things, to deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee.

30.     In chapter 11 cases such as these, strict adherence to the requirements of section 345(b) of the Bankruptcy Code would be inconsistent with the value-maximizing purpose of chapter 11 by creating additional administrative expense and burden, and unduly hampering a debtor's ability under section 345(a) to invest money such "as will yield the maximum reasonable net return on such money[.]" 11 U.S.C. § 345(a). As a result, in 1994, to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," Congress amended section 345(b) to provide that its strict investment requirements may be waived or modified if the court so orders "for cause."

16

140 Cong. Rec. H. 10,767 (Oct. 4, 1994). The Debtors submit cause exists here to warrant such relief.

31.     To the extent that the requirements of section 345(b) of the Bankruptcy Code are applicable to the Bank Accounts, the Debtors submit that cause exists under section 345(b) to waive the requirements therein.  As set forth herein, all of the Bank Accounts are maintained with either PNC, Santander, or BofA, all of which are U.S. Trustee authorized depositories and highly-rated, nationally chartered banks subject to supervision by national banking regulators.  Therefore, all of the Bank Accounts are held at stable financial institutions that have executed a UDA with the U.S. Trustee and are insured by the FDIC.

32.     Nevertheless, the Debtors propose to engage with the U.S. Trustee to determine what modifications, if any, to the Bank Accounts and Cash Management System would be appropriate under the circumstances and request, out of an abundance of caution, an interim waiver of the requirements of section 345(b) of the Bankruptcy Code to proceed on this basis.

33.     If, however, the requirements of section 345(b) are not waived as requested above, the Debtors propose to engage in discussions with the U.S. Trustee and the Ad Hoc Group to make other arrangements that are acceptable to the U.S. Trustee and the Ad Hoc Group.  To enable such discussions, the Debtors request a 45-day extension (or such additional time to which the U.S. Trustee may agree) of the time period in which to either come into compliance with section 345(b) of the Bankruptcy Code or to make other arrangements that would be acceptable to the U.S. Trustee and the Ad Hoc Group (without prejudice to the Debtors' rights to request further extensions by motion to this Court).

17

34.     For the foregoing reasons, the relief requested herein is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these chapter 11 cases.  Accordingly, the Court should authorize the relief requested.

### Applicable Financial Institutions Should Be Authorized to Receive, Process, Honor, and Pay Checks Issued and Transfers Requested to Pay Obligations Related to the Cash Management System

35.     The Debtors further request that this Court authorize the Banks to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested by or on behalf of the Debtors relating to the Cash Management System, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable Bank Accounts to cover such payment(s).  The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of Cash Management System.  Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.  Any such financial institution may rely on the representations of such Debtors as to which checks are issued or wire transfers are made (or, as applicable, requested to be issued or made) and authorized to be paid in accordance with this Motion without any duty of further inquiry.  The Debtors also seek authority, but not direction, to issue new postpetition checks or effect new postpetition electronic funds transfers in replacement of any checks or funds transfer requests on account of prepetition obligations relating to the Cash Management System that are dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

### Bankruptcy Rule 6003(b) Has Been Satisfied

36.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a

18

motion to pay all or part of a claim that arose before the filing of the petition" prior to 21 days after the Petition Date.  Fed. R. Bankr. P. 6003(b).  As explained above and in the Richard Declaration, the Debtors would suffer immediate and irreparable harm if the relief sought herein is not promptly granted.  Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

## Request for Bankruptcy Rule 6004(a) and (h) Waivers

37.    To implement the foregoing successfully, the Debtors seek waivers of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above and in the Richard Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## Reservation of Rights

38.    Nothing contained herein is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors or any liens satisfied pursuant to this Motion, (b) an agreement or obligation to pay any claims, (c) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (d) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, (e) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (f) an approval, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

19

### Notice

39.     Notice of this Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware (Attn: Linda Casey, Esq.); (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the District of Delaware; (e) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166 (Attn: Scott Greenberg, Esq., Steven A. Domanowski, Esq., Matthew Williams, Esq., and Jason Goldstein, Esq.), as counsel to the Ad Hoc Group; (f) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899 (Attn: Laura Davis Jones, Esq.), as co-counsel to the Ad Hoc Group; (g) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Ira Dizengoff, Esq. and James Savin, Esq.), as counsel to Apollo Global Management, Inc.; (h) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Brian Resnick, Esq. and Jonah A. Peppiatt, Esq.), as counsel to the First Lien Agent; (i) the Banks; (j) BofA; and (k) any other party entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**").  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).

