**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| Phoenix Services Topco, LLC, et al., | ) | Case No 22-10906 (MFW) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**STATEMENT OF FINANCIAL AFFAIRS FOR**

**Phoenix Services International LLC**

**Case No: 22-10909 (MFW)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PHOENIX SERVICES TOPCO, LLC, et al., | ) | Case No. 22-10906 (MFW) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |

## GLOBAL NOTES AND STATEMENTS OF LIMITATION, METHODOLOGY, AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

**General**

The Schedules of Assets and Liabilities (collectively, the "<u>Schedules</u>") and the Statements of Financial Affairs (collectively, the "<u>Statements</u>" and, together with the Schedules, the "<u>Schedules and Statements</u>") filed by Phoenix Services Topco, LLC ("<u>Phoenix</u>" or the "<u>Company</u>") and its debtor affiliates as debtors and debtors in possession in the above-captioned chapter 11 cases (the "<u>Debtors</u>") pending in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") were prepared, pursuant to section 521 of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), by management of the Debtors, with the assistance of the Debtors' advisors.

Although the Debtors' management has made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances, based on information available at the time of preparation, subsequent information or discovery may result in material changes to these Schedules and Statements, and inadvertent errors, inaccuracies, or omissions may have occurred.

The Schedules and Statements are unaudited and subject to potential adjustment. Because the Schedules and Statements contain unaudited information and remain subject to further review, verification, and potential adjustment, there can be no assurance that these Schedules and Statements are complete. Nothing contained in the Schedules and Statements shall constitute a waiver of any right of the Debtors, and the Debtors reserve all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Phoenix Services Topco, LLC (4517); Phoenix Services Parent, LLC (8023); Phoenix Services Holdings Corp. (1330); Phoenix Services International LLC (6493); Metal Services LLC (8793); Terracentric Materials LLC (0673); Cool Springs LLC (8687); Metal Services Investment LLC (2924); and Phoenix Receivables, LLC (not applicable). The Debtors' mailing address is 4 Radnor Corporate Center, Suite 520, 100 Matsonford Road, Radnor, Pennsylvania 19087.

including, but not limited to, the right to dispute or otherwise assert offsets or defenses to any claim reflected in the Schedules and Statements as to amount, liability, or classification, or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."

The Schedules and Statements have been signed by Robert A. Richard, Chief Financial Officer and Secretary of Phoenix Services Topco, LLC and its Debtor Affiliates. Accordingly, in reviewing and signing the Schedules and Statements, Mr. Richard necessarily relied upon the efforts, statements, and representations of the Debtors' other personnel and professionals. Mr. Richard has not (and could not have) personally verified the accuracy of each such statement and representation, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and their addresses. The Debtors, and their officers, employees, agents, attorneys and financial advisors shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating or delivering the information contained in the Schedules and Statements. Except as expressly required by the Bankruptcy Code, the Debtors and their officers, employees, agents, attorneys and financial advisors expressly do not undertake any obligation to update, modify, revise or re-categorize the information provided in the Schedules and Statements or to notify any third party should the information be updated, modified, revised or recategorized. The Debtors, on behalf of themselves, their officers, employees, agents and advisors disclaim any liability to any third party arising out of or related to the information contained in the Schedules and Statements and reserve all rights with respect thereto.

The Schedules and Statements and Global Notes (as defined below) should not be relied upon by any persons for information relating to current or future financial conditions, events, or performances of the Debtors.

These Global Notes and Statements of Limitation, Methodology, and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Global Notes") are incorporated by reference in, and comprise an integral part of, all of the Schedules and Statements, and should be referred to and considered in connection with any review of the Schedules and Statements.[2]

**Description of the Cases and Reporting Date**

On September 27, 2022 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases are being

---

[2] These Global Notes supplement and are in addition to any specific notes contained in each Debtor's Schedules or Statements. The fact that the Debtors have prepared a Global Note with respect to any of Debtor's individual Schedules and Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any of the Debtors' other Schedules and Statements, as appropriate. Disclosure of information in one Schedule, one Statement, or an exhibit or attachment to a Schedule or Statement, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedule, Statement, exhibit, or attachment.

jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United State Bankruptcy Court for the District of Delaware under Case No. 22-10906 (MFW).  On October 11, 2022, the U.S. Trustee for Region 3 appointed an official committee of unsecured creditors, which was reconstituted on October 18, 2022.  No trustee or examiner has been appointed in these chapter 11 cases.  Additional information about these chapter 11 cases, court filings, and claims information is available on the Debtors' restructuring website: http://cases.stretto.com/phoenix.

The asset and liability information provided herein, except as otherwise noted, represents the asset and liability data of the Debtors as of August 31, 2022 (the "Reporting Date").

**Basis of Presentation**

The Company is the sole owner of Phoenix Services Parent, LLC, which is sole owner of Phoenix Services Holdings Corp., which is sole owner of Phoenix Services International LLC, which is sole owner of Metal Services LLC.  Metal Services LLC is the direct or indirect parent of all of the other Debtors in these cases as well as the non-Debtor affiliates.  Its consolidated financial statements were audited annually.  Combining the assets and liabilities set forth in the Debtors' Schedules and Statements would result in amounts that would be substantially different from financial information that would be prepared on a consolidated basis under Generally Accepted Accounting Principles ("GAAP").  Therefore, these Schedules and Statements do not purport to represent financial statements prepared in accordance with GAAP nor are they intended to fully reconcile to the consolidated financial statements prepared by the Debtors.  Unlike the consolidated financial statements, these Schedules and Statements reflect the assets and liabilities of each separate Debtor, except where otherwise indicated.  Information contained in the Schedules and Statements has been derived from the Debtors' books and records.

Moreover, given, among other things, the uncertainty surrounding the collection and ownership of certain assets and the valuation and nature of certain liabilities, to the extent a Debtor shows more assets than liabilities, it is not an admission that the Debtor was solvent as of the Petition Date or at any time prior thereto.  Likewise, to the extent a Debtor shows more liabilities than assets, it is not an admission that the Debtor was insolvent at the Petition Date or any time prior thereto.

**Amendment**

While reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements, inadvertent errors or omissions may exist.  The Debtors reserve all rights to amend and/or supplement the Schedules and Statements from time to time as is necessary or appropriate.

### General Disclosures Applicable to Schedules and Statements

1.    **Causes of Action**.  Despite their reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules and Statements.  The Debtors reserve all of their rights with respect to any claims or causes of action (including avoidance actions), controversy, right of setoff,

cross-Claim, counter-Claim, or recoupment and any Claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity, or pursuant to any other theory of law (collectively, "Causes of Action") they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any Claims or Causes of Action or in any way prejudice or impair the assertion of such Claims or Causes of Action.

2.  **Recharacterization**.  The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.  However, the Debtors may have improperly characterized, classified, categorized, designated, or omitted certain items.  The Debtors reserve all of their rights to recharacterize, reclassify, recategorize, redesignate, add or delete items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

3.  **Claim Designations**.  The Debtors reserve all of their rights to dispute, and to assert setoff rights, counterclaims, and defenses to any claim reflected on their Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, and classification, and to otherwise subsequently designate any claim as "contingent," "unliquidated," or "disputed."

4.  **Unliquidated Claim Amounts**.  Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

5.  **Undetermined Amounts.**  The description of an amount as "undetermined" is not intended to reflect upon the materiality of such amount.

