**EXHIBIT C-2**

**Blackline**

# SETTLEMENT AGREEMENT

This Settlement Agreement (this "**Settlement Agreement**") is made as of February [●]th, 2023 by and between Phoenix Services Topco, LLC and its affiliated debtors in the chapter 11 cases captioned *Phoenix Services Topco, LLC, et al.*, Case No. 22-10906, as debtors and debtors in possession (collectively, the "**Debtors**"), together with Nucor-Yamato Steel Company ("**NYS**"), Nucor Steel Arkansas (a division of Nucor Corporation)("**Hickman**") and Nucor Steel Gallatin LLC ("**Gallatin**" and together with Hickman and NYS, "**Nucor**,") Nucor and the Debtors are collectively the "**Parties**" and individually a "**Party**".

## PREAMBLE

WHEREAS, on September 27, 2022, each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court of the District of Delaware (the "**Court**");

WHEREAS, reference is made to that certain Mill Services Agreement, dated as of May 8, 2012, by and between Metal Services LLC d/b/a Phoenix Services LLC ("**Phoenix**") and Hickman (together with all exhibits, schedules, statements of work, amendments, and modifications thereto, collectively, the "**Hickman Prepetition Services Agreement**");

WHEREAS, reference is made to that certain Mill Services Agreement, dated as of August 31, 2019, by and between Phoenix and NYS (together with all exhibits, schedules, statements of work, amendments and modifications thereto, collectively, the "**NYS Prepetition Services Agreement**");

WHEREAS, reference is made to that certain (i) Mill Services Agreement, dated as of October 14, 2015, by and between Phoenix and Gallatin, (ii) License Agreement for Services Area, dated as of October 12, 2021, by and between Phoenix and Gallatin, and (ii) Material Handling Services Agreement, dated as of November 12, 2018, by and between Phoenix and Gallatin (together with all exhibits, schedules, statements of work, amendments and modifications thereto, collectively, the "**Gallatin Prepetition Services Agreements**");

WHEREAS, reference is made to those certain Interim Servicing Agreements, dated November 2, 2022, by and between Phoenix and Nucor (the "**Interim Servicing Agreement**," and together with the Hickman Prepetition Services Agreement, the NYS Prepetition Services Agreement, and the Gallatin Prepetition Services Agreements, the "**Agreements**");

WHEREAS, on January 12, 2023, Nucor filed the *Motion of Nucor-Yamato Steel Company and Nucor Steel Arkansas (Division of Nucor Corporation) for Entry of an Order (a) Compelling the Debtors to Reject All Prepetition Servicing Agreements with Such Nucor Entities; (b) In Connection Therewith, Directing the Debtors to Comply with An Orderly Wind-Down of Operations at Applicable Nucor Sites; and (c) Granting Related Relief Filed by Nucor.* (Docket No. 394) (the "**First Motion to Compel**");

**WHEREAS**, on January 16, 2023, the Debtors filed the *Debtors' (I) Motion to Reject Certain Executory Contracts with Nucor Corporation and (II) Preliminary Objection and Response to Nucor Corporation's Motion to Compel Rejection of Certain Executory Contracts* (Docket No. 397) (the "**Motion to Reject**");

**WHEREAS**, on January 17, 2023, Nucor filed the *Motion of Nucor Steel Gallatin LLC for Entry of an Order (a) Compelling the Debtors to Reject Prepetition Servicing Agreements with Nucor Steel Gallatin LLC; (b) In Connection Therewith, Directing the Debtors to Comply with an Orderly Wind-Down Of Operations at Nucor Gallatin-Owned Steel Mill Site; and (c) Granting Related Relief* (Docket No. 399) (the "**Second Motion to Compel**" together with the First Motion to Compel and the Motion to Reject, the "**Motions**");

**WHEREAS**, the Parties agreed to engage in good faith negotiations to expeditiously resolve issues related to the Debtors' wind-down of their operations at Nucor's sites (the "**Wind-Down**"), and to avoid the need for litigation regarding the Motions;

**NOW, THEREFORE**, in consideration of the foregoing, plus good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby stipulate and agree as follows:

1. This Settlement Agreement shall be binding and effective upon execution by the Parties and approval by the Court.

2. **Effective Date of Rejection**. The Agreements shall be rejected as of the date the Court approves this Settlement Agreement, rejection of the Agreements and the Sale (as defined herein) (the "**Rejection Date**") with an order reasonably acceptable to all Parties (the "**Settlement Order**"). Parties shall use best efforts to have the Rejection Date occur on February 28, 2023, 11:59 p.m. (prevailing local time of the Nucor sites).

