**Fill in this information to identify the case:**

Debtor     Metal Services LLC

United States Bankruptcy Court for the District of     District of Delaware

Case number     22-10910

Official Form 410

# Proof of Claim

**04/22**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

## Part 1:  Identify the Claim

| | | |
|---|---|---|
| 1. | **Who is the current creditor?** | U.S. Specialty Insurance Company |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor |

| | | |
|---|---|---|
| 2. | **Has this claim been acquired from someone else?** | ☑ No |
| | | ☐ Yes.  From whom? |

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different)

See Additional/Expanded Creditor Address(es) page:

U.S. Specialty Insurance Company...
McElroy, Deutsch, Mulvaney &a...
Attn: Gary Bressler, Esq.
300 Delaware Avenue, Suite 10...
Wilmington, Delaware 19801
**P:** 302-367-8393
**E:** gloomis@mdmc-law.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

| | | |
|---|---|---|
| 4. | **Does this claim amend one already filed?** | ☐ No |
| | | ☑ Yes.  Claim number on court claims registry (if known)   396   Filed on   01/06/2023 |
| | | MM/DD/YYYY |

| | | |
|---|---|---|
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No |
| | | ☐ Yes.  Who made the earlier filing? |

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| 6. | Do you have any number you use to identify the debtor? | ☑ No |
| | | ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| 7. | How much is a claim? | 101,432.30 | Does this amount include interest or other charges? |
| | | | ☑ No |
| | | | ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Please see Addendum |

| 9. | Is all or part of the claim secured? | ☐ No |
| | | ☑ Yes.   The claim is secured by a lien on property |

**Nature of property**

☐ Real estate.   If the claim is secured by the debtor's principal residence, file a Mortgage Proof of Claim Attachment (Official Form 410-A)with this Proof of Claim.

☐ Motor vehicle.

☑ Other. Describe:   Please see Addendum

**Basis for perfection:**   Please see Addendum

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   _____

**Amount of the claim that is secured:**   _____

**Amount of the claim that is unsecured:**   _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   _____

**Annual Interest Rate (when case was filed)**   _____ %

☐ Fixed
☐ Variable

| 10. | Is this claim based on a lease? | ☑ No |
| | | ☐ Yes.   Amount necessary to cure any default as of the date of the petition.   $ _____ |

| 11. | Is this claim subject to a right of setoff? | ☐ No |
| | | ☑ Yes.   Identify the property:   Please see Addendum |

| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | | |
|---|---|---|---|
| | A Claim may be partly priority and partly nonpriority.For example, law limits the amount entitled to priority. | ☑ No | |
| | | ☐ Yes.   Check one: | Amount entitled to priority |
| | | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | _____ |
| | | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | _____ |
| | | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4) | _____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | _____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | _____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)() that applies. | _____ |
| | | *Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

| 13. | **Is all or part of the claim pursuant to 11 U.S.C § 503(b)(9)?** | ☑ No | |
|---|---|---|---|
| | | ☐ Yes.  Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim. | |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date & time    06/01/2023 at 02:32 pm PT
                           MM / DD / YYYY  HH :  MM

/s/M. Joseph Rosas
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | | | |
|---|---|---|---|
| | M. | Joseph | Rosas |
| | First Name | Middle Name | Last Name |

| Title | Senior Bond Claims Attorney |
|---|---|

| Company | U.S. Specialty Insurance Company |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer |

| Address | 801 S. Figueroa Street, Suite 800 |
|---|---|
| | Number | Street |
| | Los Angeles | CA | 90017 |
| | City | State | ZIP Code |

Contact phone

Email              jrosas@tmhcc.com

**Additional/Expanded Creditor Address(es):**

**Primary Address (Expanded)**
U.S. Specialty Insurance Company
McElroy, Deutsch, Mulvaney & Carpenter, LLP
Attn: Gary Bressler, Esq.
300 Delaware Avenue, Suite 1014
Wilmington, Delaware 19801
Phone: 302-367-8393
gloomis@mdmc-law.com

Stretto Corporate Restructuring
855.812.6112 inquiries@stretto.com
cases.stretto.com
Proof Of Claim                                                      Page 4

**Fill in this information to identify the case:**

Name of Debtor & Case Number:

☐ Phoenix Services Topco, LLC  (Case No. 22-10906)   ☐ Terracentric Materials LLC  (Case No. 22-10911)

☐ Phoenix Services Parent, LLC  (Case No. 22-10907)   ☐ Cool Springs LLC  (Case No. 22-10912)

☐ Phoenix Services Holdings Corp.  (Case No. 22-10908)   ☐ Metal Services Investment LLC  (Case No. 22-10913)

☐ Phoenix Services International LLC  (Case No. 22-10909)   ☐ Phoenix Receivables, LLC  (Case No. 22-10914)

☒ Metal Services LLC  (Case No. 22-10910)

**United States Bankruptcy Court for the District of Delaware**

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. With the exception of administrative expenses arising under 11 U.S.C. §503(b)(9), do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

| | | |
| --- | --- | --- |
| 1. **Who is the current creditor?** | U.S. Specialty Insurance Company | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |
| 2. **Has this claim been acquired from someone else?** | ☒ No | |
| | ☐ Yes.  From whom? | |
| 3. **Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| | McElroy, Deutsch, Mulvaney & Carpenter, LLP Attn: Gary Bressler, Esq. 300 Delaware Ave., Suite 1014 Wilmington, DE 19801 | Name |
| | | Number    Street |
| | | City                    State            ZIP Code |
| | Address | Contact phone |
| | Contact phone    (302) 300-4515 | Contact email |
| | Contact email    gbressler@mdmc-law.com | |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | _ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _ | |
| 4. **Does this claim amend one already filed?** | ☐ No | |
| | ☒ Yes.  Claim number on court claims registry (if known) __396__    Filed on __1/6/2023__ MM / DD  / YYYY | |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No | |
| | ☐ Yes.  Who made the earlier filing? | |

Official Form 410

Proof of Claim

page 1

1194809272232279024100001

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**

☒ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. **How much is the claim?**   $ ___101,432.30___ . **Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Please see Addendum

9. **Is all or part of the claim secured?**

☐ No

☒ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☒ Other. Describe:      Please see Addendum

**Basis for perfection:**      Please see Addendum

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____

**Amount of the claim that is secured:**   $_____

**Amount of the claim that is unsecured:**   $_____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

10. **Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

11. **Is this claim subject to a right of setoff?**

☐ No

☒ Yes. Identify the property:    Please see Addendum

Official Form 410       Proof of Claim

1194809272232790241000001

| | | | Amount entitled to priority |
|---|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No<br>☐ Yes. *Check one:* | | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | | |
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☒ No<br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within twenty (20) days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.** | | $_____ |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☒ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   06/01/2023
                   MM / DD / YYYY

/s/ Joseph M. Rosas
_____
Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | M. | Joseph | Rosas |
| | First name | Middle name | Last name |
| Title | Senior Bond Claims Attorney | | |
| Company | U.S. Specialty Insurance Company | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 801 S. Figueroa Street, Suite 800 | | |
| | Number       Street | | |
| | Los Angeles | CA | 90017 |
| | City | State | ZIP Code |
| Contact phone | _____ | Email | jrosas@tmhcc.com |

## IN T1HE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                     )    Ch. 11
                                           )
PHOENIX SERVICES TOPCO LLC, et al.,        )    Case No. 22-10906 (MFW)
                                           )
                        Debtors[1].        )

## ADDENDUM

The U.S. Specialty Insurance Company, for itself and on behalf of its affiliated sureties

(collectively, "Surety" or "USSIC"), submits this addendum in support of its amended proof of

claim:

## BACKGROUND

1.      On September 27, 2022 (the "Petition Date"), the Debtors commenced their cases

under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are now

pending with this Court.  The Debtors continue to operate their businesses and manage their

properties as debtors-in-possession pursuant to Bankruptcy Code Section 1107(a) and 1108.

### Customs Bond and Indemnity-Related Agreements

2.      In the ordinary course of their business, the Debtors are required to provide surety

bonds to certain third parties to secure the Debtors' payment or performance of certain

obligations.

