## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| **PHOENIX SERVICES TOPCO, LLC,** *et al.*, | : | **Case No. 22-10906 (MFW)** |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |
|  | : |  |

------------------------------------------------------------- x

### DECLARATION OF ROBERT RICHARD IN SUPPORT OF
### CONFIRMATION OF JOINT CHAPTER 11 PLAN OF
### PHOENIX SERVICES TOPCO, LLC AND ITS DEBTOR AFFILIATES

I, Robert Richard, pursuant to section 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1.    I am the Chief Financial Officer ("**CFO**") of Phoenix Services Topco, LLC and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**").

2.    For a description of my background and credentials, please see my prior declaration, in support of the Debtors' chapter 11 petitions and motions seeking first day relief (Docket No. 13) (the "**First Day Declaration**").[2]

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Phoenix Services Topco, LLC (4517); Phoenix Services Parent, LLC (8023); Phoenix Services Holdings Corp. (1330); Phoenix Services International LLC (6493); Metal Services LLC (8793); Terracentric Materials LLC (0673); Cool Springs LLC (8687); Metal Services Investment LLC (2924); and Phoenix Receivables, LLC (not applicable). The Debtors' mailing address is 4 Radnor Corporate Center, Suite 520, 100 Matsonford Road, Radnor, Pennsylvania 19087.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration or the *Debtor's Memorandum of Law In Support of Confirmation of Joint Chapter 11 Plan of Phoenix Services Topco, LLC and Its Debtor Affiliate*s (the "**Memorandum**"), filed contemporaneously herewith, as applicable.

3.     I submit this declaration (the "**Declaration**") in support of the Debtors' request for entry of the proposed order (the "**Proposed Confirmation Order**") confirming the *Amended Joint Chapter 11 Plan of Reorganization of Phoenix Services Topco, LLC and Its Debtor Affiliates* (Docket No. 895) (as may be further modified, amended or supplemented, the "**Plan**").  I have reviewed, and I am generally familiar with, the terms and provisions of the Plan, the documents comprising the Plan Supplement, the Second Plan Supplement, the Proposed Confirmation Order, the Memorandum, and the requirements for confirmation of the Plan pursuant to section 1129 of title 11 of the United States Code (the "**Bankruptcy Code**").

4.     Except as otherwise indicated, the facts set forth in this Declaration (or incorporated by reference herein) are based upon my personal knowledge, my review of relevant documents and the Debtors' books and records, my discussions with other members of the Debtors' senior management, their legal advisors, or other professionals, information provided to me by employees working under my supervision or other employees of the Debtors with knowledge of the Debtors' operations, businesses, and financial condition, or upon information supplied to me by the Debtors' professionals and advisors.  If called upon to testify, I would testify competently to the facts set forth herein.  I am authorized to submit this Declaration on behalf of the Debtors.

5.     Additional information regarding the circumstances leading to the commencement of these chapter 11 cases and information regarding the Debtors' businesses and capital structure is set forth in the First Day Declaration.

6.     The terms of the Plan and the Restructuring Transactions contemplated therein were negotiated at arm's length and in good faith, represent a reasonable compromise and settlement by and among the Debtors, the DIP Lenders, the DIP Agent, the Consenting Lenders,

the Prepetition First Lien Administrative Agent and the Releasing Prepetition Lenders, and maximize the best value for the Estates.

7.    I believe the Plan achieves all of the objectives the Debtors set at the outset of these cases as it: (a) allows the Debtors to continue a going concern by delevering the Debtors' balance sheet by approximately $405 million, excluding capital leases; (b) allows the Debtors to emerge from chapter 11 with a stronger portfolio of revised customer contracts; (c) enables the Debtors to maintain relationships with key vendors; (d) provides the Debtors with an appropriate level of liquidity post-emergence; and (e) preserves hundreds of employees' jobs. I believe that the Plan maximizes distributable value to the Debtors' creditor constituencies.

8.    In my capacity as CFO, I believe the terms and conditions of the First Lien Exit Facility are the best available to the Debtors under the circumstances, reflect the Debtors' prudent exercise of sound business judgment, are based on good, sufficient, and sound business purposes and justifications, and are supported by reasonably equivalent value and consideration.

9.    Further, I believe that the Newco Participation Contract Right, which includes the right of the Backstop Parties to receive the Backstop Premium and the holders of the New Money DIP Loans to receive the Participation Premium pursuant to the Acceptable Plan Agreement, is reasonable given the facts and circumstances of these chapter 11 cases and taken in the wider context of the Restructuring Transactions.

