## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x
:
In re                                                          :      **Chapter 11**
                                                               :
**PHOENIX SERVICES TOPCO, LLC,** *et al.,*                     :      **Case No. 22-10906 (MFW)**
                                                               :
Debtors.[1]                                                    :      **(Jointly Administered)**
                                                               :
                                                               :
                                                               :
------------------------------------------------------------- x

## DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF
## CONFIRMATION OF JOINT CHAPTER 11 PLAN OF
## PHOENIX SERVICES TOPCO, LLC AND ITS DEBTOR AFFILIATES

**WEIL, GOTSHAL & MANGES LLP**
Ray C. Schrock
Jeffrey D. Saferstein
Garrett A. Fail
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi
Zachary I. Shapiro
Matthew P. Milana
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

*Attorneys for Debtor*
*and Debtor in Possession*

Dated: June 19, 2023
        Wilmington, Delaware

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Phoenix Services Topco, LLC (4517); Phoenix Services Parent, LLC (8023); Phoenix Services Holdings Corp. (1330); Phoenix Services International LLC (6493); Metal Services LLC (8793); Terracentric Materials LLC (0673); Cool Springs LLC (8687); Metal Services Investment LLC (2924); and Phoenix Receivables, LLC (not applicable).  The Debtors' mailing address is 4 Radnor Corporate Center, Suite 520, 100 Matsonford Road, Radnor, Pennsylvania 19087.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................1

PLEADINGS AND EVIDENCE IN SUPPORT OF CONFIRMATION .....................................2

FACTS .......................................................................................................................................3

ARGUMENT ..............................................................................................................................3

I.     THE PLAN SATISFIES SECTION 1129 OF THE BANKRUPTCY CODE AND
SHOULD BE APPROVED ................................................................................................3

     A.     The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code ...................3

         1.     The Plan Complies with Section 1122 of the Bankruptcy Code ............... 4

         2.     The Plan Complies with Section 1123(a) of the Bankruptcy Code ........... 6

         3.     The Plan Complies with Section 1123(b) of the Bankruptcy Code ........... 9

     B.     The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code .................15

         1.     The Plan Complies with Section 1125 of the Bankruptcy Code ............. 16

         2.     The Plan Complies with Section 1126 of the Bankruptcy Code ............. 16

     C.     The Plan Complies with Section 1129(a)(3) of the Bankruptcy Code .................18

     D.     The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code .................19

     E.     The Plan Complies with Section 1129(a)(5) of the Bankruptcy Code .................20

     F.     Section 1129(a)(6) of the Bankruptcy Code Does Not Apply to the Plan .............20

     G.     The Plan Complies with Section 1129(a)(7) of the Bankruptcy Code .................21

     H.     The Plan Satisfies Section 1129(a)(8) of the Bankruptcy Code ...........................21

     I.     The Plan Complies with Section 1129(a)(9) of the Bankruptcy Code .................22

     J.     The Plan Complies with Section 1129(a)(10) of the Bankruptcy Code ...............24

     K.     The Plan Complies with Section 1129(a)(11) of the Bankruptcy Code ...............24

     L.     The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code ...............27

     M.     The Plan Complies with Section 1129(a)(13) of the Bankruptcy Code ...............28

     N.     Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy
Code Do Not Apply to the Plan ...........................................................................28

     O.     The Plan Satisfies the "Cram Down" Requirements under Section 1129(b)
of the Bankruptcy Code .......................................................................................28

         1.     The Plan Does Not Discriminate Unfairly ................................................ 29

         2.     The Plan Is Fair and Equitable .................................................................. 31

     P.     The Plan Complies with Section 1129(d) of the Bankruptcy Code ......................32

Q.    Section 1129(e) of the Bankruptcy Code Does Not Apply to the Plan .................32

II.    CAUSE EXISTS TO WAIVE THE STAY OF THE CONFIRMATION ORDER..........32

CONCLUSION....................................................................................................................33

RLF1 29192923V.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbotts Dairies of Pa., Inc.*,
788 F.2d 143 (3d Cir. 1986).................................................................16

*In re Aleris Int'l, Inc.*,
Case No. 09-10478 (BLS), 2010 WL 3492664 (Bankr. D. Del. May 13, 2010).......................9

*In re Am. Cap. Equip., LLC*,
688 F.3d 145 (3d Cir. 2012).................................................................23

*In re AOV Indus. Inc.*,
792 F.2d 1140 (D.C. Cir. 1986) ..............................................................4

*In re Bush Indus., Inc.*,
315 B.R. 292 (Bankr. W.D.N.Y. 2004) ........................................................17

*In re Celotex Corp.*,
204 B.R. 586 (Bankr. M.D. Fla. 1996) .......................................................19

*In re Chemtura Corp.*,
439 B.R. 561 (Bankr. S.D.N.Y. 2010).........................................................17

*Clarkson v. Cooke Sales and Serv. Co. (In re Clarkson)*,
767 F.2d 417 (8th Cir. 1985).................................................................25

*In re Coastal Broad. Sys., Inc.*,
570 F. App'x ................................................................................28

*In re Coastal Broad. Sys., Inc.*,
570 Fed. Appx. 188 (3d Cir. 2014)............................................................4

*In re Coram Healthcare Corp.*,
271 B.R. 228 (Bankr. D. Del. 2001) .........................................................17

*In re Drexel Burnham Lambert Grp., Inc.*,
138 B.R. 723 (Bankr. S.D.N.Y. 1992).........................................................13

*In re Emerge Energy Servs. LP*,
No. 19-11563 (KBO), 2019 WL 7634308 (Bankr. D. Del. Dec. 5, 2019) ............................23

*In re Exide Techs.*,
303 B.R. 48 (Bankr. D. Del. 2003) ..........................................................11

RLF1 29192923V.1

*In re Finlay Enters., Inc.*,
No. 09-14873 (JMP), 2010 WL 6580628 (Bankr. S.D.N.Y. June 29, 2010) .........................24

*In re Greate Bay Hotel & Casino, Inc.*,
251 B.R. 213 (Bankr. D.N.J. 2000) ......................................................................................4

*In re Idearc Inc.*,
423 B.R. 138 (Bankr. N.D. Tex. 2009), *aff'd sub nom. Spencer ad hoc Equity
Comm. v. Idearc, Inc.* (*In re Idearc, Inc.*), 662 F.3d 315 (5th Cir. 2011)..................................4

*In re Indianapolis Downs, LLC*,
486 B.R. 286 (Bankr. D. Del. 2013) .............................................................................11, 25

*In re Jersey City Med. Ctr.*,
817 F.2d 1055 (3d Cir. 1987)................................................................................................5

*In re Johns-Manville Corp.*,
68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd in part*, 78 B.R. 407 (S.D.N.Y.
1987), *aff'd sub nom. Kane v. Johns-Manville Corp.* (*In re Johns-Manville
Corp.*), 843 F.2d 636 (2d Cir. 1998)..................................................................................28

*Kane v. Johns-Manville Corp.*,
843 F.2d 636 (2d Cir. 1988)...............................................................................................23

*In re Kreider*,
No. BANKR. 05–15018ELF, 2006 WL 3068834 (Bankr. E.D. Pa. Sept. 27,
2006) ...................................................................................................................................23

*In re Lernout & Hauspie Speech Prods., N.V.*,
301 B.R. 651 (Bankr. D. Del. 2003), *aff'd sub nom. Stonington Partners, Inc.
v. Official Comm. of Unsecured Creditors* (*In re Lernout & Hauspie Speech
Prods., N.V.*), 308 B.R. 672 (D. Del. 2004).........................................................................27

*Lisanti v. Lubetkin* (*In re Lisanti Foods, Inc.*),
329 B.R. 491 (D.N.J. 2005), *aff'd sub nom. In re Lisanti Foods, Inc.*, 241 F.
App'x 1 (3d Cir. 2007)........................................................................................................18

*Marvel Ent. Grp., Inc. v. MAFCO Holdings, Inc.* (*In re Marvel Ent. Grp., Inc.*),
273 B.R. 58 (D. Del. 2002).................................................................................................10

*In re Master Mortg. Inv. Fund, Inc.*,
168 B.R. 930 (Bankr. W.D. Mo. 1994)..................................................................................9

*In re Nailite Int'l*,
No. 09-10526 (MFW), 2009 Bankr. LEXIS 4878 (Bankr. D. Del. Dec. 8,
2009) ...................................................................................................................................24

iv

*In re PPI Enters. (U.S.), Inc.*,
228 B.R. 339 (Bankr. D. Del. 1998), *aff'd sub nom. Solow v. PPI Enters.
(U.S.), Inc.* (*In re PPI Enters. (U.S.), Inc.*), 324 F.3d 197 (3d Cir. 2003) ...............................16

*Pizza of Hawaii, Inc. v. Shakey's, Inc.* (*In re Pizza of Hawaii, Inc.*),
761 F.2d 1374 (9th Cir. 1985) ................................................................................24

