# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
------------------------------------------------------  x
In re:                                                  :
                                                        :        Chapter 11
                                                        :
PHOENIX SERVICES TOPCO, LLC, et al.,                    :        Case No. 22-10906 (MFW)
                                                        :
        Debtors.¹                                       :        (Jointly Administered)
                                                        :
------------------------------------------------------  x
```

## SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF PHOENIX SERVICES TOPCO, LLC AND ITS DEBTOR AFFILIATES

**WEIL, GOTSHAL & MANGES LLP**
Ray C. Schrock
Jeffrey D. Saferstein
Garrett A. Fail
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
Matthew P. Milana (No. 6681)
Emily R. Mathews (No. 6866)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Attorneys for Debtors and Debtors in Possession*         *Attorneys for Debtors and Debtors in Possession*

Dated: June 20, 2023
        Wilmington, Delaware

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Phoenix Services Topco, LLC (4517); Phoenix Services Parent, LLC (8023); Phoenix Services Holdings Corp. (1330); Phoenix Services International LLC (4693); Metal Services LLC (8793); Terracentric Materials LLC (0673); Cool Springs LLC (8687); Metal Services Investment LLC (2924); and Phoenix Receivables, LLC (not applicable). The Debtors' mailing address is 4 Radnor Corporate Center, Suite 520, 100 Matsonford Road, Radnor, Pennsylvania 19087.

**Table of Contents**

Page

**ARTICLE I.    DEFINITIONS AND INTERPRETATION** ......................................................... 1

    A.  Definitions ................................................................................................................. 1

    B.  Interpretation; Application of Definitions and Rules of Construction ..................... 12

    C.  Reference to Monetary Figures ............................................................................... 12

    D.  Controlling Document .............................................................................................. 12

    E.  Certain Consent Rights ............................................................................................ 13

**ARTICLE II.    ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS** ............................ 13

    2.1  Administrative Expense Claims .............................................................................. 13

    2.2  Fee Claims ............................................................................................................... 13

    2.3  Priority Tax Claims ................................................................................................. 14

    2.4  DIP Claims and DIP Professional Fees ................................................................... 14

**ARTICLE III.    CLASSIFICATION OF CLAIMS AND INTERESTS** .................................... 15

    3.1  Classification in General ......................................................................................... 15

    3.2  Grouping of Debtors for Convenience Only ........................................................... 15

    3.3  Summary of Classification ...................................................................................... 15

    3.4  Special Provision Governing Unimpaired Claims .................................................. 16

    3.5  Elimination of Vacant Classes ................................................................................ 16

**ARTICLE IV.    TREATMENT OF CLAIMS AND INTERESTS** ........................................... 16

    4.1  Priority Non-Tax Claims (Class 1)........................................................................... 16

    4.2  Other Secured Claims (Class 2) .............................................................................. 16

    4.3  Prepetition Lender Claims (Class 3) ....................................................................... 17

    4.4  General Unsecured Claims (Class 4)........................................................................ 17

    4.5  Intercompany Claims (Class 5) ............................................................................... 17

    4.6  Intercompany Interests (Class 6) ............................................................................ 18

    4.7  Existing Equity Interests (Class 7) ......................................................................... 18

**ARTICLE V.    MEANS FOR IMPLEMENTATION** ............................................................... 18

    5.1  Implementation........................................................................................................ 18

    5.2  No Substantive Consolidation ................................................................................. 19

    5.3  Compromise and Settlement of Claims, Interests, and Controversies ..................... 19

    5.4  Restructuring Professional Fees .............................................................................. 20

    5.5  Restructuring Transactions; Effectuating Documents.............................................. 20

i

| | | |
|---|---|---|
| 5.6 | Continued Corporate Existence; Dissolution | 21 |
| 5.7 | Reorganized Debtor Plan Administrator | 22 |
| 5.8 | First Lien Exit Facility | 22 |
| 5.9 | Authorization, Issuance, and Distribution of New Interests | 22 |
| 5.10 | Section 1145 Exemption | 23 |
| 5.11 | Cancellation of Existing Securities and Agreements | 23 |
| 5.12 | Retention of Causes of Action | 25 |
| 5.13 | Officers and Boards of Directors | 25 |
| 5.14 | Cancellation of Liens | 25 |
| 5.15 | Employee Matters | 26 |
| 5.16 | Management Incentive Plan | 26 |
| 5.17 | Customer Contracts | 26 |
| 5.18 | Nonconsensual Confirmation | 26 |
| 5.19 | Closing of Chapter 11 Cases | 26 |
| 5.20 | Notice of Effective Date | 26 |
| 5.21 | Separability | 27 |
| **ARTICLE VI.** | **DISTRIBUTIONS** | **27** |
| 6.1 | Distributions Generally | 27 |
| 6.2 | Distribution Record Date | 27 |
| 6.3 | Date of Distributions | 27 |
| 6.4 | Disbursing Agent | 27 |
| 6.5 | Rights and Powers of Disbursing Agent | 28 |
| 6.6 | Expenses of Disbursing Agent | 28 |
| 6.7 | No Postpetition Interest on Claims | 28 |
| 6.8 | Delivery of Distributions | 28 |
| 6.9 | Distributions after Effective Date | 29 |
| 6.10 | Unclaimed Property | 29 |
| 6.11 | Time Bar to Cash Payments | 29 |
| 6.12 | Manner of Payment under Plan | 29 |
| 6.13 | Satisfaction of Claims | 30 |
| 6.14 | Minimum Cash Distributions | 30 |
| 6.15 | Setoffs and Recoupments | 30 |
| 6.16 | Allocation of Distributions between Principal and Interest | 30 |
| 6.17 | No Distribution in Excess of Amount of Allowed Claim | 30 |
| 6.18 | Withholding and Reporting Requirements | 30 |

**ARTICLE VII.    PROCEDURES FOR DISPUTED CLAIMS**................................................**31**

7.1    Objections to Claims ....................................................................... 31

7.2    Resolution of Disputed Administrative Expenses and Disputed Claims ................... 31

7.3    Payments and Distributions with Respect to Disputed Claims ................................. 31

7.4    Distributions after Allowance ....................................................... 31

7.5    Disallowance of Claims................................................................ 32

7.6    Estimation of Claims ................................................................... 32

7.7    No Distributions Pending Allowance ................................................... 32

7.8    Claim Resolution Procedures Cumulative.............................................. 32

7.9    Interest .................................................................................. 32

**ARTICLE VIII.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ............................**33**

8.1    General Treatment.................................................................... 33

8.2    Determination of Cure Disputes and Deemed Consent............................... 33

8.3    Rejection Damages Claims ........................................................... 34

8.4    Indemnification Obligations .......................................................... 34

8.5    Insurance Policies..................................................................... 34

8.6    Intellectual Property Licenses and Agreements ..................................... 35

8.7    Assignment ............................................................................ 35

8.8    Reservation of Rights ................................................................ 35

8.9    Modifications, Amendments, Supplements, Restatements, or Other
       Agreements ........................................................................... 36

**ARTICLE IX.    CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND
                 EFFECTIVE DATE**.........................................................**36**

9.1    Conditions Precedent to Confirmation of Plan...................................... 36

9.2    Conditions Precedent to Effective Date ............................................. 36

9.3    Waiver of Conditions Precedent..................................................... 38

9.4    Effect of Non-Occurrence of Conditions to the Effective Date ................... 38

**ARTICLE X.     EFFECT OF CONFIRMATION OF PLAN** .......................................**39**

10.1   Vesting of Assets..................................................................... 39

10.2   Binding Effect ........................................................................ 39

10.3   Discharge of Claims and Termination of Interests................................. 39

10.4   Term of Injunctions or Stays ....................................................... 39

10.5   Injunction ............................................................................. 39

10.6   Releases ............................................................................... 40

10.7   Exculpation............................................................................ 41

iii

| | | |
|---|---|---|
| 10.8 | Subordinated Claims | 42 |
| 10.9 | Retention of Causes of Action/Reservation of Rights | 42 |
| 10.10 | Solicitation of Plan | 42 |
| 10.11 | Corporate and Limited Liability Company Action | 43 |
| **ARTICLE XI.** | **RETENTION OF JURISDICTION** | **43** |
| 11.1 | Retention of Jurisdiction | 43 |
| 11.2 | Courts of Competent Jurisdiction | 45 |
| **ARTICLE XII.** | **MISCELLANEOUS PROVISIONS** | **45** |
| 12.1 | Payment of Statutory Fees | 45 |
| 12.2 | Substantial Consummation of the Plan | 45 |
| 12.3 | Dissolution of Creditors' Committee. | 46 |
| 12.4 | Plan Supplement | 46 |
| 12.5 | Request for Expedited Determination of Taxes | 46 |
| 12.6 | Exemption from Certain Transfer Taxes | 46 |
| 12.7 | Amendments | 47 |
| 12.8 | Effectuating Documents and Further Transactions | 47 |
| 12.9 | Revocation or Withdrawal of the Plan | 47 |
| 12.10 | Severability of Plan Provisions | 47 |
| 12.11 | Governing Law | 48 |
| 12.12 | Time | 48 |
| 12.13 | Dates of Actions to Implement the Plan | 48 |
| 12.14 | Immediate Binding Effect | 48 |
| 12.15 | Deemed Acts | 48 |
| 12.16 | Successor and Assigns | 48 |
| 12.17 | Entire Agreement | 48 |
| 12.18 | Exhibits to Plan | 49 |
| 12.19 | Notices | 49 |

Each of the Debtors propose the following amended joint chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code.  Capitalized terms used herein shall have the meanings set forth in Article I.A.

## ARTICLE I.         DEFINITIONS AND INTERPRETATION.

A.      **Definitions.**  The following terms shall have the respective meanings specified below:

1.1.     *Acceptable Plan Agreement* means that Acceptable Plan Agreement dated as of March 16, 2023, entered into by the Debtors and the Consenting Lenders, pursuant to which, among other things, the Consenting Lenders agreed to credit bid the DIP Loans subject to the terms and conditions set forth therein. A copy of the Acceptable Plan Agreement is attached to the Disclosure Statement as Exhibit E.

1.2.     *Acquisition Transaction* means the acquisition transaction to be implemented pursuant to Sections 2.4 and 5.1 of the Plan and the Transaction Steps, subject in all respects to the terms and conditions of the Acceptable Plan Agreement and documentation acceptable to the Required Consenting Lenders and the Debtors.

1.3.     *Ad Hoc Group* means an ad hoc group of Consenting Lenders represented by Gibson, Dunn & Crutcher LLP.

1.4.     *Administrative Expense Claim* means a Claim, other than a DIP Claim or an Intercompany Claim, for payment of an administrative expense of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority or superpriority under sections 507(a)(2) or 507(b) of the Bankruptcy Code, including (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Fee Claims; and (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code

1.5.     *Allowed* means any Claim against a Debtor: (a) (i) that is filed, and as to which (A)  no objection to the allowance of such Claim has been asserted, or may be asserted, on or before the Claims Objection Bar Date; (B) an objection to such Claim is asserted and such Claim is subsequently allowed pursuant to a Final Order; (C) such Claim is settled pursuant to an order of the Bankruptcy Court; or (D) such Claim is allowed pursuant to the Plan or any agreements related hereto and such allowance is approved and authorized by the Bankruptcy Court; or (ii) as to which there exists no requirement for the holder of a Claim to file such Claim under the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order; (b) (i) that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and (ii) for which no contrary Proof of Claim has been timely filed; or (c) allowed under the Plan or by a Final Order.

1.6.     *Assets* means all of the right, title, and interest in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, and intangible property).

1.7.     *Assumption Schedule* means the schedule of executory contracts and unexpired leases to be assumed by the Debtors pursuant to the Plan.

1.8.     *Backstop Parties* means certain members of the Ad Hoc Group that have elected to participate as backstop parties for the New Money Exit Debt.

1.9.     *Backstop Premium* means the backstop premium provided to each of the Backstop Parties equal to 20% on a fully diluted basis of the New Interests (subject to dilution by the Management Incentive Plan), as described in the Acceptable Plan Agreement.

1.10. **Bar Date** means the dates by which Proofs of Claim must be filed with respect to Claims against the Debtors, as ordered by the Bankruptcy Court pursuant to the Bar Date Order or other applicable order, or pursuant to the Plan.

1.11. **Bar Date Order** means the *Order (I) Establishing a General Bar Date to File Proofs of Claim, (II) Establishing a Bar Date to File Proofs of Claim by Governmental Units, (III) Establishing an Amended Schedules Bar Date, (IV) Establishing a Rejection Damages Bar Date, (V) Approving the Form and Manner for Filing Proofs of Claim, (VI) Approving the Form and Manner of Notice of Bar Dates, and (VII) Granting Related Relief* (Docket No. 193).

1.12. **Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. § 101, et seq., as amended from time to time, as applicable to the Chapter 11 Cases.

1.13. **Bankruptcy Court** means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases.

1.14. **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.15. **Borrower** means Newco.

1.16. **Business Day** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.17. **Business Plan** means a five-year business plan detailing emergence from the chapter 11 cases that is in a form and substance satisfactory to the Required Consenting Lenders and that incorporates the terms of the Final Relief.

1.18. **Cash** means legal tender of the United States of America.

1.19. **Cause of Action** means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, remedies, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws). Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.20. **Chapter 11 Cases** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court.

