# EXHIBIT 1

**Changed Pages Blackline of Second Amended Plan**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------- x
**In re:**                                              :
                                                        :    Chapter 11
                                                        :
**PHOENIX SERVICES TOPCO, LLC,** *et al.*,              :    Case No. 22-10906 (MFW)
                                                        :
           Debtors.[1]                                  :    (Jointly Administered)
                                                        :
------------------------------------------------------- x

**<u>SECOND</u> AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF PHOENIX SERVICES TOPCO, LLC AND ITS DEBTOR AFFILIATES**

| | |
|---|---|
| **WEIL, GOTSHAL & MANGES LLP** | **RICHARDS, LAYTON & FINGER, P.A.** |
| Ray C. Schrock | Daniel J. DeFranceschi (No. 2732) |
| Jeffrey D. Saferstein | Zachary I. Shapiro (No. 5103) |
| Garrett A. Fail | Matthew P. Milana (No. 6681) |
| 767 Fifth Avenue | Emily R. Mathews (No. 6866) |
| New York, New York 10153 | One Rodney Square |
| Telephone: (212) 310-8000 | 920 North King Street |
| Facsimile: (212) 310-8007 | Wilmington, Delaware 19801 |
| | Telephone: (302) 651-7700 |
| | Facsimile: (302) 651-7701 |
| *Attorneys for Debtors and Debtors in Possession* | *Attorneys for Debtors and Debtors in Possession* |

Dated:  June ~~16~~20, 2023
        Wilmington, Delaware

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Phoenix Services Topco, LLC (4517); Phoenix Services Parent, LLC (8023); Phoenix Services Holdings Corp. (1330); Phoenix Services International LLC (4693); Metal Services LLC (8793); Terracentric Materials LLC (0673); Cool Springs LLC (8687); Metal Services Investment LLC (2924); and Phoenix Receivables, LLC (not applicable). The Debtors' mailing address is 4 Radnor Corporate Center, Suite 520, 100 Matsonford Road, Radnor, Pennsylvania 19087.

with the Backstop Parties receiving the Backstop Premium and the holders of New Money DIP Loans receiving the Participation Premium pursuant to allocations set forth in the Acceptable Plan Agreement.

1.83. ***Non-Debtor Subsidiary*** means any corporation, partnership, association or other business entity of which securities or other ownership interests representing more than 50% of the equity or more than 50% of the ordinary voting power or more than 50% of the general partnerships are directly or indirectly owned, controlled, or held by a Debtor.

1.84. ***OCP Order*** means the *Order Authorizing Debtors to Employ Professionals Used in the Ordinary Course of Business* (Docket No. 191).

1.85. ***Other Secured Claim*** means a Secured Claim, other than an Administrative Expense Claim, a DIP Claim, a Priority Tax Claim, or a Prepetition Lender Claim.

1.86. ***Participation Premium*** means a participation premium provided to each of the Exit Lenders that participate in the New Money Exit Debt Syndication, equal to 70% on a fully diluted basis of the New Interests (subject to dilution by the Management Incentive Plan) and as described in the Acceptable Plan Agreement.

1.87. ***Person*** has the meaning set forth in section 101(41) of the Bankruptcy Code.

1.88. ***Petition Date*** means September 27, 2022, the date on which the Debtors commenced the Chapter 11 Cases.

1.89. ***Phoenix Holdings*** means Phoenix Services Holdings Corp.

1.90. ***Phoenix Parent*** means Phoenix Services Parent, LLC.

1.91. ***Phoenix Services*** means Phoenix Services International LLC.

1.92. ***Phoenix Topco*** means Phoenix Services Topco, LLC.

