## <u>EXHIBIT A</u>

**Revised Confirmation Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
--------------------------------------------------------- x
                                        :
In re:                                  :
                                        :
PHOENIX SERVICES TOPCO, LLC, et al.,    :
                                        :
          Debtors.¹                     :
                                        :
--------------------------------------------------------- x
```

Chapter 11

Case No. 22-10906 (MFW)

(Jointly Administered)

Re: Docket No. 915

**ORDER CONFIRMING SECOND AMENDED**
**JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**OF PHOENIX SERVICES TOPCO, LLC AND ITS DEBTOR AFFILIATES**

Upon the filing by Phoenix Services Topco, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**")² of the *Second Amended Joint Chapter 11 Plan of Reorganization of Phoenix Services Topco, LLC and its Debtor Affiliates* (Docket No. 915) (as amended or modified in accordance with its terms, the "**Plan**") which is attached hereto as **Exhibit A**; and the Court previously having approved the Disclosure Statement and the solicitation procedures related to the Disclosure Statement and the solicitation of acceptances and rejections of the Plan, in each case pursuant to the Disclosure Statement Order; and the Debtors having served the Disclosure Statement on the holders of Claims and Interests pursuant to the Disclosure Statement Order, *see Affidavit of Service* (Docket No. 774) (the "**Affidavit of Service**"); and the Debtors having filed the documents comprising the Plan

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Phoenix Services Topco, LLC (4517); Phoenix Services Parent, LLC (8023); Phoenix Services Holdings Corp. (1330); Phoenix Services International LLC (6493); Metal Services LLC (8793); Terracentric Materials LLC (0673); Cool Springs LLC (8687); Metal Services Investment LLC (2924); and Phoenix Receivables, LLC (not applicable). The Debtors' mailing address is 4 Radnor Corporate Center, Suite 520, 100 Matsonford Road, Radnor, Pennsylvania 19087.

[2]    Capitalized terms used in this Confirmation Order but not otherwise defined shall have the same meaning as in the Plan or the Disclosure Statement Order, as applicable, unless the context otherwise requires.

Supplement on June 2, 2023  and continuing thereafter (Docket Nos. 850 and 897) (collectively, and as may be further amended or supplemented, the "**Plan Supplement**"); and the Plan Supplement including sufficient information with respect to the Restructuring Transactions, including the Transaction Steps; and the Court having considered the: (a) *Declaration of Bob Richard Support of Confirmation of the Joint Chapter 11 Plan of Phoenix Services Topco, LLC and its Debtor Affiliates* (Docket No. 905)  (the "**Richard Declaration**"); (b) *Declaration of John Singh in Support of Confirmation of the Joint Chapter 11 Plan of Phoenix Services Topco, LLC and its Debtor Affiliates* (Docket No. 907) (the "**Singh Declaration**"); and (c) *Declaration of Jeffrey W. Kopa in Support of Confirmation of the Joint Chapter 11 Plan of Phoenix Services Topco, LLC and its Debtor Affiliates* (Docket No. 906) (the "**Kopa Declaration**") as these declarations may have been supplemented from time to time; and the Court having considered the record in these chapter 11 cases, the stakeholder support for the Plan evidenced on the record and in the *Declaration of James Sean McGuire in Support of Confirmation of the Joint Chapter 11 Plan of Reorganization of Phoenix Services Topco, LLC and its Debtor Affiliates*, filed on June 19, 2023 (Docket No. 904) (the "**Voting Certification**"), the compromises and settlements embodied in and contemplated by the Plan, the briefs and arguments regarding confirmation of the Plan, the evidence regarding confirmation of the Plan, and the hearing on confirmation of the Plan having been conducted on June 21, 2023 (the "**Confirmation Hearing**"); and after due deliberation:

**THE COURT HEREBY FINDS:**

I.    The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules

7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code, and, pursuant to Local Rule 9013-1(f), the Debtors consent to entry of a final order by the Court in accordance with the terms set forth herein to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

II.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.

III.    Each of the Debtors has met the burden of proving that the Plan satisfies the elements of 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

IV.    The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.  As is evidenced by Affidavit of Service, the transmittal and service of the Plan, the Plan Supplement, the Disclosure Statement, and the Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code,

the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law and such parties have had an opportunity to appear and be heard with respect thereto. No other further notice is required.