40.     The Debtors respectfully submit that no further notice is required.  No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

*[Remainder of page intentionally left blank]*

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  September 27, 2022
        Wilmington, Delaware

 

*/s/ Zachary I. Shapiro*
RICHARDS, LAYTON & FINGER, P.A.
Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C. (*pro hac vice* pending)
Jeffrey D. Saferstein (*pro hac vice* pending)
Garrett A. Fail (*pro hac vice* pending)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------------- x
                                                            :
In re                                                       :      Chapter 11
                                                            :
PHOENIX SERVICES TOPCO, LLC, et al.,                        :      Case No. 22–10906 (      )
                                                            :
Debtors.¹                                                   :      (Jointly Administered)
                                                            :
----------------------------------------------------------- x      Re: Docket No. ____
```

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105,
345, 363, 503 AND 507 AND FED. R. BANKR. P. 6003 AND 6004
(I) AUTHORIZING DEBTORS TO (A) CONTINUE USING EXISTING
CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS,
(B) IMPLEMENT ORDINARY COURSE CHANGES TO CASH MANAGEMENT
SYSTEM, AND (C) HONOR CERTAIN RELATED PREPETITION OBLIGATIONS,
(II) AUTHORIZING (A) CONTINUATION OF INTERCOMPANY TRANSACTIONS AND
(B) GRANTING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS FOR
POSTPETITION INTERCOMPANY CLAIMS, (III) EXTENDING TIME TO COMPLY WITH
REQUIREMENTS OF 11 U.S.C. § 345(b), AND (IV) GRANTING RELATED RELIEF**

Upon the motion, dated September 27, 2022 (the "**Motion**")² of Phoenix Services

Topco LLC and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and

debtors in possession (collectively, the "**Debtors**"), for entry of interim and final orders pursuant

to sections 105, 345, 363, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004,

and Local Rule 2015-2, (i) authorizing the Debtors to (a) continue using their existing Cash

Management System, bank accounts (the "**Bank Accounts**"), and business forms, (b) implement

changes to their Cash Management System in the ordinary course of business, including, without

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Phoenix Services Topco, LLC (4517); Phoenix Services Parent, LLC (8023); Phoenix Services Holdings Corp. (1330); Phoenix Services International LLC (4693); Metal Services LLC (8793); Terracentric Materials LLC (0673); Cool Springs LLC (8687); Metal Services Investment LLC (2924); and Phoenix Receivables, LLC (not applicable). The Debtors' mailing address is 4 Radnor Corporate Center, Suite 520, 100 Matsonford Road, Radnor, PA 19087.

² Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

limitation, opening new or closing existing Bank Accounts, and (c) honor certain prepetition obligations related to the Cash Management System, (ii) authorizing the Debtors to (a) continue to engage in the Intercompany Transactions in the ordinary course of business and (b) grant superpriority administrative expense status for postpetition Intercompany Claims, (iii) waiving certain requirements of section 345(b) of the Bankruptcy Code to the extent they apply to the Bank Accounts and the Cash Management System, and (iv) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing to consider the relief requested in the Motion; and upon the Richard Declaration and the record of the hearing; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

2

**IT IS HEREBY ORDERED THAT:**

1.       The Motion is granted on an interim basis to the extent set forth herein.

2.       The Debtors are authorized, but not directed, pursuant to sections 105(a) and 363 of the Bankruptcy Code to continue to manage their cash pursuant to the Cash Management System maintained before the Petition Date, to collect and disburse cash in accordance with the Cash Management System and to make ordinary course changes to their Cash Management System without further order of this Court.

3.       The Debtors are further authorized, but not directed, to (i) designate, maintain, and continue to use their existing Bank Accounts, as listed on **Exhibit 1** annexed hereto, in the names and with the account numbers existing immediately before the Petition Date; (ii) deposit funds in, and withdraw funds from, such Bank Accounts by all usual means, including, without limitation, checks, wire transfers, ACH transfers, and other debits; (iii) pay any Service Obligations and other charges associated with the Bank Accounts and the Cash Management System, whether arising before or after the Petition Date, in an amount not to exceed $20,000 for prepetition amounts, and under the terms of and in accordance with their contractual arrangements with the Debtors; (iv) otherwise perform their obligations under the documents governing the Bank Accounts and the Service Obligations, and (v) treat their prepetition Bank Accounts for all purposes as debtor-in-possession accounts.