6.  **Court Orders.**  Pursuant to certain interim and final "first day" orders entered by the Bankruptcy Court (the "First Day Orders"), the Debtors were authorized (but not directed) to pay, among other things, certain prepetition claims of employees, insurance related obligations, critical vendors, and taxing authorities.  Accordingly, these liabilities may have been or may be satisfied in accordance with such orders and therefore generally are not listed in the Schedules and Statements.  Regardless of whether such claims are listed in the Schedules and Statements, to the extent such claims are paid pursuant to an order of the Bankruptcy Court (including the First Day Orders), the Debtors reserve all rights to amend or supplement their Schedules and Statements or object to scheduled amounts or proofs of claim as is necessary or appropriate.  Nothing herein shall be deemed to alter the rights of any party in interest to contest a payment made pursuant to a First Day Order that preserves the right to dispute any amounts required to be paid to satisfy prepetition claims.

7.  **Valuation**.  In many instances, current market valuations are not maintained by or readily available to the Debtors.  It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain current market valuations of all of their

assets. Accordingly, unless otherwise indicated, net book values as of the Reporting Date are reflected on the Schedules and Statements.  Exceptions to this include operating cash, cash equivalents, and certain other assets.  Operating cash is presented as bank balances as of the Petition Date.  Certain other assets, such as investments in subsidiaries and other intangible assets, are listed at undetermined amounts, as the net book values may vary materially from fair market values.  Amounts ultimately realized may vary from net book value (or other value so ascribed) and such variance may be material.  Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the value of each asset set forth herein.  In addition, the amounts shown for total liabilities exclude items identified as "unknown" or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements.

8. **Liabilities.**  The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements.  As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change.  The Debtors reserve the right to amend the Schedules and Statements or object to scheduled amounts or proofs of claim as they deem appropriate in this regard.

9. **Excluded Assets and Liabilities**.  The Debtors believe that they have identified, but did not necessarily value, all material categories of assets and liabilities in the Schedules and Statements.  The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including accrued salaries, employee benefit accruals, paid time off, accounts payable credit balances, and deferred gains.  The Debtors also have excluded rejection damage claims of counterparties to executory contracts and unexpired leases that may be rejected (if any), to the extent such damage claims exist.  In addition, certain immaterial assets and liabilities may have been excluded.

10. **Personally Identifiable Information**.  In accordance with the relief granted in the Creditor Matrix Order (Docket No. 54), certain personally identifiable information, such as mailing addresses of individuals, has been redacted from the Schedules and Statements.

11. **Leases**.  The Debtors have not included in the Schedules and Statements the future obligations of any operating leases.  Additionally, the Debtors have not included in the Schedules any right-of-use operating lease assets or liabilities related to FASB Accounting Standards Update 2016-2 because the Debtors do not possess any ownership interest in the corresponding properties and believe that the addition of these items would be cumbersome and unnecessary for understanding the value of the Debtors' estates.  To the extent that there was an amount outstanding as of the Petition Date, the creditor has been included on Schedule E/F of the Schedules.

12. **Contingent Assets**.  The Debtors believe that they may possess certain claims and causes of action against various parties.  The Debtors may also possess contingent claims in the form of various avoidance actions they could commence under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws.  The Debtors, despite reasonable efforts, may not have set forth all of their causes of action against third parties as assets in their Schedules and Statements. The Debtors reserve all of their rights with respect to any claims, causes of action, or avoidance actions they may have and nothing contained in these Global Notes or the

Schedules and Statements shall be deemed a waiver of any such claims, avoidance actions, or causes of action or in any way prejudice or impair the assertion of such claims.

Additionally, prior to the Petition Date, each Debtor, as plaintiff, may have commenced various lawsuits in the ordinary course of its business against third parties seeking monetary damages. Refer to each Statement, Part 3 Question 7, for lawsuits commenced prior to the Petition Date in which a Debtor was a plaintiff.

13.     **Intercompany Accounts**. The Debtors maintain intercompany accounts in their books and records that record transfers of cash between Phoenix affiliates. Although efforts have been made to attribute these transactions to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute such transactions to a different legal entity, as is necessary or appropriate. For additional information regarding the Debtors' intercompany transactions and related cash management protocols, please refer to the *Motion of Debtors pursuant to 11 U.S.C. §§ 105, 345, 363, 503, and 507 and Fed. R. Bankr. P. 6003 and 6004 for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Using Existing Cash Management System, Bank Accounts, and Business Forms, (B) Implement Ordinary Course Changes to Cash Management System, and (C) Honor Certain Related Prepetition Obligations, (II) Authorizing (A) Continuation of Intercompany Transactions and (B) Granting Superpriority Administrative Expense Status for Postpetition Intercompany Claims, (III) Extending Time to Comply with Requirements of 11 U.S.C. § 345(b), and (IV) Granting Related relief* (Docket No. 11) (the "Cash Management Motion").

Receivables and payables among the Debtors in these cases (each an "Intercompany Receivable" or "Intercompany Payable") are reported in the Schedules based upon the gross intercompany balances. To the extent that a Debtor owes an Intercompany Payable, it is reported on Schedule F as a liability of such Debtor. To the extent that a Debtor has an Intercompany Receivable, it is reported on Schedule B as an asset of such Debtor.

14.     **Guarantees and Other Secondary Liability Claims**. The Debtors have used reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, "Guarantees") in their executory contracts, unexpired leases, secured financings, debt instruments, and other agreements. Where such Guarantees have been identified, they have been included in the relevant Schedule H for the Debtor or Debtors affected by such Guarantees. However, certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements may have been inadvertently omitted. The Debtors may identify additional guarantees as they continue their review of their books and records, executory contracts, unexpired leases, secured financing, debt instruments, and other such agreements, and will amend their Schedules and Statements accordingly.

15.     **Intellectual Property Rights**. Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.

WEIL 98891416V.4

The Debtors have made every effort to attribute intellectual property to the rightful Debtor owner, however, in some instances, intellectual property owned by one Debtor may, in fact, be owned by another Debtor or non-Debtor. Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

16. **Executory Contracts**. The Debtors have not set forth executory contracts as assets in the Schedules and Statements. The Debtors' executory contracts have been set forth in Schedule G. In addition, the businesses of the Debtors are complex—the Debtors have made diligent attempts to properly identify all executory contracts and unexpired leases, but inadvertent errors, omissions, or over-inclusion may have occurred.

17. **Mechanics' Liens**. The inventories, property, and equipment listed in the Statements and Schedules are presented without consideration of any asserted mechanics', materialmen, or similar liens.

18. **Estimates**. To prepare and file the Schedules as close to the Petition Date as possible, management was required to make certain estimates and assumptions that affected the reported amounts of these assets and liabilities. The Debtors reserve all rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

19. **Fiscal Year**. Each Debtor's fiscal year ends on December 31.

20. **Currency**. Unless otherwise indicated, all amounts are reflected in U.S. dollars.

21. **Property and Equipment**. Unless otherwise indicated, owned property (including real property) and equipment are stated at net book value. The Debtors may lease furniture, fixtures, and equipment from certain third party lessors. Any such leases are set forth in the Schedules and Statements. Nothing in the Schedules and Statements is or should be construed as an admission as to the determination of the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to same.

22. **Claims of Third-Party Related Entities**. While the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to such parties. Therefore, to the extent that the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered disputed, whether or not they are designated as such.

23. **Interest in Subsidiaries and Affiliates**. The Company is the sole owner of Phoenix Services Parent, LLC, which is sole owner of Phoenix Services Holdings Corp., which is sole owner of Phoenix Services International LLC, which is sole owner of Metal Services LLC. Metal Services LLC owns directly or indirectly all of the equity interest in 28 subsidiaries and affiliates, comprised of 4 Debtors and 24 non-Debtors. Interests in subsidiaries arise from stock ownership or ownership through a membership interest. Each Debtor's Schedule A/B 15 or Statement 25 schedules its ownership interests, if any, in subsidiaries and affiliates. Assets such

as investments in subsidiaries are listed as undetermined amounts as of the Petition Date because the book values may materially differ from fair market values.