3. **Non-Mobile Assets.** The Debtors agree to sell and Nucor agrees to buy (the "**Sale**") the following assets (the "**Non-Mobile Assets**")[1]:

    a. at Nucor Gallatin: the DRI Barge and Handling System, two port barges, Liebherr 954 Scrap Crane, coil crane, mill scale gantry crane, truck scale and a multi-docker;

    b. at Nucor-Yamato: one slag yard maintenance shop with attached crane, one cut yard maintenance shop and fuel pump, one office building, scale foundations and scales at slag yard, scrap yard and fuel pump, and mill scale cranes; and

    c. at Nucor Hickman: one maintenance shop with attached crane, scales, fuel island, and the dump station.

---

[1] The Serial Numbers for the Non-Mobile Assets are attached hereto as **Schedule 1**.

2

4. The Sale will be on an "AS-IS, WHERE-IS" basis subject to any original equipment manufacturer warranties that can be assigned to Nucor.[2] Except as otherwise stated herein, such Sale will be free and clear of all liens and interests.

5. The Sale excludes the Debtors' personal property, furniture, fixtures and equipment located in any shop or building subject to the Sale (the "**Personal Property**"), except for those items listed on **Schedule 2** attached hereto.

6. **Purchase Price**. The Purchase price of the Non-Mobile Assets shall be $5,000,000 (the "**Purchase Price**"), and allocated as follows:

   a. $4,000,000 for the Non-Mobile Assets located at the Gallatin site;

   b. $350,000 for the Non-Mobile Assets located at the Hickman site; and

   c. $650,000 for the Non-Mobile Assets located at the NYS site.[3]

7. The Purchase Price shall be paid and the sale shall close by no later than 5:00 p.m. (prevailing eastern time) on the following business day after the Rejection Date.

8. The Debtors agree to sell and Nucor agrees to buy the slag barn expansion and maintenance shop expansion at Gallatin in accordance with a settlement agreement to be entered into between the Parties and Radius Construction Co, Inc. ("**Radius Construction**"), which, among other things, shall provide for: (a) a payment by Gallatin of $~~1,698,062~~ 1,569,012 to Radius Construction in satisfaction of Radius Construction's lien on Gallatin's and Phoenix's property and the building expansion and (b) a release of claims by Radius Construction against the Debtors (including the pending adversary proceeding) and Nucor.

9. The Parties agree to enter into a settlement agreement with Straight Edge Concrete, LLC ("**Straight Edge**"), which, among other things, shall provide for: (a) a payment by Gallatin to Straight Edge of $129,050.00 in satisfaction of Straight Edge's lien on Gallatin's and Phoenix's property and the building expansion and (b) a release of claims by Straight Edge against the Debtors and Nucor.

   10. **Fees, Claims and Administrative Expenses.**

   ~~10.~~a. **~~Fees~~ and Administrative Expenses.** Nucor hereby waives all administrative claims, except for (~~a~~i) any breach by any Debtor of its

---

[2] This includes the Mettler Toledo Warranty pertaining to the model 7563 truck scales.
[3] NYS shall: (a) pay a portion of the Purchase Price for the scales at slag yard directly to 36th Street Capital Partners LLC and Stonebriar Commercial Finance LLC, as applicable, pursuant to stipulations approved by the Court, and (b) allocate $18,000 of the Purchase Price to the purchase of the cut yard maintenance shop and fuel pump.

3

obligations under the Settlement Agreement, including but not limited to claims for non-payment of Storage Fees, (~~b~~ii) any tort claims arising after the Rejection Date, or (~~c~~iii) any claims arising out of fraud. The Debtors reserve all rights to dispute any claims asserted by Nucor, including the amount and priority of such claims. Nothing herein shall be an admission as to Nucor's entitlement to administrative claims.

b.  Nucor waives the right to receive or collect any consideration from or on behalf of the Debtors' estates in distributions to creditors, on or in respect of any claims for damages arising from the rejection of the Agreements (the "**Rejection Damages**"); provided, however, that Nucor reserves the right to assert any Rejection Damages as a setoff or affirmative defense to any claims that may be asserted against Nucor by the Debtors. Nucor will file Rejection Damages proofs of claim within 30 days of the Rejection Date to preserve its right to raise the setoff or affirmative offset defense.