3.      Prior to the Petition Date, the Surety issued customs bonds CB1000315 (the "CB

Customs Bond") and BNDACE757156 (the "BND Customs Bond" and together with the CB

Customs Bond, the "Customs Bonds") in favor of U.S. Bureau of Customs and Border Protection

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Phoenix Services Topco, LLC (4517); Phoenix Services Parent, LLC (8023); Phoenix Services Holdings Corp. (1330); Phoenix Services International LLC (4693); Metal Services LLC (8793); Terracentric Materials LLC (0673); Cool Springs LLC (8687); Metal Services Investment LLC (2924); and Phoenix Receivables, LLC (not applicable). The Debtors' mailing address is 4 Radnor Corporate Center, Suite 520, 100 Matsonford Road, Radnor, PA 19087.

(the "CBP").  As of the Petition Date, the penal sum of the Customs Bonds was $50,000 each.

Documentation evidencing both Customs Bonds is attached as Exhibit A.

4.      In connection with Surety's execution of the Customs Bonds, Debtor Metal

Services LLC dba Phoenix Services LCC ("Metal Services"), as bond principal and indemnitor,

executed and delivered indemnity and indemnity-related agreements in favor of the Surety.

5.      These agreements, both executed on January 30, 2017, are specifically a General

Indemnity Agreement in favor of the Surety, as indemnitee (the "Indemnity Agreement") and a

Collateral Security Agreement and Receipt (the "Collateral Security Agreement").  True and

correct copies of the Indemnity Agreement and Collateral Security Agreement are attached

hereto as Exhibit B and Exhibit C, respectively.

6.      Pursuant to Paragraph 2 of the Indemnity Agreement, Metal Services is obligated

to:

> exonerate, indemnify and hold the Surety harmless from and against any and
> all demands, liabilities, losses, costs, damages, attorneys' fees and expenses
> of whatever kind or nature…which arise by reason of, or in consequence of,
> the execution by the Surety of any Bond on behalf of the Principal and
> whether or not the Surety shall have paid any sums in partial or complete
> payment thereof….

7.      Therefore, the Indemnity Agreement creates, among other rights, contractual

rights of indemnification and exoneration in favor of the Surety.

8.      The Indemnity Agreement further requires that Metal Services pay all bond

premiums and to post collateral security upon demand from Surety if the Surety deems it

necessary to establish a reserve for potential claims or if a claim or demand is made against the

Surety, whether disputed or not.  The Indemnity Agreement states such collateral

> may be held or utilized by Surety until it has received evidence of its complete
> exoneration and discharge from such claim or potential claims, and until it has
> been fully reimbursed for all loss, expense, attorneys' fees and unpaid premiums.

9.      By way of the Collateral Security Agreement, Metal Services provided the Surety with collateral in the form of $50,000 in cash (the "Bond Collateral") for the benefit of the Surety and its co-sureties, reinsurers, successors and assigns.

10.     Pursuant to Paragraph 1 of the Collateral Security Agreement, Metal Services granted "a security interest in the [Bond Collateral] together with any proceeds, product, increase in value and income including rents thereon, and any additional or replacement collateral."

11.     The Collateral Security Agreement further states in Paragraph 1 that the "[Bond Collateral] is hereby pledged…as security to unconditionally and fully protect the Surety in connection with any and all bonding obligations" and the Surety may enforce the Collateral Security Agreement to protect and/or reimburse the Surety:

i.      For the enforcement and fulfillment of the provisions of the [Indemnity Agreement];

ii.     Against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses, investigative fees and expenses, accountants' fees and expenses, engineering and other professional or consultants' fees and expenses of any kind, in-house attorneys' fees and expenses, interest, court costs and any and all other types of losses, costs or expenses of whatsoever kind or nature, which the Surety may sustain and/or incur…

iii.    For the payment of all premiums on such Bonds and all other items of indebtedness due to the Surety and/or its agent from the Principal or Owner;

iv.     For the performance of every agreement…made by the Owner or by any Principal concerning said Bonds;

v.      To secure and indemnify the Surety from any and all losses, costs, interests, expenses, and/or legal fees which the Surety may incur or become liable for under the terms and provisions of all the agreements provided by the Owner and/or the Principal to the Surety, including but not limited to any Indemnity Agreement

<u>First Day Motions</u>

12.      As part of their First Day Motions, the Debtors filed a:

A.      Motion for (I) Authority to (A) Obtain Postpetition Financing, (B) Use
         Cash Collateral, (C) Grant Liens and Provide Superpriority Administrative
         Expense Status, (D) Grant Adequate Protection, (E) Modify the Automatic
         Stay, and (F) Schedule and Final Hearing and (II) Related Relief (the "DIP
         and Cash Collateral Motion") [ECF No. 14]; and

B.      Motion (I) Authorizing Debtors to (A) Continue Their Insurance Programs
         and Surety Bond Program and (B) Pay All Obligations With Respect
         Thereto, and (II) Granting Related Relief (the "Surety Bond Motion")
         [ECF No. 8].

13.      On September 28, 2022 and September 29, 2022, respectively, the

Bankruptcy Court entered Interim Orders granting the DIP and Cash Collateral Motion

and Surety Bond Motion.

14.      On October 25, 2022 and November 2, 2022, respectively, the Bankruptcy Court

entered Final Orders granting the DIP and Cash Collateral Motion and Surety Bond Motion.

15.      In the Final Order granting the Surety Bond Motion, the Debtors agreed

Nothing contained in the Motion, the Interim Order, this Final Order, the DIP
Order, or the DIP Credit Agreement (as defined in the DIP Order) shall preclude
U.S. Specialty Insurance Company (the "<u>Surety</u>"): (a) from seeking relief from the
automatic stay with respect to that certain surety bond (the "<u>Surety Bond</u>") issued
in connection with that certain General Indemnity Agreement and the Collateral
Security Agreement entered into by Debtor Phoenix Services LLC with the Surety
on January 30, 2017; (b) from declining to renew or increase the amount of the
Surety Bond; (c) from declining to extend the Surety Bond beyond its term; or
(d) from declining to provide consent to, or otherwise exercise any rights in
response to, a proposed assumption and/or assignment of the Surety Bond.
Notwithstanding anything in the Motion, this Final Order, the DIP Order, or the
DIP Credit Agreement to the contrary, the rights and defenses of the Debtors and
Surety, as applicable, are fully preserved with respect to the Surety Bond, the
General Indemnity Agreement, and the Collateral Security Agreement

16.      In the Final Order granting the DIP and Cash Collateral Motion, the

Debtors agreed

Nothing in the Motion, the Interim Order, this Final Order, or the DIP Credit Agreement shall prime any (i) valid and properly perfected lien of U.S. Specialty Insurance Company (the "Surety") over collateral in the amount of $50,000 cash provided to the Surety in connection with that certain General Indemnity Agreement and the Collateral Security Agreement entered into by Debtor Phoenix Services LLC with the Surety on January 30, 2017 (such collateral, the "Bond Collateral') and (ii) setoff and/or recoupment rights and/or lien rights of the Surety or of any party to whom the Surety has or may become subrogated.  In addition, notwithstanding anything in the Motion, the Interim Order, this Final Order, or the DIP Credit Agreement to the contrary, the rights and defenses of the Debtors and the Surety, as applicable, are fully preserved with respect to the Bond Collateral and any of the Surety's setoff, recoupment, subrogation and common law rights.

## The Claim

17.     The Surety's claims, which are contingent and/or unliquidated, arise from: (a) the Indemnity Agreement; (b) the Customs Bonds; (c) statutory lien rights upon imported goods, (d) common law indemnification and/or exoneration rights, (e) any collateral-related agreements, documents or instruments, including the Collateral Security Agreement; (f) potential common law, statutory and or contractual subrogation rights; and (g) potential setoff and/or recoupment rights.