10.    The Plan provides for releases of claims by the Debtors and their Estates as well as consensual releases of certain claims held by certain creditors of the Debtors' Estates. For the reasons set forth in the Memorandum, I believe the Releases are integral components of the Plan and the transactions embodied therein, and are appropriate and necessary under the circumstances.

11.  Section 10.6 of the Plan provides for a release of certain claims and Causes of Action of the Debtors, the Reorganized Debtors, the Reorganized Non-Acquired Debtors, and the Estates against the Released Parties in exchange for good and valuable consideration and valuable compromises made by the Released Parties (the "**Debtors' Releases**").

12.  It is my understanding that the Debtors' Releases do not release any claims or Causes of Action arising after the Effective Date against any party or affect the rights of the Debtors, Reorganized Debtors, or the Reorganized Non-Acquired Debtors to enforce the terms of the Plan or any right or obligation arising under the Definitive Documents that remain in effect after the Effective Date.  In addition, the Debtors' Releases do not release any claims or Causes of Action arising from an act or omission determined by final order to constitute gross negligence, willful misconduct, or intentional fraud.

13.  The Debtors' Releases are a necessary condition for entry into and consummation of the Restructuring Transactions embodied in the Plan, thereby allowing the Debtors to prevent diversion of the Reorganized Debtors' resources, which would otherwise be focused on servicing their clients or reinvesting in the business and are appropriate under the circumstances.

14.  For these reasons and the reason set forth in the Memorandum, I believe the Debtors' Releases represent a valid exercise of the Debtors' business judgment.

15.  In addition to the Releases, I am advised that the Plan contains a release and exculpation for the Exculpated Parties for claims arising out of or relating to, among other things, the Debtors' restructuring, these chapter 11 cases, and the negotiations and agreements made in connection therewith (the "**Exculpation Provision**").  I am further advised that the Exculpation Provision carves out acts or omissions that are determined in a final order to have

constituted intentional fraud, gross negligence, or willful misconduct. Based on my personal involvement or participation in these chapter 11 cases, I believe that the Exculpated Parties have participated in the Debtors' restructuring in good faith and the Exculpation Provision is necessary to protect those parties who have contributed to the Debtors' reorganization. Further, I have been advised that the scope of the Exculpation Provision only benefits fiduciaries of the Estates covers acts or omissions occurring between the Petition Date and the Effective Date and, as noted above, will not affect any liability that arises from gross negligence, willful misconduct, or intentional fraud as determined by final order.

16. Based upon my understanding of the Plan, the advice of the Debtors' advisors, and my experience with the Debtors' businesses and industry, I believe that the Debtors' reorganization is not likely to be followed by liquidation or the need for further financial reorganization. The Plan embodies a tailored restructuring that will provide for the continued viability of the Debtors' businesses. My opinion is based, in part, upon the Debtors' analysis of their ability to fulfill their obligations under the Plan (including the estimated costs of administration), as well as financial projections (the "**Financial Projections**") for the fiscal years 2023 through 2027, which are set forth in Exhibit B to the Disclosure Statement.

17. I believe that the Financial Projections are achievable through the implementation of certain strategic initiatives, which I believe are also achievable. With the implementation of such initiatives, the Reorganized Debtors are projected to generate approximately $31 million in EBITDA for the remainder of fiscal year of 2023 and up to approximately $49 million in EBITDA by the end of fiscal year 2027, which is sufficient to service their interest expense under the First Lien Exit Facility. Moreover, because both the debt and equity of the Reorganized Debtors' capital structure will be under the common ownership of

certain members of the Ad Hoc Group, any default risk under the First Lien Exit Facility is materially reduced.

18.  I believe that under the circumstances, it would be preferable for the Debtors to consummate the Plan and commence its implementation without delay after the entry of the Confirmation Order.  Allowing the Debtors to consummate the Plan as soon as possible after entry of the Confirmation Order will allow the Debtors to minimize additional costs that result from the Debtors remaining in chapter 11.  As a result, I believe that a waiver of the fourteen (14) day stay is in the best interests of the Estates and all other parties in interest and further believe it will not prejudice any party in interest.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 19, 2023
Radnor, Pennsylvania

**PHOENIX SERVICES TOPCO LLC AND ITS DEBTOR AFFILIATES**

By: */s/ Robert Richard*
Robert Richard
Chief Financial Officer