*In re Prudential Energy Co.*,
58 B.R. 857 (Bankr. S.D.N.Y. 1986) ......................................................................25

*In re PWS Holding Corp.*,
228 F.3d 224 (3d Cir. 2000).......................................................................10, 13, 16

*In re Sound Radio, Inc.*,
93 B.R. 849 (Bankr. D.N.J. 1998), *aff'd in part, remanded in part*, 103 B.R.
521 (D.N.J. 1989).....................................................................................................25

*In re TCI 2 Holdings, LLC*,
428 B.R. 117 (Bankr. D. N.J. 2010) ........................................................................17

*In re Toy & Sports Warehouse, Inc.*,
37 B.R. 141 (Bankr. S.D.N.Y. 1984) ......................................................................16

*In re Tribune Co.*,
464 B.R. 126 (Bankr. D. Del.) .................................................................................23

*In re Tribune Co.*,
476 B.R. 843 (D. Del. 2012), *aff'd as modified*, Case No. 12-CV-1072 GMS,
2014 WL 2797042 (D. Del. June 18, 2014), *aff'd in part, rev'd in part*, 799
F.3d 272 (3d Cir. 2015)..............................................................................................4

*U.S. Bank Nat'l Assoc. v. Wilmington Tr. Co.* (*In re Spansion, Inc.*),
426 B.R. 114 (Bankr. D. Del. 2010), *appeal dismissed*, Civil Nos. 10-369
(RBK), 10-385 (RBK), 2011 WL 3420441 (D. Del. Aug. 4, 2011) ..............................9, 11, 19

*In re U.S. Truck Co.*,
47 B.R. 932 (E.D. Mich. 1985), *aff'd sub nom. Teamsters Nat'l Freight Indus.
Negotiating Comm. v. U.S. Truck Co.* (*In re U.S. Truck Co.*), 800 F.2d 581
(6th Cir. 1986)..........................................................................................................23

*United States v. Energy Res. Co.*,
495 U.S. 545 (1990)..................................................................................................23

*In re W.R. Grace & Co.*,
*475 B.R. 34 (D. Del. 2012)* .......................................................................17, 23, 24

*In re Wash. Mut., Inc.*,
442 B.R. 314 (Bankr. D. Del. 2011) ..................................................................11, 12

*In re WorldCom, Inc.*,
    No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) .........................28

*In re Zenith Elecs. Corp.*,
    241 B.R. 92 (Bank D. Del. 1999) .................................................................................10, 11, 12

**Statutes**

11 U.S.C. Chapter 7 ...........................................................................................................17, 19

11 U.S.C. § 503(b) ...................................................................................................................21

11 U.S.C. § 507 .......................................................................................................................26

11 U.S.C. § 507(a) ...................................................................................................................21

11 U.S.C. § 507(a)(2) ...............................................................................................................26

11 U.S.C. § 1114 .......................................................................................................................26

11 U.S.C. § 1122 .................................................................................................................4, 5, 6

11 U.S.C. § 1122(a) .....................................................................................................................4

11 U.S.C. § 1123 .........................................................................................................................3, 4

11 U.S.C. § 1123(a) ...................................................................................................................6, 7

11 U.S.C. § 1123(a)(1) .................................................................................................................6

11 U.S.C. § 1123(a)(2) .................................................................................................................6

11 U.S.C. § 1123(a)(3) .................................................................................................................6

11 U.S.C. § 1123(a)(4) .................................................................................................................6

11 U.S.C. § 1123(a)(5) .................................................................................................................7

11 U.S.C. § 1123(a)(6) .................................................................................................................7

11 U.S.C. § 1123(a)(7) .................................................................................................................7

11 U.S.C. § 1123(a)(8) .................................................................................................................6

11 U.S.C. § 1123(b) ..............................................................................................................8, 9, 13

11 U.S.C. § 1123(b)(1) .................................................................................................................8

11 U.S.C. § 1123(b)(2) .................................................................................................................8

11 U.S.C. § 1123(b)(3)(A)........................................................................8, 9, 11

11 U.S.C. § 1123(b)(5)...................................................................................8

11 U.S.C. § 1123(b)(6)...................................................................................9

11 U.S.C. § 1124...........................................................................................8

11 U.S.C. § 1125............................................................................13, 14, 15

11 U.S.C. § 1125(b).....................................................................................14

11 U.S.C. § 1126...........................................................................................15

11 U.S.C. § 1126(a).....................................................................................15

11 U.S.C. § 1126(c).....................................................................................16

11 U.S.C. § 1126(f).................................................................................15, 20

11 U.S.C. § 1126(g)..........................................................................15, 20, 27

11 U.S.C. § 1129..............................................................................2, 3, 31

11 U.S.C. § 1129(a)..........................................................................13, 26, 27

11 U.S.C. § 1129(a)(1)...................................................................................3

11 U.S.C. § 1129(a)(2)............................................................................13, 14

11 U.S.C. § 1129(a)(3)...................................................................................16

11 U.S.C. § 1129(a)(4)............................................................................17, 18

11 U.S.C. § 1129(a)(5)............................................................................18, 19

11 U.S.C. § 1129(a)(6)...................................................................................19

11 U.S.C. § 1129(a)(7)...................................................................................19

11 U.S.C. § 1129(a)(8)............................................................................20, 28

11 U.S.C. § 1129(a)(9)............................................................................21, 22

11 U.S.C. § 1129(a)(9)(C).............................................................................22

11 U.S.C. § 1129(a)(10)................................................................................22

11 U.S.C. § 1129(a)(11)...............................................................22, 23, 24, 25

RLF1 29192923V.1

11 U.S.C. § 1129(a)(12)..................................................................................................25, 26

11 U.S.C. § 1129(a)(13).......................................................................................................26

11 U.S.C. § 1129(a)(14).......................................................................................................26

11 U.S.C. § 1129(a)(15).......................................................................................................26

11 U.S.C. § 1129(a)(16).......................................................................................................26

11 U.S.C. § 1129(b) ....................................................................................................... *passim*

11 U.S.C. § 1129(b)(1) ...................................................................................................27, 28

11 U.S.C. § 1129(b)(2)(B)...................................................................................................29

11 U.S.C. § 1129(b)(2)(C)..............................................................................................29, 30

11 U.S.C. § 1129(d).............................................................................................................30

11 U.S.C. § 1129(e).............................................................................................................30

11 U.S.C. § 1145 ...................................................................................................................9

Securities Act of 1933 § 5....................................................................................................30

RLF1 29192923V.1

Phoenix Services Topco, LLC (the "**Company**") and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"),[2] submit this memorandum of law in support of the Debtors' request for confirmation of the *Amended Joint Chapter 11 Plan of Reorganization of Phoenix Services Topco, LLC and Its Debtor Affiliates* filed on June 16, 2023 (Docket No. 895) (as may be amended, modified, supplemented, or restated, the "**Plan**").

## PRELIMINARY STATEMENT[3]

1.      At the outset of these cases, the prospect of a consensual chapter 11 plan was uncertain given the number of issues the Debtors faced, including uneconomical customer contracts.  Nonetheless, the Debtors worked swiftly, efficiently, and collaboratively with parties in interest throughout these cases.  Today, only nine (9) months later, the Debtors present for approval a fully-consensual plan of reorganization[4] that will preserve the going-concern value of the Debtors, is based on entirely renegotiated contracts, and will maximize recoveries to creditors.

2.      Confirmation of the Plan represents the next major milestone in the administration of these chapter 11 cases.  Assuming the Plan is confirmed, the Debtors anticipate the Plan becoming effective within days and all but one of the chapter 11 cases to be closed shortly thereafter.  The Debtors expect the remaining chapter 11 case to remain open for a relatively brief period of time and without significant activity.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Supporting Documents (each as defined herein), as applicable.

[3]    Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meanings ascribed to such terms in this Memorandum.

[4]    All formal or informal objections to cure amounts in the context of contract assumption have been resolved or adjourned.

3.     For the reasons set forth herein and in the supporting declarations submitted in support of confirmation, the Plan satisfies the requirements of section 1129 of the Bankruptcy Code, is in the best interests of creditors, and should be confirmed.

**PLEADINGS AND EVIDENCE IN SUPPORT OF CONFIRMATION**

4.     On April 18, 2023 and May 5, 2023, the Debtors filed the Disclosure Statement Motion[5] and the solicitation version of the Disclosure Statement,[6] respectively.   On May 9, 2023, the Court entered the Disclosure Statement Order approving the Disclosure Statement (Docket No. 769).