1.21. **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

1.22.    ***Claims Objection Bar Date*** means the later of (a) one-hundred and eighty (180) days after the Effective Date, and (b) such later date as may be fixed by the Bankruptcy Court (as the same may be extended by the Bankruptcy Court).

1.23.    ***Class*** means any group of Claims or Interests classified as set forth in Article III of the Plan.

1.24.    ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.25.    ***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned, reconvened, or continued from time to time.

1.26.    ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.27.    ***Consenting Lenders*** means each of the holders of, or investment advisors, sub-advisors, or managers of holders of loans that are signatory to, or have executed joinders to, the Acceptable Plan Agreement.

1.28.    ***Consummation*** means the occurrence of the Effective Date.

1.29.    ***Creditors' Committee*** means the statutory committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code on October 11, 2022, as reconstituted on October 18, 2022 (Docket Nos. 127 and 148), the members of which are: (i) Boyd Company; (ii) Alta Construction Equipment Illinois, LLC; (iii) Tredroc Tire Services LLC; (iv) Cintas Corporation; (v) Cleveland-Cliffs Steel LLC; and (vi) C&B Marine.

1.30.    ***Cure Amount*** means the payment of Cash by the Debtors, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease of the Debtors and (b) permit the Debtors to assume such executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code.

1.31.    ***Customer Schedule*** means a schedule of contracts that the Debtors entered into with their customers.

1.32.    ***Debtor or Debtors*** means (i) Phoenix Services Topco, LLC; (ii) Phoenix Services Parent, LLC; (iii) Phoenix Services Holdings Corp.; (iv) Phoenix Services International LLC; (v) Metal Services LLC; (vi) Terracentric Materials LLC; (vii) Cool Springs LLC; (viii) Metal Services Investment LLC; and (ix) Phoenix Receivables, LLC.

1.33.    ***Debtors in Possession*** means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

1.34.    ***Definitive Documents*** means the documents governing the Restructuring Transactions, including all agreements, instruments, pleadings, orders, forms, and other documents (including all exhibits, schedules, supplements, appendices, annexes, instructions, and attachments thereto) that are utilized to implement or effectuate, or that otherwise relate to, the Restructuring Transactions approved by the Required Consenting Lenders in their sole and absolute discretion, including but not limited to each of the following: (i) the Disclosure Statement and any Solicitation Materials; (ii) the Disclosure Statement Order

3

and any motion seeking entry by the Bankruptcy Court of the Disclosure Statement Order; (iii) the Plan; (iv) the Plan Supplement; (v) the Confirmation Order; (vi) any New Money Exit Debt Syndication Documents; (vii) the First Lien Exit Facility Documents; (viii) the New Organizational Documents of Newco; and (ix) any other documentation necessary to consummate the Restructuring Transactions, including the Acquisition Transaction.

1.35.    ***DIP Agent*** means Wilmington Savings Fund Society, FSB, as administrative agent under the DIP Credit Agreement, and its successors and assigns, or any replacement agent appointed pursuant to the terms of the DIP Documents.

1.36.    ***DIP Claim*** means any Claim arising from, or related to, the DIP Documents or the DIP Order.

1.37.    ***DIP Credit Agreement*** means that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated as of September 29, 2022, by and among Phoenix Services International LLC, as borrower, the DIP Agent, and the DIP Lenders, as amended, supplemented, restated, or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to the DIP Order.

1.38.    ***DIP Documents*** means, collectively, the DIP Credit Agreement and all other "Loan Documents" (as defined therein), including all other agreements, documents, and instruments delivered or entered into pursuant thereto or entered into in connection therewith (including any guarantee agreements and collateral documentation) (in each case, as amended, restated, modified, or supplemented from time to time).

1.39.    ***DIP Lenders*** means the lenders under the DIP Credit Agreement and each other party that becomes a lender thereunder from time to time in accordance with the terms of the DIP Credit Agreement.

1.40.    ***DIP Order*** means the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* (Docket No. 237).

1.41.    ***DIP Professional Fees*** means, as of the Effective Date, all reasonable and documented accrued and unpaid professional fees and expenses payable to the professionals to the DIP Lenders (other than the DIP Agent) pursuant to the DIP Order.

1.42.    ***Disallowed*** means a Claim against a Debtor, or any portion thereof, (a) that has been disallowed by a Final Order of the Bankruptcy Court, a settlement, or the Plan; (b) that is listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been filed; or (c) that is not listed in the Debtors' Schedules and as to which a Bar Date has been established but no Proof of Claim has been filed.

1.43.    ***Disbursing Agent*** means any Entity (including any applicable Debtor or Reorganized Debtor if it acts in such capacity) in its capacity as a disbursing agent under Article VI of the Plan.

1.44.    ***Disclosure Statement*** means the disclosure statement for the Plan, as approved by the Bankruptcy Court pursuant to the Disclosure Statement Order.

1.45.    ***Disclosure Statement Order*** means the order entered by the Bankruptcy Court finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code and authorizing solicitation of the Plan.

4

1.46.    *Disputed* means with respect to a Claim or Interest, any such Claim or Interest (a) that is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code; (b) that has not been Allowed and is listed as unliquidated, contingent or disputed in the Schedules; or (c) for which a Proof of Claim for payment has been made and related to which the Debtors or any party in interest has interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order.  If the Debtors or a party in interest dispute only a portion of a Claim, such Claim shall be deemed Allowed in any amount the Debtors or such party in interest do not dispute, and shall be deemed Disputed as to the balance of such Claim.

1.47.    *Distribution Record Date* means the Confirmation Date.

1.48.    *Effective Date* means the date on which all conditions to the effectiveness of the Plan set forth in Article IX hereof have been satisfied or waived in accordance with the terms of the Plan.

1.49.    *Entity* has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.50.    *ERISA* means the Employee Retirement Income Security Act of 1974, as amended.

1.51.    *Estate or Estates* means, individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.52.    *Exculpated Parties* means, collectively, in each case, solely in their capacities as such: (a) the Debtors and the Estates; (b) the Debtors' current and former directors and officers; (c) Professionals retained by order of the Bankruptcy Court to represent the Debtors or the Creditors' Committee, including professionals retained pursuant to the OCP Order; (d) the Creditors' Committee; (e) the Creditors' Committee's members; and (f) with respect to each of the foregoing Entities in clauses (a) through (e), such Entities' successors and assigns

1.53.    *Existing Equity Interests* means all Interests in Phoenix Topco, Phoenix Parent, and Phoenix Holdings.

1.54.    *Exit Lenders* means each holder of loans under the First Lien Exit Facility.

1.55.    *Fee Claim* means a Claim for professional services rendered or out-of-pocket costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the Debtors or the Creditors' Committee by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Cases (including any fees of a professional held back pursuant to the Interim Compensation Order).

1.56.    *Final Order* means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided, that, no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or

5

any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

1.57.    ***Final Relief*** has the meaning set forth in the DIP Order.

1.58.    ***First Lien Exit Facility*** means the credit facility established pursuant to the First Lien Exit Facility Credit Agreement, which shall be in the principal amount of (i) the New Money Exit Debt, and (ii) the Takeback Debt.

1.59.    ***First Lien Exit Facility Credit Agreement*** means a credit agreement to be entered into in connection with the First Lien Exit Facility.

1.60.    ***First Lien Exit Facility Documents*** means, collectively, the First Lien Exit Facility Credit Agreement and all other loan documents, including all other agreements, documents, and instruments delivered or entered into pursuant thereto or in connection therewith (including any guarantee agreements and collateral documentation) (in each case, as amended, restated, modified, or supplemented from time to time).

1.61.    ***General Unsecured Claim*** means any unsecured Claim against a Debtor that is not (i) an Administrative Expense Claim; (ii) a DIP Claim; (iii) a Priority Tax Claim; (iv) an Other Secured Claim; (v) a Priority Non-Tax Claim; (vi) a Prepetition Lender Claim; (vii) an Intercompany Claim; or (viii) any Claim arising under 11 U.S.C. § 510(b).

1.62.    ***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.63.    ***Guarantors*** means, collectively, Newco, Newco Parent, Newco Grandparent, and the material U.S. subsidiaries of Newco, subject to exceptions set forth in the First Lien Exit Facility Documents.

1.64.    ***Impaired*** means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.65.    ***Indemnification Obligations*** means each of the Debtors' indemnification obligations in place as of the Effective Date, whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, management, or indemnification agreements, or employment or other contracts, or otherwise, for the directors and officers that are currently employed by, or serving on the board of directors of, any of the Debtors, as of the date immediately prior to the Effective Date, and the employees, attorneys, accountants, investment bankers, and other professionals and agents that are currently employed by any of the Debtors as of the date immediately prior to the Effective Date.

1.66.    ***Intercompany Claim*** means any pre- or postpetition Claim against a Debtor held by another Debtor, including the Topco Claim.

1.67.    ***Intercompany Interest*** means an Interest in a Debtor held by another Debtor, excluding Existing Equity Interests.

1.68.    ***Interests*** means any equity security (as defined in section 101(16) of the Bankruptcy Code), including all common stock, preferred stock, or other instruments evidencing an ownership interest, whether or not transferable, and any option, warrant, right, or any other interest that is exercisable, convertible, or exchangeable into equity, contractual or otherwise, including equity or equity-based

6

incentives, grants, or other instruments issued, granted, or promised to be granted to current or former employees, directors, officers, or contractors, to acquire any such interests that existed immediately before the Petition Date.

1.69.   ***Interim Compensation Order*** means the order of the Bankruptcy Court approving and authorizing procedures for the payment of interim Fee Claims prior to the Effective Date.

1.70.   ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.71.   ***Management Incentive Plan*** means a post-emergence equity-based management incentive plan under which a percentage of the New Interests may be issued to members of the Reorganized Debtors' management.

1.72.   ***New Board*** means the board of directors, board of managers, or other governing body of Newco (or such other Entity with decision-making authority with respect to the Reorganized Debtors as determined by the Required Consenting Lenders), as applicable, appointed by or on behalf of Newco.

1.73.   ***New Interests*** means the Interests in Newco Grandparent, which is the ultimate parent company of all of Reorganized Debtors; provided, that, the New Interests may be Interests in a Reorganized Debtor if determined in the sole and absolute discretion of the Required Consenting Lenders.

1.74.   ***New Money DIP Loans*** means the "New Money Loans" as set forth in the DIP Order.

1.75.   ***New Money Exit Debt*** means $45,000,000 of new money loans under the First Lien Exit Facility.

1.76.   ***New Money Exit Debt Syndication*** means the syndication of the New Money Exit Debt.

1.77.   ***New Money Exit Debt Syndication Documents*** means the customary syndication procedures for the New Money Exit Debt which are satisfactory to the Required Consenting Lenders, which procedures shall be described in the Plan Supplement.

1.78.   ***New Organizational Documents*** means the forms of certificates of incorporation, certificates of formation, limited liability company agreements, or other forms of organizational documents and bylaws, as applicable, of Newco Grandparent, Newco Parent, Newco, and the Reorganized Debtors.

1.79.   ***Newco*** means an Entity to be formed by the DIP Agent at the direction of, and for the benefit of, the DIP Lenders pursuant to the DIP Credit Agreement and for purposes of implementing the Restructuring Transactions.

1.80.   ***Newco Grandparent*** means an Entity formed by the DIP Agent at the direction of, and for the benefit of, the DIP Lenders pursuant to the DIP Credit Agreement that indirectly owns Interests in Newco and directly owns Interests in Newco Parent and for purposes of implementing the Restructuring Transactions.

1.81.   ***Newco Parent*** means an Entity formed by the DIP Agent at the direction of, and for the benefit of, the DIP Lenders pursuant to the DIP Credit Agreement that directly owns Interests in Newco and for purposes of implementing the Restructuring Transactions.

1.82.   ***Newco Participation Contract Right*** means the right of each of the DIP Lenders provided hereunder to participate in the New Money Exit Debt on account of holdings of New Money DIP Loans,

7

with the Backstop Parties receiving the Backstop Premium and the holders of New Money DIP Loans receiving the Participation Premium pursuant to allocations set forth in the Acceptable Plan Agreement.

1.83.    **Non-Debtor Subsidiary** means any corporation, partnership, association or other business entity of which securities or other ownership interests representing more than 50% of the equity or more than 50% of the ordinary voting power or more than 50% of the general partnerships are directly or indirectly owned, controlled, or held by a Debtor.

1.84.    **OCP Order** means the *Order Authorizing Debtors to Employ Professionals Used in the Ordinary Course of Business* (Docket No. 191).

1.85.    **Other Secured Claim** means a Secured Claim, other than an Administrative Expense Claim, a DIP Claim, a Priority Tax Claim, or a Prepetition Lender Claim.

1.86.    **Participation Premium** means a participation premium provided to each of the Exit Lenders that participate in the New Money Exit Debt Syndication, equal to 70% on a fully diluted basis of the New Interests (subject to dilution by the Management Incentive Plan) and as described in the Acceptable Plan Agreement.

1.87.    **Person** has the meaning set forth in section 101(41) of the Bankruptcy Code.

1.88.    **Petition Date** means September 27, 2022, the date on which the Debtors commenced the Chapter 11 Cases.

1.89.    **Phoenix Holdings** means Phoenix Services Holdings Corp.

1.90.    **Phoenix Parent** means Phoenix Services Parent, LLC.

1.91.    **Phoenix Services** means Phoenix Services International LLC.