1.93. ***Plan*** means this second amended joint chapter 11 plan of reorganization of the Debtors contemplated herein, including all appendices, exhibits, schedules, and supplements hereto (including any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.94. ***Plan Supplement*** means a supplemental appendix to the Plan containing, among other things, substantially final forms of documents, schedules, and exhibits to the Plan to be filed with the Bankruptcy Court, including the following: (a) the New Organizational Documents (to the extent such New Organizational Documents reflect material changes from the Debtors' existing organizational documents); (b) the Assumption Schedule; (c) the Customer Schedule; (d) the Transaction Steps; and (e) to the extent known, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code. The Plan Supplement shall be filed with the Bankruptcy Court not later than seven (7) calendar days prior to the earlier of the Voting Deadline and the deadline to object to confirmation of the Plan; provided, that, through the Effective Date, the Debtors shall have the right to amend and supplement the Plan Supplement and any schedules, exhibits, or amendments thereto in accordance with the terms of the Plan.

1.95. ***Prepetition Credit Agreement*** means that certain First Lien Credit Agreement, dated as of March 1, 2018, among Phoenix Services Holdings Corp., as holdings, Phoenix Services International LLC,

Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter; (ii) such holder's Allowed Other Secured Claim shall be Reinstated; (iii) such holder shall receive the collateral securing its Allowed Other Secured Claim; or (iv) such holder shall receive such other treatment so as to render such holder's Allowed Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

c) **Voting:**  Class 2 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Other Secured Claims.

4.3 **Prepetition Lender Claims (Class 3).**

a) **Classification:**  Class 3 consists of Prepetition Lender Claims.

b) **Treatment:**  On the Effective Date, each Allowed Prepetition Lender Claim will be released and extinguished, and each holder of an Allowed Prepetition Lender Claim shall receive, in full and final satisfaction of such Allowed Prepetition Lender Claim its Pro Rata share (based on such holder's proportionate share of all Allowed Prepetition Lender Claims) of 1.0% of the New Interests that are issued and outstanding on the Effective Date, subject to dilution by the Management Incentive Plan, the Participation Premium, and the Backstop Premium.

c) **Voting:**  Class 3 is Impaired, and the holders of Prepetition Lender Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.4 **General Unsecured Claims (Class 4).**

a) **Classification:**  Class 4 consists of General Unsecured Claims, including any Rejection Damages Claim.

b) **Treatment:**  On the Effective Date, each Allowed General Unsecured Claim will be ~~released and extinguished~~discharged, and each holder of an Allowed General Unsecured Claim shall not receive any distribution on account of its General Unsecured Claim.

c) **Voting:**  Class 4 is Impaired, and the holders of General Unsecured Claims in Class 4 are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code**.**  Therefore, holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan and the votes of such holders will not be solicited with respect to such General Unsecured Claims.

4.5 **Intercompany Claims (Class 5).**

a) **Classification:**  Class 5 consists of Intercompany Claims.

b) **Treatment:**  On the Effective Date, all Intercompany Claims shall be, at the option of the Debtors, with the consent of the Required Consenting Lenders, either:  (i) Reinstated or (ii) distributed, contributed, set off, cancelled, released, or otherwise addressed at the option of the Debtors (without any distribution on account of such Claims); provided, that, treatment of the Topco Claim shall be acceptable to the Required Consenting Lenders in their sole and absolute discretion.

17

consummation of the Plan in relation to any Claim or Interest extinguished, discharged, released or treated pursuant to the Plan.

(b) Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in any or all of the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, released, or treated pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties or the property of any of the Released Parties; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties or the property of any of the Released Parties; (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated or allowed by the Plan, or to the extent asserted with respect to a timely Proof of Claim or an objection to the confirmation of the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

(c) The injunctions in this Section 10.5 shall extend to any successors of the Debtors, the Reorganized Debtors or Reorganized Non-Acquired Debtors and their respective property and interests in property.

10.6  *Releases*.

(a)  **Releases by the Debtors.**

**As of the Effective Date, except for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remains in effect after the Effective Date, for good and valuable consideration, on and after the Effective Date, the Released Parties shall be deemed released and discharged by the Debtors, the Reorganized Debtors, the Reorganized Non-Acquired Debtors. and the Estates, and any Person seeking to exercise the rights of the Estates, and any successors to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all claims, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, the Reorganized Non-Acquired Debtors or the Estates, that the Debtors, the Reorganized Debtors, the Reorganized Non-Acquired Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors, the Reorganized Debtors or the Reorganized Non-Acquired Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between**

the Debtors and any Released Party, the Restructuring Transactions, or any of the transactions that are the subject of the Restructuring Transactions related to any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Plan, and the Definitive Documents, or any related agreements, instruments, or other documents, and the negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; **provided**, **that**, the foregoing shall not release any Cause of Action arising from an act or omission determined by Final Order to constitute gross negligence, willful misconduct, or intentional fraud.