V.    The Plan has been proposed in good faith and not by any means forbidden by law. In so finding, the Court has considered the totality of the circumstances of these cases, and found that all constituencies acted in good faith. The Plan and the Restructuring Transactions contemplated therein are the result of extensive, good faith, arm's length negotiations among the Debtors and their principal constituencies and are the result of the Debtors' efforts in seeking to maximize recoveries for the Debtors' Estates for the benefit of creditors.

VI.    The Debtors have demonstrated compelling circumstances and good, sufficient, and sound business purposes and justifications for this Court to approve the Restructuring Transactions contemplated under the Plan, including but not limited to the credit bid of the DIP Claims pursuant to the terms and conditions of the Transactions Steps (the "**Credit Bid**"). All documents related to the Credit Bid and all aspects of the Restructuring Transactions were negotiated, proposed, and entered into by or on behalf of the Debtors, the DIP Lenders (including the Ad Hoc Group) and the DIP Agent in good faith, without collusion or fraud, and from arms'-length bargaining positions. The consideration provided pursuant to the Credit Bid in connection with the Restructuring Transactions constitutes reasonably equivalent value or fair consideration under the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, the Bankruptcy Code, and the laws of the United States and any state, territory, or possession thereof, including the District of Columbia. The Definitive Documents implementing the Restructuring Transactions are not for the purpose of hindering, delaying, or defrauding creditors of the Debtors, and neither the Debtors, the DIP Lenders (including the Ad Hoc Group) nor the DIP Agent have agreed to the Restructuring Transactions or the Definitive Documents fraudulently

for the purposes of statutory and common law fraudulent conveyance and fraudulent transfer claims under the Bankruptcy Code and/or the laws the laws of the United States and any state, territory, or possession thereof, including the District of Columbia.  The Credit Bid and other consideration provided under the Restructuring Transactions, as set forth in the Transaction Steps, represents a fair and reasonable offer to purchase the relevant assets as set forth in the Plan.  As of the date hereof, neither the DIP Agent nor any DIP Lender is an "insider" or an "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders exist between the Debtors on one hand and the DIP Agent or the DIP Lenders on the other.

VII.    With respect to each Debtor, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order.

VIII.    Each of the holders of Class 3 Prepetition Lender Claims that has voted for the Plan has agreed to vote to accept the Plan and elected to opt into the releases provided in Article X of the Plan.

IX.    The Plan does not "discriminate unfairly" and is "fair and equitable" with respect to the Classes that are impaired and are deemed to reject the Plan, because no Class senior to any rejecting Class is being paid more than in full and the Plan does not provide a recovery on account of any Claim or Interest that is junior to such rejecting Classes.

X.    The releases contained in Article X of the Plan are an essential component of the Plan.  In addition, the third-party release contained therein is consensual in that all parties to be bound by such release were given an opportunity to opt in.  Accordingly, the releases contained in Article X of the Plan are: (a) in exchange for the good and valuable consideration

RLF1 29198696V.1

provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by Article X of the Plan; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; and (e) given and made after due notice and opportunity for hearing.

XI.     The exculpation provided by Article X of the Plan for the benefit of the Exculpated Parties is appropriately tailored to the circumstances of these cases.

XII.    The injunctions contained in Article X of the Plan are consistent with the Bankruptcy Code and applicable law and are approved.

XIII.   The discharge contained in Article X of the Plan is consistent with the Bankruptcy Code and applicable law and is approved.

XIV.    With respect to each Debtor, the Plan does not discriminate unfairly among the different classes of unsecured creditors and does not offend the fair and equitable standard of the Bankruptcy Code because grounds and justifications exist for treating the classes differently in these cases.

XV.     The terms and conditions of the First Lien Exit Facility are fair, reasonable, and the best available to the Debtors under the circumstances, reflected the Debtors' prudent exercise of sound business judgment consistent with their fiduciary duties, are based on good, sufficient, and sound business purposes and justifications, and are supported by reasonably equivalent value and consideration.