4.       The Debtors are authorized on an interim basis to continue the Corporate Credit Card Program, including as to the BofA Cards, in the ordinary course of business and consistent with prepetition practices.  The Debtors are authorized to continue use of the BofA Cards and to pay any outstanding prepetition obligations with respect to the Corporate Credit Card

3

Program not to exceed $600,000, and postpetition obligations with respect to the Corporate Credit Card Program.

5.      The Debtors' credit and debit card providers are authorized to transfer to the Debtors all credit card receivables payable to the Debtors and to deduct from such receivables any undisputed Service Obligations, whether arising before or after the Petition Date, under the terms of an in accordance with their contractual arrangements with the Debtors.

6.      The Banks are authorized, but not obligated or directed, to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, in accordance with the terms of the documents governing the Bank Accounts, and to receive, process, honor, and pay, to the extent sufficient funds are available for deposit in the applicable Bank Accounts to cover such payments, any and all checks, drafts, wires, credit card payments, and ACH transfers issued, presented, or drawn on the Bank Accounts on and after the Petition Date by the holders, makers, or payors thereof, as the case may be.

7.      The Debtors are authorized pursuant to sections 363(c) of the Bankruptcy Code to continue to engage in Intercompany Transactions in the ordinary course of business, *provided*, *that*, any such Intercompany Transactions will be subject to the terms of the DIP Order (as defined below) including, without limitation, the Approved DIP Budget (as defined in the DIP Order), or with the consent of the Ad Hoc Group.

8.      All Intercompany Claims arising after the Petition Date shall be accorded administrative expense status in accordance with sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code; provided that all Intercompany Claims shall be junior and subordinate to any superpriority administrative expense claims or liens granted under the DIP Order, including,

4

without limitation, DIP Superpriority Claims and, DIP Liens, Adequate Protection Superpriority Claims, or First Lien Adequate Protection Liens (each as defined in the DIP Order) (collectively, a "**DIP/AP Claim or Interest**"); and provided further that any Intercompany Claim asserted by Phoenix Services Topco, LLC shall be senior to any unsecured claim, including any administrative expense claims under section 503(b)(1) of the Bankruptcy Code, asserted against Phoenix Services International LLC, and junior and subordinate to any DIP/AP Claim or Interest.

9.     The existing deposit agreements between the Debtors and the Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.  The Debtors and the Banks may, without further order of this Court and subject to the consent of the Ad Hoc Group (which shall not be unreasonably withheld), agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts; *provided*, *however*, that all accounts opened by the Debtors on or after the Petition Date at the Banks shall, for purposes of this Interim Order, be deemed Bank Accounts as if they had been listed on **Exhibit 1** annexed hereto; *provided*, *further*, that any new bank account that the Debtors open shall be at a bank that has executed a Uniform Depository Agreement ("**UDA**") with the U.S. Trustee or at a bank that is willing to immediately execute such an agreement; and *provided*, *further*, that the Debtors will notify the U.S. Trustee and any statutory committee appointed in these chapter 11 cases within fourteen (14) days after opening such account.

10.     Within fourteen (14) days from the date of the entry of this Interim Order, the Debtors shall (a) contact each Bank, (b) provide each Bank with each of the Debtors' tax

identification numbers and the jointly administered case number, and (c) identify each of their Bank Accounts held at such Banks as being held by a debtor-in-possession.

11.     Nothing contained herein shall prevent the Debtors, with the consent of the Ad Hoc Group (which shall not be unreasonably withheld), from closing any of their Bank Account(s) in the ordinary course of business and in accordance with prepetition practices as it may deem necessary and appropriate.  The Banks are authorized to honor the Debtors' requests to close such Bank Accounts, and the Debtors shall give notice of the closure of any such Bank Account to the U.S. Trustee and any statutory committee appointed in these chapter 11 cases within fourteen (14) days of such closure.

12.     The Debtors shall maintain accurate records of all transfers (including Intercompany Transactions) within the Cash Management System so that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors before the Petition Date.

13.     The Debtors are authorized to use their business forms, including checks, without alteration and without the designation "Debtor in Possession" imprinted upon them; *provided, that,* once the Debtors' existing check stock has been used, the Debtors shall use reasonable efforts, when reordering checks, to include the designation "Debtor in Possession" and the jointly administered bankruptcy case number on such checks; *provided*, *further,* that, with respect to checks which the Debtors or their agents print themselves, the Debtors shall, when printing checks, include the "Debtor in Possession" legend and the jointly administered bankruptcy case number on such checks within ten (10) business days of the date of entry of this Interim Order.