24. **Umbrella or Master Agreements**. Contracts listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors. Where relevant, such agreements may have been listed in the Schedules and Statements of only the Debtor that signed the original umbrella or master agreement.

25. **Other Paid Claims**. To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Schedules and Statements, and shall be enforceable by all parties, subject to Bankruptcy Court approval. To the extent the Debtors pay any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

26. **Setoffs and Recoupment**. The Debtors routinely take and are subject to setoffs with customers and vendors in the ordinary course of business. Setoffs in the ordinary course can result from various items including, but not limited to, intercompany transactions, pricing discrepancies, returns, refunds, royalties, chargebacks, rebates, discounts, and disputes between the Debtors and their customers or vendors. These setoffs are consistent with the ordinary course of business in the Debtors' industry and can be particularly voluminous, unduly burdensome, and costly for the Debtors to regularly document. Some amounts listed may have been affected by setoffs taken of which the Debtors are not yet aware. The Debtors reserve all rights to challenge any setoff and/or recoupment rights which may be asserted.

27. **Insiders**. For purposes of the Schedules and Statements, the Debtors define "insiders" as (a) officers, directors, and anyone in control of a corporate debtor and their relatives; and (b) affiliates of the Debtor and insiders of such affiliates. Entities listed as "insiders" have been included for informational purposes and their inclusion shall not constitute an admission that those entities are insiders for purposes of Bankruptcy Code section 101(31). The listing of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed as an admission of any fact, right, claim, or defense and all such rights, claims, and defenses are hereby expressly reserved. Information regarding the individuals listed as insiders in the Schedules and Statements has been included for informational purposes only and such information may not be used for: (1) the purposes of determining (a) control of the Debtors; (b) the extent to which any individual exercised management responsibilities or functions; (c) corporate decision-making authority over the Debtors; or (d) whether such individual could successfully argue that he or she is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability; or (2) any other purpose. In addition, the Debtors used the best information available to them to determine the list of former directors and officers reflected in the Schedules and Statements, and reserve all rights to modify or amend such list.

28. **Indemnification**. Section 7.2 of the Limited Liability Company Agreement of the Company, effective as of May 22, 2018 (the "<u>Agreement</u>"), provides for indemnification, on the particular terms set forth therein, for Protected Persons (as defined in the Agreement), which

8

includes the Managers and Members of the Company, and officers of the Company (each, an "Indemnitee") from and against any and all claims, liabilities, damages, losses, costs and expenses that are incurred by any Indemnitee, and arise out of, are related to, or are in connection with (i) the affairs or operations of the Company or the performance by such Indemnitee of any of the Indemnitee's responsibilities under the Agreement, and (ii) the service at the request of the Company by such Indemnitee as a partner, member, manager, director, officer, trustee, employee or agent of any other Person (as defined in the Agreement); provided, however, that the Indemnitee (A) acted in good faith and in a manner reasonably believed to be in the best interests of the Company, (B) did violate any fiduciary duties and (C) with respect to any criminal action or proceeding, had no reasonable cause to believe such Indemnitee's conduct was unlawful. Certain other Debtors also provide indemnification to certain such persons. The Debtors have not reached a determination as to whether certain potentially indemnified persons are ineligible for indemnification under the terms of the Agreement and such persons are therefore listed on Phoenix's Schedule E/F. To the extent that Phoenix has entered into separate contracts with certain directors and officers and former directors and officers, agreeing to indemnify them in certain circumstances according to the particular terms and conditions set forth in those contracts, such contracts are listed on Phoenix's Schedule G. The Debtors have not reached a determination as to whether the persons who are parties to these contracts are eligible for indemnification. Consequently, the Debtors have separately listed on Schedule G all contracts with such persons, but Debtors reserve all rights with respect thereto, including the right to assert that the individual is not entitled to indemnification and that the provisions do not constitute executory contracts.

29.     **Payments**. The financial affairs and businesses of the Debtors are complex. Prior to the Petition Date, the Debtors maintained a cash management and disbursement system in the ordinary course of their businesses (the "Cash Management System") (as described in the Cash Management Motion). Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute such payment to a different legal entity, as is necessary or appropriate. Payments made are listed by the legal entity making such payment notwithstanding that many such payments may have been made on behalf of another legal entity.

30.     **Totals**. All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements. To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total. The description of an amount as "unknown," "unliquidated," or "undetermined" is not intended to reflect upon the materiality of such amount. To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in these Schedules are inclusive of each Debtor's guarantor obligations.

**Specific Notes Regarding Schedule A/B**

1.     **Schedule A/B, Part 1, Question 3 - Checking, savings, or other financial accounts, CDs, etc**. Schedule A/B, Part 1, Question 3 lists closing bank balances as of the Reporting Date.

2. **Schedule A/B, Part 2, Questions 5-8 – Deposits and prepayments**. Certain prepaid or amortized assets are listed in Part 2 in accordance with the Debtors' books and records. The amounts listed in Part 2 do not necessarily reflect assets the Debtors will be able to collect or realize. The amounts listed in Part 2 include, among other things, prepaid rent, prepaid IT maintenance, prepaid insurance, and prepaid professional expenses.

3. **Schedule A/B Part 3, Questions 10-12 – Accounts receivable**. The Debtors' accounts receivable information includes receivables from the Debtors' customers, vendors, or other outside parties, which are calculated net of any amounts that, as of the Reporting Date, may be owed to such parties in the form of offsets or other price adjustments pursuant to the Debtors' customer programs and day-to-day operations or may, in the Debtors' opinion, be difficult to collect from such parties due to the passage of time or other circumstances. The accounts receivable balances in this section exclude intercompany related receivables.

4. **Schedule A/B, Part 4, Question 15 – Stock and interests in incorporated and unincorporated businesses**. See Schedule A/B, Part 4, Question 15 for additional businesses the Debtors were a parent of or owned a significant interest in.

5. **Schedule A/B, Part 7, Question 39 - Office equipment**. Certain of the Debtors' office equipment, furnishings, and supplies are not capitalized based on its accounting policies and procedures. These assets are not listed herein.

6. **Schedule A/B, Part 7, Question 40 / Schedule A/B, Part 8, Question 50 - Business equipment and spare parts**. Certain of the Debtors' machinery, fixtures, equipment, and supplies used in business are not capitalized based on its accounting policies and procedures. These assets are not listed herein.

**Specific Notes Regarding Schedule D**

Except as otherwise agreed pursuant to a stipulation or agreed order or general order entered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D of any Debtor. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument (including, without limitation, any intercompany agreement) related to such creditor's claim. Further, while the Debtors have included the results of Uniform Commercial Code searches, the listing of such results is not nor shall it be deemed an admission as to the validity of any such lien. Conversely, the Debtors made reasonable, good faith efforts to include all liens on Schedule D, but may have inadvertently failed to include an existing lien because of, among other things, the possibility that a lien may have been imposed after the Uniform Commercial Code searches were performed or a vendor may not have filed the requisite perfection documentation. Moreover, the Debtors have not included on Schedule D parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights. The Debtors have reported outstanding letters of credit in Schedule D. Although there are multiple parties that may hold a portion of the Debtors' funded debt, only the administrative agents have been listed for purposes of Schedule D. The amounts

reflected outstanding under the Debtors' prepetition loan facilities reflect the principal amounts stipulated in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* (Docket No. 237).