11.  **Wind Down**. The Parties agree to the following wind down process:

a.  Nucor shall provide a non-exclusive license to the Phoenix Licensees (defined below) to access the Designated Area (defined below) to remove the Debtors' property from the Nucor sites running until the date that is one-hundred twenty (120) days after the Rejection Date (the "**Removal Period**"), subject to extension upon Nucor's written consent which shall not be unreasonably withheld, conditioned, or delayed.

b.  Nucor shall provide a non-exclusive license to the Debtors, their vendors, contractors, and trucking companies designated in writing to Nucor and the Debtors' employees (the "**Phoenix Licensees**" to access (accompanied) the slag processing area (the "**Slag Processing Area**") for a period starting on the Rejection Date (defined below), and running until the date that is thirty (30) days after Rejection Date (the "**Relocation Period**") solely for the Phoenix Licensees' relocation of their assets to the Removal Area (defined below); provided, however, the Debtors shall at all times coordinate their operations within the Slag Processing Area with Nucor in order to mitigate interference and disruption to Nucor's operations; provided that Nucor shall provide personnel to accompany the Phoenix Licensees when reasonably requested by the Debtors. In order to ensure each Nucor facility can operate freely and without disruption, the Phoenix Licensees shall not access the Slag Processing Area after the Relocation Period without Nucor's prior written consent which will not be unreasonably withheld, conditioned or delayed, with the exception of the removal of the equipment stipulated below.

c.  Equipment that is required to be broken down in its current location is excluded from the requirement to move it to the Removal Area (defined herein). The Debtors shall have a period of ninety (90) days to remove the following items (collectively, the "**Excluded Equipment**") in their current location:

    i.      at Nucor's Gallatin site: Processing Plant & Control Trailer; ~~the Debtors' personal property, including fixtures, furniture, and equipment ("**FF&E**") contained within the maintenance shops and office buildings~~;

    ii.     at Nucor's Hickman site: Processing Plant & Control Trailer, 3 x Sennebogen 855E Rail Mounted Cranes including undercarriages, Lima 2400 Drop Ball Crane, Manitowoc 3900 Drop Ball Crane, Office Trailer, Employee Trailer, Safety Trailer, Wash Bay Building, Retention pond pump and building~~, the Debtors' personal property and FF&E contained within the maintenance shop~~; and

    iii.    at Nucor's Yamato site: Processing Plant & Control Trailer, PLM DB14 Drop Ball Crane, Quality Trailer~~, the Debtors' personal property, including FF&E contained within the maintenance shop, the Debtors' personal property, including FF&E contained within the office building~~.

~~d.    The Debtors will use their best efforts to remove personal property, including FF&E from any maintenance shops and office buildings within thirty (30) days of the Rejection Date.~~

d.    The Debtors shall have a period of thirty (30) days after the Rejection Date (the "**FF&E Removal Period**"), free of third party (excluding Phoenix Licensees) access, to remove the Debtors' personal property, including fixtures, furniture, and equipment (collectively, "**FF&E**") contained within the maintenance shops and office buildings located in the Slag Processing Area at Nucor-Yamato, Hickman and Gallatin and the cut yard maintenance shop at Nucor-Yamato (the "**SPA Buildings**"); however, after the FF&E Removal Period if any of the Debtors' FF&E remains in the SPA Buildings, Nucor will not withhold, condition or delay the Phoenix Licensees' access to the SPA Buildings so long as the Phoenix Licensees continue to use best efforts to remove the Debtors' FF&E. For the avoidance of doubt, (i) Nucor may enter the SPA Buildings at any time but will not interfere with the Phoenix Licensees' removal operation, and (ii) after the FF&E Removal Period, third parties may access the SPA Buildings but Nucor will require that such third parties make best efforts to not interfere with the Phoenix Licensees' removal operations, to the extent still ongoing.

e.    Nucor shall reasonably accommodate the Phoenix Licensees' removal of the Debtors' property from the Slag Processing Area.

f.    The Debtors will use good faith efforts not to create waste at or cause damage to Nucor's buildings and property.

g.    Nucor will cooperate with lenders and lessors for inspections and access on reasonable notice and during Monday - Friday from 6 a.m. through 6 p.m. Eastern.