18.     The Surety's claims are comprised of: (a) the penal sums of the two Customs Bonds which are $50,000 each[2]; (b) the aggregate amount of the penal sums of all of the other bonds; (c) any claim by an obligee on a bond that is in excess of a penal sum of the bond; (d) unpaid premiums, if any; (e) subrogation, setoff and/or recoupment rights, if any; (f) a secured lien to the extent of any unpaid duties upon imported merchandise covered by either Customs Bond; and (g) without limitation, any and all liability, damage, loss, cost, and expense of whatsoever kind or nature, including attorneys' fees, consulting fees, accounting fees, costs and expenses which the Surety may at any time sustain or incur by reason of or in consequence of having executed or procured the execution of the Customs Bonds, in enforcing its common  law and/or contractual

---

[2] To the extent the Customs Bonds stack, the penal sum is $50,000 for each year per bond.  The CB Custom Bond became effective Feb. 6, 2017, whereas the BND Custom Bond became effective June 15, 2022.

indemnity or indemnity-related rights and/or in attempting to procure the Surety's release of obligations, if any, under the Customs Bonds.  The claim is contingent and/or unliquidated at present because the precise amount of the claim is not currently knowable.  The Surety's potential claim is greater than the penal sum of the Customs Bonds.

19.    In the event payments are made by the Surety pursuant to either Customs Bond, the liquidated portion of the claim will be increased, with the contingent and/or unliquidated portion decreased accordingly.  Certain attorneys' fees and expenses have already been expended in relation to, among other things, the Customs Bonds and enforcing the Indemnity Agreement and Collateral Security Agreement and comprise current, non-contingent, liquidated claims. Attorneys' fees and expenses through April 30, 2023, total $11,943.12.[3]  The Surety is entitled to be indemnified for, among other things, all fees and expenses it has incurred and will incur.

20.    The amounts referred to in this proof of claim do not include any claim related to any bond issued and/or executed post-petition, if any.  The Surety has no obligation to issue bonds post-petition or otherwise.  However, to the extent that the Surety has issued or may issue and/or execute any new bond, and/or has or may roll over and/or renew any bond (including the Customs Bonds), and/or issue and/or execute any riders to any existing bond (including the Customs Bonds), the Surety asserts an administrative claim and reserves all rights with respect to any and all claims arising from same, including, without limitation, further requests for administrative expense priority claims under section 11 U.S.C. § 503 and claims against any collateral security held by or for the benefit of the Surety.

21.    The Surety may become subrogated to the rights of (and/or receive assignments from) other creditors, including CBP, or potential creditors, including creditors who have and/or

---

[3] This takes into account $10,510.82 already paid by the Debtor.

will file proofs of claim, and who may, *inter alia*, assert a secured claim, including without limitation, a secured claim based on set-off rights, and/or a claim based on a lease.  To the extent the Surety's claim arises from its subrogation rights, the Surety's claim may be entitled to various priority and/or administrative treatment if the Surety is subrogated to the rights of any other person or entity that could assert such claims.  The Surety expressly reserves all rights and claims in connection therewith.  Specifically, the Surety has equitable subrogation rights to the extent the Surety incurs losses in connection with discharging an obligation under any or all of its bonds issued on behalf of the Debtors and/or their non-debtor affiliates, including the Customs Bonds. In addition, parties to whose rights the Surety may be or may become equitably subrogated may have other claims against the Debtors including, but not limited to, administrative claims under 11 U.S.C. § 503(b), priority claims under 11 U.S.C. § 507, reclamation rights, and/or rights related to the assumption or rejection of a lease or executory contract.  To the extent that the Surety is subrogated to the rights of such claimants, the Surety reserves the right to assert such further and additional claims (whether secured, unsecured, administrative, priority or otherwise) against the Debtors and its estate as applicable.

22.     The Surety may, in the future, be subrogated to the rights of (and/or receive assignments from) other creditors who have filed and/or will file proofs of claims.

23.     To the extent either Customs Bond, the Indemnity Agreement and/or the Collateral Security Agreement are deemed to be executory contracts and are assumed in connection with the Debtors' bankruptcy cases, all obligations thereunder will be payable as administrative expense priority claims, and the Surety reserves all rights, claims and defenses with respect thereto.[4]  Any bonds (including the Custom Bonds), the Indemnity Agreement and/or the Collateral Security

---

[4] The Debtor has indicated it plans to cancel the BND Custom Bond.

Agreement issued by the Surety may not be assumed absent the Surety's express consent. The Surety also reserves the right to assert an administrative claim for all post-petition claims arising after the petition date but prior to any rejection of either Customs Bond and/or the Indemnity Agreement and/or the Collateral Security Agreement, to the extent any of these documents are found to be executory. The Surety reserves further all rights, claims and defenses with respect to, among other things, the characterization of the bonds (including the Customs Bonds) and/or the Indemnity Agreement and/or the Collateral Security Agreement as executory contracts, and whether they may be assumed.

24.     The Surety asserts a secured claim, secured deficiency claim or other claim to the extent of any assets held by the Surety provided by the Debtor to secure its obligations, including but not limited to, the Bond Collateral, as well as to the extent of any setoff or recoupment rights. The Surety asserts that any collateral security of the Surety (including the Bond Collateral) is not the property of the bankruptcy estate(s) for this or related matter, and the Surety reserves all rights in connection therewith (including, among other reasons, because such collateral security was not deposited by the Debtors). To the extent such property may be deemed to be property of the estate(s), the Surety asserts a perfected, secured claim with respect thereto. The Surety's secured claims include all of the items listed herein, including fees, costs and expenses, all of which are also expressly made part of this claim. Further, the Surety's claim is secured to the extent of any unpaid duties for merchandise imported into the United States as a result of the Customs Bonds. *See* 19 § CFR 141.1. Moreover, the Surety's claim may be secured to the extent the Surety is equitably subrogated to the rights of a secured third party. The Surety's calculation of any secured claim may exclude third-party collateral (if any) which may be held or recoverable by the Surety, as well as the right of recovery which the Surety may have against third parties. The Surety also

reserves the right to allocate, re-allocate, or to suspend the allocation or reallocation of any and all collateral security and/or payments and/or other aspects of any secured claim secured deficiency claim or unsecured claim, priority claim or administrative claim at any time, in any manner permissible by law or equity, to any item of its claim. Any specific dollar amount describing the Surety's claim is for information purposes.

25.     To the extent the Bond Collateral provided by a third-party is applied and the claim is reduced by the amount of such collateral, the Surety continues to assert its entire claim, without applying such collateral, against the other Debtor. The Surety's secured claims, if any, include all of the items listed herein, including fees, costs and expenses, all of which are also expressly made part of this claim. Further, the Surety's claim may also be secured to the extent the Surety is equitably subrogated to the rights of a secured third party.

26.     The Surety's calculation of its secured claim, if any, may exclude third-party collateral, if any, which may be held or recoverable by the Surety, as well as the right of recovery which the Surety may have against third parties.

27.     Further, to the extent the Surety's claim arises from its rights of subrogation, either to the rights and/or claims of any of the Debtors, any of the obligees under the Bonds or any beneficiary in relation to any of the Bonds, The Surety's claim may be entitled to various trust fund, secured (via set-off or otherwise), priority and/or administrative treatment, to the extent the Surety is subrogated to the rights of another party that could assert such claims. The Surety expressly asserts such claims and reserves all rights in connection therewith. Specifically, the Surety has equitable subrogation rights to the extent it has incurred or incurs losses in connection with discharging an obligation under any or all of its bonds issued on behalf of certain of the Debtors. In addition, parties to whose rights the Surety may be or may become equitably

subrogated may have other claims against Debtors including, but not limited to, administrative claims under 11 U.S.C. §503(b), priority claims under 11 U.S.C. §507, including for unpaid benefits, reclamation rights, and/or rights related to the assumption or rejection of a lease or executory contract.  To the extent that the Surety is subrogated to such rights, the Surety reserves the right to assert such further and additional claims (whether secured, unsecured, administrative, priority or otherwise) against any of the Debtors and their estate(s), as applicable.