5.     In further support of the Plan, the Debtors filed the following declarations: (a) *Declaration of Bob Richard Support of Confirmation of the Joint Chapter 11 Plan of Phoenix Services Topco, LLC and its Debtor Affiliates* (Docket No. 905) (the "**Richard Declaration**"); (b) *Declaration of John Singh in Support of Confirmation of the Joint Chapter 11 Plan of Phoenix Services Topco, LLC and its Debtor Affiliates* (Docket No. 907) (the "**Singh Declaration**"); (c) *Declaration of Jeffrey W. Kopa in Support of Confirmation of the Joint Chapter 11 Plan of Phoenix Services Topco, LLC and its Debtor Affiliates* (Docket No. 906) (the "**Kopa Declaration**"); and (d) *Declaration of James Sean McGuire in Support of Confirmation of the Joint Chapter 11 Plan of Phoenix Services Topco, LLC and its Debtor Affiliates* (Docket No. 904) (the "**Voting Report**").

6.     The Debtors filed a proposed order confirming the Plan (the "**Proposed Confirmation Order**") contemporaneously with the filing of this Memorandum.

---

[5]     "**Disclosure Statement Motion**" means the *Motion of Debtor for Entry of Order (I) Approving the Proposed Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling Confirmation Hearing, (IV) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan, and (V) Granting Related Relief* (Docket No. 710).

[6]     "**Disclosure Statement**" means the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Phoenix Services Topco, LLC, and its Debtor Affiliates* (Docket No. 754).

## FACTS

7.      The Debtors refer the Court and parties in interest to the First Day Declaration,[7] the Disclosure Statement, the Richard Declaration, the Singh Declaration, the Kopa Declaration, and the Voting Report (collectively with the items listed in this paragraph, the "**Supporting Documents**"), and the record of these chapter 11 cases for facts that bear on confirmation of the Plan.  The Supporting Documents and any testimony and other declarations that may be adduced or submitted at or in connection with the Confirmation Hearing are incorporated herein.

## ARGUMENT

8.      The Plan achieves all of the objectives the Debtors set at the outset of these cases.  Richard Decl. ¶ 7.  Confirmation of the Plan represents the best available path to conclude these chapter 11 cases and maximize creditor recoveries.  Richard Decl. ¶ 6.

9.      As detailed below, the Plan satisfies the statutory requirements for confirmation and is supported by the DIP Lenders, Ad Hoc Group, and the sponsor.  The Plan is in the best interests of the Debtors and all stakeholders and the Bankruptcy Court should confirm the Plan.  Richard Decl. ¶ 7.

## I.      THE PLAN SATISFIES SECTION 1129 OF THE BANKRUPTCY CODE AND SHOULD BE APPROVED

### A.      The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code

10.      Under section 1129(a)(1) of the Bankruptcy Code, a plan must comply with the applicable provisions of the Bankruptcy Code.  The legislative history of section 1129(a)(1) explains that this provision encompasses the requirements of sections 1122 and 1123 of the

---

[7]      "**First Day Declaration**" means the *Declaration of Robert Richard in Support of Debtors' Chapter 11 Petitions and First Day Relief* filed be the Debtors on September 27, 2022 (Docket No. 13).

Bankruptcy Code governing classification of claims and contents of a plan, respectively. *See* H.R. Rep. No. 95-595, at 412 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6368; S. Rep. No. 95-989, at 126 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5912; *see also In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 223 (Bankr. D.N.J. 2000) ("The legislative history reflects that 'the applicable provisions of chapter 11 [includes sections] such as section 1122 and 1123 governing classification and contents of plan.'") (alteration in original) (quoting H.R. Rep. 95-595, at 412). The Plan fully complies with the requirements of the Bankruptcy Code.

1.    **The Plan Complies with Section 1122 of the Bankruptcy Code**

11.    Section 1122(a) of the Bankruptcy Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."  11 U.S.C. § 1122(a).  Under this section, a plan may provide for multiple classes of claims or interests as long as each claim or interest within a class is substantially similar to the other claims or interests in that class.  A plan proponent has significant flexibility in classifying claims and interests into multiple classes, provided that there is a reasonable basis to do so and that all claims or interests within a given class are "substantially similar."  *See In re Coastal Broad. Sys., Inc.*, 570 Fed. Appx. 188, 193 (3d Cir. 2014); *see also In re Idearc Inc.*, 423 B.R. 138, 160 (Bankr. N.D. Tex. 2009) ("[A] plan may provide for multiple classes of claims or interests so long as each claim or interest within a class is substantially similar to other claims or interests in that class."), *aff'd sub nom. Spencer ad hoc Equity Comm. v. Idearc, Inc.* (*In re Idearc, Inc.*), 662 F.3d 315 (5th Cir. 2011).  To determine whether claims are "substantially similar," courts have held that the proper focus is on "the legal character of the claim as it relates to the *assets of the debtor*."  *In re AOV Indus. Inc.*, 792 F.2d 1140, 1150–51 (D.C. Cir. 1986) (emphasis in original) (citation omitted); *see also In re Tribune Co.*, 476 B.R. 843, 855 (D. Del. 2012) (internal quotation marks omitted) (concluding that phrase "substantially similar"

reflects "the legal attributes of the claims, not who holds them"), *aff'd as modified*, Case No. 12-CV-1072 GMS, 2014 WL 2797042 (D. Del. June 18, 2014), *aff'd in part, rev'd in part*, 799 F.3d 272 (3d Cir. 2015).

12.    Though claims classified together must be sufficiently similar, the Bankruptcy Code does not forbid "the presence of similar claims in different classes.  Although the legislative history behind section 1122 is inconclusive regarding the significance (if any) of this omission, it remains clear that Congress intended to afford bankruptcy judges broad discretion to decide the propriety of plans in light of the facts of each case." *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060–61 (3d Cir. 1987).

13.    Except for Administrative Expense Claims, Fee Claims, Priority Tax Claims, DIP Claims and DIP Professional Fees, which need not be designated as Classes under the Plan, Section 3.3 of the Plan provides for, with respect to each Debtor (as applicable), the separate classification of Claims and Interests in the Debtors based upon differences in the legal nature and/or priority of such Claims and Interests in accordance with applicable law.  In total there are seven (7) Classes of Claims against, and Interests in, the Debtors:

    i.   <u>Class 1</u> includes Priority Non-Tax Claims;

    ii.   <u>Class 2</u> includes Other Secured Claims;

    iii.   <u>Class 3</u> includes Prepetition Lender Claims;

    iv.   <u>Class 4</u> includes General Unsecured Claims;

    v.   <u>Class 5</u> includes Intercompany Claims;

    vi.   <u>Class 6</u> includes Intercompany Interests; and

    vii.   <u>Class 7</u> includes Existing Equity Interests.

14.    The classification scheme of the Plan is rational and complies with the Bankruptcy Code.  Generally, the Plan incorporates a "waterfall" classification and distribution

scheme that strictly follows the statutory priorities prescribed by the Bankruptcy Code.  All Claims and Interests within a single Class have the same or similar rights against the Debtors.  The Plan provides for the separate classification of Claims against, and Interests in, the Debtors based upon the differences in legal nature and/or priority of such Claims and Interests.  Accordingly, the classification scheme of the Plan complies with section 1122 of the Bankruptcy Code and should be approved.

## 2.    The Plan Complies with Section 1123(a) of the Bankruptcy Code

### a.    The Plan Mandatory Provisions

15.    Section 1123(a) of the Bankruptcy Code sets forth seven applicable requirements that the proponent of a chapter 11 plan must satisfy.[8]  *See* 11 U.S.C. § 1123(a).

16.    For each such requirement:

i.    Section 1123(a)(1) requires that a plan must designate classes of claims and equity interests subject to section 1122 of the Bankruptcy Code.  *See* 11 U.S.C. § 1123(a)(1).  As discussed above, with respect to each Debtor, the Plan designates seven (7) classes of Claims and Interests.  *See* Plan § 3.3.

ii.    Section 1123(a)(2) requires a plan to specify which classes of claims or interests are unimpaired by the plan.  *See* 11 U.S.C. § 1123(a)(2).  With respect to each Debtor, the Plan specifies that Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims.), and Class 6 (Intercompany Interests) are Unimpaired.  *See* Plan § 3.3.

iii.    Section 1123(a)(3) requires a plan to specify the treatment of Impaired classes of claims or interests.  *See* 11 U.S.C. § 1123(a)(3).  With respect to each Debtor, the Plan sets forth the treatment of Class 3 (Prepetition Lender Claims), Class 4 (General Unsecured Claims), Class 5 (Intercompany Claims), and Class 7 (Existing Equity Interests) as applicable, each of which constitutes an Impaired class under the Plan.  *See* Plan § 4.3-4.7.

iv.    Section 1123(a)(4) requires that a plan provide the same treatment for each claim or interest within a particular class unless any claim or

---

[8]    An eighth requirement, set forth in 11 U.S.C. § 1123(a)(8), only applies in a case in which the debtor is an individual and, thus, is inapplicable to these chapter 11 cases.

interest holder agrees to receive less favorable treatment than other class members. *See* 11 U.S.C. § 1123(a)(4). Pursuant to the Plan, except to the extent that a holder of an Allowed Claim has agreed to less favorable treatment of its Claim, the treatment of each Claim in each respective Class is the same as the treatment of each other Claim in such Class. *See* Plan § 4.1-4.7.