1.92.    **Phoenix Topco** means Phoenix Services Topco, LLC.

1.93.    **Plan** means this second amended joint chapter 11 plan of reorganization of the Debtors contemplated herein, including all appendices, exhibits, schedules, and supplements hereto (including any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.94.    **Plan Supplement** means a supplemental appendix to the Plan containing, among other things, substantially final forms of documents, exhibits, schedules, and exhibits to the Plan to be filed with the Bankruptcy Court, including the following: (a) the New Organizational Documents (to the extent such New Organizational Documents reflect material changes from the Debtors' existing organizational documents); (b) the Assumption Schedule; (c) the Customer Schedule; (d) the Transaction Steps; and (e) to the extent known, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code. The Plan Supplement shall be filed with the Bankruptcy Court not later than seven (7) calendar days prior to the earlier of the Voting Deadline and the deadline to object to confirmation of the Plan; provided, that, through the Effective Date, the Debtors shall have the right to amend and supplement the Plan Supplement and any schedules, exhibits, or amendments thereto in accordance with the terms of the Plan.

1.95.    **Prepetition Credit Agreement** means that certain First Lien Credit Agreement, dated as of March 1, 2018, among Phoenix Services Holdings Corp., as holdings, Phoenix Services International LLC,

as borrower, the Prepetition First Lien Administrative Agent and the Prepetition First Lien Lenders, as amended, supplemented, restated, or otherwise modified from time to time.

1.96.    ***Prepetition First Lien Administrative Agent*** means Barclays Bank, PLC, as administrative agent under the Prepetition Credit Agreement.

1.97.    ***Prepetition Lender Claims*** means Claims that consist of up to approximately $394,949,674.50 in aggregate principal outstanding amount of Prepetition Secured Loans, including outstanding amounts under issued letters of credit, plus accrued but unpaid prepetition interest, fees, premiums, and all other obligations, amounts, and expenses arising under or in connection with the Prepetition Credit Agreement.

1.98.    ***Prepetition First Lien Lenders*** means the lenders and issuing banks under the Prepetition Credit Agreement.

1.99.    ***Priority Non-Tax Claim*** means any Claim, other than an Administrative Expense Claim, Other Secured Claim, or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.100.    ***Prepetition Secured Loans*** means the "Loans" as defined in the Prepetition Credit Agreement.

1.101.    ***Priority Tax Claim*** means any Secured Claim or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.102.    ***Pro Rata*** means, as applicable, (a) the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims and Disputed Claims in such Class; (b) the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims in a particular Class and other Classes entitled to share in the same recovery as such Class under the Plan; or (c) with respect to DIP Claims, either (i) the proportion that a holder of a Roll-Up DIP Loan has compared to the aggregate amount of Roll-Up DIP Loans or (ii) the proportion that a holder of a New Money DIP Loans has compared to the aggregate amount of New Money DIP Loans.

1.103.    ***Proof of Claim*** means a proof of Claim filed in the Chapter 11 Cases.

1.104.    ***Reinstate, Reinstated, or Reinstatement*** means rendering a Claim Unimpaired under the Plan pursuant to section 1124(a)(2) of the Bankruptcy Code.

1.105.    ***Rejection Damages Claim*** means any Claim for damages resulting from or based on the Debtors' rejection of an executory contract or unexpired lease.

1.106.    ***Related Parties*** means an Entity's predecessors, successors and assigns, parents, subsidiaries, affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders (and any fund managers, fiduciaries or other agents of shareholders with any involvement related to the Debtors), members, partners, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such persons' respective heirs, executors, estates, servants and nominees.

1.107. **Released Parties** means, collectively, and in each case, solely in their capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Reorganized Debtor Plan Administrator; (d) Reorganized Non-Acquired Debtors; (e) the DIP Lenders; (f) the DIP Agent; (g) the Consenting Lenders, (h) each Releasing Prepetition Lender; (i) ANRP II Phoenix Services Holdings (LP); (j) the Prepetition First Lien Administrative Agent; and (k) with respect to each of the foregoing Entities in clauses (a) through (j), all Related Parties. For the avoidance of doubt, the Debtors' current and former directors, managers, officers, employees, professionals, and shareholders shall each be a Released Party under the Plan.

1.108. **Releasing Parties** means, collectively, and in each case, solely in their capacities as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Reorganized Debtor Plan Administrator; (d) Reorganized Non-Acquired Debtors; (e) the DIP Lenders; (f) the DIP Agent; (g) the Consenting Lenders; (h) each Releasing Prepetition Lender; (i) ANRP II Phoenix Services Holdings (LP); (j) the Prepetition First Lien Administrative Agent; and (k) with respect to each of the foregoing Entities in clauses (a) through (j), all of their respective Related Parties solely with respect to claims that such Entities could have properly asserted on behalf of such Entities in clauses (a) through (j).

1.109. **Releasing Prepetition Lenders** means the holders of Prepetition Lender Claims that vote in favor of the Plan and elect to opt into the releases in Section 10.6(b) of the Plan on their respective ballot.

1.110. **Reorganized Debtor Plan Administrator** means Metal Services LLC.

1.111. **Reorganized Debtors** means each Debtor, other than the Reorganized Non-Acquired Debtors, as reorganized pursuant to and under the Plan, including any transferee or successor thereto by merger, consolidation, transfer or otherwise, on or after the Effective Date, that are directly or indirectly acquired by Newco pursuant to the Acquisition Transaction. For the avoidance of doubt, the Reorganized Non-Acquired Debtors shall not be Reorganized Debtors.

1.112. **Reorganized Non-Acquired Debtors** means Reorganized Phoenix Topco, Reorganized Phoenix Parent, and Reorganized Phoenix Holdings.

1.113. **Reorganized Phoenix Holdings** means Phoenix Holdings as reorganized on the Effective Date.

1.114. **Reorganized Phoenix Parent** means Phoenix Parent as reorganized on the Effective Date.

1.115. **Reorganized Phoenix Services** means Phoenix Services as reorganized on the Effective Date.

1.116. **Reorganized Phoenix Topco** means Phoenix Topco as reorganized on the Effective Date.

1.117. **Required Consenting Lenders** means, as of the relevant date, Consenting Lenders who own or control more than 50% in aggregate outstanding principal amount of (a) New Money DIP Loans and (b) the Roll-Up DIP Loans, in each case owned or controlled by all Consenting Lenders in the aggregate as of such date.

1.118. **Restructuring Professional Fees** means the reasonable and documented fees, costs, and expenses incurred by advisors of (i) the Ad Hoc Group and DIP Agent, including without limitation, (a) the fees, costs, and expenses of Gibson, Dunn, Crutcher LLP, Evercore Group L.L.C., and Pachulski Stang Ziehl & Jones LLP, and (b) all monthly fees, restructuring, transaction, and back-end fees payable to Evercore Group L.L.C., and (ii) the Prepetition First Lien Administrative Agent, including without

limitation, the fees, costs, and expenses of Davis Polk & Wardwell LLP and Morris, Nichols, Arsht & Tunnell LLP.

1.119.   **Restructuring Transactions** means the restructuring of the Debtors, the principal terms of which are set forth in the Plan and the Plan Supplement, and which for the avoidance of doubt, shall include the Acquisition Transaction.

1.120.   **Roll-Up DIP Loans** has the meaning set forth in the DIP Order.

1.121.   **Senior Management** means Steve Hall, Clint McGinty, Jeff Mellen, Mark Porto, Robert Richard and Carlos Sarmento.

1.122.   **Schedules** means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

1.123.   **Secured Claim** means a Claim (a) secured by a Lien on collateral to the extent of the value of such collateral as (i) set forth in the Plan; (ii) agreed to by the holder of such Claim and the Debtors; or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

1.124.   **Security** has the meaning set forth in section 101(49) of the Bankruptcy Code.

1.125.   **Solicitation Materials** means all materials provided in connection with the solicitation of votes on the Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code, in form and substance acceptable to the Required Consenting Lenders.

1.126.   **Specified Customers** has the meaning set forth in the DIP Credit Agreement.

1.127.   **Specified Senior Management Agreements** means those certain prepetition employment agreements entered into between Phoenix Holdings and Senior Management, as applicable, that are identified in the Plan Supplement.

1.128.   **Statutory Fees** means all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, including interest, if any, pursuant to section 3717 of title 31 of the United States Code.

1.129.   **Takeback Debt** means loans under the First Lien Exit Facility in the principal amount equal to the outstanding principal amount of the New Money DIP Loans plus all accrued and unpaid interest, fees, premiums, and all other obligations on account of the New Money DIP Loans, in each case calculated as of the Effective Date.

1.130.   **Topco Claim** means a Claim held by Phoenix Topco in the amount of $3,828,850.48 arising from that certain intercompany transfer to Metal Services LLC on September 28, 2022.

1.131.   **Transaction Steps** means the steps agreed to between the Debtors and Required Consenting Lenders to implement the Restructuring Transactions.

11

1.132.   *Unimpaired* means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.133.   *U.S. Trustee* means the Office of the United States Trustee for the District of Delaware.

1.134.   *Voting Deadline* means the date set by the Bankruptcy Court by which all completed ballots must be received, which date may be extended by the Debtors in accordance with the Disclosure Statement Order.

1.135.   *Workers' Compensation Claim* means a Cause of Action held by an employee of the Debtors for workers' compensation coverage under the workers' compensation program applicable in the particular state in which the employee is employed by the Debtors.

1.136.   *Zurich* means Zurich American Insurance Company, American Zurich Insurance Company, Zurich Insurance Ltd, and any of their affiliates which have issued insurance policies to any of the Debtors, and any third party administrators with respect to such insurance policies that have been issued by the foregoing entities, and any respective predecessors and/or affiliates.

1.137.   *Zurich Insurance Contract* means all insurance policies that have been issued by Zurich and provide coverage at any time to any of the Debtors (or any of their predecessors), and all agreements, documents, or instruments relating thereto.

B.      **Interpretation; Application of Definitions and Rules of Construction**.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender, (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions, (3) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto, (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, and (5) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.      **Reference to Monetary Figures**.

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

D.      **Controlling Document**.

In the event of an inconsistency between the terms and provisions in the Plan (without reference to the Plan Supplement) and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan (including any Definitive Document) or any order (other than the Confirmation Order) referenced in the Plan (or any

exhibits, schedules, appendices, supplements or amendments to any of the foregoing), the Plan (without reference to the Plan Supplement) shall govern and control. Notwithstanding anything herein to the contrary, in the event of a conflict between the Confirmation Order, on the one hand, and any of the Plan, the Plan Supplement, or the Definitive Documents, on the other hand, the Confirmation Order shall govern and control in all respects.

E.    **Certain Consent Rights**.

Notwithstanding anything in the Plan to the contrary, any Definitive Document, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I hereof) and fully enforceable as if stated in full herein.

## ARTICLE II.        ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.

2.1    *Administrative Expense Claims*.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim (other than a DIP Claim, Intercompany Claim or a Fee Claim) shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is ten (10) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, unless otherwise required by a Final Order; provided, that, Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the Reorganized Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any course of dealing or agreements governing, instruments evidencing, or other documents relating to such transactions.

2.2    *Fee Claims*.

(a)    All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file with the Bankruptcy Court, on or before the date that is forty-five (45) days after the Effective Date, their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred from the Petition Date through the Effective Date. Objections to any Fee Claims must be filed and served on counsel to the Reorganized Debtors, the U.S. Trustee, and the requesting party no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the Debtors or the Reorganized Debtors, as applicable, and the party requesting compensation of a Fee Claim).

(b)    Allowed Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (i) within five (5) calendar days of an order relating to any such Allowed Fee Claim is entered or as soon as reasonably practicable thereafter, or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors or the Reorganized Debtors, as applicable. Notwithstanding the foregoing, any Fee Claims that are authorized to be paid pursuant to any administrative orders entered by the Bankruptcy Court, including the Interim Compensation Order, may be paid at the times and in the amounts authorized pursuant to such orders.

13

(c)    On or prior to the Effective Date, holders of Fee Claims shall provide a reasonable estimate of unpaid Fee Claims incurred in rendering services before the Effective Date to the Debtors or the Reorganized Debtors, as applicable, and the Debtors and Reorganized Debtors, as applicable, shall separately escrow for such estimated amounts for the benefit of the holders of the Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties.  If a holder of a Fee Claim does not provide an estimate, the Debtors or Reorganized Debtors, as applicable, may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Fee Claim.  When all such Allowed Fee Claims have been paid in full, any remaining amount in such escrow shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, the Reorganized Debtors without any further action or order of the Bankruptcy Court.

(d)    The Reorganized Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

2.3    *Priority Tax Claims*.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Tax Claim, at the option of the Debtors or the Reorganized Debtors, as applicable: (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (iii) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due, or (b) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.  All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business or under applicable non-bankruptcy law as such obligations become due.

2.4    *DIP Claims and DIP Professional Fees*.

(a)    *DIP Claims*.  On the Effective Date, all Allowed DIP Claims (including, but not limited to, any right to the Exit Fee (as defined in the DIP Credit Agreement)) shall, in full satisfaction, settlement, release, and discharge of the Allowed DIP Claims, be exchanged, subject in all respects to the terms of the Acceptable Plan Agreement and pursuant to the Acquisition Transaction, for (i) on account of the Roll-Up DIP Loans, its Pro Rata share (based on such holder's proportionate share of all Allowed DIP Claims on account of the Roll-Up DIP Loans) of 99.0% of the New Interests that are issued and outstanding on the Effective Date, subject to dilution by the Management Incentive Plan, the Participation Premium, and the Backstop Premium; (ii) on account of the New Money DIP Loans, its Pro Rata share (based on such holder's proportionate share of all Allowed DIP Claims on account of the New Money DIP Loans) of the principal amount of the Takeback Debt; and (iii) on account of the New Money DIP Loans, its Pro Rata share (based on such holder's proportionate share of all Allowed DIP Claims on account of the New Money DIP Loans) of the Newco Participation Contract Right.