(b)     **Releases by Certain Holders of Claims and Interests.**

As of the Effective Date, except for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remains in effect after the Effective Date, for good and valuable consideration, on and after the Effective Date, except as specifically set forth elsewhere in the Plan, the Releasing Parties conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release (and each entity so discharged and released shall be deemed discharged and released by the Releasing Parties) the Released Parties and their respective property from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including contract claims, claims under ERISA and all other statutory claims, claims for contributions, withdrawal liability, reallocation liability, redetermination liability, interest on any amounts, liquidated damages, claims for attorneys' fees or any costs or expenses whatsoever), whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, the Reorganized Non-Acquired Debtors or the Estates, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the Restructuring Transactions, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any Security of the Debtors, the Reorganized Debtors or the Reorganized Non-Acquired Debtors the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party (other than assumed contracts or leases **and, solely to the extent provided in Section 5.11(b)(iii), the Prepetition Credit Agreement**), any of the transactions that are the subject of the Restructuring Transactions related to any Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation or consummation of the Plan (including the Plan Supplement), the Definitive Documents, or any related agreements, instruments or other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; **provided**, **that**, the foregoing shall not release any Cause of Action arising from an act or omission determined by Final Order to constitute gross negligence, willful misconduct, or intentional fraud.

10.7    *Exculpation*.

Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for any claim arising between the Petition Date and the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, implementation, administration, confirmation, consummation, and pursuit of the Disclosure Statement, the Restructuring

12.11  *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or a Definitive Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

12.12  *Time*.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.13  *Dates of Actions to Implement the Plan*.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

12.14  *Immediate Binding Effect*.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), the Released Parties, the Exculpated Parties and each of their respective successors and assigns, including the Reorganized Debtors and the Reorganized Non-Acquired Debtors.

.

12.15  *Deemed Acts*.

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

12.16  *Successor and Assigns*.

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Entity.

12.17  *Entire Agreement*.

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

        New York, New York 10166
        Attn:    Scott Greenberg, Esq., Steven A. Domanowski, Esq.,
                 Matthew Williams, Esq., and Jason Goldstein, Esq.
        Email:  sgreenberg@gibsondunn.com
                 sdomanowski@gibsondunn.com
                 mjwilliams@gibsondunn.com
                 jgoldstein@gibsondunn.com

        – and –

        Pachulski Stang Ziehl & Jones LLP
        919 N. Market Street, 17th Floor, P.O. Box 8705
        Wilmington, DE 19899
        Attn:    Laura Davis Jones, Esq
        Email:  ljones@pszjlaw.com

    (c)    if to the Prepetition First Lien Administrative Agent:

        Davis Polk & Wardwell LLP
        450 Lexington Avenue
        New York, NY 10017
        Attn:    Brian M. Resnick and Jonah A. Peppiatt
        Email:  brian.resnick@davispolk.com
                 jonah.peppiatt@davispolk.com

        – and –

        Morris, Nichols, Arsht & Tunnell LLP
        1201 N. Market Street, 16th Floor
        P.O. Box 1347
        Wilmington, DE 19899-1347
        Attn:    Robert J. Dehney and Andrew R. Remming
        Email:  rdehneymorrisnichols.com
                 aremming@morrisnichols.com

       After the Effective Date, the Debtors have authority to send a notice to Entities providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors and Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

Dated:  June ~~16~~20, 2023

                                        Respectfully submitted,

                                        Phoenix Services Topco, LLC and each of the other Debtors

                                        By:  */s/ Robert Richard*
                                              Name:  Robert Richard
                                              Title:  Chief Financial Officer