XVI.    Each of the Backstop Premium and the Participation Premium constitutes an actual and necessary cost and expense to preserve the Debtors' Estates and is reasonable and warranted on the terms set forth in the Plan and the Acceptable Plan Agreement in light of, among other things, (i) the significant benefit to the Debtors' Estates of having committed financing to

fund the Debtors' proposed chapter 11 plan, (ii) the substantial time, effort, and costs incurred by the Backstop Parties in negotiating and documenting the Acceptable Plan Agreement and Plan, and (iii) the substantial benefit to the Debtors' Estates from, and the potential investment risk of financing, the New Money Exit Debt in order to fund the Reorganized Debtors' exit from bankruptcy and post-Effective Date operations.  The amount, terms and conditions of the Backstop Premium and the Participation Premium are bargained-for and integral parts of the Restructuring Transactions contemplated under the Plan.

## FURTHER, IT IS HEREBY ORDERED THAT:

### A.    Confirmation of the Plan.

1.    The Plan is confirmed.

2.    Any and all objections to the Plan that have not been withdrawn or resolved prior to the Confirmation Hearing are hereby overruled.

3.    The documents contained in the Plan Supplement are integral to the Plan and are approved by the Court, and the Debtors, Reorganized Debtors (as applicable), and Reorganized Non-Acquired Debtors are authorized to take all actions required under the Plan and the Plan Supplement to effectuate the Plan and the Restructuring Transactions contemplated therein.

4.    The terms of the Plan, the Plan Supplement, the exhibits thereto, and the Definitive Documents are incorporated herein by reference and are an integral part of this Confirmation Order.  The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents executed or to be executed in connection with the transactions contemplated by the Plan (including the Definitive Documents) shall be effective and binding as of the Effective Date.  Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement at any time before the Effective Date.  The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or

RLF1 29198696V.1

any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

5.      This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan, the Restructuring Transactions, and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan and the Restructuring Transactions.  Pursuant to the applicable provisions of the General Corporation Law of the State of Delaware, other applicable non-bankruptcy law, and section 1142(b) of the Bankruptcy Code, no action of the respective managers or shareholders of the Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with implementation of the Plan.

6.      Subject to payment of any applicable filing fees under applicable non-bankruptcy law, each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept for filing and/or recording any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.

7.      The compromises and settlements set forth in the Plan, as reflected in the relative distributions and recoveries of holders of Claims under the Plan, are approved pursuant to Bankruptcy Rule 9019(a) and will be effective immediately and binding on all parties in interest on the Effective Date.

RLF1 29198696V.1

8.      The amendments and modifications to the Plan since the filing thereof, including as reflected herein, and incorporated into and reflected in the Plan, are approved in accordance with section 1127(a) of the Bankruptcy Code and Rule 3019(a) of the Bankruptcy Rules, and do not require additional disclosure or solicitation.

9.      For the avoidance of doubt, pursuant to Bankruptcy Rule 3020(c)(1), the following provisions in the Plan are hereby approved and will be effective immediately on the Effective Date without further order or action by the Court, any of the parties to such release, or any other Entity: (a) Releases by the Debtors (section 10.6(a)); (b) Releases by Holders of Claims and Interests (section 10.6(b), (c)); (c) Exculpation (section 10.7); and (d) Injunction (sections 10.5(a), (b), and (c)).

10.      Except as otherwise provided in the Plan or the First Lien Exit Facility Documents, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and Reorganized Non-Acquired Debtors, and their successors and assigns.  All holders of Secured Claims are directed to cooperate with the Debtors, Reorganized Debtors, and Reorganized Non-Acquired Debtors, as the case may be, in implementing this paragraph and any administrative details relating thereto.

11.      The Debtors shall cause to be served a notice of the entry of this Confirmation Order and occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B**

(the "**Effective Date Notice**"), upon (a) all parties listed in the creditor matrix maintained by Stretto, Inc. and (b) such additional persons and entities as deemed appropriate by the Debtors, no later than five (5) business days after the Effective Date. The Debtors shall cause the Effective Date Notice to be published, with any necessary modifications for ease of publication, (i) once in the national edition of *The New York Times* and (ii) once in local newspapers, trade journals or similar publications, if any, as the Debtors deem appropriate in their discretion, within seven (7) business days after the Effective Date.