14.     To the extent that the Bank Accounts and Cash Management System are inconsistent with the requirements of section 345(b) of the Bankruptcy Code, the Debtors shall

have thirty (30) calendar days (or such additional time as the U.S. Trustee may agree to) from the Petition Date within which either to come into compliance with section 345(b) of the Bankruptcy Code with respect to the Bank Accounts listed on **Exhibit 1** or to make such other arrangements as agreed to by the U.S. Trustee and the Ad Hoc Group.  Such extension is without prejudice to the Debtors' rights to request a further extension or waiver of the requirements of section 345(b) of the Bankruptcy Code at a later date.

15.     The Banks are authorized to accept and rely on all representations made by the Debtors with respect to whether any checks, drafts, wires, or ACH transfers or other payment order drawn or issued by the Debtors prior to, on, or subsequent to the Petition Date, should be honored or dishonored pursuant to this Interim Order or any other order of this Court, without any duty to inquire otherwise.  Such Banks and financial institutions shall not have liability to any party as a result of their reliance on any representations of the Debtors as provided herein, nor shall any Bank or financial institution honoring any check or other item as a result of a good faith error be liable to any party therefor.

16.     The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Interim Order.

17.     Notwithstanding anything in the Motion or this Interim Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved

hereunder, shall be subject in all respects to the DIP Order, including, without limitation, the Approved DIP Budget (as defined in the DIP Order).

18.    Any payments or transactions contemplated under this Interim Order shall be subject to any consent requirements or any restrictions under the DIP Credit Agreement or DIP Order, and shall require the consent of the Ad Hoc Group if not provided for in the Approved DIP Budget.

19.    Nothing contained in the Motion or this Interim Order or any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) an agreement or obligation to pay any claims, (c) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (d) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, (e) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (f) an approval, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

20.    Despite the use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor.

21.    The requirements of Bankruptcy Rule 6003(b) have been satisfied.

22.    Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

23.    Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

24.    The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Interim Order.

8

25.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

26.     The Final Hearing to consider the relief requested in the Motion shall be held on **_____, 2022, at _____** (Prevailing Eastern Time) and any objections or responses to the Motion shall be filed and served on or prior to **_____, 2022 at 4:00 p.m.** (Prevailing Eastern Time).

RLF1 27986985v.1

**<u>Exhibit 1</u>**

**List of Bank Accounts**

RLF1 27986985V.1

| Bank Name | Account Holder | Type of Account | Last 4 Digits of Account No. |
|---|---|---|---|
| PNC Bank | Metal Services, LLC dba Phoenix Services, LLC | Operating Account | x9534 |
| PNC Bank | Metal Services, LLC dba Phoenix Services, LLC | ZBA Health Claims | x0732 |
| PNC Bank | Metal Services, LLC dba Phoenix Services, LLC | Money Market Account | x9518 |
| PNC Bank | Metal Services, LLC dba Phoenix Services, LLC | ZBA Payroll Account | x9526 |
| PNC Bank | Metal Services, LLC dba Phoenix Services, LLC | ZBA Lockbox Account | x9542 |
| PNC Bank | Phoenix Services Topco LLC | Depository Account | x5029 |
| PNC Bank | Phoenix Receivables LLC | Dormant Account | x1725 |
| PNC Bank | Phoenix Receivables LLC | Dormant Account | x1784 |
| PNC Bank | Phoenix Receivables LLC | Dormant Account | x1768 |
| Bank of America | Phoenix Services International LLC | Foreign Account | x3265 |
| Santander Bank | Phoenix Services LLC | Dormant Account | x2296 |
| Santander Bank | Terracentric Materials LLC | Dormant Account | X1667 |

**Exhibit B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
----------------------------------------------------------- x
                                                            :
In re                                                       :     Chapter 11
                                                            :
PHOENIX SERVICES TOPCO LLC, et al.,                         :     Case No. 22–10906 (      )
                                                            :
Debtors.¹                                                   :     (Jointly Administered)
                                                            :
----------------------------------------------------------- x     Re: Docket No. ____
```