In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities. The descriptions provided in Schedule D are intended only as a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens. Nothing in the Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements or related documents.

Except as specifically stated herein, certain real property lessors, equipment lessors, utility companies, and other parties which may hold security deposits or other security interests have not been listed on Schedule D and have not filed a UCC-1 financing statement.

Any changes to the status of any liens or security rights since the Petition Date may not be adequately reflected in Schedule D. Therefore, the Debtors may have listed claims with secured status that have changed, or failed to list certain parties whose claims may be secured through rights of setoff, deposits or advance payments posted by, or on behalf of, the Debtors, or judgment or statutory lien rights on Schedule D.

**Specific Notes Regarding Schedule E/F**

1.      **Schedule E/F, Part 1, Question 1 - Creditors Holding Priority Unsecured Claims**. The Debtors reserve all rights to dispute the amount and/or the priority status of any claim on Schedule E/F on any basis at any time. Claims owing to various taxing authorities to which the Debtors potentially may be liable are included on the Debtors' Schedule E/F. Certain of such claims, however, may be subject to ongoing audits and/or the Debtors otherwise are unable to determine with certainty the amount of the remaining claims listed on Schedule E/F. Therefore, the Debtors have listed all such claims as unknown in amount, pending final resolution of ongoing audits or other outstanding issues.

The Bankruptcy Court entered a Final Order granting authority to the Debtors to pay certain prepetition employee wage and other obligations in the ordinary course (Docket No. 234) (the "Employee Wage Order"). Pursuant to the Employee Wage Order, the Bankruptcy Court granted the Debtors authority to pay or honor certain prepetition obligations for employee wages, salaries, bonuses and other compensation, reimbursable employee expenses, and employee medical and similar benefits. The Debtors have not listed on Schedule E/F any wage or wage-related obligations for which the Debtors have been granted authority to and intend to pay pursuant to the Employee Wage Order. The Debtors have not included accrued paid time off balances as of the Petition Date in the Schedules and Statements. The Debtors will make available to their employees accrued paid time off balances as of the date of their termination of employment with the Debtors and supplement the Schedules and Statements as necessary.

2.      **Schedule E/F, Part 2, Question 3 - Creditors Holding Nonpriority Unsecured Claims**.  The Debtors have used commercially reasonable efforts to list all general unsecured claims against the Debtors on Schedule E/F based upon the Debtors' existing books and records.

Schedule E/F does not include certain deferred credits, deferred charges, deferred liabilities, accruals, or general reserves. Such amounts are general estimates of liabilities and do not represent specific claims as of the Petition Date; however, such amounts are reflected on the Debtors' books and records as required in accordance with GAAP.  Such accruals are general estimates of liabilities and do not represent specific claims as of the Petition Date.

Schedule E/F does not include certain reserves for potential unliquidated contingencies that historically were carried on the Debtors' books as of the Petition Date; such reserves were for potential liabilities only and do not represent actual liabilities as of the Petition Date.

The claims listed in Schedule E/F arose or were incurred on various dates. In certain instances, the date on which a claim arose is an open issue of fact.  Determining the date upon which each claim in Schedule E/F was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtors do not list a date for each claim listed on Schedule E/F.

Schedule E/F contains information regarding potential and pending litigation involving the Debtors.  In certain instances, the Debtor that is the subject of the litigation is unclear or undetermined.  To the extent that litigation involving a particular Debtor has been identified, however, such information is contained in the Schedule for that Debtor (even though the litigation may actually impact another Debtor or non-Debtor affiliate).

Schedule E/F reflects the prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption, or assumption and assignment, of an executory contract or unexpired lease. In addition, Schedule E/F does not include rejection damage claims of the counterparties to the executory contracts and unexpired leases that have been or may be rejected, to the extent such damage claims exist.

Except in certain limited circumstances, the Debtors have not scheduled contingent and unliquidated liabilities related to guaranty obligations on Schedule E/F.  Such guaranties are, instead, listed on Schedule H.

The claims of individual creditors for, among other things, goods, services, or taxes listed on the Debtors' books and records may not reflect credits or allowances due from such creditors. The Debtors reserve all of their rights in respect of such credits or allowances.  The dollar amounts listed may be exclusive of contingent or unliquidated amounts.

Unless the Debtors were required to pay ancillary costs, such as freight, miscellaneous fees and taxes, such costs are not included in the liabilities scheduled, as such amounts do not represent actual liabilities of the Debtor.

Although the Debtors have made commercially reasonable efforts to identify all known general unsecured Equal Employment Opportunity Commission and Occupational Safety and Health Administration claims, the Debtors may not have identified and/or set forth all such claims.

3.    **Schedule E/F, Part 2, Question 3 - Trade Payables**.  Trade payables listed on Schedule E/F contain the prepetition liability information available to the Debtors as of the filing date of the Schedules and may include invoices that were paid subsequent to the Petition Date related to prepetition obligations pursuant to the certain First Day Orders.

4.    **Schedule E/F, Part 2, Question 3 – Employee Benefits – Supplemental Executive Retirement Plan ("SERP").**  Amounts due under the Debtors' SERP listed on Schedule E/F are based upon a third party advisor's projected accrued liability under ASC 715 as of September 27, 2022.

## Specific Notes Regarding Schedule G

While the Debtors' existing books, records, and financial systems have been relied upon to identify and schedule executory contracts on each of the Debtor's Schedule G, and while the Debtors have devoted substantial internal and external resources to identifying and providing the requested information for as many executory contracts as possible and to ensuring the accuracy of Schedule G, inadvertent errors, omissions, or over-inclusions may have occurred.  The Debtors do not make, and specifically disclaim, any representation or warranty as to the completeness or accuracy of the information set forth on Schedule G.  The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G and to amend or supplement Schedule G as necessary.  The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents.  Further, unless otherwise specified on Schedule G, each executory contract or unexpired lease listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument or other document is listed thereon.

In some cases, the same supplier or provider appears multiple times on Schedule G.  This multiple listing is intended to reflect distinct agreements between the applicable Debtor and such supplier or provider.  The Debtors expressly reserve their rights to challenge whether such agreements constitute an executory contract, a single contract or agreement, or multiple, severable or separate contracts.

In the ordinary course of business, the Debtors may have issued numerous purchase orders for supplies, product, and related items which, to the extent that such purchase orders constitute executory contracts, are not listed individually on Schedule G.  To the extent that goods were delivered under purchase orders prior to the Petition Date, vendors' claims with respect to such delivered goods are included on Schedule E/F.  Similarly, in the ordinary course of business, the Debtors may have issued numerous statements of work or similar documents for services which, to the extent that such statements of work or similar documents constitute executory contracts, are not listed individually on Schedule G.  To the extent that services were delivered under statements

13

of work prior to the Petition Date, vendors' claims with respect to such services are included on Schedule E/F.

As a general matter, certain of the Debtors' executory contracts and unexpired leases could be included in more than one category.  In those instances, one category has been chosen to avoid duplication.  Further, the designation of a category is not meant to be wholly inclusive or descriptive of the entirety of the rights or obligations represented by such contract.

Certain of the executory contracts and unexpired leases listed on Schedule G may contain certain renewal options, guarantees of payment, options to purchase, rights of first refusal, right to lease additional space, and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G.  In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as easements, rights of way, subordination, nondisturbance, and attornment agreements, supplemental agreements, amendments/letter agreements, title agreements, employment-related agreements, and confidentiality and non-disclosure agreements. Such documents may not be set forth in Schedule G.