5

h. All Phoenix Licensees working on the decommissioning process shall be granted badge access to the Nucor facilities.

i. The Debtors shall pay $5,000 per day per site at which the decommissioning process is ongoing, which shall commence ninety-one (91) days after the Rejection Date (the "**Storage Fees**") until the Debtors complete removal of all of their property, the sale to Nucor of mobile equipment, or until a motion to abandon has been filed with respect to the remaining property.

j. Nucor will not pay for any demobilization, transportation or retrofit costs before or after the Rejection Date. For the avoidance of doubt, Nucor will not pay for any employee expenses from and after the Rejection Date.

k. The Parties shall agree to a designated area of each Nucor facility near the Slag Processing Area, but not in the Slag Processing Area, (i) large enough to accommodate all of the Debtors' equipment, contractors working to breakdown the equipment, and trucks entering to remove the equipment and (ii) of sufficient size to safely perform the work, and will get smaller over time as the wind down progresses (subject to mutual agreement between the Parties as the need diminishes), for storage of mobile and non-mobile equipment (but not the Non-Mobile Assets which shall be left in place) and to load equipment on trucks for removal (the "**Removal Area**"), which is conducive to the efficient removal of the Debtors' property. The Parties agree to designate specific access routes and roads between the Removal Area and the public highway (such routes and the Removal Area, the "**Designated Area**"). The Designated Area will contain sufficient parking for the Phoenix Licensees.

l. Nucor will provide the Phoenix Licensees access to the Designated Area, seven (7) days per week, from 6:00 a.m. through 6:00 p.m. (prevailing local time), or otherwise during reasonable hours upon reasonable notice.

m. The Parties shall appoint key personnel to coordinate specific time periods appropriate for the cooperative removal of designated property.

n. The Debtors, at their cost and expense, but free from any Storage Fees, may locate an office trailer for Phoenix Licensees at the Removal Area. Nucor shall make available restrooms for the Phoenix Licensees at a designated location at the Nucor premises.

o. All existing required insurance will remain in place and active with Nucor as loss payee until the end of the Removal Period.

p. All Phoenix Licensees will adhere to Nucor's current security, safety and confidentiality procedures at all times while on site at Nucor's premises and will sign a written acknowledgement of the same.

q. In order to facilitate the resolution of the Parties' dispute, one integral term set forth herein is the Debtors providing for the removal of the Debtors' equipment from Nucor property during the Removal Period. To ensure that the Debtors can fulfill their obligations as part of this Agreement, Nucor agrees that to the extent Nucor solicits any of the Debtors' employees working on the decommissioning process, Nucor will ensure that the start date for their employment with Nucor will be no sooner than sixty (60) days after the decommissioning process commences or the employees are no longer working on the decommissioning process, whichever is earlier. For the avoidance of doubt, this provision does not limit in any way the ability of Nucor to determine any start date for the Debtors' employees who independently seek alternative employment at Nucor (including those who respond to a general employment advertisement), nor does this provision limit in any way the ability of Nucor to solicit or hire any of the Debtors' employees working at non-Nucor facilities.

r. Nucor will provide access for Phase 1 Environmental Assessment to be completed of the Debtors' operating areas (at the sole cost of the Debtors), by Ramboll Environmental, which shall occur within ten (10) days following the decommissioning process.

12. **Abandonment**. The Debtors reserve their right to abandon property. To the extent that the Debtors, in their business judgment, decide to abandon any property, then the Debtors agree to provide Nucor with a list of any third parties with interests in the property and to file a motion to abandon with respect to any equipment or assets remaining on site within ten (10) days after the end of the Removal Period; provided that any equipment abandoned shall not trigger Storage Fees.

13. **No Liability**. This Settlement Agreement shall not constitute, and shall not be construed as, an admission of liability against any Party hereto. Nothing in this Settlement Agreement shall be considered an admission of any breach, wrongdoing, negligence, omission, liability or fault on the part of the Parties. The Parties are entering into this Settlement Agreement as a commercial compromise of disputes related to the Wind-Down that are addressed herein. Except as expressly provided herein, nothing in this Settlement Agreement, nor anything done pursuant hereto, shall be deemed or construed as modifying, or establishing any precedent, interpretation, or course of dealing under any contract or agreement made between the Parties.

14. **No Waiver**. Nothing contained in this Settlement Agreement is intended to be or shall be construed as a waiver by the Debtors of any claims or causes of action that may exist against any other creditor or any interest holder, or an approval, assumption, or rejection of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

15. **Entire Agreement**. This Settlement Agreement constitutes the entire agreement and understanding of the Parties relating to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

7

16. **Contravention.** This Settlement Agreement and Settlement Order shall be binding on the Parties and the estates of the Debtors.

17. **Knowing and Voluntary Entry into this Agreement**. Each Party acknowledges that it has had the opportunity to consult with legal counsel of its choosing prior to entering into this Settlement Agreement and that it enters this Settlement Agreement knowingly and voluntarily.