## **Reservation of Rights**

28.    Nothing contained in this Proof of Claim shall constitute a waiver of: (a) the right to have final orders in non-core matters entered only after de novo review by a District Court Judge; (b) the right to trial by jury in any proceeding triable in this case or any case, controversy, or proceeding related to this case; (c) the right to have the District Court withdraw the reference in any matter subject to mandatory or discretionary abstention; (d) any objection to the jurisdiction or venue of this Court; (e) an election of remedy; (f) the right to amend this proof of claim; (g) the right to assert claims for attorneys' fees and costs which may accrue or have accrued; and/or (h) any other right, claim, defense, action, setoff, or recoupment, in law or in equity, under any agreement, all of which are expressly reserved.

29.    Nothing in this Proof of Claim (including, without limitation, statements as to the amount of the Surety's secured and/or unsecured or deficiency claim) shall constitute an admission of any fact or matter, and the Surety reserves all its rights and positions in any manner relating thereto.  The Surety further reserves all rights, claims and defenses regarding any claim against any bond, including the Bonds.  Nothing herein shall be deemed as an admission with respect to such claims or otherwise, nor shall anything herein be construed as a waiver of any of the Surety's rights, claims or defenses.

30.     The Surety reserves all of its rights in connection with the Bonds, at law, and in equity, none of which have been waived in whole or in part.  The Surety also reserves the right to amend and or supplement this proof of claim.

31.     The Surety reserves its rights to file separate claim(s) for administrative expenses in this matter.

**EXHIBIT A**
**<u>Customs Bond</u>**

# U.S. Specialty Insurance Company

## Continuous Bond Confirmation

| Execution Date | Effective Date | Surety Bond Number |
|---|---|---|
| 2/6/2017 | 2/6/2017 | CB1000315 |

| Bond Amount | Customs Bond Number | Customs Status |
|---|---|---|
| $50,000.00 | 17C001WXQ | ACCEPTED |

**Bond Activity Type**

2 - Custodian of Bonded  Merchandise

## ACE Response

2/6/2017 10:02:13 PM UTC

Final Disposition; the transaction has been ACCEPTED by CBP; the action requested was successfully performed.

Severity Code: I ;Condition Code: 992 ;Message: NEW EBOND TRANSMITTED IN ACE PER TERMS OF THE EBOND TEST[79 FR 70881]

## ACE Submission

| | |
|---|---|
| Bond Activity Code: | 2 - Custodian of Bonded  Merchandise |
| Bond Amount: | $50,000.00 |
| Effective Date: | 2/6/2017 |
| Principal ID Number: | ███████████ |
| Surety Code: | 846 |

## Principal

| Principal ID | Principal Name & Address |
|---|---|
| ███████████ | PHOENIX SERVICES, INC<br>148 W STATE ST,  KENNETT SQUARE<br>PA - 193483021 , US |

## Co-Principals

N/A

## Trade Names and Unincorporated Divisions

N/A

 **DEPARTMENT OF HOMELAND SECURITY**
U.S. Customs and Border Protection

OMB APPROVAL NO. 1651-0050
EXPIRATION DATE 09/30/2020

# CUSTOMS BOND

19 CFR Part 113

| CBP USE ONLY | BOND NUMBER (Assigned by CBP) |
|---|---|
| | 22C000Q49 |

Broker Filer Code: BPQ          Surety Reference Number: CTB000757156

| In order to secure payment of any duty, tax or charge and compliance with law or regulation as a result of activity covered by any condition referenced below, we, the below name principal(s) and surety(ies), bind ourselves to the United States in the amount or amounts, as set forth below. | Execution Date 05/11/2022 |
|---|---|

**SECTION I –** Select Single Transaction OR Continuous Bond (not both) and fill in the applicable blank spaces.

| ☐ ~~SINGLE TRANSACTION BOND~~ | Identification of transaction secured by this bond (e.g., entry number, seizure number, etc.) | | Transaction Date | Port Code |
|---|---|---|---|---|
| ☒ **CONTINUOUS BOND** | Effective Date 06/15/2022 | This bond remains in force for one year beginning with the effective date and for each succeeding annual period, or until terminated. This bond constitutes a separate bond for each period in the amounts listed below for liabilities that accrue in each period. The intention to terminate this bond must be conveyed within the period and manner prescribed in the CBP Regulations. | | |

**SECTION II –** This bond includes the following agreements. Check one box only. (Except 3a may be checked independently or with 3.)

| Activity Code | Activity Name and CBP Regulations in which conditions codified | Limit of Liability | Activity Code | Activity Name and CBP Regulations in which conditions codified | Limit of Liability |
|---|---|---|---|---|---|
| ☒ 1 | Importer or broker ……………………§113.62 | 50000.00 | ☐ 8 | ~~Detention of Copyrighted Material~~ …………………………………………§113.70 ~~-Single Transaction Only-~~ | |
| ☐ 1a | ~~Drawback Payments Refunds ………§113.65~~ | | ☐ 9 | ~~Neutrality ……………§113.71~~ ~~-Single Transaction Only-~~ | |
| ☐ 2 | ~~Custodian of Bonded Merchandise §113.63 (Includes bonded carriers, freight forwarders, cartmen and lightermen, all classes of warehouse, container station operators) -Continuous Bond Only-~~ | | ☐ 10 | ~~Court Costs for Condemned Goods~~ …………………………………………§113.72 ~~-Single Transaction Only-~~ | |
| ☐ 3 | ~~International Carrier…………………§113.64~~ | | ☐ 11 | ~~Airport Security Bond…….Part 113 App A~~ | |
| ☐ 3a | ~~Instruments of International Traffic… §113.66 -Continuous Bond Only-~~ | | ☐ 12 | ~~International Trade Commission (ITC) Exclusion Bond……………Part 113 App B~~ | |
| ☐ 4 | ~~Foreign Trade Zone………………….§113.73 -Continuous Bond Only-~~ | | ☐ 14 | ~~In-Bond Export Consolidation Bond~~ | |
| ☐ 5 | ~~Public Gauger…………………….§113.67~~ | | ☐ 15 | ~~Intellectual Property Rights (IPR)~~ | |
| ☐ 6 | ~~Wool & Fur Products……………….§113.68 Labeling Acts Importation -Single Transaction Only-~~ | | ☐ 16 | ~~Importer Security Filing (ISF) …………………………………Part 113 App D~~ | |
| ☐ 7 | ~~Bill of Lading……………………….§113.69 -Single Transaction Only-~~ | | ☐ 17 | ~~Marine Terminal Operator …………………………-Continuous Bond Only-~~ | |

**PRINCIPAL**

| *Name and Physical Address (including legal description and state of incorporation)* | By checking the box you agree that you have a seal in accordance with 19 CFR 113.25 ▶ | AFFIX SEAL or Check Box |
|---|---|---|
| Phoenix Services | CBP Identification Number: ▮▮▮▮▮▮ | |
| 148 W State St | Signature | |
| Suite 301 | Bond Electronically Filed | |
| Kennett Square, Pennsylvania, 19348 | | ☒ Check Box |

| Principal and surety agree that any charge against the bond under any of the listed names is as though it was made by the principal(s). Principal and surety agree that they are bound to the same extent as if they executed a separate bond covering each set of conditions incorporated by reference to the CBP regulations into this bond. If the surety fails to appoint an agent under Title 31, United States Code, Section 9306, surety consents to service on the Clerk of any United States District Court or the U.S. Court of International Trade, where suit is brought on this bond. That clerk is to send notice of the service to the surety at: ▶ | Mailing Address Requested by the Surety U.S. Specialty Insurance Company (A Texas Corporation) 13403 Northwest Freeway, Houston, TX, 77040 |
|---|---|

**SURETY**

| Name and Physical Address *(including legal description and state of incorporation)* | Surety Number | Agent ID Number 095-XX-7438 | |
|---|---|---|---|
| U.S. Specialty Insurance Company (A Texas Corporation) 13403 Northwest Freeway, Houston, TX, 77040 | ▮▮▮▮▮ Signature *Philip DiChiara* | | ☐ Check Box |

CBP Form 301 (9/17)

Broker Filer Code: BPQ    Surety Reference Number: CTB000757156

Principal Name: Phoenix Services    CBP Identification Number: ████████

**AFFIX SEAL**
**or**
**Check Box**

By checking the box you agree that you have a seal in accordance with 19 CFR 113.25