v.  Section 1123(a)(5) requires that a plan provide "adequate means for the plan's implementation." 11 U.S.C. § 1123(a)(5). Section 5.1 of the Plan sets forth a detailed description of the transactions to be implemented under the Plan and the structure of the Reorganized Debtors post-Effective Date. *See* Plan § 5.1. In addition, on June 2, 2023, the Debtors filed the Plan Supplement (Docket No. 850) and June 16, 2023 the Second Plan Supplement (Docket No. 897) which contains the following: (a) Form of LLC Agreement for NewCo Grandparent; (b) Form of LLC Agreements for Reorganized Debtors; (c) Form of LLC Agreements for the New Subsidiaries; (d) Assumption Schedule; (e) Customer Schedule; (f) Transaction Steps; (g) Identification of New Board; (h) form of Merger Agreement; (i) Exit First Lien Debt Facility Agreement; and (j) the New Money Exit Debt Syndication Documents.

vi. Section 1123(a)(6) prohibits the issuance of nonvoting equity securities, and requires amendment of a debtor's charter to so provide. *See* 11. U.S.C. § 1123(a)(6). This section also requires that a corporate charter provide an appropriate distribution of voting power among the classes of securities possessing voting power. *Id*. In accordance with section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents have been or will be amended on or prior to the Effective Date to prohibit the issuance of non-voting equity securities and set forth an appropriate distribution of voting power among classes of equity securities possessing voting power. Draft versions of the Amended Organizational Documents are included in the Plan Supplement. *See* Plan Supplement, Ex. A.

vii. Section 1123(a)(7) requires a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." 11 U.S.C. § 1123(a)(7). Here, the Plan and the Plan Supplement provide that the members of the New Board shall be selected and approved by the Required Consenting Lenders. *See* Plan § 5.13; Plan Supplement, Ex E.

Accordingly, the Plan fully complies with each applicable requirement set forth pursuant to

section 1123(a) of the Bankruptcy Code.

7

**b.**      **The New Money Exit Debt Syndication is Necessary for Implementation of the Plan**

17.      Section 1123(a)(5) requires that a chapter 11 plan provide for adequate means of its implementation, including "issuance of securities of the debtor . . . for cash, for property, for existing securities, or in exchange for claims or interests, or for any other appropriate purpose."  A critical aspect of the Debtors' implementation of the Plan is the capitalization of the Reorganized Debtors' exit from bankruptcy, both to fund any unpaid administrative expenses of the chapter 11 cases, but also to provide the necessary capital for the Reorganized Debtors' go-forward operations.  To do so, the Debtors negotiated with the Ad Hoc Group the terms and conditions of the Acceptable Plan Agreement, which laid the foundation for the Debtors' restructuring process, and critically a $45 million New Exit Debt Facility.  In short, certain members of the Ad Hoc Group (the "**Backstop Parties**") have agreed to participate in $22.5 million of the New Exit Debt Facility, and to backstop the remaining $22.5 million that is made available to all other holders of New Money DIP Loans.  The New Money Exit Debt is being made available to holders of New Money DIP Loans through the New Money Exit Debt Syndication, which is governed by the New Money Exit Debt Syndication Documents filed with the Plan Supplement.  The New Money Exit Debt Syndication will expire on June 20, 2023, prior to the Confirmation Hearing.

18.      To induce both the backstop and participation of the New Money Exit Debt, the Debtors agreed to (a) the Backstop Premium, which provides for the issuance of 20% of the New Interests being distributed under the Plan to be issued to the Backstop Parties, and (b) the Participation Premium, which provides for the issuance of 70% of the New Interests being distributed under the Plan to be issued to the lenders that participate in the New Money Exit Debt.  Subsequent to the execution of the Acceptable Plan Agreement, to among other things, avoid the

8

cost of a contested confirmation hearing and to further incentivize interested parties to provide new capital pursuant to the New Money Exit Debt syndication, the Backstop Parties and the Debtors agreed to allow certain holders of New Money DIP Claims that were not otherwise Backstop Parties to participate in the holdback of New Money Exit Debt previously allocated exclusively to the Backstop Parties.

19.     The Money Exit Debt Syndication, the Backstop Premium, and the Participation Premium are all reasonable and warranted under the circumstances, provide the Debtors and the Estates certainty with respect to the ability to fund the Debtors' exit from chapter 11, are actual and necessary costs and expenses to preserve value for the Debtors and their creditors, and are critical to implementation of the Plan.

**3.     The Plan Complies with Section 1123(b) of the Bankruptcy Code**

**a.     The Plan Permissive Provisions**

20.     Section 1123(b) of the Bankruptcy Code sets forth permissive provisions that may be incorporated into a chapter 11 plan:

> i.     As contemplated by section 1123(b)(1) of the Bankruptcy Code and pursuant to section 1124 of the Bankruptcy Code, Article III of the Plan describes the treatment for the following Unimpaired Classes: Class 1 (Priority Non-Tax Claims.), Class 2 (Other Secured Claims), and Class 6 (Intercompany Interests).  Article III of the Plan also describes the treatment for the following Impaired Classes:  Class 3 (Prepetition Lender Claims), Class 4 (General Unsecured Claims), Class 5 (Intercompany Claims), and Class 7 (Existing Equity Interests). *See* Plan, Article III.
>
> ii.    As permitted by section 1123(b)(2) of the Bankruptcy Code, Article VIII of the Plan provides for the assumption and rejection of executory contracts and unexpired leases.  The Plan Supplement contains the Assumption Schedule, setting forth the executory contracts and unexpired leases that may be assumed by the Debtors on the Effective Date.  With respect to the Debtors' executory contracts or unexpired leases, the Plan provides that the executory contracts and unexpired leases identified for assumption in the Assumption Schedule shall be assumed on the Effective Date by the

9

Reorganized Debtors. To the extent an executory contract or unexpired lease is not listed on the Assumption Schedule, except as set forth in the Plan and the Confirmation Order, including Sections 8.4, 8.5 and 8.6 of the Plan, such remaining executory contracts and unexpired leases shall be deemed rejected by the Debtors on the Effective Date, unless such executory contract or unexpired lease: (a) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (b) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; or (c) is the subject of a motion to assume filed by the Debtors on or before the Effective Date. *See* Plan, Art. VIII.

iii. As permitted by section 1123(b)(3)(A) of the Bankruptcy Code and discussed below, Section 10.6 of the Plan provides for Estate releases in favor of the Released Parties. *See* Plan § 10.6.

iv. As permitted by § 1123(b)(5) of the Bankruptcy Code, the Plan modifies the rights of Holders of Claims in Class 3 (Prepetition Lender Claims), Class 4 (General Unsecured Claims.), and Class 5 (Intercompany Claims).

v. As permitted by section 1123(b)(6) of the Bankruptcy Code, a plan "may include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. §1123(b)(6). In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan (a) contains certain release and exculpation provisions consistent with the applicable provisions of the Bankruptcy Code and Third Circuit law, (b) provides that the Bankruptcy Court will retain jurisdiction over all matters arising out of, or related to, these chapter 11 cases, and (c) provides that the offer, issuance, and distribution of the New Interests to holders of DIP Claims and Prepetition Lender Claims shall be exempt from registration, pursuant to section 1145 of the Bankruptcy Code (other than in respect of the Backstop Premium and/or Participation Premium).

Accordingly, each provision of the Plan is consistent with section 1123(b) of the Bankruptcy Code.

**b.    The Plan Releases Should Be Approved**

21.    Pursuant to section 1123(b)(3)(A), a debtor may release claims under a Chapter 11 plan "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate." *See U.S. Bank Nat'l Assoc. v. Wilmington Tr. Co.* (*In re Spansion, Inc.*), 426 B.R. 114, 143 (Bankr. D. Del. 2010), *appeal dismissed*, Civil Nos.

10-369 (RBK), 10-385 (RBK), 2011 WL 3420441 (D. Del. Aug. 4, 2011); *see also In re Aleris Int'l, Inc.*, Case No. 09-10478 (BLS), 2010 WL 3492664, at *20 (Bankr. D. Del. May 13, 2010) (finding that where a debtor release is "an active part of the plan negotiation and formulation process, it is a valid exercise of the debtor's business judgment to include a settlement of any claims a debtor might own against third parties as a discretionary provision of a plan"); *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 938 (Bankr. W.D. Mo. 1994) (stating that creditor approval of a release is "the single most important factor" to determine whether a release is appropriate).