(b)    *DIP Professional Fees*.  On the Effective Date, any and all reasonable DIP Professional Fees not previously paid pursuant to the DIP Order shall be indefeasibly paid in full in Cash; provided, that: (i) any professional seeking payment of DIP Professional Fees from the Debtors shall provide the Debtors with a summary invoice of such professional's DIP Professional Fees and a reasonable estimate of such Professional's DIP Professional Fees through the Effective Date; and (ii) any DIP Professional Fees paid on the Effective Date shall be subject to the notice and review period requirements under the DIP Order, and subject to reimbursement if any such DIP Professional Fees are denied pursuant

14

to a Final Order and to the procedures set forth in the DIP Order. Any amount of estimated DIP Professional Fees that is not applied to actual DIP Professional Fees shall be returned to the Reorganized Debtors by the applicable professional as soon as reasonably practicable following the Effective Date.

## ARTICLE III.    CLASSIFICATION OF CLAIMS AND INTERESTS.

### 3.1    *Classification in General*.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; provided, that, a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

### 3.2    *Grouping of Debtors for Convenience Only*.

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, confirmation of the Plan, and making distributions in accordance with the Plan in respect of Claims against and Interests in the Debtors under the Plan. Such groupings shall not affect any Debtor's status as a separate legal Entity, result in substantive consolidation of any Estates, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any Assets. Except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Entities after the Effective Date.

### 3.3    *Summary of Classification*.

The following table designates the Classes of Claims against and Interests in each of the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (c) presumed to accept or deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims and DIP Claims, have not been classified. The classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Section 3.5 of the Plan.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | No (Presumed to Accept) |
| 3 | Prepetition Lender Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | No (Deemed to Reject) |
| 5 | Intercompany Claims | Unimpaired/Impaired | No (Presumed to Accept) / No (Deemed to Reject) |
| 6 | Intercompany Interests | Unimpaired/Impaired | No (Presumed to Accept) / No (Deemed to Reject) |
| 7 | Existing Equity Interests | Impaired | No (Deemed to Reject) |

15

3.4     ***Special Provision Governing Unimpaired Claims***.

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors the Reorganized Debtors, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

3.5     ***Elimination of Vacant Classes***.

Any Class of Claims against or Interests in a Debtor that, as of the commencement of the Confirmation Hearing, does not have at least one (1) holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan of such Debtor for purposes of voting to accept or reject such Debtor's Plan, and disregarded for purposes of determining whether such Debtor's Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

# ARTICLE IV.     TREATMENT OF CLAIMS AND INTERESTS.

4.1     <u>Priority Non-Tax Claims (Class 1)</u>.

a)     **Classification:**  Class 1 consists of Priority Non-Tax Claims.

b)     **Treatment:**  Except to the extent that a holder of an Allowed Priority Non-Tax Claim against any of the Debtors agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Allowed Priority Non-Tax Claim, at the option of the Debtors or the Reorganized Debtors, as applicable, with the consent of the Required Consenting Lenders, (i) each such holder shall receive payment in Cash in an amount equal to the amount of such Allowed Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, in each case, or as soon as reasonably practicable thereafter; (ii) such holder's Allowed Priority Non-Tax Claim shall be Reinstated; or (iii) such holder shall receive such other treatment so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

c)     **Voting:**  Class 1 is Unimpaired, and the holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

4.2     <u>Other Secured Claims (Class 2)</u>.

a)     **Classification:**  Class 2 consists of the Other Secured Claims.  To the extent that the Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 2 for purposes of voting to accept or reject the Plan and receiving distributions under the Plan.

b)     **Treatment:**  Except to the extent that a holder of an Allowed Other Secured Claim against any of the Debtors agrees to a less favorable treatment of such Claim, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the Debtors or the Reorganized Debtors, as applicable, with the consent of the Required Consenting Lenders, (i) each such holder shall receive payment in Cash in an amount equal to the amount of such Allowed Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Secured

Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter; (ii) such holder's Allowed Other Secured Claim shall be Reinstated; (iii) such holder shall receive the collateral securing its Allowed Other Secured Claim; or (iv) such holder shall receive such other treatment so as to render such holder's Allowed Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

     c) **Voting:**  Class 2 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Other Secured Claims.

### 4.3 <u>Prepetition Lender Claims (Class 3)</u>.

     a) **Classification:**  Class 3 consists of Prepetition Lender Claims.

     b) **Treatment:**  On the Effective Date, each Allowed Prepetition Lender Claim will be released and extinguished, and each holder of an Allowed Prepetition Lender Claim shall receive, in full and final satisfaction of such Allowed Prepetition Lender Claim its Pro Rata share (based on such holder's proportionate share of all Allowed Prepetition Lender Claims) of 1.0% of the New Interests that are issued and outstanding on the Effective Date, subject to dilution by the Management Incentive Plan, the Participation Premium, and the Backstop Premium.

     c) **Voting:**  Class 3 is Impaired, and the holders of Prepetition Lender Claims in Class 3 are entitled to vote to accept or reject the Plan.

### 4.4 <u>General Unsecured Claims (Class 4)</u>.

     a) **Classification:**  Class 4 consists of General Unsecured Claims, including any Rejection Damages Claim.

     b) **Treatment:**  On the Effective Date, each Allowed General Unsecured Claim will be discharged, and each holder of an Allowed General Unsecured Claim shall not receive any distribution on account of its General Unsecured Claim.

     c) **Voting:**  Class 4 is Impaired, and the holders of General Unsecured Claims in Class 4 are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan and the votes of such holders will not be solicited with respect to such General Unsecured Claims.

### 4.5 <u>Intercompany Claims (Class 5)</u>.

     a) **Classification:**  Class 5 consists of Intercompany Claims.

     b) **Treatment:**  On the Effective Date, all Intercompany Claims shall be, at the option of the Debtors, with the consent of the Required Consenting Lenders, either:  (i) Reinstated or (ii) distributed, contributed, set off, cancelled, released, or otherwise addressed at the option of the Debtors (without any distribution on account of such Claims); <u>provided</u>, <u>that</u>, treatment of the Topco Claim shall be acceptable to the Required Consenting Lenders in their sole and absolute discretion.

17

c)      **Voting:** Class 5 is either (i) Unimpaired, and the holders of Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or (ii) Impaired and are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Intercompany Claims.

4.6      **Intercompany Interests (Class 6).**

a)      **Classification:** Class 6 consists of Intercompany Interests.

b)      **Treatment:** On the Effective Date, all Intercompany Interests (regardless of priority) shall be, at the option of the Debtors, with the consent of the Required Consenting Lenders, either:  (i) Reinstated or (ii) cancelled and released without any distribution on account of such Interests.

c)      **Voting:** Class 6 is either (i) Unimpaired, and the holders of Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or (ii) Impaired and are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Intercompany Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Intercompany Interests.

4.7      **Existing Equity Interests (Class 7).**

a)      **Classification:** Class 7 consists of Existing Equity Interests.

b)      **Treatment:**  On the Effective Date, all Existing Equity Interests will be cancelled, released, and extinguished and will be of no further force and effect.  No holders of Existing Equity Interests will receive a distribution under the Plan.

c)      **Voting:** Class 7 is Impaired, and the holders of Existing Equity Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Existing Equity Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Existing Equity Interests.

## ARTICLE V.      MEANS FOR IMPLEMENTATION.

5.1      *Implementation*.

On the Effective Date, the Restructuring Transactions will be implemented as follows, subject to modification as agreed in the Transaction Steps or otherwise agreed to by the Debtors and the Required Consenting Lenders:

1.      all holders of Allowed Claims will receive the treatment provided under the Plan, and each of the Debtors will receive a discharge of all Claims (except for the DIP Claims) pursuant to 11 U.S.C. § 1141(d)(1)(A);

2.      the DIP Agent shall form Newco Grandparent, which shall in turn form Newco Parent, which shall in turn form Newco;

3.      Newco Grandparent shall contribute its Interests (the New Interests) to Newco Parent, which shall in turn contribute the New Interests to Newco;

18

4.    Newco shall acquire 100% of the assets of Reorganized Phoenix Holdings in exchange for the consideration to be set forth in the Transaction Steps;

5.    the DIP Claims shall be credit bid pursuant to the Transaction Steps in exchange for the treatment afforded to holders of DIP Claims under the Plan;

6.    pursuant to the Transaction Steps:  (i) holders of the Roll-Up DIP Loans shall receive their Pro Rata share of 99.0% of the New Interests (subject to dilution by the Management Incentive Plan, the Participation Premium, and the Backstop Premium); (ii) holders of New Money DIP Loans shall receive their Pro Rata amount of Takeback Debt, which Takeback Debt shall be in the principal amount of the outstanding amount of the New Money DIP Loans (including all accrued and unpaid interest, fees, premiums, and all other obligations on account of the New Money DIP Loans); (iii) holders of DIP Claims on account of the New Money DIP Loans shall receive a Newco Participation Contract Right to participate in the New Money Exit Debt; and (iv) holders of the Prepetition Lender Claims shall receive their Pro Rata share of 1.0% of the New Interests (subject to dilution by the Management Incentive Plan, the Participation Premium, and the Backstop Premium);

7.    the New Money Exit Debt Syndication will be conducted with respect to $45,000,000 of New Money Exit Debt, which will be included in the principal amount of the First Lien Exit Facility; and

8.    Newco Grandparent shall contribute additional New Interests (in an amount equal to or equivalent of the Backstop Premium and Participation Premium) to Newco Parent, which shall in turn contribute such additional New Interests to Newco, following which the DIP Lenders participating in the New Money Exit Facility (pursuant to the Newco Participation Contract Right) will pay cash in the amount of $45,000,000 to Newco pursuant to the New Money Exit Debt Syndication in exchange for the New Interests (in an amount equal to or equivalent to the Backstop Premium and Participation Premium) and the New Money Exit Debt.

5.2    *No Substantive Consolidation*.

The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan for each Debtor.  The Plan is not premised on, and does not provide for, the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan, or otherwise.

5.3    *Compromise and Settlement of Claims, Interests, and Controversies*.

(a)    Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the Plan is, and shall be deemed, a good-faith compromise and settlement by and among the Debtors, the DIP Lenders, the DIP Agent, and the Releasing Prepetition Lenders of all Claims and controversies among such parties, including all Claims and controversies relating to Prepetition Lender Claims and General Unsecured Claims.

(b)    The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

19

5.4    *Restructuring Professional Fees*.

To the extent not otherwise paid, the Debtors shall promptly pay outstanding and invoiced Restructuring Professional Fees as follows:   (a) on the Effective Date, reasonable Restructuring Professional Fees incurred during the period prior to the Effective Date to the extent invoiced to the Debtors on or about the Effective Date, provided, that any Restructuring Professional Fees paid on the Effective Date shall be subject to the notice and review period requirements under the DIP Order, and subject to reimbursement if any such Restructuring Professional Fees are denied pursuant to a Final Order and to the procedures set forth in the DIP Order and (b) after the Effective Date, any unpaid Restructuring Professional Fees within ten (10) Business Days of receiving an invoice; provided, that, such Restructuring Professional Fees shall be paid in accordance with the terms of any applicable engagement letters or other contractual arrangements (including, in the case of the Prepetition First Lien Administrative Agent, the Prepetition Credit Agreement notwithstanding any discharge or other provisions of the Plan) without the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Cases.

5.5    *Restructuring Transactions; Effectuating Documents*.

(a)    Following the Confirmation Date, the Debtors, the Reorganized Debtors, or the Reorganized Non-Acquired Debtors, as applicable, may take all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including (i) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, cancellation, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, cancellation, or dissolution pursuant to applicable state or federal law; (iv) the execution and delivery of the Definitive Documents; (v) the issuance of securities, all of which shall be authorized and approved in all respects in each case without further action being required under applicable law, regulation, order, or rule; (vi) such other transactions that are necessary or appropriate to implement the Plan in the most tax efficient manner; and (vii) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law or the First Lien Exit Facility Credit Agreement, as applicable.

(b)    The Restructuring Transactions will be structured and implemented in a tax-efficient and cost-efficient manner agreed by the Required Consenting Lenders in their sole and absolute discretion and any resulting taxes shall be consistent with, and not result in any material amendments to, the Business Plan.  The Debtors shall work with its management, the Consenting Lenders and outside advisors to seek to (i) minimize any current cash taxes payable by the Debtors resulting from the Restructuring Transactions; (ii) maximize the Debtors' favorable tax attributes after the Restructuring Transactions; and (iii) optimize the tax structure for the Debtors and its prospective operations and conduct of its businesses (including, but not limited to, the restructuring of certain intercompany obligations between the Debtors).  The Restructuring Transactions are subject to tax diligence by the Consenting Lenders, and shall be structured in a manner that minimizes any changes in tax attributes or tax profile of the Debtors that would reasonably be expected to impair the Debtors' ability to perform and/or meet applicable targets and forecasts under the approved Business Plan.  For the avoidance of doubt, such Restructuring Transactions may, subject to the consent of the Required Consenting Lenders, take the form of a taxable sale transaction or any other transaction that would reasonably not be expected to impair the Debtors' ability to perform and/or meet applicable targets and forecasts under the approved Business Plan.