**B.      First Lien Exit Facility.**

12.      The Debtors and Reorganized Debtors are hereby authorized to enter into, and take such actions as necessary or desirable to perform under the First Lien Exit Facility and, all documents or agreements related thereto, including but not limited to the issuance of the New Interests on account of the Backstop Premium and Participation Premium pursuant to the Plan. On the Effective Date, all of the Exit Facility Loan Documents shall be valid, binding, and enforceable pursuant to their terms. On the Effective Date, all of the Liens and security interests to be granted in accordance with the First Lien Exit Facility Loan Documents: (a) shall be deemed to be granted; (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the First Lien Exit Facility Loan Documents; (c) shall be deemed automatically perfected on the Effective Date (without any further action being required by the Debtors or the Reorganized Debtors, as applicable, the applicable agent, or any of the applicable lenders), having the priority set forth in the First Lien Exit Facility Loan Documents and subject only to such Liens and security interests as may be permitted under the First Lien Exit Facility Loan Documents; and (d) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the

Bankruptcy Code or any applicable non-bankruptcy law. The Debtors, Newco, Newco Grandparent, Newco Parent, and the agents and lenders under the First Lien Exit Facility Credit Agreement are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that, in respect of the Debtors and Reorganized Debtors, perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required with respect to the Debtor or Reorganized Debtor entities) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

13.    The Newco Participation Contract Right set forth in the Plan and Acceptable Plan Agreement, as otherwise modified or agreed among the Backstop Parties with respect to any allocation available to the Backstop Parties, is hereby approved as reasonable under the circumstances.

## C.    Assumed Contracts.

14.    The assumption of the contracts and leases listed on the Assumption Schedule, and the rejection of the contracts and leases that are not listed on the Assumption Schedule, in each case in accordance with the Plan, is approved.

15.    To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed, or assumed and assigned, pursuant to the Plan restricts or prevents, purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such executory contract or unexpired lease (including

RLF1 29198696V.1

any "change of control" provision), such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto. The commencement of the Chapter 11 Cases and the Restructuring Transactions taken by the Debtors or the Reorganized Debtors, as applicable, to effectuate the Plan shall not be deemed to trigger any default, termination, or "change of control" provisions in any contract or agreement of the Debtors, Reorganized Debtors, or their respective subsidiaries, including any executory contract or Unexpired Leases.

**D.      Substantial Consummation.**

16.      On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

17.      In accordance with the terms of the DIP Order and applicable law, including sections 363(k) and 1123(b)(4) of the Bankruptcy Code, following the Debtors' discharge of all liabilities (other than as expressly set forth in the Plan) pursuant to section 1141 of the Bankruptcy Code as set forth in the Plan, the DIP Agent and/or Newco at the direction of the Required Lenders (as defined in the DIP Credit Agreement), is authorized to credit bid the DIP Claims in order to implement the Restructuring Transactions. Upon consummation of the Credit Bid and pursuant to the Transaction Steps, to the fullest extent permitted by section 1141(b) and (c) of the Bankruptcy Code, the New Interests shall be transferred or vest in the appropriate party (as contemplated in the Transaction Steps) free and clear of all Liens, Claims, charges, interests, or other encumbrances (other than as expressly set forth in the Plan), including, without limitation, mortgages, deeds of trust, pledges, charges, security interests, of whatever kind or nature, rights of first refusal, rights of offset, royalties, conditional sales or title retention agreements, hypothecations, preferences, debts, easements, suits, licenses, options, right of recovery,

judgments, successor or successor-in-interest liability, orders and decrees of any court or foreign domestic governmental entity, taxes (including foreign state and local taxes), covenants, restrictions, indentures, instruments, leases, options, off-sets, recoupments, claims for reimbursement or subrogation, contribution, indemnity or exoneration, and other interests of any kind or nature whatsoever against the Debtors or the New Interests.