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105,
345, 363, 503 AND 507 AND FED. R. BANKR. P. 6003 AND 6004
(I) AUTHORIZING DEBTORS TO (A) CONTINUE USING EXISTING
CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS,
(B) IMPLEMENT ORDINARY COURSE CHANGES TO CASH MANAGEMENT
SYSTEM, AND (C) HONOR CERTAIN RELATED PREPETITION OBLIGATIONS,
(II) AUTHORIZING (A) CONTINUATION OF INTERCOMPANY TRANSACTIONS AND
(B) GRANTING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS FOR
POSTPETITION INTERCOMPANY CLAIMS, (III) EXTENDING TIME TO COMPLY WITH
REQUIREMENTS OF 11 U.S.C. § 345(b), AND (IV) GRANTING RELATED RELIEF**

Upon the motion, dated September 27, 2022 (the "**Motion**")² of Phoenix Services

Topco LLC and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and

debtors in possession (collectively, the "**Debtors**"), for entry of interim and final orders pursuant

to sections 105, 345, 363, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004,

and Local Rule 2015-2, (i) authorizing the Debtors to (a) continue using their existing Cash

Management System, bank accounts (the "**Bank Accounts**"), and business forms, (b) implement

changes to their Cash Management System in the ordinary course of business, including, without

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Phoenix Services Topco, LLC (4517); Phoenix Services Parent, LLC (8023); Phoenix Services Holdings Corp. (1330); Phoenix Services International LLC (4693); Metal Services LLC (8793); Terracentric Materials LLC (0673); Cool Springs LLC (8687); Metal Services Investment LLC (2924); and Phoenix Receivables, LLC ([●]).  The Debtors' mailing address is 4 Radnor Corporate Center, Suite 520, 100 Matsonford Road, Radnor, PA 19087.

² Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

limitation, opening new or closing existing Bank Accounts, and (c) honor certain prepetition obligations related to the Cash Management System, (ii) authorizing the Debtors to (a) continue to engage in the Intercompany Transactions in the ordinary course of business and (b) grant superpriority administrative expense status for postpetition Intercompany Claims, (iii) waiving certain requirements of section 345(b) of the Bankruptcy Code to the extent they apply to the Bank Accounts and the Cash Management System, and (iv) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held an interim hearing and, if necessary, a final hearing to consider the relief requested in the Motion (the "**Hearings**"); and this Court having granted interim relief on the Motion (Docket No. [●]); and upon the Richard Declaration (Docket No. [●]) and the record of the Hearings; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

2

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on a final basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a) and 363 of the Bankruptcy Code to continue to manage their cash pursuant to the Cash Management System maintained before the Petition Date, to collect and disburse cash in accordance with the Cash Management System and to make ordinary course changes to their Cash Management System without further order of this Court.

3.      The Debtors are further authorized, but not directed, to (i) designate, maintain, and continue to use their existing Bank Accounts, as listed on **<u>Exhibit 1</u>** annexed hereto, in the names and with the account numbers existing immediately before the Petition Date; (ii) deposit funds in, and withdraw funds from, such Bank Accounts by all usual means, including, without limitation, checks, wire transfers, ACH transfers, and other debits; (iii) pay any Service Obligations and other charges associated with the Bank Accounts and the Cash Management System, whether arising before or after the Petition Date, in an amount not to exceed $20,000 for prepetition amounts, and under the terms of and in accordance with their contractual arrangements with the Debtors; (iv) otherwise perform their obligations under the documents governing the Bank Accounts and the Service Obligations, and (v) treat their prepetition Bank Accounts for all purposes as debtor-in-possession accounts.

4.      The Debtors are authorized on a final basis to continue the Corporate Credit Card Program, including as to the BofA Cards, in the ordinary course of business and consistent with prepetition practices.  The Debtors are authorized to continue use of the BofA Cards and to pay any outstanding prepetition obligations with respect to the Corporate Credit Card Program not

to exceed $600,000, and postpetition obligations with respect to the Corporate Credit Card Program.