The Debtors hereby reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument related to a creditor's claim, to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G, and to amend or supplement Schedule G as necessary.  Inclusion of any agreement on Schedule G does not constitute an admission that such agreement is an executory contract or unexpired lease and the Debtors reserve all rights in that regard, including, without limitation, that any agreement is not executory, has expired pursuant to its terms, or was terminated prepetition.

In addition, certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings.  The presence of a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease.  The Debtors reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, or any document or instrument (including, without limitation, any intercreditor or intercompany agreement) related to a creditor's claim. Certain of the contracts, agreements, and leases listed on Schedule G may have been entered into by more than one of the Debtors.  Further, the specific Debtor obligor to certain of the executory contracts or unexpired leases could not be specifically ascertained in every circumstance.  In such cases, the Debtors used their best efforts to determine the correct Debtor's Schedule G on which to list such executory contract or unexpired lease.

In the ordinary course of business, the Debtors have entered into numerous contracts or agreements, both written and oral, regarding the provision of certain services on a month to month basis.  To the extent such contracts or agreements constitute executory contracts, these contracts and agreements may not be listed individually on Schedule G.

Certain of the executory contracts may not have been memorialized and could be subject to dispute; executory agreements that are oral in nature have not been included in Schedule G.

Certain of the executory contracts and unexpired leases listed in Schedule G were assigned to, assumed by, or otherwise transferred to certain of the Debtors in connection with, among other things, acquisitions by the Debtors.  The Debtors used their best efforts to determine the correct Debtor's Schedule G on which to list such executory contract or unexpired lease.

In the ordinary course of business, the Debtors may lease certain fixtures and equipment from certain third party lessors for use in the daily operation of their business. The Debtors' obligations pursuant to capital leases appear on Schedule D and their obligations pursuant to operating leases have been listed on Schedule E/F.  The underlying lease agreements are listed on Schedule G.  Nothing in the Schedules and Statements is or shall be construed to be an admission as to the determination of the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to such issues.

In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their businesses, such as subordination, nondisturbance, and attornment agreements, supplemental agreements, settlement agreements, amendments/letter agreements, title agreements and confidentiality agreements.  Such documents may not be set forth on Schedule G. Certain of the executory agreements may not have been memorialized and could be subject to dispute.

The Debtors generally have not included on Schedule G any insurance policies, the premiums for which have been prepaid.  The Debtors submit that prepaid insurance policies are not executory contracts pursuant to section 365 of the Bankruptcy Code because no further payment or other material performance is required by the Debtors.  Nonetheless, the Debtors recognize that in order to enjoy the benefits of continued coverage for certain claims under these policies, the Debtors may have to comply with certain non-monetary obligations, such as the provision of notice of claims and cooperation with insurers.  In the event that the Bankruptcy Court were to ever determine that any such prepaid insurance policies are executory contracts, the Debtors reserve all of their rights to amend Schedule G to include such policies, as necessary or appropriate.

## Specific Notes Regarding Schedule H

The Debtors are party to various debt agreements, which were executed by multiple Debtors.  In the ordinary course of their business, the Debtors pay certain expenses on behalf of their affiliates.  The Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements.  Further, certain of the guarantees reflected on Schedule H may have expired or may no longer be enforceable.  Thus, the Debtors reserve their rights to amend Schedule H to the extent that additional guarantees are identified, or such guarantees are discovered to have expired or become unenforceable.

In the ordinary course of their business, the Debtors may be involved in pending or threatened litigation and claims arising out of certain ordinary course of business transactions. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties.  Because such claims are contingent,

15

disputed, and/or unliquidated, such claims have not been set forth individually on Schedule H. However, some such claims may be listed elsewhere in the Schedules and Statements.

The inclusion of or failure to include any entity on Schedule H does not constitute a waiver or an admission that such entity is a co-debtor or co-liable with respect to any pending or threatened litigation. The Debtors reserve all rights with respect to any claims related to any pending or threatened litigation.

## Specific Notes Regarding Statements

1.     **Statements, Part 1, Question 1 - List certain transfers made before filing for bankruptcy**.  In the ordinary course of their businesses, the Debtors maintain a complex cash management system.  The Debtors maintain separate disbursement Bank Accounts for Phoenix's payroll, healthcare plan, and accounts payable ("Disbursement Accounts"), which are used to satisfy their ordinary course operating expenses and financial obligations as further explained in the Cash Management Motion.  Consequently, most, if not all, payments to creditors and insiders listed in response to Questions 3 and 4 on each of the Debtors' Statements reflect payments made by Phoenix from one of its Disbursement Accounts pursuant to the Debtors' cash management system described in the Cash Management Motion.  The Disbursement Accounts are typically funded by draws from Phoenix's Master Account on a daily basis in the amount of upcoming disbursements.   The Debtors conduct various business transactions among themselves (the "Intercompany Transactions"), including moving cash within the Cash Management System between different Debtors. The Debtors are able to track and account for each Intercompany Transaction and the resulting intercompany claims ("Intercompany Claims").   Intercompany Transactions are not required to be, and typically are not, settled by actual transfers of cash among the Debtors.  The Debtors maintain records of ordinary course Intercompany Transactions and can ascertain, trace, and account for the Intercompany Transactions.

2.     **Statements, Part 2, Question 3 – Certain payments or transfers to creditors within 90 days before filing this case**.  The Debtors routinely transfer property, including money, in the ordinary course of business.  As described in the Cash Management Motion, the Debtors utilize an integrated, centralized cash management system to collect, concentrate, and disburse funds generated by their operations.  The obligations of the Debtors are primarily paid by and through one operating entity: Metal Services LLC, notwithstanding that certain obligations may be obligations of one or more of the Debtors consistent with the Cash Management Motion.

The payments disclosed in Statements, Part 2, Question 3 are based on payments made by the Debtors with payment dates from June 29, 2022 through September 27, 2022.  The actual dates that cash cleared the Debtors' bank accounts were not considered.  The Debtors' accounts payable system does not include the corresponding payment clear dates and compiling this data would have required a significant manual review of individual bank statements.  It is expected, however, that many payments included in Statements, Part 2, Question 3 have payment clear dates that are the same as payment dates (*e.g.*, wires and other forms of electronic payments).  The response to Statements, Part 2, Question 3 excludes disbursements or transfers listed on Statements, Part 2 Question 4.  Amounts still owed to creditors will appear on the Schedules for each of the Debtors, as applicable.

16

All payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date are listed on <u>Statements, Part 6, Question 11</u> and are not listed on <u>Statements, Part 2, Question 3</u>.

3.    **Statements, Part 3, Question 7 – Legal actions**.    Information provided on <u>Statements, Part 3, Question 7</u> includes only those legal disputes and administrative proceedings that are formally recognized by an administrative, judicial, or other adjudicative forum.  While the Debtors believe they were diligent in their efforts, it is possible that certain suits and proceedings may have been inadvertently excluded in the Debtors' response to <u>Statements, Part 3, Question 7</u>.  The Debtors reserve all of their rights to amend or supplement their response to <u>Statements, Part 3, Question 7</u>.  Any information contained in this Statement shall not be a binding representation of the Debtors' liabilities with respect to any of the suits and proceedings identified therein.

4.    **Statements, Part 4, Question 9 – Certain gifts and charitable contributions**.  The donations and/or charitable contributions listed in response to SOFA 9 represent payments made to third parties during the applicable timeframe that were recorded as such within the Debtors books and records.

5.    **Statements, Part 6, Question 11 – Payments related to bankruptcy**.    All payments for services of any entities that provided consultation concerning debt counseling or restructuring services to the Debtors, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date are listed on that Debtor's response to SOFA 11.  Additional information regarding the Debtors' retention of professional service firms is more fully described in individual retention applications and related orders.  In addition, the Debtors have listed payments made to professionals retained by the Debtors but not payments made to advisors of lenders or other parties on account of any applicable fee arrangements.