18. **Authorization**. By executing this Settlement Agreement, each Party represents to the other that (a) the person executing this Settlement Agreement on its behalf is duly authorized and empowered to execute and deliver this Settlement Agreement; and (b) this Settlement Agreement constitutes the legal, valid and binding obligation of such Party, enforceable against it in accordance with the Settlement Agreement's terms.

19. **Severability**. This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Settlement Agreement to present any copies, electronic copies, or facsimiles signed by the Parties here to be charged.

20. **Governing Law**. The laws of the State of Delaware shall govern the interpretation and enforcement of this Settlement Agreement, without regard to principles of conflicts of law.

21. **Consent**. This Settlement Agreement shall not be modified, altered, amended, or vacated without the written consent of both Parties hereto or by order of the Court. No waiver of this Settlement Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

22. **Jurisdiction**. The Court shall retain jurisdiction to resolve any disputes or controversies arising from this Agreement.

[Signature Page to Follow]

IN WITNESS WHEREOF, the Parties hereby execute the Settlement Agreement as of the date above written.

**Phoenix Services Topco, LLC and its affiliated debtors**

Signature:_____

Printed Name: Mark Porto

Title: CEO

**Nucor-Yamato Steel Company**

Signature: _____

Printed Name: Austin Pitzer

Title: Controller

**Nucor Steel Arkansas (a division of Nucor Corporation)**

Signature: _____

Printed Name: Elmer R. Cherry, Jr.

Title: Division Controller / Assistant Secretary

**Nucor Steel Gallatin LLC**

Signature: _____

Printed Name: Cathy Waddell

Title: Controller

## Schedule 1

**Serial Number**

## Schedule 2

## Personal Property included in Sale

1. **NYS:**

   - Heaters
   - Air conditioning units
   - Appliances to the extent attached to the walls
   - Toilets, plumbing, sinks
   - Wiring, disconnects, electrical panels
   - Fencing
   - Doors - man doors
   - Garage doors and components related to the operation of the garage doors
   - Nucor owned Panasonic FZG-1, FZG-2 or FZG-3 tablets, garage doors and remote controls to garage and gate
   - Building Paneling
   - Slag that was used in the buildup of parking lots and roadways
   - Exhaust fans
   - Fans affixed to the building
   - Interior and exterior lighting, exit signs, cameras wiring and fixtures
   - Phoenix teammate gate badges
   - Overhead crane in Maintenance Shop
   - Fuel in fuel tank from and after Rejection Date (to be paid for in addition to the Purchase Price by Nucor at cost, pursuant to final invoice issued by the Debtors)

2. **Gallatin:**

   - Heaters
   - Air conditioning units
   - Appliances to the extent attached to the walls
   - Toilets, plumbing, sinks
   - Wiring, disconnects, electrical panels
   - Fencing
   - Doors - man doors
   - Garage doors and components related to the operation of the garage doors
   - Nucor owned Getac Model F110 tablets, garage doors and remote controls to garage and gate
   - Building Paneling, Awnings, wooden decks, interior office in maintenance shop.
   - Slag that was used in the buildup of parking lots and roadways
   - Exhaust fans
   - Fans affixed to the building

- Nucor owned or RD holder Tanks or utility fixtures
- Phoenix teammate gate badges
- Interior and exterior lighting, exit signs, cameras wiring and fixtures
- Main diesel tank at Phoenix is empty and owned by RD Holder.
- Overhead cranes in Maintenance Shop, Welding Shop, and River Maintenance Shop (rail shop)
- Fuel in fuel tank from and after Rejection Date (to be paid for in addition to the Purchase Price by Nucor at cost, pursuant to final invoice issued by the Debtors)

3. **Hickman:**

- Heaters
- Air conditioning units
- Appliances to the extent attached to the walls
- Toilets, plumbing, sinks
- Wiring, disconnects, electrical panel
- Fencing
- Doors- man door
- Garage doors and components related to the operation of the garage doors
- Nucor owned Siemens 319-3 or XTablet T1680 tablets, garage doors and remote controls to garage and gate
- Building Paneling
- Slag that was used in the buildup of parking lots and roadways
- Exhaust fans
- Fans affixed to the building
- Phoenix teammate gate badges
- Overhead cranes in Maintenance Shop
- Interior and exterior lighting, exit signs, cameras wiring and fixtures
- Mounted hose reels, hose and pumps, water lines and hydrants
- All lockers, excluding emergency spill lockers and supplies
- Concrete parking barricades in front or around the shops
- Fuel in fuel tank from and after Rejection Date (to be paid for in addition to the Purchase Price by Nucor at cost, pursuant to final invoice issued by the Debtors)