**CO-PRINCIPAL**

| *Name and Physical Address (including legal description and state of incorporation)* | CBP Identification Number: | |
| | Signature | |
| | | ☐ Check Box |

| **SECTION III –** List below the complete name of all trade names or unincorporated divisions that will be permitted to obligate this bond in the principal's name including their CBP Identification Number(s). | | | |
| CBP Identification Number | Name | CBP Identification Number | Name |
| | | | |
| | | Total Number of Importer Names listed in Section III: | |

**CO-SURETY**

| *Name and Physical Address (including legal description and state of incorporation)* | Surety Number | Agent ID Number | |
| | Signature | | |
| | | | ☐ Check Box |

CBP Form 301 (9/17)

**EXHIBIT B**
**Indemnity Agreement**



HCC Surety Group
601 South Figueroa Street, Suite 1600
Los Angeles, California 90017-5721

### GENERAL INDEMNITY AGREEMENT (Commercial Bonds / Non-Contract Bonds)

This Agreement of Indemnity, made and entered into this ‾‾‾ day of ‾‾‾‾‾‾‾, ‾‾‾‾ is executed by the Undersigned for the purpose of indemnifying American Contractors Indemnity Company, Texas Bonding Company, United States Surety Company, U. S. Specialty Insurance Company and/or HCC Surety Group, herein referred to as "Surety." in connection with any Bonds written on behalf of Metal Services LLC dba Phoenix Services LLC
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾, herein referred to as "Principal."

1. **DEFINITIONS** - The following definitions apply in this Agreement:
   **Bond** - Any contractual obligation undertaken by Surety for Principal, before or after the date of this Agreement and any renewal or extension of said obligation.
   **Principal-** The person(s) or entity(ies) set forth above or any one of them or any combination thereof, or their successors in interest, whether alone or joint venture with others named herein or not.
   **Surety** - American Contractors Indemnity Company, Texas Bonding Company, United States Surety Company, U.S. Specialty Insurance Company and/or HCC Surety Group and any other person(s) or entity(ies) which the Surety may procure to act as a Surety or as a co-Surety on any Bond, or any other person or entity who executes a Bond at the request of the Surety.
   **Indemnity Agreement** - This term shall also include all other documents executed by the Undersigned or any one of them in connection with the issuance of any obligation prior to or subsequent to the date of this Agreement. These documents are incorporated herein for all purposes.
   **Undersigned** - The executing parties to this Agreement as well as any other party executing a bond obligation covered by this Agreement. Each of the Undersigned are jointly and severally obligated under this Agreement.

2. **INDEMNITY** - In consideration of the execution and delivery by the Surety of a Bond or Bonds on behalf of the Principal, either prior to, in connection with or subsequent to this Agreement, the Undersigned agrees to exonerate, indemnify and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind or nature (including, but not limited to, interest, court costs and counsel fees) which arise by reason of, or in consequence of, the execution by the Surety of any Bond on behalf of the Principal and whether or not the Surety shall have paid any sums in partial or complete payment thereof, including but not limited to: sums paid including interest, liabilities incurred in settlement of claims, expenses paid or incurred in connection with claims, suits, or judgments under such Bonds; expenses paid or incurred in enforcing the terms of this Agreement; expenses paid or incurred in procuring or attempting to procure release from liability under its Bond by Surety; expenses incurred in recovering or attempting to recover losses or expenses paid or incurred; attorneys fees and all legal or professional services; adjustment of claims; premiums on Bonds issued by Surety on behalf of the Principal; or monies advanced or loaned.
   In furtherance of such indemnity:
   A. The liability of the Undersigned shall extend to and include all amounts paid by the Surety in good faith under the belief that the Surety was or might be liable, or that such payments were necessary or advisable to protect any of Surety's rights.
   B. Surety shall have the right to incur such expenses in handling a claim as it shall deem necessary, including but not limited to the expense for investigative, accounting, collection, litigation costs and legal services (including in-house counsel).
   C. Surety shall have all rights set out herein, irrespective of the fact that the Undersigned may have assumed, or offered to assume, the defense of the Surety upon such claim.
   D. In any claim or suit hereunder, an itemized statement of the aforesaid losses and expenses or the vouchers or other evidence of disbursement by Surety; shall be prima facie evidence of the fact of the liability hereunder of the Undersigned.
   E. Surety shall have the right to reimbursement of its expenses, premiums and attorneys' fees, including in-house attorneys' fees, costs and expenses hereunder, irrespective of whether any payment has been made by Surety.
   F. The Surety shall have the exclusive right for itself and for the Undersigned to decide and determine whether any claim, demand, suit, or judgment shall, on the basis of liability, expediency or otherwise, be paid, settled, defended or appealed, and the Surety's determination shall be final, conclusive and binding upon the Undersigned.

G. If the Undersigned desire that the Surety litigate a claim or demand, or defend suit, or appeal from such judgment, they shall deposit with the company, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment rendered, or which might be rendered, against Surety together with interest, costs and attorneys' fees.

H. The parties agree that the place of performance of this agreement, including the promise to pay Surety, shall be the County of Los Angeles, State of California and venue for any suit, arbitration, mediation or any other form of dispute resolution shall be in Los Angeles County, California.

3. **COLLATERAL SECURITY** - If a claim or demand is made against Surety, whether disputed or not, or Surety deems it necessary to establish a reserve for potential claims, and upon demand from Surety, the Undersigned shall deposit with Surety cash or other property acceptable to Surety, as collateral security, in a sufficient amount to protect Surety with respect to such claim or potential claims and any expense or attorneys' fees.

Such collateral may be held or utilized by Surety until it has received evidence of its complete exoneration and discharge from such claim or potential claims, and until it has been fully reimbursed for all loss, expense, attorneys' fees and unpaid premiums. If said collateral, or collateral previously deposited with Surety, is deemed insufficient by Surety, the Undersigned agrees to deposit additional or substitute collateral in an amount and type acceptable to Surety. This may include the Surety's demand for cash collateral in substitution for trust deed collateral.

4. **ASSIGNMENT** - As security for the performance of all the provisions of this Agreement, effective as of the date of this Agreement, the Undersigned hereby assign, transfer, pledge and convey to Surety all of their right, title, interest and estate in and to all real and personal property which the Undersigned now own or hereinafter acquire, including all income and receipts therefrom and increases and appreciation thereon, said assignment to include but not be limited to: subject to any and all pre-existing encumbrances

   A. Any and all sums due or which may hereafter become due under any contract and all other sums due or to become due on all other contracts, in which any of the Undersigned have an interest.
   B. All rights arising out of notes, accounts receivable, and any claims of any kind and court actions.
   C. Any and all undisbursed loan funds, deposit accounts or interest reserve accounts to which the Undersigned may be entitled, and any and all collateral for the undertakings given by the Undersigned in connection with any contract.

5. **POWER OF ATTORNEY** - The Undersigned hereby irrevocably nominates, constitutes, appoints and designates the Surety or its designees as their attorney-in-fact with the power, but not obligation, to exercise all of the rights assigned, transferred and set over to the Surety by the Undersigned in this Agreement, and to make, execute and deliver any and all additional or other assignments, documents or papers, including but not limited to the execution of to further the intent of this Agreement, the endorsement of checks certificate of deposits or other instruments payable to any of the Undersigned, settle all claims and disputes that may arise under the bond or bonds including the execution of releases and settlement documents. The Undersigned hereby ratifies and affirms all acts and actions taken and done by the Surety or its designee as attorney-in-fact.

6. **WAIVER OF NOTICE** - The Undersigned agree that the Surety need not give notice to the Undersigned of any act, fact or information coming to the notice or knowledge of the Surety concerning or affecting Sureties rights or liabilities under any such Bond or Undersigned rights or liabilities hereunder, notice of all such information being hereby expressly waived. The liability of the Undersigned as to the future Bonds of Principal shall not terminate by reason of the failure of Surety to disclose facts known about the Principal, even though such facts materially increase the risk beyond that which the Undersigned might intend to assume. Whether Surety may have reason to believe such facts are unknown to the Undersigned, or whether Surety may have reasonable opportunity to communicate such facts to Undersigned, the Undersigned hereby waives notice and disclosure of such facts or information.