22.     As an exercise of its business judgment, a debtor's decision to release claims against third parties under a plan is afforded deference. *See, e.g.*, *In re Spansion, Inc.*, 426 B.R. 114, 140 (Bankr. D. Del. 2010) ("It is not appropriate to substitute the judgment of the objecting creditors over the business judgment of the Debtors . . . ."); *Marvel Ent. Grp., Inc. v. MAFCO Holdings, Inc.* (*In re Marvel Ent. Grp., Inc.*), 273 B.R. 58, 78 (D. Del. 2002) ("[U]nder the business judgment rule . . . a court will not interfere with the judgment of a board of directors unless there is a showing of gross and palpable overreaching. Thus, under the business judgment rule, a board's decisions will not be disturbed if they can be attributed to any rational purpose and a court will not substitute its own notions of what is or is not sound business judgment.") (internal quotation marks and citations omitted). Additionally, under Third Circuit precedent, a release by a debtor is appropriate if, in the debtor's judgment, any claims of the estate being released are of only marginal viability. *See In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000) (approving release by debtor of potential avoidance claims in connection with a prepetition leveraged recapitalization because the claims were "of only marginal viability" and not worth pursuing).

23.     When evaluating a debtor's release of claims, some courts in this district also have considered the following non-exclusive and disjunctive list of factors set forth in *In re Zenith Elecs. Corp.*, 241 B.R. 92 (Bank D. Del. 1999) (the "**Zenith Factors**"), which were first articulated as the standard for a third party release: (i) an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate; (ii) substantial contribution by the non-debtor of assets to the reorganization; (iii) the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success; (iv) an agreement by a substantial majority of creditors to support the injunction, specifically if the impacted class or classes "overwhelmingly" votes to accept the plan; and (v) [a] provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction.  *Id*. at 110; *see also In re Indianapolis Downs, LLC*, 486 B.R. 286, 303–04 (Bankr. D. Del. 2013) ("These factors are neither exclusive nor are they a list of conjunctive requirements."); *In re Wash. Mut., Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011) (stating that the Zenith Factors "simply provide guidance in the [c]ourt's determination of fairness"); *In re Exide Techs.*, 303 B.R. 48, 72 (Bankr. D. Del. 2003) (finding that Zenith Factors are not exclusive or conjunctive requirements).  As a list of non-conjunctive factors, these factors provide a way of "weighing the equities of the particular case after a fact-specific review."  *Indianapolis Downs*, 486 B.R. at 303.

24.     The Plan includes customary release, exculpation, and injunction provisions. *See* Plan, § 10.5-10.7.  Such provisions are an integral component of the Plan, comply with the Bankruptcy Code and applicable law, are fair and equitable, are given for valuable consideration, and are in the best interest of the Debtors and their estate.  There are no objections to the release, exculpation, and injunction provisions in the Plan.

RLF1 29192923V.1

25.     The support for the Plan by the DIP Lenders, the holders of Prepetition Lender Claims, and the Debtors' sponsors is compelling evidence that Plan, including the release, exculpation, and injunction provisions, should be approved.  All creditors received notice of the release, exculpation, and injunction provisions in the Plan, and their right to object to such release, exculpation, and injunction provisions.  The fact that no party has objected to the release, exculpation, and injunction provisions is a significant endorsement that the Bankruptcy Court should not overlook.  In particular, it reinforces and affirms the Debtors' determination that the release, exculpation, and injunction provisions are in the best interests of the Debtors' estates. *See Spansion*, 426 B.R. at 143 & n.48 (stating that "a debtor may release claims in a plan pursuant to Bankruptcy Code § 1123(b)(3)(A), if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate," and further noting that "it is not unreasonable for the Debtors to provide a broad release of its claim in return for creditors' agreement to the Plan").

26.     Application of the Zenith Factors here demonstrates that such factors weigh in favor of approving the Estate releases contained in the Plan.  Specifically, (i) an identity of interests is shared between the Debtors and the parties receiving a release because each shares a common goal of having the Plan confirmed and consummating the transactions contemplated therein; (ii) the parties receiving a release under the Plan have provided significant value to the Debtors' estates through a consensual agreement on the transactions embodied in the Plan, resulting in a consensual outcome to this chapter 11 case that avoids potential significant litigation surrounding confirmation of the Plan; (iii) the releases are essential to the success of the Plan because such releases were necessary to secure creditor acceptance of the Plan, thereby allowing the Debtors to move forward consensually and avoid lengthy, complex, and value-destructive

litigation with its creditors (*see* Richard Decl. ¶ 13) and (iv) Class 3 (Prepetition Lender Claims) supports and consents to the Plan, including the releases contained therein. Moreover, all non-Debtors subject to the releases under the Plan affirmatively consented to such release, which, in this district, is permitted. *See In re Washington Mutual, Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011) (holding that a third party release is effective with respect to those who affirmatively consent to it). Such consensual releases provide the Released Parties with finality and assurances that upon consummation of the Plan, including the consideration exchanged between the parties therewith, they will be free from all disputes and issues related to the Debtors.

27.     In addition, the exculpation and injunction provisions in the Plan are necessary for a consensual consummation and implementation of the Plan. Specifically, each of the parties receiving exculpation under the Plan participated in the Debtors' chapter 11 cases in good faith, and without such parties, the Debtors would not have been able to execute their chapter 11 strategy and propose a plan supported by key creditor constituencies. In addition, the scope of the exculpation is limited to Estate fiduciaries and narrowly tailored to such parties' acts and omissions in connection with postpetition conduct within the chapter 11 cases, and the exculpation provision does not protect the Exculpated Parties from liability resulting from any act or omission determined by a Final Order to constitute gross negligence, willful misconduct, or intentional fraud. Further, the injunction provision in the Plan is customary and merely seeks to assure that parties do not interfere with the consummation and implementation of the Plan, including the transactions contemplated thereby. Without such injunction, the narrowly-tailored and highly negotiated Plan could be contravened.

28.     Accordingly, the release, exculpation, and injunction provisions contained in the Plan satisfy the requirements of section 1123(b) of the Bankruptcy Code and should be approved.

## B.     The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code

29.     Section 1129(a)(2) of the Bankruptcy Code requires that plan proponents comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(2). The legislative history to section 1129(a)(2) indicates that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code. *See* H.R. Rep. No. 95-595, at 412 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6368 ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); *see also In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000) ("[Section] 1129(a)(2) requires that the plan proponent comply with the adequate disclosure requirements of § 1125."); *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 759 (Bankr. S.D.N.Y. 1992).

30.     The Debtors, as plan proponents, complied with the applicable provisions of the Bankruptcy Code, namely sections 1125 and 1126, as well as the Disclosure Statement Order, by, among other things, filing and directing the mailing the Confirmation Hearing Notice (as defined in the Disclosure Statement Motion) to all known holders of Claims or Interests, in addition to providing notice through publication in the national edition of *The New York Times*, as evidenced in the Publication Affidavit,[9] and, therefore, have satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.

---

[9]     "**Publication Affidavit**" means the *Affidavit of Publication for Larnyce Tabron of the New York Times*, filed on June 1, 2023 (Docket No. 833).

1.      **The Plan Complies with Section 1125 of the Bankruptcy Code**

31.     Under section 1125 of the Bankruptcy Code, prior to the solicitation of votes on a plan of reorganization, a debtor must disclose information that is adequate to permit an informed judgment by creditors and shareholders entitled to vote on the Plan. *See* 11 U.S.C. § 1125. On May 9, 2023, the Bankruptcy Court entered the Disclosure Statement Order. The Disclosure Statement Order approved the Debtors' Disclosure Statement pursuant to section 1125(b) of the Bankruptcy Code as containing "adequate information" of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtors' creditors to make an informed judgment regarding whether to accept or reject the Plan. As set forth in the Solicitation Affidavit,[10] with respect to each Debtor, each holder of an Impaired Claim or Interest entitled to vote was sent a Solicitation Package (as defined in the Disclosure Statement Motion) required by the Disclosure Statement Order, including: (a) the Confirmation Hearing Notice; (b) a USB flash drive containing the Plan, Disclosure Statement, and the Disclosure Statement Order; and (c) an appropriate form of ballot and return envelope for holders entitled to vote on the Plan. The Solicitation Package was transmitted in connection with the solicitation of votes to accept the Plan in compliance with section 1125 of the Bankruptcy Code and as set forth in the affidavits of service. The Debtors did not solicit acceptances of the Plan from any creditor or equity interest holder prior to the transmission of the Disclosure Statement.

2.      **The Plan Complies with Section 1126 of the Bankruptcy Code**

32.     Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of the Plan. Under section 1126, only holders of Allowed Claims and Interests in

---

[10]     "**Solicitation Affidavit**" means the *Affidavit of Service*, filed on May 16, 2023 (Docket No. 790) (as may be amended, modified, supplemented, or restated).

impaired Classes that will receive or retain property under the Plan on account of such Claims or Interests may vote to accept or reject the Plan. *See* 11 U.S.C. § 1126(a).

33.     In accordance with section 1126 of the Bankruptcy Code and Article III of the Plan, with respect to each Debtor, the Debtors solicited acceptances of the Plan from the Holders of Claims in Class 3 (Prepetition Lender Claims).