20

(c)      Each officer, member of the board of directors, or manager of the Debtors is, and each officer, member of the board of directors, or manager of the Reorganized Debtors shall be, authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including any action by the stockholders or directors or managers of the Debtors or the Reorganized Debtors) except for those expressly required pursuant to the Plan.

(d)      All matters provided for herein involving the corporate structure of the Debtors or Reorganized Debtors, or any corporate, limited liability company, or related action required by the Debtors or Reorganized Debtors in connection herewith shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders, members, board, or directors or managers of the Debtors or Reorganized Debtors, and with like effect as though such action had been taken unanimously by the stockholders, members, directors, managers, or officers, as applicable, of the Debtors or Reorganized Debtors.

5.6      *Continued Corporate Existence; Dissolution*.

(a)      Except as otherwise provided in the Plan, the Debtors shall continue to exist after the Effective Date as Reorganized Debtors or Reorganized Non-Acquired Debtors, in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the New Organizational Documents, which shall be in form and substance acceptable to the Required Consenting Lenders in their sole and absolute discretion.  The New Organizational Documents shall include terms and provisions that are usual and customary for organizational documents of reorganized debtors, all of which shall be acceptable to the Required Consenting Lenders in their sole and absolute discretion.  On or after the Effective Date, each Reorganized Debtor or Reorganized Non-Acquired Debtor may take such action that may be necessary or appropriate as permitted by applicable law, instruments and agreements, and such Reorganized Debtor's or Reorganized Non-Acquired Debtor's organizational documents, as such Reorganized Debtor or Reorganized Non-Acquired Debtor may determine is reasonable and appropriate with the consent of the Required Consenting Lenders.  For the avoidance of doubt, the Debtors may include in the Plan Supplement, with the consent of the Required Consenting Lenders, additional corporate Transaction Steps necessary for tax and legal efficiency and administrative purposes.

(b)      After the Effective Date, the Reorganized Debtors shall be authorized to dissolve the Debtors or the Reorganized Debtors in accordance with applicable law or otherwise as part of a Restructuring Transaction, including, for the avoidance of doubt, any conversion of any of the Debtors or the Reorganized Debtors pursuant to applicable law.

(c)      After the Effective Date, the Reorganized Debtor Plan Administrator (or any designee of the Reorganized Debtor Plan Administrator) shall be authorized to dissolve the Reorganized Non-Acquired Debtors in accordance with applicable law or otherwise as part of a Restructuring Transaction, including, for the avoidance of doubt, any conversion of any Reorganized Non-Acquired Debtors pursuant to applicable law or any conversion to chapter 7 of the Bankruptcy Code of any of the Reorganized Non-Acquired Debtors pursuant to applicable law.

(d)      Any such dissolution described in this Section 5.6 may be effective as of the Effective Date without any further action by any shareholder, director, manager, board, or member of the Debtors.

21

5.7     *Reorganized Debtor Plan Administrator*.

(a)     *Appointment*.   The Reorganized Debtor Plan Administrator's retention shall commence on the Effective Date and shall continue until the Chapter 11 Case of each Debtor has been closed pursuant to an order of the Bankruptcy Court.

(b)     *Responsibilities*.   The responsibilities of the Reorganized Debtor Plan Administrator shall include (a) facilitating the Reorganized Debtors' prosecution or settlement of objections to and estimations of Claims; (b) prosecution or settlement of claims and Causes of Action held by the Reorganized Debtors; (c) calculating and assisting the Disbursing Agent in implementing all distributions in accordance with the Plan; (d) filing all required tax returns and paying taxes and all other obligations on behalf of the Reorganized Debtors from funds held by the Reorganized Debtors; (e) periodic reporting to the Bankruptcy Court, of the status of the Claims resolution process, distributions on Allowed Claims and prosecution of Causes of Action; and (f) such other responsibilities as may be vested in the Reorganized Debtor Plan Administrator pursuant to the Plan or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan.

(c)     *Authority*.   The powers of the Reorganized Debtor Plan Administrator shall, without any further Bankruptcy Court approval in each of the following cases, include (a) the power to invest funds in, and withdraw, make distributions and pay taxes and other obligations owed by the Reorganized Debtors or Reorganized Non-Acquired Debtors from funds held by the Reorganized Debtor Plan Administrator in accordance with the Plan; (b) the power to compromise and settle claims and causes of action on behalf of or against the Reorganized Debtors or Reorganized Non-Acquired Debtors; and (c) such other powers as may be vested in or assumed by the Reorganized Debtor Plan Administrator pursuant to the Plan or as may be deemed necessary and proper to carry out the provisions of the Plan.

5.8     *First Lien Exit Facility*.

The First Lien Exit Facility and the proceeds thereof shall be used, among other things, to (i) fund distributions, costs, and expenses contemplated by the Plan, and/or (ii) fund general working capital and for general corporate purposes of the Reorganized Debtors.  The obligations under the First Lien Exit Facility Credit Agreement shall be secured by a first priority lien on substantially all the assets of the Borrower and the Guarantors, including 100% of the equity of the Non-Debtor Subsidiaries, subject to customary carve-outs.  Subject to the terms and conditions of the Acceptable Plan Agreement, on the Effective Date, the First Lien Exit Facility Credit Agreement shall be executed and delivered.  The Reorganized Debtors shall be authorized to execute, deliver, and enter into and perform under the First Lien Exit Facility Credit Agreement without the need for any further corporate or limited liability company action and without further action by the holders of Claims or Interests.

5.9     *Authorization, Issuance, and Distribution of New Interests*.

(a)     On the Effective Date, upon consummation of the Acquisition Transaction, 100% of the assets of Reorganized Phoenix Holdings shall vest in Newco.  The New Interests will be distributed in accordance with the Plan and be issued and distributed free and clear of all Liens, Claims and other Interests.

(b)     100% of the Interests in Reorganized Non-Acquired Debtors shall vest in the Reorganized Debtor Plan Administrator (or any designee of the Reorganized Debtor Plan Administrator) solely for purposes of taking the steps necessary to dissolve the Reorganized Non-Acquired Debtors under applicable state law.

22

5.10    *Section 1145 Exemption*.

(a)    The offer, issuance, and distribution of the New Interests to holders of DIP Claims and Prepetition Lender Claims under Section 4.3 of the Plan, other than in respect of the Backstop Premium and/or Participation Premium, shall be exempt, to the fullest extent permitted pursuant to section 1145 of the Bankruptcy Code, without further act or action by any Person, from registration under (i) the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and (ii) any state or local law requiring registration for the offer, issuance, or distribution of Securities.  The offer, issuance and distribution of the New Interests in respect of the Backstop Premium and Participation Premium will be exempt from registration under the Securities Act pursuant to section 4(a)(2) of the Securities Act or Regulation D thereunder.

(b)    Under section 1145 of the Bankruptcy Code, any securities issued under the Plan that are exempt from such registration pursuant to section 1145(a) of the Bankruptcy Code will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act of 1933, as amended; (ii) compliance with any rules and regulations of the U.S. Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (iii) the restrictions, if any, on the transferability of such securities and instruments, including any restrictions on the transferability under the terms of the New Organizational Documents; and (iv) applicable regulatory approval.  Persons who receive the New Interests pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder will hold "restricted securities" and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act.  Resales of such restricted securities would not be exempted by section 1145 of the Bankruptcy Code from registration under the Securities Act or other applicable law. Holders of such restricted securities would, however, under certain conditions, be permitted to resell New Interests without registration if they are able to comply with the applicable provisions of Rule 144 or Rule 144A or any other registration exemption under the Securities Act, or if such sales of restricted securities under the Securities Act.

(c)    All Persons and Entities shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the New Interests is exempt from registration.

(d)    Notwithstanding anything to the contrary in the Plan or otherwise, no Person or Entity may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Interests are exempt from registration or validly issued, fully paid, and non-assessable.

5.11    *Cancellation of Existing Securities and Agreements*.

(a)    Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, including with respect to executory contracts or unexpired leases that shall be assumed by the Debtors, on the Effective Date, all agreements, instruments, and other documents evidencing any Allowed DIP Claims and Allowed Prepetition Lender Claims, or any Interest (other than Intercompany Interests that are not modified by the Plan) and any rights or Liens of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged, and the holders of Prepetition Lender Claims shall be authorized and directed to release any collateral or other property of the Debtors (including any Cash collateral) held by such holder.

23

(b)     Notwithstanding such cancellation and discharge and the releases contained in Article X of the Plan, the DIP Credit Agreement and the Prepetition Credit Agreement shall continue in effect solely to the extent necessary to (i) allow the holders of Allowed DIP Claims and Allowed Prepetition Lender Claims to receive distributions under the Plan; (ii) allow the Debtors, the Reorganized Debtors, the DIP Agent, the Prepetition First Lien Administrative Agent, and the Disbursing Agent, as applicable, to make post Effective Date distributions or take such other action pursuant to the Plan on account of the Allowed DIP Claims and Allowed Prepetition Lender Claims, as applicable, and to otherwise exercise their rights and discharge their obligations relating to the interests of the holders of such Claims in accordance with the Plan; provided, that all distributions to holders of Prepetition Lender Claims shall be made by the Disbursing Agent at the direction of the Prepetition First Lien Administrative Agent, rather than by the Prepetition First Lien Administrative Agent itself; (iii) allow holders of Claims to retain their respective rights and obligations vis-à-vis other holders of Claims pursuant to any applicable loan documents, including any rights of each Issuing Bank (as defined in the Prepetition Credit Agreement) and obligations of each Revolving Facility Lender (as defined in the Prepetition Credit Agreement) with respect to payments in respect of L/C Disbursements (as defined in the Prepetition Credit Agreement) not reimbursed by the Borrower (as defined in the Prepetition Credit Agreement); (iv) allow the DIP Agent and the Prepetition First Lien Administrative Agent, as applicable, to enforce any obligations owed to them under the Plan (including seeking compensation and reimbursement for any reasonable and documented fees and expenses as provided in the DIP Documents, the Prepetition Credit Agreement or the Plan); (v) preserve the DIP Agent's and the Prepetition First Lien Administrative Agent's rights to any contingent or indemnification obligations of the Debtors or Reorganized Debtors pursuant and subject to the terms of the DIP Credit Agreement or DIP Order and the Prepetition Credit Agreement; and provided that, for the avoidance of doubt, the Reorganized Debtors shall assume the obligation of the Debtors to indemnify the DIP Agent and Prepetition First Lien Administrative Agent in connection with any claims or causes of action that may be asserted  in connection with the Acquisition Transaction or the Restructuring Transactions; (vi) permit the DIP Agent and Prepetition First Lien Administrative Agent, as applicable, to perform any function necessary to effectuate the foregoing; and (vii) permit the DIP Agent and the Prepetition First Lien Administrative Agent, as applicable, to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court relating to the DIP Documents, the Prepetition Credit Agreement, the Plan or the Confirmation Order; provided, that, nothing in this Section 5.11 shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any liability or expense to the Reorganized Debtors.  Without limiting the foregoing, the DIP Agent and the Prepetition First Lien Administrative Agent, as applicable, shall receive all distributions made by the Disbursing Agent under the Plan on account of the respective DIP Claims of each DIP Lender and Prepetition Lender Claims of each Prepetition First Lien Lender as of the Distribution Record Date, as applicable, and shall distribute them in any manner permitted by the DIP Credit Agreement, Prepetition Credit Agreement, the Plan, or the Confirmation Order; provided, that the Disbursing Agent shall, at the direction of the Prepetition First Lien Administrative Agent, make distributions on account of  Prepetition Lender Claims directly to the holders of such claims.   The DIP Agent and Prepetition First Lien Administrative Agent, as applicable, shall be entitled to receive from the Reorganized Debtors their reasonable fees (including attorneys' fees) and expenses incurred in making distributions, as applicable, in accordance with the DIP Credit Agreement, Prepetition Credit Agreement, the Plan, and the Confirmation Order and be entitled to indemnities from the Reorganized Debtors in connection therewith.

(c)     Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors of their interests, as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in this Section 5.11 shall be deemed null and void and shall be of no force and effect.

(d)    Except for the foregoing, on and after the Effective Date, all duties and responsibilities of the Prepetition First Lien Administrative Agent and the DIP Agent shall be fully discharged (i) unless otherwise specifically set forth in or provided for under the Plan, the Plan Supplement, or the Confirmation Order and (ii) except with respect to such other rights of the Prepetition First Lien Administrative Agent and the DIP Agent that, pursuant to the Prepetition Credit Agreement or DIP Documents, as applicable, survive the termination of such Prepetition Credit Agreement or DIP Documents. Subsequent to the performance by the Prepetition First Lien Administrative Agent or DIP Agent of its obligations pursuant to the Plan and Confirmation Order, such Prepetition First Lien Administrative Agent or DIP Agent and its agents shall be relieved of all further duties and responsibilities related to the Prepetition Credit Agreement or DIP Documents, as applicable.

5.12    *Retention of Causes of Action*.

(a)    Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, each Reorganized Debtor shall retain all of the applicable Debtor's Causes of Action. Each Reorganized Debtor may enforce, prosecute, settle, release, or compromise (or decline to do any of the foregoing) all such Causes of Action. Any Causes of Action belonging to the Reorganized Non-Acquired Debtors shall be assigned to and vest in Newco.