**E.      Authorization, Issuance, and Distribution of New Interests**

18.      Newco Grandparent, or such other entity as set forth in the Transaction Steps, is authorized to issue or cause to be issued the New Interests without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule, or the vote, consent, authorization or approval of any Person.  The New Interests (including those issued and distributed on account of the Backstop Premium and Participation Premium) shall be issued and distributed free and clear of all Liens, Claims and other Interests.  All of the New Interests issued pursuant to the Plan shall be duly authorized, validly and, as applicable, fully-paid and non-assessable.

19.      Any Person's acceptance of the New Interests shall be deemed to constitute its agreement to be bound by the New Organizational Documents (including but not limited to any shareholder agreement or limited liability company agreements), as the same may be amended from time to time following the Effective Date in accordance with their terms.  Such New Organizational Documents shall be binding on all holders of the New Interests (and their respective successors and assigns) regardless of whether such holder executes or delivers a signature page to any shareholders' agreement, limited liability company agreement or similar agreement constituting a New Organizational Document.  Notwithstanding the forgoing, Newco Grandparent or any entity distributing the New Interests pursuant to the Plan may condition the receipt of any New Interests issued upon the receipt of duly executed counter-signature pages to any

shareholders' agreement, limited liability company agreement, or similar New Organizational Document.

20.     The provisions of Section 5.10 of the Plan with respect to the issuance of New Interests and the applicable of section 1145 of the Bankruptcy Code and applicable securities laws are approved and binding on all Persons that receive New Interests pursuant to the Plan.

## F.     Corporate Action and Effectuating Documents

21.     Upon the Effective Date or as thereafter as reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects, including but not limited to (i) the issuance of the New Interests; (ii) implementation of the Restructuring Transactions (including the Credit Bid); (iii) incurrence of the First Lien Exit Facility; and (iv) all other actions contemplated by the Plan (whether to occur before, on or after the Effective Date), including with respect to the actions contemplated in the Transaction Steps. Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Debtors, Newco, Newco Parent and Newco Grandparent and any corporate or other organization action required thereof in connection with the Plan shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors or officers of the Debtors, Newco, Newco Parent or Newco Grandparent or the DIP Agent.  Before, on or after the Effective Date, as applicable, the appropriate officers of the Debtors, Newco, Newco Parent, or Newco Grandparent or the DIP Agent as applicable shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan and the Restructuring Transaction documents (or necessary or desirable to effectuate the Plan and the Restructuring Transactions) in the name and on behalf of the Debtors, Newco, Newco Parent and Newco Grandparent, as applicable, to the extent not previously authorized by the Bankruptcy Court.

RLF1 29198696V.1

22.     Following the Confirmation Date or as soon as reasonably practicable thereafter, the Debtors, Newco, Newco Parent, Newco Grandparent and the DIP Agent, as applicable, may take all actions as may be necessary or appropriate in their discretion to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and the Restructuring Transactions, including (i) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and the Restructuring Transaction documents; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or law; (iv) the issuance of securities; and (v) all other actions that the Debtors, Newco, Newco Parent, Newco Grandparent or the DIP Agent determine to be necessary or appropriate, including in connection with the consummation of the Restructuring Transactions and making filings or recordings that may be required by applicable law in connection with the Plan and the Restructuring Transactions, all of which shall be authorized and approved in all respects, in each case, without further action being required under applicable law, regulation, order, or rule or the governing documents of the Debtors, Newco, Newco Parent or Newco Grandparent.

23.     Except as otherwise expressly set forth in the Plan or the Definitive Documents, Newco, Newco Grandparent, and Newco Parent, and each of their respective successors, affiliates, and assigns shall have no liability for or obligations with respect to any Claims or Liens against

the Debtors, and all persons and entities holding such Claims or Liens are hereby forever barred and estopped from (a) asserting such Claims or Liens against Newco, Newco Grandparent, and Newco Parent, and/or any of their assets or the New Interests; (b) interfering with Newco's, Newco Grandparent's, or Newco Parent's right, title or use and enjoyment of the Interests in the Reorganized Debtors or any assets thereof.