5.      The Debtors' credit and debit card providers are authorized to transfer to the Debtors all credit card receivables payable to the Debtors and to deduct from such receivables any undisputed Service Obligations, whether arising before or after the Petition Date, under the terms of an in accordance with their contractual arrangements with the Debtors.

6.      The Banks are authorized, but not obligated or directed, to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, in accordance with the terms of the documents governing the Bank Accounts, and to receive, process, honor, and pay, to the extent sufficient funds are available for deposit in the applicable Bank Accounts to cover such payments, any and all checks, drafts, wires, credit card payments, and ACH transfers issued, presented, or drawn on the Bank Accounts on and after the Petition Date by the holders, makers, or payors thereof, as the case may be.

7.      The Debtors are authorized pursuant to section 363(c) of the Bankruptcy Code to continue to engage in Intercompany Transactions in the ordinary course of business, *provided*, *that*, any such Intercompany Transactions will be subject to the terms of the DIP Order (as defined below) including, without limitation, the Approved DIP Budget (as defined in the DIP Order), or with the consent of the Ad Hoc Group.

8.      All Intercompany Claims arising after the Petition Date shall be accorded administrative expense status in accordance with sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code; provided that all Intercompany Claims shall be junior and subordinate to any superpriority administrative expense claims or liens granted under the DIP Order, including,

4

without limitation, DIP Superpriority Claims and, DIP Liens, Adequate Protection Superpriority Claims, or First Lien Adequate Protection Liens (each as defined in the DIP Order) (collectively, a "**DIP/AP Claim or Interest**"); and provided further that any Intercompany Claim asserted by Phoenix Services Topco, LLC shall be senior to any unsecured claim, including any administrative expense claims under section 503(b)(1) of the Bankruptcy Code, asserted against Phoenix Services International LLC, and junior and subordinate to any DIP/AP Claim or Interest.

9.      The existing deposit agreements between the Debtors and the Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.  The Debtors and the Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts; *provided*, *however*, that all accounts opened by the Debtors on or after the Petition Date at the Banks shall, for purposes of this Final Order, be deemed Bank Accounts as if they had been listed on **Exhibit 1** annexed hereto; *provided*, *further*, that any new bank account that the Debtors open shall be at a bank that has executed a Uniform Depository Agreement ("**UDA**") with the U.S. Trustee or at a bank that is willing to immediately execute such an agreement; and *provided*, *further*, that the Debtors will notify the U.S. Trustee and any statutory committee appointed in these chapter 11 cases within fourteen (14) days after opening such account.

10.      Nothing contained herein shall prevent the Debtors, with the consent of the Ad Hoc Group (which shall not be unreasonably withheld), from closing any of their Bank Account(s) in the ordinary course of business and in accordance with prepetition practices as it

5

may deem necessary and appropriate. The Banks are authorized to honor the Debtors' requests to close such Bank Accounts, and the Debtors shall give notice of the closure of any such Bank Account to the U.S. Trustee and any statutory committee appointed in these chapter 11 cases within fourteen (14) days of such closure.

11.     The Debtors shall maintain accurate records of all transfers (including Intercompany Transactions) within the Cash Management System so that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors before the Petition Date.

12.     The Debtors are authorized to use their existing business forms, including checks, without alteration and without the designation "Debtor in Possession" imprinted upon them; *provided*, *that*, once the Debtors' existing check stock has been used, the Debtors shall use reasonable efforts, when reordering checks, to include the designation "Debtor in Possession" and the jointly administered bankruptcy case number on such checks; *provided*, *further*, that, with respect to checks which the Debtors or their agents print themselves, the Debtors shall, when printing checks, include the "Debtor in Possession" legend and the jointly administered bankruptcy case number on such checks.

13.     The Banks are authorized to accept and rely on all representations made by the Debtors with respect to whether any checks, drafts, wires, or ACH transfers or other payment order drawn or issued by the Debtors prior to, on, or subsequent to the Petition Date, should be honored or dishonored pursuant to this Final Order, without any duty to inquire otherwise. Such Banks and financial institutions shall not have liability to any party as a result of their reliance on any representations of the Debtors as provided herein, nor shall any Bank or financial institution honoring any check or other item as a result of a good faith error be liable to any party therefor.