6.    **Statements, Part 12, Questions 22-24 - Details about environmental information**.  The Debtors have or in the past have had operations in many locations.  In certain locations, the Debtors no longer have any operations and may no longer have relevant records, or the records may no longer be complete or reasonably accessible or reviewable.  Some individuals who once possessed responsive information are no longer employed by the Debtors.  For all these reasons, it may not be possible to identify and supply the requested information for every "site" and "proceeding" responsive to Questions 22-24.  The Debtors have devoted substantial internal and external resources to identifying and providing the requested information for as many responsive sites and proceedings as reasonably possible.  The Debtors may supplement or amend this response in the future.  Due to the number of potentially responsive matters, the practical burdens in compiling information on inactive matters and the presumably lower relevance of information on inactive matters, information is presented only for matters that have been active within the last few years and that the Debtors do not consider to be closed.  When some requested categories of information were not reasonably available for a listed "site" or "proceeding," the Debtors' response gives as much information as was reasonably available.  When a site is the subject of a proceeding, settlement or order listed in the response to Question 22, the site and notices related to it are not also listed in the responses to Questions 23 or 24.  Similarly, sites that

are listed in the response to Question 23 (sites for which the Debtors have received notice from a governmental unit) are not repeated in response to Question 24 (sites for which the Debtors have provided notice to a governmental unit).  To avoid duplication, notices are not listed to the extent they refer to another notice or proceeding already identified in Questions 22, 23 or 24.  This response does not include sites or proceedings related to non-environmental laws such as occupational safety and health laws or transportation laws.  The Debtors make routine reports and submissions concerning discharges resulting from normal operations consistent with regulatory requirements, such as discharge monitoring reports, toxic release inventory submissions and submissions concerning air emissions.  This response is limited to those reports and submissions that identify uncontrolled releases and hazardous materials and does not purport to identify all routine reports and submissions.

7.    **Statements, Part 13, Question 25 - Details About the Debtors' Business or Connections to Any Business**.  The Debtors have used their reasonable efforts to identify the beginning and ending dates of all businesses in which the Debtors were an owner, partner, member or otherwise a person in control within the six years immediately preceding the Petition Date.  In certain instances, however, the dissolution dates of certain entities that are no longer in existence were not readily available and, therefore, are not included in <u>Statements, Part 13, Question 25</u>.

8.    **Statements, Part 13, Question 26 - Books, records, and financial statements**. The Debtors routinely provide financial statements to banks, customers, suppliers, tax authorities, landlords, factors, potential investors, and other financial institutions in the ordinary course, as well as in association with its restructuring efforts.

9.    **Statements, Part 13, Question 30 – Payments to insiders**.  Any and all known disbursements to insiders of the Debtors have been listed in response to <u>Statements, Part 2, Question 4</u>.

**Phoenix Services International LLC**                    **Case Number: 22-10909 (MFW)**

| Part 1: | Income |
|---------|--------|

### 1. Gross Revenue from business

☑ None

| Identify the Beginning and Ending Dates of the Debtor's Fiscal Year, which may be a Calendar Year | Sources of Revenue (Check all that apply) | Gross Revenue (Before Deductions and Exclusions) |
|---|---|---|
| From _____ to _____ <br> MM/DD/YYYY     MM/DD/YYYY | ☐ Operating a business <br> ☐ Other _____ | _____ |

**Phoenix Services International LLC**                                    **Case Number:  22-10909 (MFW)**

| Part 1: | Income |
| --- | --- |

**2. Non-business revenue**

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

|  | | **Description of Sources of Revenue** | **Gross Revenue (Before Deductions and Exclusions)** |
| --- | --- | --- | --- |
| From _____ to _____ <br> MM/DD/YYYY      MM/DD/YYYY | | _____ | _____ |

**Phoenix Services International LLC**                                    **Case Number:  22-10909 (MFW)**

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |

### 3. Certain payments or transfers to creditors within 90 days before filing this case

List payments or transfers-including expense reimbursements-to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☑ None

| Creditor's Name and Address | Dates | Total Amount or Value | Reasons for Payment or Transfer |
|---|---|---|---|
| 3.1      NONE | | | ☐ Secured debt<br>☐ Unsecured loan repayment<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | **TOTAL** | $0 | |

|  | **TOTAL** | $0 |
|---|---|---|

**Phoenix Services International LLC**                                    **Case Number:  22-10909 (MFW)**

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

## 4.  Payments or other transfers of property made within 1 year before filing this case that benefited any insider

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)  Do not include any payments listed in line 3.  Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☑ None

| Insider's Name and Address and Relationship to Debtor | Dates | Amount | Reason for Payment |
|-------------------------------------------------------|-------|--------|--------------------|

4.1     NONE

|  | TOTAL | $0 |  |
|--|-------|----|--|

|  | TOTAL | $0 |  |
|--|-------|----|--|

**Phoenix Services International LLC**                    **Case Number:  22-10909 (MFW)**

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |
|---|---|

### 5.  Repossessions, foreclosures, and returns

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller.  Do not include property listed in line 6.

☑ None

| Creditor's Name and Address | Description of the Property | Date Action was Taken | Value of Property |
|---|---|---|---|
| 5.1    NONE | | | $0 |

**TOTAL**            $0

**Phoenix Services International LLC**                                              **Case Number:  22-10909 (MFW)**

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

**6.  Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's Name and Address | Description of Action Creditor Took | Date Action Taken | Account Number | Amount |
|-----------------------------|-------------------------------------|-------------------|----------------|--------|
| 6.  1 NONE |  |  |  | $0 |

|  |  | **TOTAL** | **$0** |
|--|--|-----------|--------|

**Phoenix Services International LLC**                                      **Case Number:  22-10909 (MFW)**

| Part 3: | Legal Actions or Assignments |
|---------|------------------------------|

### 7.  Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity - within 1 year before filing this case.

☑ None

| Caption of Suit and Case Number | Nature of Proceeding | Court or Agency and Address | Status of Case |
|---------------------------------|----------------------|-----------------------------|----------------|
| 7.1    NONE | | | |

**Phoenix Services International LLC**                                                                    **Case Number:  22-10909 (MFW)**

| Part 3: | Legal Actions or Assignments |
|---|---|

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's Name and Address | Court Name and Address | Case Title and Number | Date | Description of Property | Value |
|---|---|---|---|---|---|
| 8.1    NONE | | | | | |

**Phoenix Services International LLC**                                    **Case Number:  22-10909 (MFW)**

| Part 4: | Certain Gifts and Charitable Contributions |
|---------|---------------------------------------------|

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

| Recipient's Name and Address | Recipient's Relationship to Debtor | Description of the Gifts or Contributions | Dates Given | Value |
|---|---|---|---|---|

9.1    NONE

**Phoenix Services International LLC**                    **Case Number:  22-10909 (MFW)**

| **Part 5:** | **Certain Losses** |

**10.  All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

| Description of Property | How Loss Occurred | Amount of Payments Received | Date of Loss | Property Value |
|---|---|---|---|---|
| | | *If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.  List unpaid claims on Official Form 106A/B (Schedule A/B: Assets - Real and Personal Property).* | | |
| 10.1    NONE | | | | Undetermined |

**TOTAL**    **Undetermined**

**Phoenix Services International LLC**                                                              **Case Number:  22-10909 (MFW)**

| Part 6: | Certain Payments or Transfers |
|---|---|

## 11. Payments related to bankruptcy

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None

| Who was Paid or Who Received the Transfer? Address | Email / Website | Who Made the Payment, if not Debtor? | If not Money, Describe any Property Transferred | Dates | Total Amount or Value |
|---|---|---|---|---|---|
| 11.1    NONE | | | | | $0 |

**Phoenix Services International LLC**                                    **Case Number: 22-10909 (MFW)**

| **Part 6:** | Certain Payments or Transfers |
|---|---|

### 12. Self-settled trusts of which the debtor is a beneficiary

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None

| Name of Trust or Device | Trustee | Describe any Property Transferred | Dates Transfers were Made | Total Amount / Value |
|---|---|---|---|---|
| 12.1    NONE | | | | $0 |

**Phoenix Services International LLC**                                      **Case Number: 22-10909 (MFW)**

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

### 13. Transfers not already listed on this statement

List any transfers of money or other property - by sale, trade, or any other means - made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.  Include both outright transfers and transfers made as security.  Do not include gifts or transfers previously listed on this statement.