7. **TERMINATION** - This Agreement is a continuing obligation of the Undersigned until Surety is exonerated and released from any liability under bonds issued to the Principal. The Undersigned may terminate their liability for any future bonds by written notice to Surety and such termination by a particular Undersigned shall in no way affect the obligation of any other Undersigned who has not given such notice. In order to terminate liability as to future Bonds of Principal, an Undersigned must:

   A. Give written notice by means of certified mail to Surety at Surety's home office; and
   B. State in such notice the name of the principal, Undersigned and the effective date (not less than thirty days after receipt thereof of Surety) of termination of such Undersigned's liability for future Bonds.

After the effective date of such termination by giving written notice, the Undersigned shall nonetheless be liable hereunder for Bonds executed or authorized prior to such date, and renewals, substitutions and extensions thereof.

## 8. GENERAL PROVISIONS

A. The obligations of the Undersigned hereunder are joint and several. Surety may bring separate suits hereunder against any of the Undersigned as causes of action may accrue hereunder. Surety need not proceed first against the Principal.

B. Undersigned will procure the discharge and exoneration of Surety from any Bond, and all liability by reason thereof upon the request of Surety.

C. Undersigned warrants that each of them is specifically and beneficially interested in obtaining each Bond and agrees to pay the initial, renewal, and additional premiums thereon, at the Surety's filed rate at the time of renewal. The Undersigned agree that the initial premium is fully earned upon execution of said Bond.

D. Surety shall have the right, at its option and in its sole discretion, to issue or decline the execution of any Bond or renewal thereof.

E. Unless otherwise indicated herein, the Bond furnished by Surety pursuant to this Agreement shall not be applicable to guarantee or insure the Undersigned's operation, management, or control of an ongoing business operation.

F. Undersigned agrees to give to Surety prompt notice of any facts which might give rise to any claims or suits against Surety upon any Bond.

G. If the execution of this Agreement by any of the Undersigned be found defective or invalid for any reason, such defect or invalidity shall not affect the validity of this Agreement with respect to any of the other Undersigned. The invalidity of any provision of this Agreement by reason of the law of any state or by any other reason shall not affect the validity of any other provision of this Agreement.

H. The Surety may, at its option, file or record this Agreement or any other document executed by any or all the Undersigned, individually or jointly, in connection with the application, issuance or execution of any Bond or Bonds, or renewal thereof, coming within the scope of this instrument as: a security agreement or as part of a financing statement or, as notice of its prior interest and assignment under the provisions of the Uniform Commercial Code or any other statute, ordinance or regulation of any jurisdiction or agency. The filing or recording of such document shall be solely at the option of the Surety. The failure to so file shall not release or discharge any of the obligations of the Undersigned under this Agreement. A copy or other reproduction of this Agreement or of any other documents filed or recorded by the Surety, is sufficient as a financing statement, security agreement or notice of prior interest under this Agreement.

I. The Surety shall have the right to fill in any blanks and to correct any errors in the documents.

J. Until Surety shall have been furnished with conclusive evidence of its discharge without loss from any Bonds, and until Surety has been otherwise fully indemnified hereunder provided, Surety shall have right of free access to the books, records and accounts of the Undersigned for the purpose of examining and copying them. The Undersigned hereby authorizes third parties, including but not limited to depositories of funds of the Undersigned, to furnish to Surety any information requested by Surety in connection with any transaction, other persons, firms or entities for the purpose of procuring co-Suretyship or reinsurance or of advising such persons, firms, or entities as it may deem appropriate.

K. The Undersigned waives any defense that this instrument was executed subsequent to the date of any such Bond, admitting and covenanting that such Bond was executed pursuant to the Undersigned's request and in reliance on the Undersigned's promise to execute this instrument.

L. This Agreement may not be changed or modified without the written consent of Surety. Any amendment of the Agreement for one of the undersigned shall not release any of the other Undersigned.

M. In the event any of the Undersigned shall fail to execute this instrument or become insolvent, or in the event any of the Undersigned who execute this Agreement, shall not be bound for any reason, the other Undersigned shall, nevertheless, be bound hereunder for the full amount of the liability as aforesaid.

N. No course of conduct or failure to timely exercise any rights under this Agreement shall constitute waiver of future enforcement of the rights and obligations hereunder.

O. The liability of the Undersigned hereunder shall not be affected by: (a) the failure of the Principal to sign any Bond, (b) any claim that other indemnity or security was to have been obtained, (c) the release of any indemnity, (d) the return or the exchange of any collateral that may have been obtained.

P. The Undersigned and their successors, executors and administrators agree to hold all money or other proceeds derived from the Undersigned actions covered by the bond or bonds for the purpose of performing

the duties owed under the bond or bonds and discharging the obligations of the Bond, and for no other purpose until the Bond is completely exonerated.

Q.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

9.  **CREDIT RELATIONSHIP** - Each of the Undersigned further affirms that he understands Bonds are a credit relationship and hereby authorizes the Surety to gather such credit information it considers necessary and appropriate for purposes of evaluating whether such credit should be affected or continued.

**NOTICE: THIS IS A LEGALLY BINDING AGREEMENT THAT SETS OUT RIGHTS AND OBLIGATIONS WHEN YOU SIGN THIS AGREEMENT**

Undersigned:

*Name of Company*
Principal(s):  Metal Services LLC dba Phoenix Services LLC

By _____    Address _48 W. State St, #201_
Name and Title  John Hillert         _Kennett Sq. PA 19348_

By _____    Address _____
Name and Title _____

By _____    Address _____
Name and Title _____

By _____    Address _____
Name and Title _____

Individually/Trust
Indemnitors: _____

By _____    Address _____

By _____    Address _____

By _____    Address _____

By _____    Address _____

By _____    Address _____

By _____    Address _____

By _____    Address _____

## ACKNOWLEDGMENTS

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of *Pennsylvania*
County of *Chester*

On *January 30th, 2017* before me, *Lisa M. Leach, a notary public*
personally appeared *John J. Hilbert, Principal*
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature *Lisa M. Leach* (Seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Lisa M. Leach, Notary Public
Kennett Square Boro, Chester County
My Commission Expires Jan. 7, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

## ACKNOWLEDGMENTS

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____
County of _____

On _____ before me, _____
personally appeared _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

## ACKNOWLEDGMENTS

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____
County of _____

On _____ before me, _____
personally appeared _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

HCCSZZA_GIANONCONTRACT05 2013

Page 5 of 6

**EXHIBIT C**
**<u>Collateral Security Agreement</u>**

 **HCC**

HCC Surety Group
601 S. Figueroa Street, Suite 1600, Los Angeles, California 90017
main 310 649 0990   facsimile 310 649 0416

No.

# COLLATERAL SECURITY AGREEMENT AND RECEIPT

Principal(s):  Phoenix Services LLC
(Name(s) as it appear(s) on the General Indemnity Agreement)

Address:  148 W. State St., Suite 301          Kennett Square          PA          19348
(Street)                                            (City)                  (State)        (Zip)

Owner of Collateral Security:  Phoenix Services LLC
(Name)

Address:  148 W. State St., Suite 301          Kennett Square          PA          19348
(Street)                                            (City)                  (State)        (Zip)

Social Security # or Tax I.D. #: ▮▮▮▮▮▮▮

Owner of Collateral Security: _____
(Name)

Address: _____
(Street)                      (City)              (State)          (Zip)

Social Security # or Tax I.D. #: _____

American Contractors Indemnity Company, U. S. Specialty Insurance Company, United States Surety Company and/or Texas Bonding Company (hereinafter, collectively, the "Surety") accepts the collateral transfer of the following security from the party or parties designated above as Owner(s) (hereinafter, collectively, the "Owner") and/or the Principal(s) (hereinafter, collectively, the "Principal"). The collateral identified below (hereinafter, the "Collateral") is deposited for the benefit of the Surety and its co-sureties, reinsurers, successors and assigns, in conjunction with an application for bonding credit, for good consideration, and under the agreements and upon the conditions hereinafter stated:

DESCRIPTION OF COLLATERAL:

1. Letter of Credit for: $ _____        2. Deed/Mortgage: $ _____
No.: _____                               Date: _____
Issue Date/Expiration Date: _____        Street Address: _____
Bank (Name, Address & Ph): _____        _____
_____                                    _____

> Deed of Trust/Mortgage is incorporated herein for all purposes and violation of this Collateral Security Agreement and Receipt shall be a condition of default under the Deed of Trust/Mortgage. Should terms of Deed of Trust/Mortgage conflict with the terms of this Agreement, Deed of Trust/Mortgage shall be controlling.