34.     In accordance with section 1126(f) of the Bankruptcy Code, the Disclosure Statement Order, and Article III of the Plan, the Debtors did not solicit acceptances from the holders of Claims or Interests in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), and Class 6 (Intercompany Interests), as the holders of such Claims and Interests are Unimpaired under the Plan and thus are presumed to accept the Plan.

35.     Additionally, in accordance with Article III of the Plan, the Disclosure Statement Order, and section 1126(g) of the Bankruptcy Code, the Debtors did not solicit acceptances from the holders of Claims or Interests in Class 4 (General Unsecured Claims), Class 5 (Intercompany Claims), and Class 7 (Existing Equity Interests), as holders of such Claims or Interests are Impaired but will not receive any distribution or property on account of their Claims or Interests and thus are deemed to have rejected the Plan.

36.     Section 1126(c) of the Bankruptcy Code specifies the requirements for acceptance of a plan by impaired classes of claims entitled to vote to accept or reject a plan of reorganization:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

37.    The Voting Report demonstrates that each holder of a Class 3 Claim (Prepetition Lender Claim) that voted on the Plan voted to accept the Plan.  Accordingly, Class 3 voted to accept the Plan in accordance with Section 1126(c) of the Bankruptcy Code.

## C.    The Plan Complies with Section 1129(a)(3) of the Bankruptcy Code

38.    Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  The Third Circuit has said that the good faith standard requires a showing that "there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Code."  *In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 347 (Bankr. D. Del. 1998), *aff'd sub nom. Solow v. PPI Enters. (U.S.), Inc. (In re PPI Enters. (U.S.), Inc.*), 324 F.3d 197 (3d Cir. 2003) (quoting *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984)); *see also PWS Holding Corp.*, 228 F.3d at 242 ("[F]or purposes of determining good faith under section 1129(a)(3). . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.") (alterations in original) (quoting *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986) ("Whether a [chapter 11] plan has been proposed in good faith must be viewed in the totality of the circumstances, and the requirement of [s]ection 1129(a)(3) 'speaks more to the process of plan development than to the content of the plan.'"); *In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010) (quoting *In re Bush Indus., Inc.*, 315 B.R. 292, 304 (Bankr. W.D.N.Y. 2004).  The court is given "considerable judicial discretion in finding good faith."); *W.R. Grace*, 475 B.R. at 87 (internal quotation marks omitted) (quoting *In re Coram Healthcare Corp.*, 271 B.R. 228, 234 (Bankr. D. Del. 2001)).

39.    The Plan furthers the Debtors initial objectives in seeking chapter 11 relief. The Plan allows the Debtors to continue a going concern by significantly de-levering the Debtors'

balance sheet, assuming key customer contracts with necessary long-term modifications negotiated during the pendency of these chapter 11 cases, providing the Debtors with an appropriate level of liquidity post-emergence, and preserving thousands of jobs with the Debtors and countless more with the Debtors' vendors and suppliers. The Plan was negotiated with, and is supported by key stakeholders, including the DIP Lenders, the Prepetition Lender Claim holders, who would otherwise receive no recovery in a chapter 7 liquidation, and the Debtors' sponsors.

40.    For the reasons stated herein, the Debtors submit that the Plan furthers the objectives and purposes of the Bankruptcy Code and has been proposed in good faith.

### D.    The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code

41.    Section 1129(a)(4) of the Bankruptcy Code requires that "any payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." 11 U.S.C. § 1129(a)(4). Section 1129(a)(4) has been construed to require that all payments of professional fees which are made from estate assets be subject to review and approval as to their reasonableness by the Bankruptcy Court. *See In re TCI 2 Holdings, LLC*, 428 B.R. 117, 145 (Bankr. D. N.J. 2010) ("Under its clear terms, 'any payment' made or to be made by the plan proponent or the debtor for services 'in or in connection with' the plan or the case must be approved by or 'subject to the approval of' the bankruptcy court as 'reasonable.'"); *accord Lisanti v. Lubetkin* (*In re Lisanti Foods, Inc.*), 329 B.R. 491, 503 (D.N.J. 2005) ("Pursuant to § 1129(a)(4), a Plan should not be confirmed unless fees and expenses related to the Plan have been approved, or are subject to the approval, of the Bankruptcy Court."), *aff'd sub nom. In re Lisanti Foods, Inc.*, 241 F. App'x 1 (3d Cir. 2007).

42.    All payments for services provided to the Debtors during these chapter 11 cases must be approved by the Bankruptcy Court as reasonable in accordance with

section 1129(a)(4) of the Bankruptcy Code.  Specifically, Section 2.2 of the Plan provides that all Fee Claims must be approved by the Bankruptcy Court pursuant to final fee applications as reasonable.  *See* Plan, § 2.2.  Finally, the Plan provides that the Bankruptcy Court shall retain jurisdiction to "hear and determine all Fee Claims[.]"  *See* Plan, § 11.1(i).

43.     Therefore, the Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code with respect to the Debtors' professionals.

**E.     The Plan Complies with Section 1129(a)(5) of the Bankruptcy Code**

44.     Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of the proposed officers and directors of the reorganized debtors; that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy; and, to the extent there are any insiders that will be retained or employed by the reorganized debtors, that there be disclosure of the identity and nature of any compensation of any such insiders.  11 U.S.C. § 1129(a)(5).  Here, the Plan and the Plan Supplement provide that the members of the New Board shall be selected and approved by the Required Consenting Lenders.  *See* Plan § 5.13; Plan Supplement, Ex E.

45.     Accordingly, the Plan complies with the requirements of section 1129(a)(5) of the Bankruptcy Code.

**F.     Section 1129(a)(6) of the Bankruptcy Code Does Not Apply to the Plan**

46.     Section 1129(a)(6) of the Bankruptcy Code provides that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval."  11 U.S.C. § 1129(a)(6).  The Plan does not provide for any rate changes by the Debtors, and, therefore, section 1129(a)(6) is inapplicable.

**G.**      **The Plan Complies with Section 1129(a)(7) of the Bankruptcy Code**

47.      Section 1129(a)(7) of the Bankruptcy Code requires:

[w]ith respect to each impaired class of claims or interests[,] each holder of a claim or interest of such class (i) has accepted the plan; or (ii) will receive or retain under the plan . . . property of a value . . . that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of [the Bankruptcy Code.]

11 U.S.C. § 1129(a)(7).

48.      This test—the "best interests" test—is satisfied if the estimated recoveries for holders of impaired claims or interests in a hypothetical chapter 7 liquidation are less than or equal to the estimated recoveries for such holders under a debtor's plan of reorganization. *See id.*; *Spansion*, 426 B.R. at 140 ("[I]n order to meet their obligations under § 1129(a)(7) of the Bankruptcy Code, Plan Proponents must prove that the distribution to creditors under the Plan is no less valuable, as of the Effective Date of the Plan, than the distribution such creditors would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.") (*quoting In re Celotex Corp.*, 204 B.R. 586, 611–12 (Bankr. M.D. Fla. 1996)).

49.      As demonstrated in the Liquidation Analysis attached as Exhibit C to the Disclosure Statement and as set forth in the Kopa Declaration, the Plan satisfies the best interests test because the Plan provides such Holders with the same or greater recoveries than they would receive in a hypothetical chapter 7 liquidation. *See* Disclosure Statement at Ex. C, Liquidation Analysis; *see also* Kopa Declaration.

**H.**      **The Plan Satisfies Section 1129(a)(8) of the Bankruptcy Code**

50.      Section 1129(a)(8) of the Bankruptcy Code requires that each class of impaired claims or interests accepts a plan, as follows: "With respect to each class of claims or

21

interests – (A) such class has accepted the plan; or (B) such class is not impaired under the plan." 11 U.S.C. § 1129(a)(8).

51.     As set forth above, holders of Claims or Interests in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), and Class 6 (Intercompany Interests) are Unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Thus, as to such Classes, the requirement of section 1129(a)(8)(B) has been satisfied.

52.     With respect to each Debtor, the Plan has been accepted by in excess of two-thirds in amount and one-half in number of holders of Claims in Class 3 (Prepetition Lender Claims).  Thus, as to Class 3, the requirement of § 1129(a)(8)(A) has been satisfied.

53.     Holders of Claims or Interests in Class 4 (General Unsecured Claims), Class 5 (Intercompany Claims), and Class 7 (Existing Equity Interests) are Impaired under the Plan and are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Since Class 4 (General Unsecured Claims), Class 5 (Intercompany Claims), and Class 7 (Existing Equity Interests) are conclusively deemed to reject the Plan and would receive no distribution thereunder, the "cramdown" requirements of section 1129(b) of the Bankruptcy Code must be satisfied.  As discussed below, the cram down requirements are satisfied under section 1129(b) and the Debtors may obtain confirmation of the Plan notwithstanding the deemed rejection by such Classes.