(b)    Notwithstanding the foregoing, the Debtors shall waive all, and no Reorganized Debtor, Reorganized Non-Acquired Debtor or any other Person (on behalf of the Debtors or the Reorganized Debtors) shall have any, Causes of Action pursuant to section 547 of the Bankruptcy Code.

5.13    *Officers and Boards of Directors*.

(a)    On the Effective Date, Newco shall appoint the New Board. The members of the New Board shall be selected and approved by the Required Consenting Lenders in their sole and absolute discretion. The composition of the New Board shall be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code.

(b)    Except as otherwise provided in the Plan Supplement, the officers of the respective Debtors immediately before the Effective Date, as applicable, shall serve as the initial officers of each of the respective Reorganized Debtors on and after the Effective Date and in accordance with the Plan and applicable non-bankruptcy law.

(c)    Except to the extent that a member of the board of directors or managers, as applicable, of a Debtor continues to serve as a director or manager of the respective Reorganized Debtor on and after the Effective Date, the members of the board of directors or managers of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date and each such director or manager will be deemed to have resigned or shall otherwise cease to be a director or manager of the applicable Debtor on the Effective Date.

(d)    Commencing on the Effective Date, each of the directors and managers of each of the Reorganized Debtors shall be elected and serve pursuant to the terms of the applicable organizational documents of such Reorganized Debtor and may be replaced or removed in accordance with such organizational documents.

5.14    *Cancellation of Liens*.

Except as otherwise specifically provided herein, including pursuant to Section 5.11 of the Plan, upon the payment in full in Cash of an Other Secured Claim, any Lien securing an Other Secured

25

Claim that is paid in full, in Cash, shall be deemed released, and the holder of such Other Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors (including any Cash collateral) held by such holder and to take such actions as may be requested by the Reorganized Debtors, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Reorganized Debtors.

### 5.15   *Employee Matters*.

(a)   On the Effective Date, the Debtors shall be deemed to have assumed the Specified Senior Management Agreements.  Notwithstanding anything contrary in the Employment Arrangements, the consummation of the Plan shall not be treated as a change in control or change of control or other similar transaction under the Specified Senior Management Agreements.

(b)   All Specified Senior Management Agreements shall be assumed and assigned to Newco (or such other Entity with decision-making authority with respect to the Reorganized Debtors as determined by the Required Consenting Lenders).

### 5.16   *Management Incentive Plan*.

(a)   No later than thirty (30) days after the Effective Date, the New Board shall adopt a Management Incentive Plan that provides for the issuance of equity and equity-based awards ("*Awards*") to employees, consultants and directors/managers of Newco, the Reorganized Debtors, and/or the Non-Debtor Subsidiaries.  The New Board shall reserve a pool of New Interests under the Management Incentive Plan representing up to 10% on a fully-diluted basis (or as otherwise agreed by the Required Consenting Lenders prior to the entry of the Confirmation Order) of the issued and outstanding New Interests as of the Effective Date (the "*MIP Pool*"), inclusive of New Interests reserved in the MIP Pool.

(b)   The form of the Awards, the participants in the Management Incentive Plan, the allocations of the Awards to such participants, and the terms and conditions of the Awards shall be determined by the New Board in its sole and absolute discretion.

### 5.17   *Customer Contracts*.

The Debtors shall be authorized to enter into those certain contracts with their customers listed on the Customer Schedule, and such contracts shall be deemed effective as of the Effective Date.

### 5.18   *Nonconsensual Confirmation*.

The Debtors intend to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code as to any Classes that reject or are deemed to reject the Plan.

### 5.19   *Closing of Chapter 11 Cases*.

The Reorganized Debtors or the Reorganized Debtor Plan Administrator, as applicable, shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case(s) in accordance with the Bankruptcy Code and Bankruptcy Rules.

### 5.20   *Notice of Effective Date*.

As soon as practicable following the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

5.21    *Separability*.

Notwithstanding the combination of the separate plans of reorganization for the Debtors set forth in the Plan for purposes of economy and efficiency, the Plan constitutes a separate chapter 11 plan for each Debtor.  Accordingly, if the Bankruptcy Court does not confirm the Plan with respect to one or more Debtors, it may still, subject to the consent of the applicable Debtor(s) and the Required Consenting Lenders, confirm the Plan with respect to any other Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

# ARTICLE VI.        DISTRIBUTIONS.

6.1    *Distributions Generally*.

Except as otherwise provided in the Plan, the Disbursing Agent shall make all distributions under the Plan to the appropriate holders of Allowed Claims in accordance with the terms of the Plan.

6.2    *Distribution Record Date*.

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Interests.  The Debtors or the Reorganized Debtors shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.  In addition, with respect to payment of any Cure Amounts or disputes over any Cure Amounts, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease as of the close of business on the Distribution Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.  For the avoidance of doubt, the Distribution Record Date shall not apply to the DIP Claims and the Prepetition Lender Claims, the holders of which shall receive a distribution in accordance with Article IV of the Plan on or as soon as practicable after the Effective Date.  For the further avoidance of doubt, all distributions made pursuant to the Plan on account of the DIP Claims and Prepetition Lender Claims shall be made by the Disbursing Agent to, or at the direction of, the DIP Agent or the Prepetition First Lien Administrative Agent, as applicable, for further distribution to holders of DIP Claims and Prepetition Lender Claims in accordance with the Plan and the Confirmation Order, subject to and in accordance with the terms of the DIP Credit Agreement and Prepetition Credit Agreement, as applicable.

6.3    *Date of Distributions*.

Except as otherwise provided in the Plan, any distributions and deliveries to be made under the Plan shall be made on the Effective Date or as otherwise determined in accordance with the Plan, including the treatment provisions of Article IV of the Plan, or as soon as practicable thereafter; provided, that, the Reorganized Debtors may implement periodic distribution dates to the extent they reasonably determine them to be appropriate.

6.4    *Disbursing Agent*.

A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties, and all reasonable fees and expenses incurred by such Disbursing Agents directly related to distributions hereunder shall be reimbursed by the Reorganized Debtors.  The Reorganized Debtors shall use commercially reasonable efforts to provide the Disbursing Agent (if other than the Reorganized Debtors) with the amounts of Claims and the identities and addresses of holders of

27

Claims and Interests as of the Distribution Record Date, in each case, as set forth on the claims register. The Reorganized Debtors shall cooperate in good faith with the applicable Disbursing Agent (if other than the Reorganized Debtors) to comply with the reporting and withholding requirements outlined in Section 6.18 of the Plan.

6.5     ***Rights and Powers of Disbursing Agent***.

(a)     From and after the Effective Date, the Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including holders of Claims against and Interests in the Debtors and other parties in interest, from any and all claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent. No holder of a Claim or Interest or other party in interest shall have or pursue any Claim or Cause of Action against the Disbursing Agent, solely in its capacity as Disbursing Agent, for making payments in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent.

(b)     The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder; (ii) make all distributions contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

6.6     ***Expenses of Disbursing Agent***.

To the extent the Disbursing Agent is an Entity other than a Debtor or Reorganized Debtor, except as otherwise ordered by the Bankruptcy Court and subject to the written agreement of the Reorganized Debtors, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including for reasonable attorneys' and other professional fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors in the ordinary course of business.

6.7     ***No Postpetition Interest on Claims***.

Except as otherwise provided in the Plan, the Confirmation Order, or another order of the Bankruptcy Court or required by the Bankruptcy Code, interest shall not accrue or be paid on any Claims on or after the Petition Date; provided, that, other than with respect to DIP Claims or Other Secured Claims, if interest is payable pursuant to the preceding sentence, interest shall accrue at the federal judgment rate pursuant to 28 U.S.C. § 1961 on a non-compounded basis from the date the obligation underlying the Claim becomes due and is not timely paid through the date of payment.

6.8     ***Delivery of Distributions***.

(a)     In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent shall review its books and records to determine if it possesses additional or different mailing addresses for such holder. If, after such review, the Disbursing Agent is unable to locate a different

RLF1 29198637V.1

or additional address for such holder, no further distributions shall be made to such holder unless and until such Disbursing Agent is notified in writing of such holder's then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest.  Except as set forth in this Section 6.8(a), nothing herein shall require the Disbursing Agent to attempt to locate holders of undeliverable distributions and, if located, assist such holders in complying with Section 6.10 of the Plan.

(b)     No fractional shares of New Interests shall be distributed under the Plan. When any distribution of New Interests under the Plan would otherwise result in the issuance of a number of shares of New Interests that is not a whole number, the actual distribution of shares of New Interests shall be rounded as follows: (i) fractions of one-half (½) or greater shall be rounded to the next higher whole number; and (ii) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of New Interests to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in this Article 6.8(b).

6.9     *Distributions after Effective Date*.

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

6.10     *Unclaimed Property*.

Undeliverable distributions or unclaimed distributions shall remain in the possession of the Debtors or the Reorganized Debtors, as applicable, until such time as a distribution becomes deliverable or holder accepts distribution, or such distribution reverts back to the Debtors or the Reorganized Debtors, as applicable, and shall not be supplemented with any interest, dividends, or other accruals of any kind.  Such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one hundred and eighty (180) days from the date of distribution.  After such date, and notwithstanding Section 5.11 or any other provision of the Plan, all unclaimed property or interest in property shall revert to the Reorganized Debtors and the Claim of any other holder to such property or interest in property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

6.11     *Time Bar to Cash Payments*.

Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred eighty (180) days after the date of issuance thereof.  Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtors, and any Claim in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  Requests for re-issuance of any check within one hundred eighty (180) days after issuance shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued.

6.12     *Manner of Payment under Plan*.

Except as otherwise specifically provided in the Plan, at the option of the Debtors or the Reorganized Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreement(s) or customary practices of the Debtors.

29

6.13    *Satisfaction of Claims*.

Except as otherwise specifically provided in the Plan, and in accordance with sections 5.3 and 10.3 of the Plan, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

6.14    *Minimum Cash Distributions*.

The Disbursing Agent shall not be required to make any distribution of Cash less than One Hundred Dollars ($100) to any holder of an Allowed Claim; provided, that, if any distribution is not made pursuant to this Section 6.14, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim.

6.15    *Setoffs and Recoupments*.

The Debtors, the Reorganized Debtors and Reorganized Non-Acquired Debtors as applicable, may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable nonbankruptcy law; provided, that, neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or a Reorganized Debtor or its successor of any claims, rights, or Causes of Action that a Debtor or Reorganized Debtor or its successor or assign may possess against the holder of such Claim.

6.16    *Allocation of Distributions between Principal and Interest*.

Except as otherwise required by law (as reasonably determined by the Debtors or the Reorganized Debtors), distributions with respect to Allowed Claims shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

6.17    *No Distribution in Excess of Amount of Allowed Claim*.

Notwithstanding anything in the Plan to the contrary, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions under the Plan in excess of the Allowed amount of such Claim.

6.18    *Withholding and Reporting Requirements*.

(a)    *Withholding Rights*.  In connection with the Plan, any party issuing any instrument or making any distribution contemplated by the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. In the case of a non-Cash distribution that is subject to withholding, the issuing and distributing party or any other withholding agent  may, in its sole discretion, withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property.  Any amounts withheld pursuant to the preceding sentence, and paid over to the applicable Governmental Unit, shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Notwithstanding the

30

foregoing, each holder of an Allowed Claim or any other Entity that receives a distribution pursuant to the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed by any Governmental Unit, including income, withholding, and other taxes, on account of such distribution. In the event any party issues any instrument or makes any non-Cash distribution pursuant to the Plan that is subject to withholding tax and such withholding agent or issuing or distributing party has not sold such withheld property to generate Cash to pay the withholding tax or paid the withholding tax using its own funds and retains such withheld property as described above, such withholding agent or issuing or distributing party has the right, but not the obligation, to not make a distribution until such holder has made arrangements reasonably satisfactory to such withholding agent or issuing or disbursing party for payment of any such tax obligations.  Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  The withholding agent or issuing or distributing party may, pursuant to Section 6.19(b), require a holder of an Allowed Claim or any other Entity that receives a distribution pursuant to the Plan to complete and return a Form W-8 or W-9, as applicable to each such holder, and any other applicable forms.

(b)    *Forms*.  Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Entity designated by the Debtors, Reorganized Debtors, withholding agent, or any such other issuing or distributing party (which Entity shall subsequently deliver to the Disbursing Agent any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Entity) Form W-8, and any other forms or documents reasonably requested by any Reorganized Debtor to reduce or eliminate any withholding required by any federal, state, or local taxing authority.

## ARTICLE VII.    PROCEDURES FOR DISPUTED CLAIMS.

7.1    *Objections to Claims*.

The Debtors or Reorganized Debtors, as applicable, shall be entitled to object to Claims. After the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall have and retain any and all rights and defenses that the Debtors had with regard to any Claim to which they may object, except with respect to any Claim that is Allowed.  Any objections to Claims shall be served and filed on or before the Claims Objection Bar Date.

7.2    *Resolution of Disputed Administrative Expenses and Disputed Claims*.

On and after the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall have the authority to compromise, settle, withdraw, or otherwise resolve any objections to Claims without approval of the Bankruptcy Court, other than with respect to Fee Claims.

7.3    *Payments and Distributions with Respect to Disputed Claims*.

Notwithstanding anything herein to the contrary, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.4    *Distributions after Allowance*.