24.     The Restructuring Transactions, and the consummation thereof, including the issuance of New Interests as contemplated under the Transaction Steps and the Plan, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.

**G.     Exemption from Certain Transfer Taxes and Recording Fees**

25.     To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan (including the Restructuring Transactions) or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; (d) the grant of collateral as security for any or all of the First Lien Exit Facility, as applicable; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way under the Plan (including the Restructuring Transactions), shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or

similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales or use tax, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and are authorized to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**H.      Miscellaneous**

26.      Notwithstanding anything in the Plan or this Order, neither the DIP Agent nor the Prepetition First Lien Administrative Agent shall have any liability for any actions taken or not taken prior to the Effective Date in furtherance of the Plan, the Confirmation Order or the Restructuring Transactions.

27.      The Plan shall not become effective unless and until all conditions set forth in Sections 9.1 and 9.2 of the Plan have been satisfied or waived pursuant to Section 9.3 of the Plan.

28.      The consummation of the Plan and the implementation of the Restructuring Transactions are not intended to, and shall not constitute, a "change of control" or "change in control" under any lease, contract, or agreement to which a Debtor is a party, except as otherwise expressly set forth in the Plan.  No provision in any Assumed Contract shall restrict, limit, or prohibit the assumption, assignment, or sale of such Assumed Contract, and any such anti-

assignment provision is unenforceable in connection with the Acquisition Transaction pursuant to section 365(f) of the Bankruptcy Code.

29.     All distributions on account of DIP Claims may be deposited with the DIP Agent or as otherwise directed by the DIP Agent for distribution to holders of DIP Claims in accordance with the terms of the Plan; and all distributions on account of Prepetition Lender Claims shall be made by the Disbursing Agent on behalf of the Prepetition First Lien Administrative Agent.  To the extent the DIP Agent effectuates, or is requested to effectuate, any distribution under the Plan, the DIP Agent shall be deemed a "Disbursing Agent" under the Plan.

30.     Nothing in this Order or the Plan discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("**Governmental Unit**") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date: (iii) any police or regulatory liability to a Governmental Unit that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors, Reorganized Debtors or Non-Acquired Debtors. Nor shall anything in this Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence.

31.     For the avoidance of doubt, nothing in the Confirmation Order or Plan extinguishes any party's right to assert a valid right of recoupment or setoff, or the Reorganized Debtors' right to object thereto.

32.     Nothing in this Order or the Plan shall enjoin: (a) Cleveland-Cliffs Steel LLC f/k/a ArcelorMittal USA LLC from asserting claims referred to in Proofs of Claim Nos. 466 and 469 (the "**Cliffs Claims**") against the Debtors' insurance carriers; and (b) the Debtors' insurance

carrier(s) from administering, handling, defending, settling, and/or paying in the ordinary course of business the Cliffs Claims and without further order of this Bankruptcy Court.

33.     The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as proponents, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

34.     Notwithstanding Bankruptcy Rule 3020(e), the terms and conditions of this Confirmation Order will be effective and enforceable immediately upon its entry.

35.     Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors, Reorganized Debtors, or Reorganized Non-Acquired Debtors, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, the Plan Supplement, or any amendments or modifications to the foregoing.

36.     The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

37.     To the extent of any inconsistency between this Confirmation Order and the Plan, this Confirmation Order shall govern.

**Exhibit A**

**Plan**

(See Docket No. 915]

**Exhibit B**

**Form of Notice of Effective Date**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------- x
                                                          :
In re:                                                    :
                                                          :
PHOENIX SERVICES TOPCO, LLC, et al.,                      :
                                                          :
          Debtors. 1                                      :
                                                          :
                                                          :
--------------------------------------------------------- x
```