14.     The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Final Order.

15.     To the extent applicable, the requirements of section 345(b) of the Bankruptcy Code are waived on a final basis.  Notwithstanding anything in the Motion or this Final Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to the DIP Order, including, without limitation, the Approved DIP Budget (as defined in the DIP Order).

16.     Any payments or transactions contemplated under this Final Order shall be subject to any consent requirements or any restrictions under the DIP Credit Agreement or DIP Order, and shall require the consent of the Ad Hoc Group if not provided for in the Approved DIP Budget.

17.     Nothing contained in the Motion or this Final Order or any payment made pursuant to the authority granted by this Final Order is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) an agreement or obligation to pay any claims, (c) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (d) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (e) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law, or (f) an approval, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

7

18.     Despite the use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor.

19.     Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

20.     Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

21.     The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Final Order.

22.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

RLF1 27986985V.1

## __Exhibit 1__

**List of Bank Accounts**

| Bank Name | Account Holder | Type of Account | Last 4 Digits of Account No. |
|---|---|---|---|
| PNC Bank | Metal Services, LLC dba Phoenix Services, LLC | Operating Account | x9534 |
| PNC Bank | Metal Services, LLC dba Phoenix Services, LLC | ZBA Health Claims | x0732 |
| PNC Bank | Metal Services, LLC dba Phoenix Services, LLC | Money Market Account | x9518 |
| PNC Bank | Metal Services, LLC dba Phoenix Services, LLC | ZBA Payroll Account | x9526 |
| PNC Bank | Metal Services, LLC dba Phoenix Services, LLC | ZBA Lockbox Account | x9542 |
| PNC Bank | Phoenix Services Topco LLC | Depository Account | x5029 |
| PNC Bank | Phoenix Receivables LLC | Dormant Account | x1725 |
| PNC Bank | Phoenix Receivables LLC | Dormant Account | x1784 |
| PNC Bank | Phoenix Receivables LLC | Dormant Account | x1768 |
| Bank of America | Phoenix Services International LLC | Foreign Account | x3265 |
| Santander Bank | Phoenix Services LLC | Dormant Account | x2296 |
| Santander Bank | Terracentric Materials LLC | Dormant Account | X1667 |

**<u>Exhibit C</u>**

**Cash Management System Diagram**

## Cash Management System




**Customers**

**Revolver and Term Loans**

**Intercompany Trade**

**Phoenix Services LLC**
Santander Bank
Escheated Account
Acct. 2296

**Phoenix Services Topco LLC**
PNC Bank
Depository Account
Acct. 5029

**Metal Services, LLC dba Phoenix Services, LLC**
PNC Bank
Lockbox Acct. 9542

**Phoenix Service Europe Cooperatief UA**
Bank Account

**Terracentric Materials LLC**
Santander Bank
Depository Account
Acct. 1667

**Metal Services, LLC dba Phoenix Services, LLC**
PNC Bank
Money Market Account
Acct. 9518

**Metal Services, LLC dba Phoenix Services, LLC**
PNC Bank
Operating Acct. 9534

**Phoenix Services International LLC**
Bank of America
International Acct. 3265

**Bank Accounts in Brazil**

**Bank Accounts in EMEA**

**Phoenix Receivables LLC**
PNC Bank
Dormant Account Acct. 1725

**Metal Services, LLC dba Phoenix Services, LLC**
PNC Bank
Health Care Account
Acct. 0732

**Metal Services, LLC dba Phoenix Services, LLC**
PNC Bank
Payroll Acct. 9526

**Phoenix Receivables LLC**
PNC Bank
Dormant Account Acct. 1768

**Phoenix Receivables LLC**
PNC Bank
Dormant Account Acct. 1784

**Vendors / Suppliers**

**Payroll, 401k, & Health Care Claims**

Cash funding: intercompany loans and settlements

**Account Type Legend**

| | | |
|---|---|---|
| Debtor Entity | Non-Debtor | Zero Balance Account |

**Funds Flow Type Legend**

Automatic / ZBA transfer
Manual transfer

1. Accounts with no funds flow type have no activity or minimal activity
2. Account #9518 is under review to be designated as the Utilities Adequate Assurance Deposit Account
3. All non-US accounts are not included in diagram; numerous EMEA Banks (NL, France, Belgium, Poland, Romania, Slovakia, South Africa, UAE)