☑ None

| Name and Address of Transferee, Relationship to Debtor | Description of Property | Date Transfer was Made | Total Amount or Value |
|---|---|---|---|
| 13. 1   NONE |  |  | $0 |

|  | **TOTAL** | **$0** |
|---|---|---|

**Phoenix Services International LLC**                                    Case Number:  22-10909 (MFW)

| Part 7: | Previous Locations |
|---------|-------------------|

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply

| Address | Dates of Occupancy |
|---------|-------------------|
| 14.1    148 W STATE ST, KENNETT SQUARE, PA 19348 | From:    7/1/2009    To:    1/31/2020 |

**Phoenix Services International LLC**                    **Case Number:  22-10909 (MFW)**

| Part 8: | Health Care Bankruptcies |
|---------|--------------------------|

### 15. Health Care bankruptcies

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility Name and Address | Nature of the Business Operation, Including Type of Services the Debtor Provides | Location Where Patient Records are Maintained (if Different from Facility Address). If Electronic, Identify any Service Provider. | If Debtor Provides Meals and Housing, Number of Patients in Debtor's Care | How are Records Kept? |
|---|---|---|---|---|
| 15.1    NONE | | | | ☐ Electronic<br>☐ Paper |

**Phoenix Services International LLC**                    **Case Number:  22-10909 (MFW)**

| Part 9: | Personally Identifiable Information |
|---------|-----------------------------------|

**16. Does the debtor collect and retain personally identifiable information of customers?**

☑ No.

☐ Yes. State the nature of the information collected and retained.    _____

Does the debtor have a privacy policy about that information?

☐ No

☐ Yes

Page 1 of 1 to Question 16

**Phoenix Services International LLC**                                    **Case Number:  22-10909 (MFW)**

| Part 9: | Personally Identifiable Information |
|---------|-----------------------------------|

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.

Yes. Does the debtor serve as plan administrator?

☐ No. Go to Part 10.
☐ Yes.  Fill in below:

Describe: _____        EIN: _____

Has the plan been terminated?
☐ No
☐ Yes

**Phoenix Services International LLC**                                      **Case Number:  22-10909 (MFW)**

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

### 18. Closed financial accounts

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial Institution Name and Address | Last 4 Digits of Acct Number | Type of Account | Date of Closing | Last Balance |
|---|---|---|---|---|
| 18.1    NONE | | | | |

**Phoenix Services International LLC**                                    **Case Number:  22-10909 (MFW)**

| **Part 10:** | **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units** |
|---|---|

### 19. Safe deposit boxes

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository Institution Name and Address | Names of Anyone with Access to it and Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|
| 19.1    NONE | | | ☐ No<br>☐ Yes |

**Phoenix Services International LLC**                    **Case Number: 22-10909 (MFW)**

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility Name and Address | Names of Anyone with Access to it | Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|---|
| 20.1    NONE | | | | ☐ No<br>☐ Yes |

**Phoenix Services International LLC**                    **Case Number:  22-10909 (MFW)**

| **Part 11:** | **Property the Debtor Holds or Controls That the Debtor Does Not Own** |

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

| Owner's Name and Address | Location of the Property | Description of the Property | Value |
|---|---|---|---|
| 21.1    NONE | | | |

**Phoenix Services International LLC**                    **Case Number:  22-10909 (MFW)**

| Part 12: | Details About Environmental Information |
|----------|-----------------------------------------|

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similary harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22.  Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No

☐ Yes. Provide details below.

| Case Title and Case Number | Court or Agency Name and Address | Nature of Proceeding | Status |
|----------------------------|----------------------------------|----------------------|--------|
| 22. 1    NONE | | | |

**Phoenix Services International LLC**                                                                    **Case Number:  22-10909 (MFW)**

| **Part 12:** | **Details About Environmental Information** |
|---|---|

For the purpose of Part 12, the followig definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similary harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**23.  Has any governmental unit otherwise notified the debtor that the debtor may be liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|
| 23. 1   NONE | | | |

**Phoenix Services International LLC**                                                                                    **Case Number:  22-10909 (MFW)**

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the followig definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**24.  Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes. Provide details below.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|
| 24.1   NONE | | | |

**Phoenix Services International LLC**                                          **Case Number:  22-10909 (MFW)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|----------|---------------------------------------------------------------------|

### 25. Other businesses in which the debtor has or has had an interest

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

☐ None

| Business Name and Address | Describe the Nature of the Business | Employer Identification Number | Dates Business Existed |
|---------------------------|-------------------------------------|--------------------------------|------------------------|
|                           |                                     | *Do not include SSN or ITIN*   |                        |

25.1    See Table

Phoenix Services Topco, LLC.
SOFA 25
Organization Structure

| Legal Entity Name | Parent | Jurisdiction of Incorporation | Date of Incorporation | Federal Tax ID No | Debtor/Non-Debtor | Location | Nature of Business | Corporation/ Partnership | Note |
|---|---|---|---|---|---|---|---|---|---|
| Phoenix Services Topco, LLC | Shareholders - ANRP II Phoenix Services Holdings (LP) (99%), Current and Former Employees (1%) | Delaware | 5/11/2018 | 83-0934517 | Debtor | New York, NY | Holding Company | Partnership | |
| Phoenix Services Parent, LLC | Phoenix Services Topco, LLC (100%) | Delaware | 11/28/2017 | 82-3738023 | Debtor | New York, NY | Holding Company | Partnership | |
| Phoenix Services Holdings Corp. | Phoenix Services Parent, LLC (100%) | Delaware | 4/2/2009 | 27-2051330 | Debtor | New York, NY | Holding Company | Corporation | Changed name on 3/1/2018 from OGF AIS Holdings Corp. |
| Phoenix Services International LLC | Phoenix Services Holdings Corp (100%) | Delaware | 6/7/2005 | 20-3056493 | Debtor | Radnor, PA | Holding Company | Partnership | Phoenix Services Merger Sub, LLC merged on 3/1/2018 |
| Metal Services LLC | Phoenix Services International LLC (100%) | Delaware | 6/7/2005 | 20-3058793 | Debtor | Radnor, PA | Operating | Partnership | Metal Services Investment II LLC dissolved on 10/24/2018 |
| Terracentric Materials LLC | Metal Services  LLC (100%) | Delaware | 6/22/2016 | 81-3350673 | Debtor | Radnor, PA | Non-Operating | Partnership | |
| Cool Springs LLC | Metal Services  LLC (100%) | Delaware | 10/10/2012 | 46-1208687 | Debtor | Radnor, PA | Non-Operating | Partnership | |
| Phoenix Receivables, LLC | Metal Services  LLC (100%) | Delaware | 6/28/2022 | NA | Debtor | Radnor, PA | Non-Operating | Partnership | |
| Metal Services Investment LLC | Metal Services  LLC (100%) | Delaware | 3/1/2010 | 20-2122924 | Debtor | Radnor, PA | Non-Operating | Partnership | |
| Phoenix Services Europe Coöperatief U.A. | Metal Services Investment LLC (1%), Metal Services  LLC (99%) | NL | 3/9/2010 | 98-0661927 | Non-Debtor | NL | Operating | Partnership | |
| Phoenix Services Europe Coöperatief U.A. | Metal Services  LLC (99%), Metal Services Investment LLC (1%) | NL | 3/9/2010 | 98-0661927 | Non-Debtor | NL | Operating | Partnership | |