3. Other: (cash, cash equivalents, stocks, bonds, etc.)  Cash _____

_____

_____

_____

_____

HCCS7ZA  COLLATERALSEC 05 2013

## AGREEMENTS AND CONDITIONS

### A.    Purpose and Use of Collateral

1.    For valuable consideration, receipt of which is hereby acknowledged, the Owner hereby grants a security interest in the Collateral together with any proceeds, product, increase in value and income including rents thereon, and any additional or replacement collateral. The Collateral is hereby pledged, whether held by a third party or deposited with the Surety, as security to unconditionally and fully protect the Surety in connection with any and all bonding obligations as may exist or be created in the future between the Owner, the Principal, any current or hereafter created or acquired subsidiary, affiliate, joint venture, or other legal entity in which the Owner or Principal has a substantial, material, or beneficial interest, or any other third party at the request of the Owner, Principal or Indemnitors. The Surety may enforce the terms of the Collateral Security Agreement and Receipt (hereinafter, the "Agreement") to protect and/or reimburse the Surety:

   i.    For the enforcement and fulfillment of the provisions of the General Indemnity Agreement, Agreement of Indemnity, and/or other indemnity agreement (hereinafter, the "Indemnity Agreement");

   ii.    Against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses, investigative fees and expenses, accountants' fees and expenses, engineering and other professional or consultants' fees and expenses of any kind, in-house attorneys' fees and expenses, interest, court costs and any and all other types of losses, costs or expenses of whatsoever kind or nature, which the Surety may sustain and/or incur and which arise by reason of or in any manner in consequence of, no matter how remotely, the execution or procurement by the Surety of any bonds issued or procured by the Surety on behalf of the Principal, recognizance, undertaking or other obligation, regardless of when issued or incurred (all of which, together with any continuations and modifications thereof, are hereinafter referred to as the "Bonds"), heretofore or hereafter executed, assumed or procured by the Surety at the instance or request or on behalf of either the Owner or the Principal;

   iii.    For the payment of all premiums on such Bonds and all other items of indebtedness due to the Surety and/or its agent from the Principal or Owner;

   iv.    For the performance of every agreement (including continuations or modifications thereof, with or without consent of the Owner) made by the Owner or by any Principal concerning said Bonds;

   v.    To secure and indemnify the Surety from any and all losses, costs, interests, expenses, and/or legal fees which Surety may incur or become liable for under the terms and provisions of all the agreements provided by the Owner and/or the Principal to the Surety, including but not limited to any Indemnity Agreement.

2.    To accomplish the purposes of such Collateral deposit, the Surety is authorized, and hereby appointed as attorney-in-fact for the Owner to act at any time and without notice or legal process, to sell, cash, surrender and use said Collateral, and to apply the Collateral or any proceeds to payment of or reimbursement in accordance with the terms of the Indemnity Agreement, as it may elect; and, at its option and in its sole discretion, to sell any of said Collateral security at public or private sale to itself or to any person, or to deposit, liquidate, convert, cash, exchange, renew or dispose of said Collateral or the proceeds thereof, in any manner, in such form and on such terms as it deems proper.

3.    Owner represents him/her/itself to be the sole owner(s) of the Collateral, and agrees to save the Surety harmless from any loss, costs, expenses, damages or attorneys' fees arising from claims to any part of the Collateral by any person(s) and/or entity claiming adversely to the Owner or Surety. The Undersigned hereby appoints the Surety or the Surety's lawfully designated representative to execute any form(s) or document(s) which may be necessary to perfect the Surety's lien(s) on such Collateral including but not limited to forms proscribed by the Uniform Commercial Code such as form UCC-1, UCC-2 and UCC-3.

4.    If the Collateral, any substitutions thereof, or additions thereto, shall for any reason be of a value insufficient for the Surety's protection, in the Surety's opinion, the Owner and/or the Principal shall, upon demand, deposit additional collateral satisfactory to the Surety, of a value at least equal to the amount of the Bonds. If the Owner and/or the Principal do not deposit additional collateral within five (5) days after demand, the Surety may sell, deposit, invest, convert, cash, liquidate, exchange, renew, or dispose of the Collateral, at its discretion, including a public or private sale and the Surety may be the purchaser at such sale.

5.    The Surety shall not be liable for any loss or depreciation of the Collateral or the proceeds thereof, or damage thereto, and the Surety assumes no responsibility for the earning of any income thereon. In connection with any certificate of deposit or any other instrument evidencing the deposit of money with any person, firm or corporation included in the Collateral, it is understood that the Owner has selected the depository, or appointed the Surety to select the depository and the Owner assumes full responsibility for the safety of the deposited funds.

**B.    Types of Collateral**

1.    Cash.    If the Collateral pledged herein is in the form of cash, the Collateral is being delivered to the Surety to be held in the Surety's name.  Ownership and control of the Collateral is vested in the Surety until all Bonds are exonerated in accordance with Section D of this Agreement.  The Surety will pay simple interest at a rate of one half of one percent (0.5%) per annum.  The Surety is entitled to retain any amount of accrued interest earned in excess of the stated rate.  If paid, interest will be paid in accordance with Section D of this Agreement as long as the Owner delivers to the Surety an executed IRS Form W-9 or W-8.  When IRS Form W-8 is applicable, the Surety will withhold U.S. tax as required by IRS Pub. 515.  In the event the Owner fails to deliver to Surety an executed IRS Form W-9 or W-8 within thirty (30) days subsequent to the release of Collateral to the Owner, the Owner shall forfeit all rights to interest.  Notwithstanding anything to the contrary in this Agreement, any interest paid to the Owner upon the release of the Collateral may be greater than or less than the interest received by the Surety on such Collateral.  Interest shall not be paid on Collateral deposited with the Surety for ninety (90) days or less.

2.    Irrevocable Letter of Credit.    If the Collateral pledged herein is in the form of an Irrevocable Letter of Credit (hereinafter "ILOC"), it is the responsibility of the Owner and/or Principal to provide the Surety with a notice of renewal of that ILOC at least forty-five (45) days prior to its expiration date. This responsibility of renewal by the Owner and/or Principal shall continue for every renewal period unless the Owner and/or Principal receive written notification from the Surety that no renewal will be required.  Should the Owner and/or Principal fail to provide a notice of renewal to the Surety within the time allowed under this paragraph then the Surety may require the Owner and/or Principal to pay a nonrefundable processing fee of $300.00 to the Surety and any other actual expenses incurred by the Surety in obtaining such a renewal.  In addition to this fee, the Surety may exercise its right to draw on the ILOC and such proceeds shall be considered substitute Collateral under this Agreement.

The Surety reserves the right, in its sole and absolute discretion, to accept or reject the issuing bank of the ILOC.  At any time following receipt of an ILOC by the Surety, the Surety may, in its sole and absolute discretion, demand a replacement ILOC from a different issuing bank.  The Owner and/or Principal shall, upon demand by the Surety, provide a replacement conforming ILOC within ten (10) calendar days.  Should the Owner and/or Principal fail to provide a replacement ILOC to the Surety within the time allowed under this paragraph, the Surety may exercise its right to draw on the ILOC and such proceeds shall be considered substitute Collateral under this Agreement and/or require the Owner and/or Principal to pay a nonrefundable processing fee of $300.00 to the Surety in addition to any other actual expenses incurred by the Surety in obtaining such a renewal.