I.     **The Plan Complies with Section 1129(a)(9) of the Bankruptcy Code**

54.     Section 1129(a)(9) of the Bankruptcy Code requires that persons holding allowed claims entitled to priority under section 507(a) receive specified cash payments under a plan. 11 U.S.C. § 1129(a)(9).  Unless the holder of a particular claim agrees to a different treatment with respect to such claim, section 1129(a)(9) of the Bankruptcy Code sets forth the treatment a plan must provide.  *Id.*

22

55.     The Plan complies with section 1129(a)(9) of the Bankruptcy Code.  The Plan provides that, except to the extent that an Administrative Expense Claim has already been paid during these chapter 11 cases or a holder agrees to less favorable treatment, holders of allowed Administrative Expense Claims under section 503(b) of the Bankruptcy Code will be paid in full, in cash, on either the Effective Date (if such Administrative Expense Claim is Allowed) or the first Business Day after the date that is ten (10) calendar days after the date such Administrative Expense Claim is Allowed.  *See* Plan, § 2.1.  While the DIP Claims are not being paid in full in Cash on the Effective Date, the holders of such Claims have consented to their treatment in both the Plan and the DIP Credit Agreement.  *See* Plan, § 2.4, DIP Credit Agreement, § 9.28.

56.     Moreover, the Plan provides that, unless a holder agrees to less favorable treatment, holders of Allowed Priority Non-Tax Claims under section 507(a) of the Bankruptcy Code will be paid in full, in cash on the later of (i) the Effective Date or (ii) the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes Allowed, or as soon as reasonably practicable thereafter.  *See* Plan, § 4.1.  The Plan, therefore, satisfies the requirements of section 1129(a)(9)(A) and 1129(a)(9)(B).

57.     The Plan also satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code with respect to the treatment of Priority Tax Claims under section 507(a)(8). Pursuant to Section 2.3 of the Plan, except to the extent that a Priority Tax Claim has already been paid during these chapter 11 cases or a holder of an Allowed Priority Tax Claim and the Debtors agree to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive payment in full, in cash, or otherwise receive treatment consistent with the provisions of the Bankruptcy Code (i) on the Effective Date, if such Priority Tax Claim is Allowed as of the Effective Date (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as

reasonably practicable thereafter) or (ii) if such Priority Tax Claim is not Allowed as of the Effective Date, within thirty (30) calendar days after the date such Priority Tax Claim is Allowed. *See* Plan, § 2.3.  Accordingly, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

**J.      The Plan Complies with Section 1129(a)(10) of the Bankruptcy Code**

58.      Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of the plan by at least one class of Impaired Claims, "determined without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10).

59.      As the Voting Report indicates, Class 3 (Prepetition Lender Claims) is Impaired and has voted to accept the Plan, without including the acceptance of the Plan by any insiders in such Class.  Accordingly, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

**K.      The Plan Complies with Section 1129(a)(11) of the Bankruptcy Code**

60.      Section 1129(a)(11) of the Bankruptcy Code requires that the Bankruptcy Court find that the Plan is feasible as a condition precedent to confirmation.  11 U.S.C. § 1129(a)(11).  Specifically, it requires that confirmation is not likely to be followed by liquidation or the need for further financial reorganization of the debtor, unless such liquidation or reorganization is proposed in a plan.  *Id.*; *see also In re Am. Cap. Equip., LLC*, 688 F.3d 145, 155– 56 (3d Cir. 2012).  The feasibility test set forth in section 1129(a)(11) requires that the bankruptcy court determine whether the plan may be implemented and has a reasonable likelihood of success.  *See United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988).

61.      Section 1129(a)(11) "does not require a plan's success to be guaranteed." *In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012).  Rather, the appropriate inquiry is whether a plan offers a reasonable assurance of success.  *See id.*; *W.R. Grace*, 475 B.R. at 115

(alteration in original) (internal quotation marks omitted) ("[T]he bankruptcy court need not require a guarantee of success, but rather only must find that the plan present[s] a workable scheme of organization and operation from which there may be reasonable expectation of success.").  The purpose of the feasibility test is to "prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *In re Kreider*, No. BANKR. 05–15018ELF, 2006 WL 3068834, at *5 (Bankr. E.D. Pa. Sept. 27, 2006) (citation omitted).  The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds.  *See In re U.S. Truck Co.*, 47 B.R. 932, 944 (E.D. Mich. 1985), *aff'd sub nom. Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*, 800 F.2d 581 (6th Cir. 1986).

62.    Feasibility is a "low threshold." *In re Emerge Energy Servs. LP*, No. 19-11563 (KBO), 2019 WL 7634308, at *15 (Bankr. D. Del. Dec. 5, 2019); *In re Tribune Co.*, 464 B.R. 126, 185 (Bankr. D. Del.), *on reconsideration in part*, 464 B.R. 208 (Bankr. D. Del. 2011), *aff'd in part sub nom. Law Debenture Tr. Co. of N.Y. v. Tribune Media Co. (In re Tribune Media Co.)*, 587 B.R. 606 (D. Del. 2018), *aff'd sub nom. In re Tribune Co.*, 972 F.3d 228 (3d Cir. 2020). Bankruptcy courts have found that feasibility is established where a debtor has "sufficient resources" to meet its obligations under a plan, including its "obligations to pay for the costs of administering and fully consummating the Plan and closing the Chapter 11 Cases." *In re Finlay Enters., Inc.*, No. 09-14873 (JMP), 2010 WL 6580628, at *7 (Bankr. S.D.N.Y. June 29, 2010); *accord In re Nailite Int'l*, No. 09-10526 (MFW), 2009 Bankr. LEXIS 4878, at *12–13 (Bankr. D. Del. Dec. 8, 2009) (finding that plan was "feasible" and "satisfie[d] the requirements of section 1129(a)(11)" because it was "a plan of liquidation" that provided for "the means for

implementing the [plan] and demonstrate[d] the Debtor's ability to make the payments anticipated" under the plan).

63.     The Plan is feasible within the meaning of this provision.  The key element of feasibility is whether there is a reasonable probability that the provisions of the plan can be performed.  As noted by the United States Court of Appeals for the Ninth Circuit: "The purpose of § 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985) (citations omitted); *see also W.R. Grace & Co.*, 475 B.R. at 114 ("The purpose of the feasibility requirement is to prevent court confirmation of 'visionary schemes.'").  Clearly, the Plan does not contain any visionary scheme but is a rational plan for the continued viability of the Debtors' business.

64.     In assessing feasibility, courts have identified, among others, the following probative factors:

    i.   the prospective earnings or earning power of the debtor's business;

    ii.   the soundness and adequacy of the capital structure and working capital for the debtor's post-confirmation business;

    iii.   the debtor's ability to meet its capital expenditure requirements;

    iv.   economic conditions;

    v.   the ability of management and the likelihood that current management will continue; and

    vi.   any other material factors that would affect the successful implementation of the plan.

*See Indianapolis Downs*, 486 B.R. at 298.  *See also In re Prudential Energy Co.*, 58 B.R. 857, 862-63 (Bankr. S.D.N.Y. 1986); *Clarkson v. Cooke Sales and Serv. Co. (In re Clarkson)*, 767 F.2d

417, 420 (8th Cir. 1985); *In re Sound Radio, Inc.*, 93 B.R. 849, 856 (Bankr. D.N.J. 1998), *aff'd in part*, *remanded in part*, 103 B.R. 521 (D.N.J. 1989).

65.    For purposes of determining whether the Plan satisfies these feasibility standards, the Debtors have analyzed their ability to fulfill their obligations under the Plan.  As part of this analysis, the Debtors, with the assistance of their financial advisors, prepared financial projections (the "**Financial Projections**") for the post-Effective Date period of May 31, 2023 through December 31, 2027 (the "**Projection Period**") for the Debtors.  The Financial Projections, and the assumptions on which they are based, are annexed to the Disclosure Statement as Exhibit C thereto.  Based upon the Financial Projections, and as set forth in the Richard Declaration, the Debtors submit that all payments required pursuant to the Plan to be made by the Reorganized Debtors will be made and, therefore, that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization.

66.    Accordingly, the Plan satisfies the feasibility standard of section 1129(a)(11) of the Bankruptcy Code.

**L.    The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code**

67.    Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan[.]"  11 U.S.C. § 1129(a)(12).  Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930] of title 28" are afforded priority as administrative expenses.  11 U.S.C. § 507(a)(2).

68.    In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, Section 12.1 of the Plan provides for the payment of such fees on the Effective Date and thereafter, as may be required.  *See* Plan, § 12.1.

**M.     The Plan Complies with Section 1129(a)(13) of the Bankruptcy Code**

69.     Section 1129(a)(13) of the Bankruptcy Code requires that the Plan provide for the continuation after the Effective Date of payment of all retiree benefits, as such term is defined in § 1114 of the Bankruptcy Code, at the level established under the same section. 11 U.S.C. § 1129(a)(13).  The Debtors are not seeking to modify such retiree benefits under the Plan.  Consequently, the Plan satisfies § 1129(a)(13) of the Bankruptcy Code.