After such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder thereof shall be entitled to distributions, if any, to which such holder is then entitled as provided in the Plan, without interest, as provided in Section 7.9 of the Plan.  Such distributions shall be made as soon

31

as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) becomes a Final Order.

7.5     *Disallowance of Claims*.

Except to the extent otherwise agreed to by the Debtors or Reorganized Debtors, as applicable, any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, as determined by a Final Order, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Reorganized Debtors.  All Proofs of Claim filed on account of an indemnification obligation to a current or former director, manager, officer, or employee shall be deemed satisfied and expunged from the claims register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

7.6     *Estimation of Claims*.

The Debtors or the Reorganized Debtors, as applicable, may determine, resolve and otherwise adjudicate all contingent Claims, unliquidated Claims and Disputed Claims in the Bankruptcy Court.  The Debtors or the Reorganized Debtors, as applicable, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason or purpose.  The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent Claim, unliquidated Claim or Disputed Claim, that estimated amount shall constitute the maximum limitation on such Claim, and the Debtors or the Reorganized Debtors, as applicable, may pursue supplementary proceedings to object to the ultimate allowance of such Claim; provided, that, such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only.

7.7     *No Distributions Pending Allowance*.

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

7.8     *Claim Resolution Procedures Cumulative*.

All of the objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

7.9     *Interest*.

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest that accrued thereon from and after the Effective Date.

# ARTICLE VIII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

8.1    *General Treatment*.

(a)    As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall, in consultation with, and subject to the consent of the Required Consenting Lenders in their sole and absolute discretion, be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtors on or before the Effective Date; or (iv) is specifically designated as a contract or lease to be assumed on the Assumption Schedule.

(b)    Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, including assignments to another Debtor, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each executory contract and unexpired lease assumed pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment, or applicable law.

(c)    For the avoidance of doubt, without the consent of the Required Consenting Lenders, no obligation to fund any joint venture shall be assumed, modified, rejected, or not otherwise assumed.

8.2    *Determination of Cure Disputes and Deemed Consent*.

(a)    Any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, as reflected in the applicable cure notice, in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors may otherwise agree.

(b)    The Debtors shall file, as part of the Plan Supplement, the Assumption Schedule. At least fourteen (14) days before the commencement of the Confirmation Hearing, the Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed reflecting the Debtors' intention to assume the contract or lease in connection with the Plan and, where applicable, setting forth the proposed Cure Amount (if any).  **Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within ten (10) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court**. Any counterparty to an executory contract or unexpired lease that fails to object timely to the proposed assumption, assumption and assignment, or Cure Amount (i) shall be deemed to have assented to such assumption, assumption and assignment, or Cure Amount, notwithstanding any provision thereof that purports to (1) prohibit, restrict, or condition the transfer or assignment of such contract or lease or (2) terminate or permit the termination of a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtors under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan, and shall forever be barred and enjoined from asserting such objection against the Debtors or terminating or modifying such contract or lease on account of transactions contemplated by the Plan and (ii) shall be forever barred, estopped, and enjoined from challenging the validity of such assumption or assumption and assignment, as applicable, thereafter.

33

(c)     If there is a dispute pertaining to the assumption of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount), such dispute shall be heard by the Bankruptcy Court prior to the assumption being effective; provided, that, the Debtors or the Reorganized Debtors may settle any such dispute without any further notice to, or action by, any party or order of the Bankruptcy Court.

(d)     To the extent a dispute relates to Cure Amounts, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of such cure dispute; provided, that, the Debtors or the Reorganized Debtors reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the Cure Amount by the counterparty to such executory contract or unexpired lease.

(e)     Assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims against any Debtor or defaults by any Debtor, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date that the Debtors assume or assume and assign such executory contract or unexpired lease. Any Proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, upon the assumption of such executory contract or unexpired lease.

### 8.3     *Rejection Damages Claims*.

In the event that the rejection of an executory contract or unexpired lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be classified as a General Unsecured Claim. Because there are no distributions provided to General Unsecured Claims, such claims need not be filed.

### 8.4     *Indemnification Obligations*.

Notwithstanding anything in the Plan to the contrary, each Indemnification Obligation shall be assumed by the applicable Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code or otherwise. Each Indemnification Obligation shall remain in full force and effect, shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.

### 8.5     *Insurance Policies*.

(a)     Notwithstanding any other provision in the Plan, all insurance policies to which any Debtor is a party as of the Effective Date (including any "tail policy") shall be deemed to be and treated as executory contracts and shall be assumed by the applicable Reorganized Debtors and shall continue as obligations of the Debtors or Reorganized Debtors in accordance with their respective terms. All other insurance policies shall vest in the Reorganized Debtors, as applicable, without the necessity for further approvals or orders. Nothing in the Plan shall alter, modify, amend, affect, impair, or prejudice the legal, equitable, or contractual rights, obligations, and defenses of the Debtors, the Reorganized Debtors, Zurich, or any other individual or entity, as applicable, under (or affect the coverage under) the Debtors' insurance policies.

(b)     The injunctions set forth in Article 10.5 of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Bankruptcy Court, solely to permit: (i) holders of valid

Workers' Compensation Claims or direct action claims against Zurich under applicable non-bankruptcy law to proceed with their claims; (ii) Zurich to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court but subject to the terms of the Zurich Insurance Contracts, (A) Workers' Compensation Claims, (B) claims where a claimant asserts a direct claim against Zurich under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article 10.5 of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (iii) Zurich to take, in their sole discretion but subject to the terms of the Zurich Insurance Contracts, other actions relating to the Zurich Insurance Contracts (including effectuating a setoff).

### 8.6    *Intellectual Property Licenses and Agreements*.

Notwithstanding any other provision in the Plan, all intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtors have any rights or obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the respective Debtors and shall continue in full force and effect unless any such intellectual property contract, license, royalty, or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion filed by the Debtors. Unless otherwise noted hereunder, as applicable, all other intellectual property contracts, licenses, royalties, or other similar agreements shall vest in the Reorganized Debtors and the Reorganized Debtors may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

### 8.7    *Assignment*.

To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned hereunder shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment. To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

### 8.8    *Reservation of Rights*.

(a)    The Debtors may amend the Assumption Schedule, with the consent of the Required Consenting Lenders, until the Effective Date in order to add, delete, or reclassify any executory contract or unexpired lease. The Debtors shall provide notice of such amendment to any affected counterparty as soon as reasonably practicable.

(b)    Neither the exclusion nor the inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors, the Reorganized Debtors or Reorganized Non-Acquired Debtors have any liability thereunder.

35

(c)      Except as explicitly provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors, the Reorganized Debtors or Reorganized Non-Acquired Debtors under any executory or non-executory contract or unexpired or expired lease.

(d)      Nothing in the Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, the Reorganized Debtors or Reorganized Non-Acquired Debtors, as applicable, under any executory or non-executory contract or unexpired or expired lease.

8.9      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*.

Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and executory contracts and unexpired leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

## ARTICLE IX.      CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND EFFECTIVE DATE.

9.1      *Conditions Precedent to Confirmation of Plan*.

The following are conditions precedent to confirmation of the Plan:

(a)      the Disclosure Statement Order shall have been entered;

(b)      the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed; and

(c)      the Acceptable Plan Agreement shall not have been terminated.

9.2      *Conditions Precedent to Effective Date*.

The following are conditions precedent to the Effective Date of the Plan and the obligations of the DIP Lenders to consummate the Acquisition Transaction:

(a)      the Acceptable Plan Agreement shall not have been terminated;

(b)      there shall not have been instituted or threatened or be pending any action, proceeding, application, claim, counterclaim, or investigation (whether formal or informal) (or there shall not have been any material adverse development to any action, application, claim, counterclaim, or proceeding currently instituted, threatened or pending) before or by any court, governmental, regulatory, or administrative agency or instrumentality, domestic or foreign, or by any other Person, domestic or foreign, in connection with the Restructuring Transactions that, as determined by the Required Consenting Lenders in their sole and absolute discretion, would prohibit, prevent, or restrict consummation of the Restructuring Transactions;

(c)      each document or agreement constituting the applicable Definitive Documents shall (i) be in form and substance consistent with the Acceptable Plan Agreement and the consent rights thereunder, (ii) have been duly executed, delivered, acknowledged, filed, and/or effectuated, as applicable,

36

and (iii) be in full force and effect, and any conditions precedent related thereto or contained therein shall have been satisfied prior to or contemporaneously with the occurrence of the Effective Date or otherwise waived;

   (d) the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan, and all applicable regulatory or government-imposed waiting periods shall have expired or been terminated;

   (e) the New Organizational Documents shall (i) be in form and substance acceptable to the Debtors and the Required Consenting Lenders; (ii) have been executed, delivered, acknowledged, filed, and/or effectuated, as applicable; and (iii) be in full force and effect, and any conditions precedent related thereto or contained therein shall have been satisfied prior to or contemporaneously with the occurrence of the Effective Date or otherwise waived;

   (f) all professional fees and expenses of retained professionals required to be approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses in full after the Effective Date shall have been placed in the professional fee escrow account;

   (g) the conclusion of tax diligence satisfactory to the Required Consenting Lenders in their sole and absolute discretion;

   (h) the Confirmation Order shall constitute a Final Order;

   (i) the Disclosure Statement Order shall constitute a Final Order;

   (j) no event of default or default shall have occurred and be continuing under the DIP Credit Agreement or the DIP Order;

   (k) since March 16, 2023, there has been no event or circumstance that, individually or in the aggregate with other events or circumstances, has had or would reasonably be expected to have a Material Adverse Effect (as defined in the DIP Credit Agreement);

   (l) the Debtors shall have finalized the contracts with the Specified Customers;

   (m) the Debtors shall have obtained Final Relief in form and substance acceptable to the Required Consenting Lenders;

   (n) the Required Consenting Lenders shall have determined in their sole and absolute discretion that there are no material pending defaults or termination rights upon the Effective Date under the customer contracts of the Reorganized Debtors or the Non-Debtor Subsidiaries;

   (o) the New Money Exit Debt Syndication shall have been completed as set forth in the New Money Exit Debt Syndication Documents;

   (p) all conditions precedent to the issuance or incurrence of the First Lien Exit Facility shall have been satisfied or duly waived, and the First Lien Exit Facility Documents shall be in form and substance acceptable to the Required Consenting Lenders in their sole and absolute discretion;

   (q) the First Lien Exit Facility shall have been funded in accordance with the First Lien Exit Facility Documents;

37

(r)    the Restructuring Professional Fees shall have been paid in full in Cash pursuant to the requirements under the DIP Order or as otherwise provided for in the Plan;

(s)    the Debtors shall have satisfied all milestones under the DIP Credit Agreement and Acceptable Plan Agreement;

(t)    to the extent not otherwise addressed herein, all actions, documents, and agreements necessary to implement and consummate the Restructuring Transactions shall have been effected and executed, and shall be in form and substance consistent with the Acceptable Plan Agreement and acceptable to the Debtors and the Required Consenting Lenders;

(u)    the Restructuring Transactions and the Plan shall satisfy the tax related requirements set forth herein, in the sole and absolute discretion of the Required Consenting Lenders;

(v)    the Required Consenting Lenders shall have approved the Business Plan in their sole and absolute discretion; and

(w)    any D public rating for the Debtors or any of their applicable debts or obligations shall have been withdrawn or removed.

9.3    ***Waiver of Conditions Precedent***.

(a)    Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.  Each of the conditions precedent in Section 9.1 and Section 9.2 may not be waived without the express prior written consent (which may be via email of counsel) of the Debtors and the Required Consenting Lenders, which waiver shall be effective without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan; provided, that, the condition precedent set forth in section 9.2(r) may not be waived without the consent of the affected professional or advisor to whom the applicable Restructuring Professional Fees are owed.  If the Plan is confirmed for fewer than all of the Debtors as provided for in Section 5.21 of the Plan, only the conditions applicable to the Debtor or Debtors for which the Plan is confirmed must be satisfied or waived for the Effective Date to occur as to such Debtors.

(b)    The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

9.4    ***Effect of Non-Occurrence of Conditions to the Effective Date.***

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (ii) prejudice in any manner the rights of the Debtor, any holders of a Claim or Interest or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders, or any other Entity in any respect.

## ARTICLE X. EFFECT OF CONFIRMATION OF PLAN.

10.1 *Vesting of Assets*.

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' Estates shall vest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided pursuant to the Plan or the Confirmation Order. On and after the Effective Date, the Reorganized Debtors may take any action, including the operation of their businesses, the use, acquisition, sale, lease, and disposition of property, and the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as expressly provided herein. Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

10.2 *Binding Effect*.

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtors and their respective successors and assigns, notwithstanding whether any such holders (a) were Impaired or Unimpaired under the Plan; (b) were deemed to accept or reject the Plan; (c) failed to vote to accept or reject the Plan; (d) voted to reject the Plan; or (e) received any distribution under the Plan.

10.3 *Discharge of Claims and Termination of Interests*.

Upon the Effective Date and subject to the Transaction Steps, and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, any and all Claims, Interests, rights, and liabilities against the Debtors that arose prior to the Effective Date shall be discharged to the fullest extent permitted by section 1141 of the Bankruptcy Code. Upon the Effective Date, the holders of any such Claims, Interests, rights, and liabilities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim, Interest, right, or liability against the Debtors, the Reorganized Debtors or the Reorganized Non-Acquired Debtors or any of their Assets or property, whether or not such holder has filed a Proof of Claim and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

10.4 *Term of Injunctions or Stays*.