Chapter 11

Case No. 22-10906 (MFW)

(Jointly Administered)

Re: Docket No. [●]

## NOTICE OF EFFECTIVE DATE AND ENTRY OF ORDER CONFIRMING AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF PHOENIX <u>SERVICES TOPCO, LLC AND ITS AFFILIATED DEBTORS</u>

**PLEASE TAKE NOTICE** that on June 16, 2023, Phoenix Services Topco, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), filed the *Amended Joint Chapter 11 Plan of Reorganization of Phoenix Services Topco, LLC and its Debtor Affiliates* (Docket No. 753)  (including all exhibits and supplements thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**") with the United States Bankruptcy Court for the District of Delaware (the "**Court**").

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider approval of the Plan was held on June 21, 2023.

---

1    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Phoenix Services Topco, LLC (4517); Phoenix Services Parent, LLC (8023); Phoenix Services Holdings Corp. (1330); Phoenix Services International LLC (4693); Metal Services LLC (8793); Terracentric Materials LLC (0673); Cool Springs LLC (8687); Metal Services Investment LLC (2924); and Phoenix Receivables, LLC (not applicable).  The Debtors' mailing address is 4 Radnor Corporate Center, Suite 520, 100 Matsonford Road, Radnor, PA 19087.

PLEASE TAKE FURTHER NOTICE that on [●], 2023, the Court entered the *Order Confirming Joint Chapter 11 Plan of Reorganization of Phoenix Services Topco, LLC and Its Debtor Affiliates* (Docket No. [●]) (the "**Confirmation Order**").[2]

PLEASE TAKE FURTHER NOTICE that the Effective Date of the Plan occurred on [●], 2023.

PLEASE TAKE FURTHER NOTICE that, unless otherwise provided by the Plan, the Confirmation Order, the DIP Order, any other applicable order of the Court, or agreed to by the holder of an Allowed Administrative Expense Claim and the Debtors or the Reorganized Debtors, as applicable, all requests for payment of Administrative Expense Claims must be filed and served on the Reorganized Debtors by no later than [●], 2023 (the "**Administrative Expense Claims Bar Date**").  Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors, the Reorganized Debtors and the Reorganized Non-Acquired Debtors or their property and such Administrative Expense Claims shall be deemed discharged as of the Effective Date.

PLEASE TAKE FURTHER NOTICE that in accordance with Article VIII of the Plan, as of the Effective Date of the Plan, except as set forth in the Plan and the Confirmation Order, including Sections 8.4, 8.5, and 8.6 of the Plan, all executory contracts and unexpired leases to which any of the Debtors were party were deemed rejected, unless any such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Court;

---

[2]    Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Confirmation Order or the Plan, as applicable.

(ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtors on or before the Effective Date; or (iv) is specifically designated as a contract or lease to be assumed on the Assumption Schedule (Docket No. [●]).  In accordance with Section 8.3 of the Plan, in the event that the rejection of an executory contract or unexpired under the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be classified as a General Unsecured Claim.  Because there are no distributions provided to General Unsecured Claims, Proofs of Claim need not be filed for such Claims.

**PLEASE TAKE FURTHER NOTICE** that the Plan and Confirmation Order may be viewed for free at the website of the Debtors' claims and noticing agent, Stretto, Inc. at https://cases.stretto.com/phoenix/ or for a fee on the Court's website at http://www.deb.uscourts.gov.

Dated: June [●], 2023
      Wilmington, Delaware

<u>/s/</u>

RICHARDS, LAYTON & FINGER, P.A.
Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Jeffery Saferstein (admitted *pro hac vice*)
Garrett A. Fail (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for the Reorganized Debtors*