**Phoenix Services International LLC**                    **Case Number:  22-10909 (MFW)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 26. Books, records, and financial statements

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| | Name and Address | Dates of Service | | | |
|---|---|---|---|---|---|
| 26a.1 | BART VENESOEN - FORMER CONTROLLER<br>CONFIDENTIAL - AVAILABLE UPON REQUEST | From: | 8/12/2013 | To: | 9/6/2021 |
| 26a.2 | HALET MURPHY - FORMER CFO<br>CONFIDENTIAL - AVAILABLE UPON REQUEST | From: | 8/3/2020 | To: | 2/16/2022 |
| 26a.3 | ROBERT RICHARD - CFO<br>4 RADNOR CORPORATE CENTER, SUITE 520<br>100 MATSONFORD ROAD<br>RADNOR, PA 19087 | From: | 2/15/2022 | To: | Ongoing |
| 26a.4 | TIFFANY HAGAN - GLOBAL CONTROLLER<br>4 RADNOR CORPORATE CENTER, SUITE 520<br>100 MATSONFORD ROAD<br>RADNOR, PA 19087 | From: | 8/31/2021 | To: | Ongoing |

**Phoenix Services International LLC**                                    **Case Number: 22-10909 (MFW)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|----------|-------------------------------------------------------------------|

### 26. Books, records, and financial statements

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and Address | Dates of Service |
|------------------|------------------|
| 26b.1  ERNST & YOUNG LLP<br>ONE COMMERCE SQUARE<br>SUITE 700<br>2005 MARKET STREET<br>PHILADELPHIA, PA 19103 | From:    1/1/2018    To:    Ongoing |

**Phoenix Services International LLC**                           **Case Number:  22-10909 (MFW)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 26. Books, records, and financial statements

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and Address | If any Books of Account and Records are Unavailable, Explain Why |
|---|---|
| 26c.1    ROBERT RICHARD - CFO<br>4 RADNOR CORPORATE CENTER, SUITE 520<br>100 MATSONFORD ROAD<br>RADNOR, PA 19087 | |
| 26c.2    TIFFANY HAGAN - GLOBAL CONTROLLER<br>4 RADNOR CORPORATE CENTER, SUITE 520<br>100 MATSONFORD ROAD<br>RADNOR, PA 19087 | |

**Phoenix Services International LLC**                                **Case Number:  22-10909 (MFW)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 26. Books, records, and financial statements

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and Address |
|---|
| 26d.1    THE DEBTORS ROUTINELY PROVIDE FINANCIAL INFORMATION TO BANKS, CUSTOMERS, SUPPLIERS, TAX AND GOVERNMENT AUTHORITIES, LESSORS AND INVESTORS, IN THE ORDINARY COURSE AND IN THE COURSE OF WITH ITS DEBT RESTRUCTURING EFFORTS. (ALSO REFER TO GLOBAL NOTES.) |

**Phoenix Services International LLC**                    **Case Number:  22-10909 (MFW)**

| **Part 13:** | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 27. Inventories

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the Person who Supervised the Taking of the Inventory | Name and Address of the Person who has Possession of Inventory Records | Date of Inventory | Dollar Amount | Basis |
|---|---|---|---|---|
| 27.1   NONE | | | | |

**Phoenix Services International LLC**                    **Case Number:  22-10909 (MFW)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**28.  List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name and Address | Positition and Nature of any Interest | Percent of Interest, if any |
|---|---|---|
| 28.1  MARK PORTO<br>C/O METAL SERVICES  LLC<br>4 RADNOR CORPORATE CENTER, SUITE 520<br>100 MATSONFORD ROAD<br>RADNOR, PA 19087 | SOLE MANAGER; CHIEF EXECUTIVE OFFICER | 0.00% |
| 28.2  PHOENIX SERVICES HOLDINGS CORP<br>4 RADNOR CORPORATE CENTER, SUITE 520<br>100 MATSONFORD ROAD<br>RADNOR, PA 19087 | OWNERSHIP INTEREST | 100.00% |
| 28.3  ROBERT A. RICHARD<br>C/O METAL SERVICES  LLC<br>4 RADNOR CORPORATE CENTER, SUITE 520<br>100 MATSONFORD ROAD<br>RADNOR, PA 19087 | CHIEF FINANCIAL OFFICER; SECRETARY | 0.00% |

**Phoenix Services International LLC**                                    **Case Number:  22-10909 (MFW)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**29.  Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No

☑ Yes. Identify below.

| Name and Address | Position and Nature of Interest | Period During Which Position Was Held | | | |
|---|---|---|---|---|---|
| 29.1  HALET MURPHY<br>C/O METAL SERVICES  LLC<br>4 RADNOR CORPORATE CENTER, SUITE 520<br>100 MATSONFORD ROAD<br>RADNOR, PA 19087 | CHIEF FINANCIAL OFFICER;<br>SECRETARY | From: | 8/3/2020 | To: | 2/16/2022 |
| 29.2  MARK ESSIG<br>C/O METAL SERVICES  LLC<br>4 RADNOR CORPORATE CENTER, SUITE 520<br>100 MATSONFORD ROAD<br>RADNOR, PA 19087 | SOLE MANAGER; CHIEF EXECUTIVE OFFICER | From: | 6/25/2018 | To: | 10/30/2021 |

**Phoenix Services International LLC**                                    **Case Number:  22-10909 (MFW)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 30.  Payments, Distributions, or Withdrawals Credited or Given to Insiders

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ No
☐ Yes. Identify below.

| Name and Address of Recipient and Relationship to Debtor | Amount | Dates | Reason for Providing the Value |
|---|---|---|---|
| 30.1    NONE | | | |
| TOTAL | $0 | | |

| | | |
|---|---|---|
| TOTAL | $0 | |

**Phoenix Services International LLC**                                    **Case Number:  22-10909 (MFW)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**31.  Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No
☑ Yes. Identify below.

| Name of Parent Corporation | Employer Identification Number of the Parent Corporation |
|---|---|
| 31. 1    PHOENIX SERVICES PARENT LLC | EIN:    82-3738023 |

**Phoenix Services International LLC**                                    **Case Number:  22-10909 (MFW)**

| **Part 13:** | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**32.  Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No

☐ Yes. Identify below.

| Name of Pension Fund | Employer Identification Number of the Pension Fund |
|---|---|
| 32. 1     NONE | EIN: |

**Phoenix Services International LLC**                                    **Case Number:  22-10909 (MFW)**

**Part 14:**    **Signature and Declaration**

Warning -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this Statement of Financial Affairs and any attachments and have a resonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.


**Executed on:**   ___November 28, 2022___



**Signature:**   _/s/ Robert Richard_____          Robert Richard, Chief Financial Officer_____
                                                               **Name and Title**




Are additional pages to the Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207) attached?

[X]  No

[ ]  Yes