The Surety, in its sole and absolute discretion, may draw up to the full amount of the ILOC to satisfy any claims made or may be made on/against the Surety and/or all items of indebtedness due to the Surety under or for said Bonds whether known or unknown to the Surety at the time of the draw.

3.    Real Property.    If the Collateral is a security interest in real property, the Surety may require the Owner and/or Principal to pay a file initiation and processing fee of $350.00 in addition to any actual expenses incurred by the Surety, whichever is greater.  Upon the Surety's approved release of such Collateral, the Surety may require the Owner and/or Principal to pay a nonrefundable reconveyance fee which will not exceed the maximum allowed by law at the time the reconveyance is executed.

4.    Securities.    In the event non-interest bearing securities or instruments are deposited with the Surety as Collateral, there shall be no duty on the part of the Surety to deposit or place such Collateral in an interest-bearing account or arrangement, or segregate funds, securities or other instruments from others held by the Surety.

5.    Miscellaneous.    All other types of property deposited with and/or assigned to the Surety as Collateral shall be subject to the terms of this Agreement.

**C.    Substitution of Collateral**

1.    Any substitution of the Collateral shall be at the discretion of Surety as to the value, form, and source and the Owner agrees that any substitution shall be subject to the terms of this Agreement and of any Indemnity Agreement.

2.    Should the Owner and/or Principal:

    i.    Request the Surety to substitute the Collateral;

    ii.    Request the Surety to subordinate its previously secured interest in real property; or

    iii.    Request a change or alteration, in any manner, of the Collateral

HCC8ZZA_COLLATERALSEC05 2013

the Owner and/or Principal acknowledge that the Surety may require the Owner and/or Principal to pay, in advance to the Surety, a nonrefundable file initiation and processing fee of $300.00 and any expenses incurred in acting upon the Owner and/or Principal's request. The Owner and/or Principal agree that the Surety is under no obligation to comply with any requests and all prepaid fees are nonrefundable.

**D.    Release of Collateral**

1.    In General.    The Surety may consider release of the Collateral upon its receipt of written evidence and/or information satisfactory to the Surety (in the Surety's sole discretion) of the following:

    i.    Discharge and exoneration from all liability under the Bonds;

    ii.    Proof of ownership of the collateral by the applicant requesting its release; and

    iii.    Payment of all amounts due to the Surety from the Owner and/or Principal as provided herein and/or in any Indemnity Agreement.

The Owner and Principal recognize that differences of opinion with regard to proof of ownership and of termination of the Surety's liability require the giving of considerable latitude to the Surety in the determination of what evidence is satisfactory. In the event the Surety determines the evidence is satisfactory to support a release of the Collateral, the Surety shall, within a reasonable period of time, return the Collateral or the proceeds thereof, less any deductions pursuant to the terms of this Agreement and/or any Indemnity Agreement.

2.    Bond Specific Collateral Release.    Release of the Collateral by the Surety will further be determined in accordance with the specific types of said Bonds as detailed hereinbelow:

    i.    Contract and Subdivision Bonds.    The Surety will retain the Collateral for a minimum of ninety (90) days after project or contract completion and acceptance by the Owner/Obligee.  Upon expiration of ninety (90) days from acceptance by the Owner/Obligee, the Surety will consider releasing the Collateral if the following conditions are met:
        a.    There are no circumstances which may cause a claim, in the sole judgment of the Surety;
        b.    No claim has been made against any Bonds for which the Collateral was posted;
        c.    The Principal has fulfilled all obligations under the terms of the bonded contract(s).

    ii.    Court Bonds.    There are various means of exonerating a court bond, i.e. final judgment, stipulation, dismissal, etc.  The Owner agrees to submit documents to be considered for exoneration to the Surety (prior to execution or filing of said documents with any court) for the Surety's pre-approval.

    iii.    Lost Note Bonds.    The Surety will consider releasing the Collateral upon receipt by the Surety of evidence which demonstrates one or more of the following events has/have occurred:
        a.    Final judgment confirming quiet of title in favor of the Principal;
        b.    Recorded substitution of trustee and deed of full reconveyance executed by deed of trust beneficiary; or
        c.    Expiration of all applicable statute of limitations.

    iv.    Lien Release Bonds.    The Surety will consider a release of the lien release bond in the form approved by the Surety and executed by the Obligee, or a final judgment fully exonerating the Surety from the lien release bond.

    v.    All Other Bonds or Classes of Business.    The Surety will consider releasing the Collateral based on its review of underwriting and other criteria which may be in force at the time of the request for release of the Collateral.

3.    Until the requirements of Section D(2) of this Agreement are satisfied, the Surety will not consider release of the Collateral and will have no obligation to the Owner of the Collateral to release the Collateral.  Upon exoneration of said Bonds, the Collateral held by the Surety may be subject to state unclaimed property laws.

**E.    Additional Collateral Provisions**

1.    This Agreement may not be modified, amended, assigned, negotiated, transferred or changed without the express written consent of a duly authorized officer of the Surety.

2.    By exercising or failing to exercise any of its rights, options or elections hereunder, the Surety shall not be deemed to have waived any breach or default on the part of any of the Owner and/or Principal or to have released any undersigned from any Owner and/or Principal of his/her/its/their obligations hereunder, unless such waiver or release is in writing and is signed by a

duly authorized officer of the Surety. In addition, the waiver by the Surety of any breach or default hereunder shall not be deemed to constitute a waiver of any succeeding breach or default.

3.    The Surety, the Owner, and the Principal agree that the place of performance of this Agreement, including the promise to pay the Surety, shall be in Los Angeles County, California, and venue for any suit, arbitration, mediation or any other form of dispute resolution shall be, at Surety's option, the location of the collateral or Los Angeles County, California.

4.    All provisions of the Indemnity Agreement are incorporated herein by reference. The Owner understands that he/she/it is entitled to receive a copy of the Indemnity Agreement and the Surety agrees to provide said copy to the Owner, upon request.

5.    It is understood and agreed by the Owner and Principal that the rights, powers and remedies given to the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers and remedies which the Surety may have or acquire against the undersigned or others whether by the terms of any other agreement, including the Indemnity Agreement, or by operation of law or otherwise.

6.    The Surety shall be under no obligation to proceed against any or all of the Collateral before proceeding against any Principal or indemnitor of any Indemnity Agreement.

7.    If any part of this Agreement is found by a court of competent jurisdiction to be contrary to law, only that part of the Agreement is null and void and the balance of the Agreement continues in force until terminated or amended.

8.    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

Dated at ~~Kennett Square, PA~~ this 30th of JAN ~~November~~, 20 17.

**SURETY**

By: _____
Signature, Attorney-in-Fact

_____
Print Name of Authorized Attorney-in-Fact

**PRINCIPAL**

By: _____
Signature, as Officer and/or Individually

John Hilbert
Print Name of Authorized Agent of Principal

**OWNER - Collateral**

By: _____
Signature, as Officer and/or Individually

_____
Print Name of Owner

**OWNER - Collateral**

By: _____
Signature, as Officer and/or Individually

John Hilbert
Print Name of Owner

**PRINCIPAL**

By: _____
Signature, as Officer and/or Individually

_____
Print Name of Authorized Agent of Principal

**OWNER - Collateral**

By: _____
Signature, as Officer and/or Individually

_____
Print Name of Owner

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Lisa M. Leach, Notary Public
Kennett Square Boro, Chester County
My Commission Expires Jan 7, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Lisa M. Leach    Page 5 of 6

HCCS/ZZA COLLATERALSEC05 2013

## ACKNOWLEDGMENTS

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _Pennsylvania_
County of _Chester_

On _January 30, 2017_ before me, _Lise M. Leach_, notary public
personally appeared _John Wilbert, Principal_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Pennsylvania_ that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _Lise M. Leach_ (Seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Lise M. Leach, Notary Public
Kennett Square Boro, Chester County
My Commission Expires Jan. 7, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

## ACKNOWLEDGMENTS

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____
County of _____

On _____ before me, _____
personally appeared _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

## ACKNOWLEDGMENTS

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____
County of _____

On _____ before me, _____
personally appeared _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

HCCSZZA_COLLATERAL.SLC05 2013