**N.     Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code Do Not Apply to the Plan**

70.     Certain provisions of section 1129(a) of the Bankruptcy Code do not apply to the Debtors: (i) section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support obligations; (ii) section 1129(a)(15) of the Bankruptcy Code applies only in cases in which the debtor is an "individual" (as that term is defined in the Bankruptcy Code); and (iii)section 1129(a)(16) of the Bankruptcy Code applies to transfers of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

71.     The Debtors are each a moneyed, business, or commercial corporation and no domestic support obligations are contemplated by the Plan.  Accordingly, sections 1129(a)(14)-(16) are inapplicable to the Plan.

**O.     The Plan Satisfies the "Cram Down" Requirements under Section 1129(b) of the Bankruptcy Code**

72.     Section 1129(b) of the Bankruptcy Code provides a mechanism (known colloquially as "cram down") for confirmation of a chapter 11 plan in circumstances where the plan is not accepted by all impaired classes of claims or interests.  Under section 1129(b), the Bankruptcy Court may "cram down" a plan over the dissenting vote of an impaired class or classes of claims or interests as long as (i) the plan satisfies the requirements of section 1129(a) of the

Bankruptcy Code, other than section 1129(a)(8), and (ii) the plan does not "discriminate unfairly" and is "fair and equitable" with respect to such dissenting class or classes.

73.     Claims or Interests in Class 1 (Priority Non-Tax Claims.), Class 2 (Other Secured Claims), and Class 6 (Intercompany Interests), are unimpaired under the Plan and presumed to accept the Plan.  Therefore, "cram down" is only relevant as to Class 4 (General Unsecured Claims), Class 5 (Intercompany Claims), and Class 7 (Existing Equity Interests), which are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  The Plan may nevertheless be confirmed as to the Impaired Classes given that the "cram down" provision of section 1129(b) of the Bankruptcy Code is satisfied by the Plan.

## 1.     The Plan Does Not Discriminate Unfairly

74.     Section 1129(b)(1) does not prohibit discrimination between classes. Rather, it prohibits discrimination that is unfair.  Under section 1129(b) of the Bankruptcy Code, a plan unfairly discriminates where similarly situated classes are treated differently without a reasonable basis for the disparate treatment.  *See Armstrong World Indus.*, 348 B.R. at 121 (noting that the "hallmarks of the various tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination") (quoting *In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 660 (Bankr. D. Del. 2003), *aff'd sub nom. Stonington Partners, Inc. v. Official Comm. of Unsecured Creditors* (*In re Lernout & Hauspie Speech Prods., N.V.*), 308 B.R. 672 (D. Del. 2004)); *accord In re WorldCom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928, at *59 (Bankr. S.D.N.Y. Oct. 31, 2003); *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd in part*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 843 F.2d 636 (2d Cir. 1998); *In re Coastal Broad. Sys., Inc.*, 570 F. App'x at 193 (internal

quotation marks omitted) ("[G]rouping of similar claims in different classes is permitted so long as the classification is reasonable.").

75.    Furthermore, section 1129(b) of the Bankruptcy Code provides a mechanism (known as "cram down") for confirmation of a chapter 11 plan in circumstances where the plan is not accepted by all impaired classes of claims and interests.  Under section 1129(b), the court may "cram down" a plan over the dissenting vote of an impaired class or classes of claims or interests so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to such dissenting class or classes.  By its express terms, section 1129(b) of the Bankruptcy Code is only applicable to a class of creditors or interest holders that rejects a plan. 11 U.S.C. § 1129(b)(1) ("[T]he court . . . shall confirm the plan notwithstanding the requirements of [§ 1129(a)(8)] if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, *and has not accepted*, the plan." (emphasis added)).

76.    The Plan does not discriminate unfairly (or at all) with respect to Class 4 (General Unsecured Claims), Class 5 (Intercompany Claims) and Class 7 (Existing Equity Interests).

77.    With respect to Classes 5 and 6, the only holders of such Claims and Interests are Debtors, who are proponents of the Plan and thus have consented to their treatment.

78.    With respect to Class 4 (General Unsecured Claims), section 1129(b) has been satisfied because such Claims are entirely unsecured and no junior Class is receiving any recovery or property on account of such Claims or Interests under the Plan.

79.    With respect to Class 7, the holders of Existing Equity Interests are properly classified—all other Classes, except for Class 6 (Intercompany Interests) which is comprised of

Interests in the Debtors held by other Debtors, are comprised of holders of *Claims* against the Debtors and their estates.  The Interests in Class 7 are therefore legally distinct in nature from the Claims and Interests in all other Classes.

80.     Accordingly, the Plan does not "discriminate unfairly" with respect to such impaired Class of Interests.

## 2.     The Plan Is Fair and Equitable

81.     To be "fair and equitable" as to holders of unsecured claims, section 1129(b)(2)(B) of the Bankruptcy Code requires a plan to provide either: (i) that each holder of the nonaccepting class will receive or retain on account of such claim property of a value equal to the allowed amount of such claim; or (ii) that a holder of any claim or interest that is junior to the claims of the nonaccepting class will not receive or retain any property under the plan.  *See* 11 U.S.C. § 1129(b)(2)(B)..

82.     To be "fair and equitable" as to holders of equity interests in a debtor, section 1129(b)(2)(C) of the Bankruptcy Code requires a plan to provide either (i) that each holder of an equity interest in a non-accepting class will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled, or the value of such interest; or (ii) that a holder of any interest that is junior to the interests of the non-accepting class will not receive or retain any property under the plan.  *See* 11 U.S.C. § 1129(b)(2)(C).

83.     The "fair and equitable" rule is satisfied as to the holders of Claims in Classes 4 and 5 and Interests in Class 7, as no Claims or Interests junior to each such Class, as applicable, will receive or retain any property under the Plan on account of such Claims or Interests.  Moreover, no senior creditor will receive in excess of the full value of its Claim under the Plan.

84.     Accordingly, the Plan satisfies the cram down requirements of section 1129(b) of the Bankruptcy Code as to Classes 4, 5, and 7 and may be confirmed despite the deemed rejection by such Classes.

**P.      The Plan Complies with Section 1129(d) of the Bankruptcy Code**

85.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of section 5 of the Securities Act of 1933.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**Q.      Section 1129(e) of the Bankruptcy Code Does Not Apply to the Plan**

86.     The provisions of section 1129(e) of the Bankruptcy Code apply only to "small business cases."  *See* 11 U.S.C. § 1129(e).  These chapter 11 cases are not "small business cases" as defined in the Bankruptcy Code.  Accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in these cases.

**II.     CAUSE EXISTS TO WAIVE THE STAY OF THE CONFIRMATION ORDER**

87.     The Debtors respectfully request that the Bankruptcy Court direct that the Proposed Confirmation Order shall be effective immediately upon its entry, notwithstanding the fourteen (14)-day stay imposed by operation of Bankruptcy Rule 3020(e).  Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 3020(e).  As such, and as the Advisory Committee Notes to Bankruptcy Rule 3020(e) state, "[t]he court may, in its discretion, order that Rule 3020(e) is not applicable so that the plan may be implemented and distributions may be made immediately."  Fed. R. Bankr. P. 3020(e) advisory committee's note to 1999 amendment.

88.     Under the circumstances, it is appropriate for the Bankruptcy Court to exercise its discretion to order that Bankruptcy Rule 3020(e) is not applicable and permit the

RLF1 29192923V.1

Debtors to consummate the Plan and commence its implementation as soon as possible following entry of the Proposed Confirmation Order.  Each day that the Debtors remain in chapter 11, they incur substantial postpetition interest at the contract rate on the DIP Loans, and additional administrative and professional costs.

89.    For these reasons, the Debtors, their advisors, and other key constituents are working to expedite the Debtors' entry into and consummation of the documents and transactions necessary to effectuate the Plan so that the Effective Date may occur as soon as possible after the entry of the Proposed Confirmation Order.  Based on the foregoing, the requested waiver of the fourteen (14)-day stay is in the best interests of the Debtors' estate and creditors and will not prejudice any party in interest.

## <u>CONCLUSION</u>

90.    The Plan complies with all of the requirements of section 1129 of the Bankruptcy Code and should be confirmed.

*[Remainder of the page left intentionally blank.]*

RLF1 29192923V.1

Dated: June 19, 2023
Wilmington, Delaware

*/s/ Matthew P. Milana*

**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
E-mail: defranceschi@rlf.com
       shapiro@rlf.com
       milana@rlf.com

-and-

**WEIL, GOTSHAL & MANGES LLP**
Ray C. Schrock (admitted *pro hac vice*)
Jeffrey D. Saferstein (admitted *pro hac vice*)
Garrett A. Fail (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:    (212) 310-8000
E-mail:      ray.schrock@weil.com
          jeffrey.saferstein@weil.com
          garrett.fail@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*