Unless otherwise provided herein, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

10.5 *Injunction*.

(a) Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or

39

consummation of the Plan in relation to any Claim or Interest extinguished, discharged, released or treated pursuant to the Plan.

(b)    Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in any or all of the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, released, or treated pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties or the property of any of the Released Parties; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties or the property of any of the Released Parties; (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated or allowed by the Plan, or to the extent asserted with respect to a timely Proof of Claim or an objection to the confirmation of the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

(c)    The injunctions in this Section 10.5 shall extend to any successors of the Debtors, the Reorganized Debtors or Reorganized Non-Acquired Debtors and their respective property and interests in property.

10.6    *Releases*.

(a)    **Releases by the Debtors.**

**As of the Effective Date, except for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remains in effect after the Effective Date, for good and valuable consideration, on and after the Effective Date, the Released Parties shall be deemed released and discharged by the Debtors, the Reorganized Debtors, the Reorganized Non-Acquired Debtors. and the Estates, and any Person seeking to exercise the rights of the Estates, and any successors to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all claims, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, the Reorganized Non-Acquired Debtors or the Estates, that the Debtors, the Reorganized Debtors, the Reorganized Non-Acquired Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors,  the Reorganized Debtors or the Reorganized Non-Acquired Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between**

40

the Debtors and any Released Party, the Restructuring Transactions, or any of the transactions that are the subject of the Restructuring Transactions related to any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Plan, and the Definitive Documents, or any related agreements, instruments, or other documents, and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, that, the foregoing shall not release any Cause of Action arising from an act or omission determined by Final Order to constitute gross negligence, willful misconduct, or intentional fraud.

(b)    Releases by Certain Holders of Claims and Interests.

As of the Effective Date, except for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remains in effect after the Effective Date, for good and valuable consideration, on and after the Effective Date, except as specifically set forth elsewhere in the Plan, the Releasing Parties conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release (and each entity so discharged and released shall be deemed discharged and released by the Releasing Parties) the Released Parties and their respective property from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including contract claims, claims under ERISA and all other statutory claims, claims for contributions, withdrawal liability, reallocation liability, redetermination liability, interest on any amounts, liquidated damages, claims for attorneys' fees or any costs or expenses whatsoever), whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, the Reorganized Non-Acquired Debtors or the Estates, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the Restructuring Transactions, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors, the Reorganized Debtors or the Reorganized Non-Acquired Debtors the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party (other than assumed contracts or leases and, solely to the extent provided in Section 5.11(b)(iii), the Prepetition Credit Agreement ), any of the transactions that are the subject of the Restructuring Transactions related to any Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation or consummation of the Plan (including the Plan Supplement), the Definitive Documents, or any related agreements, instruments or other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that, the foregoing shall not release any Cause of Action arising from an act or omission determined by Final Order to constitute gross negligence, willful misconduct, or intentional fraud.

10.7    *Exculpation*.

Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for any claim arising between the Petition Date and the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, implementation, administration, confirmation, consummation, and pursuit of the Disclosure Statement, the Restructuring

41

**Transactions, the Plan, or the solicitation of votes for, or confirmation of, the Plan, the funding or consummation of the Plan (including the Plan Supplement), the DIP Documents, Definitive Documents, or any related agreements, instruments, or other documents, the solicitation of votes on the Plan; the offer, issuance, and distribution of any Securities issued or to be issued pursuant to the Plan or any related agreement, whether or not such distribution occurs following the Effective Date, the occurrence of the Effective Date, negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed under the Plan, except for acts or omissions determined by Final Order to constitute gross negligence, willful misconduct, or intentional fraud, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability.**

10.8    *Subordinated Claims*.

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

10.9    *Retention of Causes of Action/Reservation of Rights*.

Except as otherwise provided in Sections 5.12(b), 10.5, 10.6, and 10.7 of the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including any affirmative Causes of Action against parties with a relationship with the Debtors. The Reorganized Debtors and the Reorganized Non-Acquired Debtors shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses notwithstanding the occurrence of the Effective Date, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

10.10   *Solicitation of Plan*.

As of and subject to the occurrence of the Confirmation Date: (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtors and each of their respective directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation shall not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

42

10.11    *Corporate and Limited Liability Company Action*.

Upon the Effective Date, all actions of the Debtors, Reorganized Debtors, or the Reorganized Non-Acquired Debtors, as applicable, contemplated by the Plan shall be deemed authorized and approved in all respects, including (a) those set forth in Section 5.5 of the Plan; (b) the selection of the managers, directors, and officers for the Reorganized Debtors; (c) the distribution, transfer, or issuance of the New Interests; (d) the entry into the First Lien Exit Facility Credit Agreement; and (e) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in each case, in accordance with and subject to the terms hereof. All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors or the Reorganized Debtors, and any corporate or limited liability company action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors. On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments, certificates of merger, certificates of conversion, certificates of incorporation, or comparable documents, or franchise tax reports contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including, (a) the New Organizational Documents; (b) the First Lien Exit Facility Credit Agreement; and (c) any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Section 10.11 shall be effective notwithstanding any requirements under non-bankruptcy law.

## ARTICLE XI.        RETENTION OF JURISDICTION.

11.1    *Retention of Jurisdiction*.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)        to hear and determine motions and/or applications for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases, including disputes over Cure Amounts, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)        to hear and determine disputes in connection with the rights of any Debtors or Non-Debtor Subsidiaries arising out of, or resulting from, these Chapter 11 Cases, including with respect to any impact of these Chapter 11 Cases on the property or contract rights of the Debtors or Non-Debtor Subsidiaries;

(c)        to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(d)        to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan, including, cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely paid;

43

(e)    to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(f)    to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)    to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)    to hear and determine all Fee Claims;

(j)    to adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(k)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing; provided, that, any dispute arising under or in connection with the First Lien Exit Facility shall be dealt with in accordance with the provisions of the applicable document;

(l)    to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

(m)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(o)    to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including the releases, discharge, exculpations, and injunctions issued thereunder;

(p)    to resolve disputes concerning Disputed Claims or the administration thereof;

(q)    to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(r)    to enter one or more final decrees closing the Chapter 11 Cases;

(s)    to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(t)    to resolve disputes as to the ownership of any Claim or Interest;

44

(u)       to recover all Assets of the Debtors and property of the Debtors' Estates, wherever located;

(v)       to resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

(w)       to hear and determine any rights, Claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory; and

(x)       to hear and resolve any dispute over the application to any Claim of any limit on the allowance of such Claim set forth in sections 502 or 503 of the Bankruptcy Code.

11.2    *Courts of Competent Jurisdiction*.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII.       MISCELLANEOUS PROVISIONS.

12.1    *Payment of Statutory Fees*.

On the Effective Date and thereafter as may be required, the Debtors, the Reorganized Debtors, the Reorganized Non-Acquired Debtors or the Reorganized Debtor Plan Administrator, as applicable, shall pay all Statutory Fees that are due and payable. After the Effective Date, the Reorganized Debtors, the Reorganized Non-Acquired Debtors or the Reorganized Debtor Plan Administrator, as applicable, shall pay any and all Statutory Fees when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Reorganized Debtors, the Reorganized Non-Acquired Debtors or the Reorganized Debtor Plan Administrator, as applicable, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Notwithstanding anything in the Plan to the contrary, the Debtors, the Reorganized Debtors, the Reorganized Non-Acquired Debtors or the Reorganized Debtor Plan Administrator, as applicable, shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee and file such reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The obligations under this Section 12.1 shall remain for each Debtor until such time as a final decree is entered closing the Chapter 11 Case for such Debtor, a Final Order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing such Debtor's Chapter 11 Case is entered.

12.2    *Substantial Consummation of the Plan*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

45

12.3    *Dissolution of Creditors' Committee.*

On the Effective Date, the Creditors' Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; provided, that, following the Effective Date, the Creditors' Committee shall continue in existence and have standing and a right to be heard for the following limited purposes:  (a) Claims and/or applications, and any relief related thereto, for compensation by professional persons retained in the Chapter 11 Cases pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code and requests for allowance of Administrative Expense Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; and (b) any appeals of the Confirmation Order or other appeals to which the Creditors' Committee is a party.

12.4    *Plan Supplement.*

The Plan Supplement shall be filed with the Bankruptcy Court not later than seven (7) calendar days prior to the earlier of the Voting Deadline and the deadline to object to confirmation of the Plan.  Upon its filing with the Bankruptcy Court, the documents included in the Plan Supplement shall be posted at the website of the Debtors' notice, claims, and solicitation agent.

12.5    *Request for Expedited Determination of Taxes.*

The Debtors and Reorganized Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns of the Debtors filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

12.6    *Exemption from Certain Transfer Taxes.*

Pursuant to and to the fullest extent permitted by section 1146 of the Bankruptcy Code, (i) the issuance, transfer or exchange of any securities, instruments or documents; (ii) the creation of any Lien, mortgage, deed of trust or other security interest; (iii) all sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Confirmation Date through and including the Effective Date, including any transfers effectuated (directly or indirectly) under the Plan pursuant to a Restructuring Transaction; (iv) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the revesting, transfer, or sale of any real or personal property of the Debtors pursuant to, in implementation of or as contemplated in the Plan (whether to one or more of the Reorganized Debtors or otherwise); and (v) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing, or recording fee, sales tax, use tax or other similar tax, or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

12.7     *Amendments*.

(a)      The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code.  After entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend, modify, or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code.

(b)      Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement to cure any non-substantive ambiguity, defect (including any technical defect), or inconsistency without further order or approval of the Bankruptcy Court.

12.8     *Effectuating Documents and Further Transactions*.

Each of the officers of the Reorganized Debtors is authorized, in accordance with his or her authority under the resolutions of the applicable board of directors or managers (on terms materially consistent with the Plan), to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, which shall be in form and substance reasonably satisfactory to the Debtors.

12.9     *Revocation or Withdrawal of the Plan*.

The Debtors may revoke or withdraw the Plan prior to the Effective Date as to any or all of the Debtors.  If, with respect to a Debtor, the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date as to such Debtor does not occur on the Effective Date, then, with respect to such Debtor:  (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing of or limiting to an amount of any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, such Debtor or any other Entity; (ii) prejudice in any manner the rights of such Debtor or any other Entity; or (iii) constitute an admission of any sort by any Debtor, any Prepetition First Lien Lenders, or any other Entity.

12.10    *Severability of Plan Provisions*.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors or Reorganized Debtors, as applicable; and (c) nonseverable and mutually dependent.

47

12.11   ***Governing Law***.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or a Definitive Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

12.12   ***Time***.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.13   ***Dates of Actions to Implement the Plan***.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

12.14   ***Immediate Binding Effect***.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), the Released Parties, the Exculpated Parties and each of their respective successors and assigns, including the Reorganized Debtors and the Reorganized Non-Acquired Debtors.

.

12.15   ***Deemed Acts***.

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

12.16   ***Successor and Assigns***.

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Entity.

12.17   ***Entire Agreement***.

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

12.18   *Exhibits to Plan*.

All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

12.19   *Notices*.

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(a)     if to the Debtors or the Reorganized Debtors:

Phoenix Services International LLC
4 Radnor Corporate Center, Suite 520
100 Matsonford Road
Radnor, Pennsylvania 19087
Attn:   Mark Porto and Robert Richard
Email:  Mark.Porto@phoenix-services.com
        bob.richard@phoenix-services.com

– and –

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn:   Ray C. Schrock, Esq., Jeffrey D. Saferstein, Esq.,
        and Garrett A. Fail, Esq.
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  ray.schrock@weil.com
        jeffrey.saferstein@weil.com
        garrett.fail @weil.com

– and –

Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Attn:   Daniel J. DeFranceschi, Esq. and Zachary I. Shapiro, Esq.
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:  defranceschi@rlf.com
        shapiro@rlf.com

(b)     if to the DIP Agent or Ad Hoc Group:

Gibson, Dunn & Crutcher LLP
200 Park Avenue

49

New York, New York 10166
Attn:   Scott Greenberg, Esq., Steven A. Domanowski, Esq.,
        Matthew Williams, Esq., and Jason Goldstein, Esq.
Email:  sgreenberg@gibsondunn.com
        sdomanowski@gibsondunn.com
        mjwilliams@gibsondunn.com
        jgoldstein@gibsondunn.com

        – and –

Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor, P.O. Box 8705
Wilmington, DE 19899
Attn:   Laura Davis Jones, Esq
Email:  ljones@pszjlaw.com

(c)     if to the Prepetition First Lien Administrative Agent:

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Attn:   Brian M. Resnick and Jonah A. Peppiatt
Email:  brian.resnick@davispolk.com
        jonah.peppiatt@davispolk.com

        – and –

Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Attn:   Robert J. Dehney and Andrew R. Remming
Email:  rdehneymorrisnichols.com
        aremming@morrisnichols.com

After the Effective Date, the Debtors have authority to send a notice to Entities providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors and Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

Dated:  June 20, 2023

Respectfully submitted,

Phoenix Services Topco, LLC and each of the other Debtors

By: */s/ Robert Richard*
    Name:  Robert Richard
    Title:   Chief Financial Officer

50